**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@willkie.com
JOSHUA ANDERSON (SBN: 312836)
jdanderson@willkie.com
YUHAN ALICE CHI (SBN: 324072)
ychi@willkie.com
NAIARA TOKER (SBN: 346145)
ntoker@willkie.com
ANIKA HOLLAND (SBN: 336071)
aholland@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARY L. SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No.: 5:23-cv-03527-PCP<br>(Consol. with 5:23-cv-04191-PCP)<br>(Related to 5:23-cv-07557-PCP, 5:23-cv-04953-PCP)<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Hearing: March 7, 2024<br>Time: 10:00 a.m.<br>Location: Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts<br><br>Consolidated Class Action Complaint filed October 9, 2023 |

**TO PLAINTIFFS AND ALL ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that the following Motion to Dismiss will be heard on March 7, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8, 4th Floor, of the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, California 95113, with the Honorable P. Casey Pitts presiding.

Defendant Google LLC ("Google") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Consolidated Class Action Complaint ("Consolidated Complaint") with prejudice because any amendment of the Complaint would be futile. The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities contained herein, Google's concurrently filed Request for Judicial Notice in Support of the Motion (the "RJN") and exhibits attached thereto, the Declaration of Anika Holland in Support of the RJN, the proposed order submitted with the RJN, all pleadings and other papers on file in this action, and any other evidence or argument that may be presented to the Court in connection with this Motion.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Plaintiffs' Consolidated Complaint should be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and whether the claims should be dismissed with prejudice where amendment would be futile.

Respectfully submitted,

Dated: December 15, 2023

**WILLKIE FARR & GALLAGHER LLP**

By: *_/s/ Benedict Hur_______________*
Benedict Hur
Simona Agnolucci
Eduardo E. Santacana
Joshua Anderson
Yuhan Alice Chi
Naiara Toker
Anika Holland
Attorneys for Defendant
Google LLC

# TABLE OF CONENTS


I. **INTRODUCTION** ... 1

II. **BACKGROUND** ... 2

A. Plaintiffs allege only that Google lawfully provided the Websites with analytics services. ... 2

B. The contract between Google and the Websites forbade the Websites from sending Google PII ... 3

C. Plaintiffs' Allegations ... 4

D. Procedural History ... 5

III. **LEGAL STANDARD** ... 5

IV. **ARGUMENT** ... 6

A. Plaintiffs fail to state claims under CIPA Sections 631 and 632 (Claims 1 and 2) ... 6

1. Plaintiffs consented to the Websites' use of Google Analytics ... 7

2. Plaintiffs' CIPA claims also fail because there is no allegation Google did anything but act as a mere vendor of an analytics tool to record the Websites' own interactions with users. ... 8

a. CIPA Section 631 ... 8

b. CIPA Section 632 ... 9

3. Plaintiffs fail to allege Google intended to receive the purported financial data or intended to receive such data. ... 10

B. Plaintiffs fail to state federal Wiretap and Texas Wiretap claims (Claims 4 and 8) ... 10

C. Plaintiffs fail to state a claim for criminal manufacturing of a spying device (Claims 3 and 5) ... 12

1. There is no private right of action for Plaintiffs' Claims 3 and 5 ... 12

2. Google Analytics is not inherently unlawful ... 12

3. Plaintiffs do not allege Google knew Google Analytics is primarily useful for surreptitious interception ... 13

4. Plaintiffs' CIPA Section 635 claim also fails because Plaintiffs consented to the Websites' use of Google Analytics ... 14

D. Plaintiffs fail to state claims under the Florida Security of Communications Act and the Illinois Eavesdropping Act (Claims 6 and 7) ... 14

E. At a minimum, claims outside the limitations period must be dismissed ... 16

**V. CONCLUSION** ........................................................................................................16

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adams v. Google, LLC*,
No. 23-cv-04191-BLF ....................2, 5

*Adler v. Community.com, Inc.*,
No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ....................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................9

*Carrico v. City & Cnty. of San Francisco*,
656 F.3d 1002 (9th Cir. 2011) ....................6

*In re Cases Filed by DIRECTV, Inc.*,
344 F. Supp. 2d 636 (D. Ariz. 2004) ....................12

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ....................9

*Connor v. Whirlpool Corp.*,
No. 21-cv-14180-WPD, 2021 WL 3076477 (S.D. Fla., July 6, 2021) ....................14

*Cook Au Vin, LLC v. Mid-Century Ins. Co.*,
2023 WL 3607748 (Ill. App. Ct., May 24, 2023) ....................15

*Cramer v. Consol. Freightways, Inc.*,
209 F.3d 1122 (9th Cir. 2000) (*amended on other grounds* 255 F.3d 683 (9th Cir. 2001)) ....................14

*DirecTV Inc. v. Little*,
No. CV-03-2407-RMW, 2004 WL 1811153 (N.D. Cal. Aug. 12, 2004) ....................13

*In re DIRECTV, Inc.*,
No. C-02-5912-JW, 2004 WL 2645971 (N.D. Cal. July 26, 2004) ....................12

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................7

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................6

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) ....................6

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................8, 11, 13, 15

*Hakimi v. Societe Air France, S.A.*,
No. 18-cv-01387-JSC, 2018 WL 4826487 (N.D. Cal. Oct. 4, 2018) ....................16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................11

*Henyard v. MV Transp.*,
2020 WL 7027540 (N.D. Ill., Nov. 29, 2020) ....................15

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................16

*Javier v. Assurance IQ, LLC*,
No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ....................7

*John Doe I, et al. v. Google LLC*,
No. 23-cv-02431-VC, 2023 WL 6882766 (N.D. Cal. October 18, 2023) ....................13

*Johnson v. Blue Nile, Inc.*,
No. 20-CV-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ....................8

*In re Lenovo Adware Litig.*,
No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ....................12

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ....................7

*McDonald's Corp. v. Levine*,
439 N.E.2d 475 (Ill. Ct. App. 1982) (Illinois Eavesdropping Act) ....................16

*Merisier v. Johnson Cnty.*,
No. 4:20-cv-00520-SDJ-CAN, 2021 WL 1711468 (E.D. Tex. Jan. 31, 2021)
(Texas Wiretap Act) ....................16

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988) ....................6

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ....................5

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ....................13

*Planned Parenthood v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................11

*Reyes v. State*,
No. 05-19-00963-CR, 2021 WL 2947664 (Tex. App. June 28, 2021)....................................11

*Rodriguez v. Google*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)...............................9, 11

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196-YGR, 2021 WL 3191752 (N.D.Cal. 2021) ............................................14

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ..........................................................................................14

*United States v. Lande*,
968 F.2d 907 (9th Cir. 1992) ..........................................................................................13

*United States v. Schweihs*,
569 F.2d 965 (5th Cir. 1978) ..........................................................................................13

*Weiner v. ARS Nat'l. Servs., Inc.*,
887 F. Supp. 2d 1029 (S.D. Cal. 2012)..............................................................................6

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ................8, 11, 13, 15

*Yale v. Clicktale, Inc.*,
No. 20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)....................................8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...........................................................................12

**Statutes**

18 U.S.C. § 2511(2)(d)...........................................................................................................11

18 U.S.C § 2512 ...........................................................................................................1, 12, 14

18 U.S.C. § 2512(1)(b)...........................................................................................................12

18 U.S.C. § 2520(e) (federal Wiretap Act) ............................................................................16

18 U.S.C. § 25212(1)(b).........................................................................................................12

Cal. Civ. Proc. Code § 340(a) ...............................................................................................16

Cal. Penal Code § 631 ....................................................................................................6, 7, 10

Cal. Penal Code § 632 ...................................................................................................... *passim*

Cal. Penal Code § 635 ................................................................................................1, 5, 12, 14

Cal. Penal Code § 635(a) .......................................................................................................12

California Invasion of Privacy Act (CIPA) ... *passim*

Communications Act, Fla. Stat. § 934.03 *et seq*. ... 14

Communications Act, Florida Statutes § 934.10 ... 5

Federal Wiretap Act ... 11

Federal Wiretap Act, 18 U.S.C. § 2510 ... 5

Federal Wiretap Act, 18 U.S.C. § 2511 ... 10, 11

Federal Wiretap Act § 2512(1) ... 12

Federal Wiretap Act, 18 U.S.C. § 25102 ... 5

Fla. Stat. § 934.10(3) ... 16

Florida Security of Communications Act (FSCA) ... 14, 15, 16

FSCA § 934.03(1)(d) ... 14

Ill. Comp. Stat. 5/14-2(a) ... 15

Ill. Comp. Stat. 5/14-2(a)(3) ... 15

Illinois Eavesdropping Act ... 14, 15, 16

Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq.* ... 1, 14

Illinois Eavesdropping Act, 720 ILCS 5/14-6 ... 5

Penal Code §§ 631(a) ... 10

Penal Code, § 632(a) ... 10

Privacy Act, Cal. Penal Code § 631 ... 5, 6, 8, 9

Tex. Pen. Code § 16.02(b) ... 11

Tex. Pen. Code § 16.02(c)(4)(B) ... 11

Texas Code of Criminal Procedure, Article 18A.502(1) ... 5, 10

Texas Criminal Wiretap Act ... 5

Tex. Pen. Code §§ 16.02(b)(1)–(b)(3), (b)(5) ... 5

Texas Wiretap Act ... 16

**Other Authorities**

CALCRIM No. 3010 ....................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 2, 5, 16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Website and app developers, including online tax filing websites, use a variety of analytics tools to analyze users' experiences on their properties. Their use is widely understood, adequately disclosed, and regularly consented-to by users. This District has repeatedly recognized that developers have the right to employ such analytics tools, and that the providers of those analytics tools are mere vendors to the developer. After all, analytics providers only provide developers with information about how users use the developers' own properties—information the companies could analyze in-house, but choose instead to analyze using a third-party service. To state a claim against an analytics provider, a plaintiff must allege more than just that the analytics provider made the analytics tool available to developers—at a minimum, a plaintiff must allege that the analytics provider exceeded the scope of its authorization from the developer. As to Google and its analytics tool, Google Analytics, Plaintiffs have alleged nothing like that.

All eight claims suffer from three fatal defects, each of which compels dismissal. *First*, the Google Analytics Terms of Service ("TOS") require developers to disclose, and obtain user consent for, their use of Google Analytics, and each website in question here did so. *Second,* Google acted only in its capacity as a vendor providing an analytics tool. As the complaint acknowledges, web developers, not Google, choose whether to use Google Analytics, and what (if any) information to send to Google. *Third,* Plaintiffs fail to allege that Google acted with the requisite knowledge or intent. Plaintiffs do not allege that Google directed the Websites to transmit any sensitive financial data to Google in particular, or that Google did anything with it other than analyze it for the Websites pursuant to the TOS.

To the extent that these three arguments do not dispose of all of Plaintiffs' claims, there are several claim-specific deficiencies, including failure to show that there is a private right of action under Cal. Penal Code § 635 and 18 U.S.C § 2512 and failure to plausibly allege that Google intended to intercept any communications in a surreptitious manner under the Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq.* This Court should dismiss the complaint

## II. BACKGROUND

### A. Plaintiffs allege only that Google lawfully provided the Websites with analytics services.

Google Analytics is one of the many products available in the market that allows developers to better understand how their users interact with their websites and apps. Compl. ¶¶ 24–25, 30–31, 33–34. It is a tool for developers to understand, among other things, their website traffic and the most popular web page visits by users. *Id.*[1] For instance, the New York Times may install Google Analytics on its app to measure how many people navigated to a particular article or decided to play its crossword puzzles. *Id.* ¶ 24. Developers who implement GA choose which data is collected and how it is used. *See id*. ¶¶ 25–26 (a developer incorporates Google Analytics by adding a tag "to their website code for each page of their site" and can "configure the settings to allow them to customize what data is collected and how it is processed").[2] Developers also choose whether and which data to share with Google, subject to contractual limitations preventing developers from sending personal data.[3] Unless developers enable the "data sharing with Google" setting, Google processes the data only as required to provide and maintain the Analytics service. *Id.* Developers may analyze patterns in user engagement using pseudonymous identifiers (strings of characters that allow developers to distinguish between users and devices), which are collected with certain events. Because the default identifiers are all pseudonymous, they are not personally identifiable. *Id.* ¶¶ 26, 41–42. Google Analytics then provides a report to the customer based on metrics that the customer chooses. *Id.* ¶¶ 26, 28, 34.

---

[1] Compl. ¶ 24 n.22 (citing *Some facts about Google Analytics data privacy,* https://blog.google/around-the-globe/google-europe/google-analytics-facts/) ("Google Analytics helps owners of apps and websites understand how their users are engaging with their sites and apps (and only their site or app).") (*See* Request for Judicial Notice ("RJN") Ex. 1).

[2] *Id.* ("Organizations use Google Analytics because they choose to do so. They, not Google, control what data is collected and how it is used.")

[3] *Id.* ("[Organizations] retain ownership of the data they collect using Google Analytics, and Google only stores and processes this data per their instructions — for example, to provide them with reports about how visitors use their sites and apps. These organizations can, separately, elect to share their Analytics data with Google for one of a few specific purposes, including technical support, benchmarking, and sales support. Organizations must take explicit action to allow Google to use their analytics data to improve or create new products and services. Such settings are entirely optional and require explicit opt-in.").

Plaintiffs name three tax filing websites that allegedly use Google Analytics: H&R Block, TaxAct, and TaxSlayer (together, the "Websites").

**B. The contract between Google and the Websites forbade the Websites from sending Google PII**

The crux of Plaintiffs' allegations is that the relationship between the Websites and Google enabled the Websites to disclose sensitive user data to Google. But the complaint fails to mention the judicially noticeable foundational contracts that govern those relationships, which forbid the Websites from sending Google personally identifiable information ("PII"). Plaintiffs also ignore the privacy policies those Websites used to disclose their obligations under those contracts to users.

To use Google Analytics, developers must consent to and abide by the Google Analytics TOS.[4] These TOS require developers to, among other things, (1) disclose their use of Google Analytics including "how it collects and processes data;" (2) obtain user consent as required by law; and (3) refrain from sending Google Analytics any data that contains PII. *Id.* ("You will not . . . pass information . . . to Google that Google could use or recognize as [PII]."). The Google Analytics help pages for developers similarly instruct developers to, among other things, "remove PII from user-entered information before it is sent to Analytics."[5]

To comply with Google's policies, the Websites each disclose to their users the use of Google Analytics in their Privacy Policies. RJN Ex. 2. ("You must post a Privacy Policy . . . . You must disclose the use of Google Analytics, and how it collects and processes data.").

The Websites at issue here explicitly disclose their use of Google Analytics. For example, TaxAct's Privacy Policy informs users that TaxAct uses third-party tools to collect information about user activity, and that it "use[s] the information from Google Analytics to improve our site and services.":[6]

[4] RJN Ex. 2, *Google Analytics Terms of Service,* https://marketingplatform.google.com/about/analytics/terms/us/.
[5] RJN Ex. 3, *Best practices to avoid sending Personally Identifiable Information (PII),* https://support.google.com/analytics/answer/6366371#page-url&zippy=%2Cin-this-article.
[6] RJN Ex. 4, https://www.taxact.com/privacy-policy.

> **Third-Party Tools and Collecting Information**
>
> We use third-party tools, including those listed below to obtain information on how visitors interact with our Services. These tools collect information about the performance of our site and how visitors navigate around and interact with our web pages, which allows us to evaluate and further improve and optimize our web pages. For more information on the below third-party tools, please click on the links . . .

H&R Block's Privacy Policy similarly explains that it may collect and disclose user information to third parties for analytics purposes, including "pages visited, mouse movements and clicks, scrolling activity, keystroke data that you voluntarily enter on our website."[7]

Finally, TaxSlayer's Privacy Policy also discloses the use of analytics technology to collect "information about how you interact with our Platform and services . . . ."[8]

### C. Plaintiffs' Allegations

Plaintiffs are residents of California, Illinois, Florida, Georgia, New York, South Carolina, and Texas who allege that they used the Websites, and that those Websites used Google Analytics to analyze their data. Compl. ¶¶ 5–14, 32, 38–39. Plaintiffs repeatedly concede that the Websites, as the developers, are in control of how to implement Google Analytics on their websites—including what data the Websites wish to measure via Google Analytics, and what, if anything, to do with the data. *See id*. ¶¶ 26–27, 35, 41. They allege that as a result of how the Websites configured Google Analytics, the Websites "have been quietly transmitting sensitive financial information to Google when Americans file their taxes online." *Id*. ¶¶ 32, 41. Critically, however, they do not specify what "sensitive financial information" was allegedly sent to Google about each plaintiff. Instead, they vaguely allege that "[t]he type of data collected by [the Websites] *may include* email addresses, data on users' income, filing status, refund amounts, buttons that were clicked, and year of return." *Id*. ¶ 37 (emphasis added). When it comes to the information allegedly *transmitted* to Google, Plaintiffs merely allege that the Websites "transmitted information about tax filers' filings to Google," and that "the dollar amount of adjusted gross income and refund amounts were disclosed to Google." *See id*. ¶¶ 38–39.

---

[7] RJN Ex. 5, https://www.hrblock.com/universal/digital-online-mobile-privacy-principles/.
[8] RJN Ex. 6, https://www.taxslayer.com/policies/privacy/.

Plaintiffs do not allege that Google instructed the Websites to transmit to Google the purported financial data—or any other type of data at all. And while Plaintiffs allege that the "information sent to Google *can* be used by the company to power its advertising algorithms," there is no factual allegation in the Complaint that Google did anything with the data it received apart from what it contracted with the Websites to do: analyze each Website's own data about its own users. *Id.* ¶¶ 29, 37 (emphasis added). Nor do Plaintiffs allege that the Websites engaged in any advertising using the analytics data.

### D. Procedural History

Plaintiff Mary L. Smith commenced this litigation against Google on July 14, 2023. On August 17, 2023, Plaintiffs Malissa Adams et al. brought an action against Google in *Adams v. Google, LLC*, No. 23-cv-04191-BLF. The Court consolidated the cases on August 24, 2023. ECF 28. Plaintiffs filed their Consolidated Class Action Complaint on October 9, 2023. Compl., ECF 35. Plaintiffs assert the following claims against Google: (1) Violation of California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 (Claim I); (2) Violation of CIPA, Cal. Penal Code § 632 (Claim II); (3) Violation of CIPA, Cal. Penal Code § 635 (Claim III); (4) Violation of the Federal Wiretap Act (the "Wiretap Act"), 18 U.S.C. § 2510 (Claim IV); (5) Violation of the Federal Wiretap Act, 18 U.S.C. § 25102 (Claim V); (6) Violation of the Florida Security of Communications Act, Florida Statutes § 934.10 (Claim VI); (7) Violation of the Illinois Eavesdropping Act, 720 ILCS 5/14-6 (Claim VII); (8) Violation of the Texas Criminal Wiretap Act (Texas Code of Criminal Procedure, Article 18A.502(1) and Texas Penal Code Sections 16.02(b)(1)–(b)(3), (b)(5)) (Claim VIII).

## III. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts showing that his right to relief rises above "the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to

the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678–79 (2009). A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Nor must a court "'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citations omitted).

Dismissal without leave to amend is appropriate if "amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile when "no set of facts can be proved . . . that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## IV. ARGUMENT

Each of the eight claims alleged against Google fails for the following three independent reasons: (1) the Websites and/or Plaintiffs consented to the Websites' use of Google Analytics; (2) Google cannot be liable for merely serving as a vendor of analytics tools to the Websites; and (3) Plaintiffs have failed to allege that Google had the requisite knowledge or intent. Several of the claims fail for additional, independent reasons, as outlined below.

### A. Plaintiffs fail to state claims under CIPA Sections 631 and 632 (Claims 1 and 2)

Plaintiffs do not plausibly state a CIPA claim. A claim under Penal Code section 631 requires showing that Google: (1) by means of any machine, instrument, or contrivance; (2) intentionally and without the consent of all parties; (3) read, attempted to read, or to learn the contents or meaning of any communication; (4) while the communication is in transit; (5) from or to any place within California. *See Adler v. Community.com, Inc.*, No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021). A claim under section 632 requires showing that Google (1) "intentionally and without [] consent," (2) recorded a "confidential communication," (3) by means of an electronic device. *See* Cal. Penal Code § 632; *Weiner v. ARS Nat'l. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012).

**1. Plaintiffs consented to the Websites' use of Google Analytics**

In order to use Google Analytics, the Websites agreed never to send Google Analytics any personally identifiable information. RJN Ex. 2. Google also requires the Websites to expressly disclose their use of Google Analytics to Plaintiffs, which the Websites did. In fact, the Websites' privacy policies could not have been clearer about the use of pixels, including Google Analytics, to collect activity data. *See* RJN Exs. 4–6.[9]

Plaintiffs' consent to the Websites' use of Google Analytics is fatal to the CIPA Sections 631 and 632 claims because they are premised on Google's alleged receipt of "tax-return information without consent." Compl. ¶¶ 3, 62, 69; *Matera v. Google Inc*., No. 15-CV-04062-LHK, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) ("Under CIPA, a consent defense is established when both parties—the sender and the recipient of the communication—consent to the alleged interception.").

Because the judicially noticeable terms of service and privacy policies establish that Plaintiffs consented to the use of Google Analytics, the Court should dismiss the CIPA claims with prejudice for this reason alone. *See, e.g., Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860-JSW, 2021 WL 940319, at *2–3 (N.D. Cal. Mar. 9, 2021) (dismissing claims because plaintiffs consented to data collection described in privacy policy); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137–38 (N.D. Cal. 2015) (dismissing claim because the express provisions of the judicially noticeable Privacy Policy and Terms of Service "ostensibly contradict [Plaintiff's] bare allegation that he did not consent").

[9] RJN Ex. 4, Tax Act Privacy Policy ("We use third-party tools, including those listed below to obtain information on how visitors interact with our Services. These tools collect information about the performance of our site and how visitors navigate around and interact with our web pages… We use the information from Google Analytics to improve our site and services."); RJN Ex. 5, H&R Block Privacy Policy ("We may disclose your personal information to service providers who perform business functions on our behalf, such as data processing and analysis"); RJN Ex. 6, TaxSlayer Privacy Policy ("In some cases, your information may be disclosed to our service providers to … provide analytics about our product… Our service providers include companies that use web analytics software or tools…").

**2. Plaintiffs' CIPA claims also fail because there is no allegation Google did anything but act as a mere vendor of an analytics tool to record the Websites' own interactions with users.**

**a. CIPA Section 631**

In addition to Plaintiffs having consented to the Websites' disclosure of the data at issue to Google, Plaintiffs' CIPA section 631 claim fails because a vendor who provides a tool for a website to record user interactions is not "intercepting" a communication and cannot be liable for the recording. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022).

*Noom* is directly on point. There, defendant Noom used the defendant FullStory's software to record "visitor data such as keystrokes, mouse clicks, and page scrolling," which allegedly resulted in the disclosure of "medical information" to FullStory without consent. *Noom*, 533 F. Supp. 3d at 823–29. The court held this could not violate CIPA Section 631 because FullStory acted as a service provider to Noom, and the plaintiff did not plausibly allege that FullStory "aggregate[ed] [the] data for resale . . . [or that it] used the data itself." *Id*. Accordingly, at most, the defendant provided a "tool" that allowed Noom to "record and analyze its own data in aid of Noom's business." *Id*.

Judge Alsup's reasoning in *Williams* also applies here: Google is effectively an independent third party and its software was merely a tool that the Websites used to record their own communications with Plaintiffs. *Williams*, 2022 WL 17869275, at *3 ("[R]ecordation is routine documentation and therefore clerical in nature, which is qualitatively different from data mining."). That the vendor stores and processes the data on its own servers "is part of how the software tool functions" and does not by itself subject the vendor to liability. *Id*.; *see also Johnson v. Blue Nile, Inc.*, No. 20-CV-08183-LB, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) (holding same); *Yale v. Clicktale, Inc.*, No. 20-CV-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same).

Here, Google is alleged to be nothing more than a mere vendor to the Websites. It is developers who choose what content they wish to send Google, including whether anything

constituting a "communication" is transmitted. *See, e.g.*, Compl. ¶¶ 26–27, 35, 41. There is no allegation that Google did anything with the Websites' data. The Websites authorized Google—as their vendor—to receive the communications at issue and therefore Google could not have "intercepted" the alleged "communications" as a matter of law. Plaintiffs' CIPA Section 631 claim should therefore be dismissed.

**b. CIPA Section 632**

Plaintiffs' Section 632 claim fails for similar reasons. Plaintiffs cannot allege that Google "recorded" a "confidential communication" for two reasons. *First*, the alleged recording was performed by the Websites, not Google. *See e.g.* Compl. ¶ 25 (Google Analytics is a "web bug that owners add to their website code for each page of their site to measure certain actions taken by users on the site."). Plaintiffs do not allege otherwise; there is no allegation in the complaint that Google took any action whatsoever to effectuate the alleged wrongdoing. *Second*, there could be no expectation that the Websites analyze their website traffic within only their corporate walls rather than lawfully using a vendor. As courts in this District have recognized in similar circumstances, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632." *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (collecting cases); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052–53 (N.D. Cal. 2018) (plaintiffs "fail to offer any support for their theory that internet-based communications can be considered 'confidential' under CIPA"; dismissing § 632 claim). Plaintiffs cannot dispute that the "communication" at issue here is similarly internet-based. Moreover, to "rebut[] California's presumption against online confidentiality," as defined in CIPA Section 632, plaintiffs must "plead unique, definite, circumstances" that show an "objectively reasonable expectation that . . . nobody . . . would record the [online] communications." *Rodriguez v. Google*, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (cleaned up). Plaintiffs have not and cannot do so here. This conclusion is especially supported here where the Websites meticulously disclosed that they would use a third party vendor to provide analytics services. Plaintiffs' CIPA Section 632 claim should therefore be dismissed.

#### 3. Plaintiffs fail to allege Google intended to receive the purported financial data or intended to receive such data.

As criminal statutes, Cal. Penal Code Sections 631 and 632 require intentional conduct. Cal. Penal Code §§ 631(a) (prohibiting "intentional[] tap[ping]"), 632 (making liable a person who "intentionally" records a confidential communication); *see also* CALCRIM No. 3010, "Eavesdropping or Recording Confidential Communication (Penal Code, § 632(a))" (instructing the jury that the People must must prove that the defendant "intentionally listened to or recorded" a conversation or communication."). Plaintiffs do not plausibly allege that Google purposefully and intentionally intercepted the allegedly sensitive data. *See* Compl. ¶ 40 (concluding, without alleging facts supporting the inference, that "Google would have known, or at best recklessly turned a blind eye to, the fact that it was collecting vast amounts of confidential tax information."). In fact, all Plaintiffs allege is that the Websites transmitted information to Google using a publicly available analytics tool—which the Websites disclosed to their users in their privacy policies. *See* Compl. ¶¶ 24–25. Plaintiffs do not allege that Google directed the Websites to transmit any data to Google in particular, or that Google reviewed the data it received from the Websites. Not only are there no allegations of any conduct Google engaged in that would suggest an intent to receive personally identifiable information, the Complaint and judicially noticeable documents actually disclose the *opposite*: that Google does not want personally identifiable information and expressly prohibits a developer from transmitting data that identifies users.[10] The CIPA claims thus must fail.

### B. Plaintiffs fail to state federal Wiretap and Texas Wiretap claims (Claims 4 and 8)

Plaintiffs' claims under the Federal Wiretap Act, 18 U.S.C. § 2511 and the Texas Wiretap Act, Tex. Code Crim. Pro. Art. 18A.502(1) are facially unsustainable and should be dismissed with prejudice for three independent reasons.

---

[10] See Compl. ¶ 24 (citing *Some facts about Google Analytics data privacy*, https://blog.google/around-the-globe/google-europe/google-analytics-facts/) ("Google Analytics customers are prohibited from uploading information that could be used by Google to identify a person."); RJN Ex. 2 ("You will not and will not assist or permit any third party to pass information, hashed or otherwise, to Google that Google could use or recognize as personally identifiable information.").

***First***, Plaintiffs' federal and Texas Wiretap claims fail because the consent of one party to the communication is a complete defense. 18 U.S.C. § 2511(2)(d); Tex. Pen. Code § 16.02(c)(4)(B); *Rodriguez*, 2021 WL 2026726, at *6 (federal Wiretap Act); *Reyes v. State*, No. 05-19-00963-CR, 2021 WL 2947664, at *7 (Tex. App. June 28, 2021) ("Under both statutes, it is unlawful for a person not acting under color of law to intercept oral communication unless the person is a party to the communication or one of the parties has given prior consent to the interception."). As the Websites chose to use Google Analytics, they obviously consented to it. *See* Compl. ¶¶ 25, 35.

Plaintiffs offer only the barest and conclusory assertion that consent is invalid because it was acquired for a "criminal" or "tortious" purpose. Compl. ¶ 91 ("The interceptions by Google were unlawful and tortious, and were done in furtherance of one or more crimes barring disclosure or review of confidential tax information, and tortious invasion of privacy."). Even had Plaintiffs alleged supporting facts, the "violations" set forth in the complaint stem from the same alleged interception, which is insufficient. *See Planned Parenthood v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording."); *Rodriguez*, 2021 WL 2026726 at *6 n.8 (holding Google's "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money"). Indeed, Google's policies demonstrate an utter lack of criminal purpose. Google explicitly prohibits developers from sending Google any PII and requires disclosure of the use of Google Analytics.

***Second***, as explained above, as a mere vendor to the Websites, Google is not "intercepting" a communication and cannot be liable for the recording. *Noom*, 533 F. Supp. 3d at 823; *Williams*, 2022 WL 17869275, at *3. *See supra* section IV.A(2)(a); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) ("The analysis for a violation of CIPA is the same as that under the Wiretap Act.") (citation omitted).

***Third***, Plaintiffs do not plausibly allege that Google *intentionally* intercepted any communication. 18 U.S.C. § 2511; Tex. Pen. Code § 16.02(b). The policies Google implements, and the fact that the Websites control what they send to Google, undermine the naked assertions

that Google intended to intercept Plaintiffs' sensitive financial data. *See supra* section IV.A(3). The federal and Texas Wiretap claims must fail.

**C. Plaintiffs fail to state a claim for criminal manufacturing of a spying device (Claims 3 and 5)**

Plaintiffs' claims under CIPA § 635 and 18 U.S.C § 2512 are equally unsustainable and should be dismissed with prejudice. To state a claim under CIPA § 635 and 18 U.S.C § 2512, a plaintiff must allege that the defendant (1) "intentionally … manufacture[d] . . . any electronic, mechanical, or other device," (2) "knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications." 18 U.S.C. § 25212(1)(b); *see* Cal. Penal Code § 635(a). Plaintiffs fail to plead both elements.

**1. There is no private right of action for Plaintiffs' Claims 3 and 5**

Preliminarily, Plaintiffs' claims 3 and 5 must be dismissed with prejudice because there is no private right of action under 18 U.S.C. section 2512 or CIPA section 635. *See Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1084–85 (C.D. Cal. 2021) ("[T]here is no private right of action for the violation of § 2512(1) of the Wiretap Act" nor for the violation of CIPA § 635). *See also, e.g., In re Lenovo Adware Litig*., No. 15-MD-02624-RMW, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27, 2016); *In re DIRECTV, Inc*., No. C-02-5912-JW, 2004 WL 2645971, at *8, 12 (N.D. Cal. July 26, 2004); *In re Cases Filed by DIRECTV, Inc.*, 344 F. Supp. 2d 636, 644–45 (D. Ariz. 2004).

**2. Google Analytics is not inherently unlawful**

In any event, Plaintiffs have not alleged that "the design of [Google Analytics] renders it *primarily* useful for the purpose of the *surreptitious interception* of wire, oral, or electronic communications." 18 U.S.C. § 2512(1)(b) (emphases added); *see* Cal. Penal Code § 635(a) ("primarily or exclusively designed or intended for eavesdropping"). Section 2512, like CIPA Section 635, is "narrowly drawn": it reflects "a careful and studied congressional decision to leave untouched the production, distribution, and possession of electronic equipment designed for regular use in varied non surreptitious activities, even though the equipment is capable of being

used in a surreptitious manner." *United States v. Schweihs*, 569 F.2d 965, 968 (5th Cir. 1978). It bans only "a narrow category of devices," such as "martini olive transmitters, spike mikes, and microphones disguised as wristwatches and fountain pens, without prohibiting possession of a legitimate electronic device merely because it is small or may be used for wiretapping or eavesdropping." *Id*.

***First***, as explained above, a vendor who provides a tool for a website to record user interactions is not providing a tool for the purpose of "interception" of communications. *See Noom*, 533 F. Supp. 3d at 833; *Williams*, 2022 WL 17869275, at *3. *See supra* section IV.A(2)(a).

***Second***, Google Analytics is a commonplace internet analytics tool used across industries. Compl. ¶¶ 30–31. The vast majority of developers use Google Analytics in an indisputably legitimate manner. *Cf., e.g., John Doe I, et al. v. Google LLC,* No. 23-cv-02431-VC, 2023 WL 6882766, at *2 (N.D. Cal. October 18, 2023) (finding it is possible, based on the evidence presented, that Google is merely a vendor providing the Google Analytics service); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016) ("courts have long understood that tracking cookies can serve legitimate commercial purposes."). This is therefore not a case where it "is difficult to imagine any purpose for [the technology] other than the unauthorized interception" of communications. *United States v. Lande*, 968 F.2d 907, 910 (9th Cir. 1992); *see also DirecTV Inc. v. Little*, No. CV-03-2407-RMW, 2004 WL 1811153, at *8 (N.D. Cal. Aug. 12, 2004) (denying plaintiff's summary judgment motion where "companies engaged in legitimate business" were using the challenged technology). It is immaterial that someone could theoretically use Google Analytics for improper purposes in breach of Google's express requirements. This does not make Google Analytics "primarily useful" for spying.

**3. Plaintiffs do not allege Google knew Google Analytics is primarily useful for surreptitious interception**

Even if Plaintiffs had plausibly alleged Google Analytics is designed to be primarily useful for surreptitious wiretapping or eavesdropping, they do not plausibly allege Google *knew* it could be primarily used for a criminal purpose. *See* Compl. ¶ 98 (concluding, without alleging facts supporting the inference, that "Defendant manufactured, marketed, and sold its technology with

knowledge that it would primarily be used to illegally intercept electronic communications.”). “The crime lies in intentionally manufacturing the device, knowing that it could be primarily used for wiretapping.” *United States v. Christensen*, 828 F.3d 763, 792 (9th Cir. 2015). Not only do Plaintiffs fail to allege any facts to support their conclusory allegation of intent, but Plaintiffs cannot plausibly allege such intent in the face of Google’s policies disclosing the *opposite* intention— that Google *wants* developers to disclose their use of Google Analytics and obtain user consent, and the Websites did so. *See* RJN Ex. 2. That is the opposite of surreptitious conduct. Any allegation that Google intended Google Analytics to be “surreptitious” is implausible. Plaintiffs’ CIPA § 635 and 18 U.S.C § 2512 should be dismissed with prejudice.

#### 4. Plaintiffs’ CIPA Section 635 claim also fails because Plaintiffs consented to the Websites’ use of Google Analytics

Finally, as set out above, Plaintiffs consented to the Websites’ use of Google Analytics, which is also fatal to Plaintiffs' CIPA § 635 and 18 U.S.C § 2512 claims, which are premised on Plaintiffs’ lack of consent. *See* Compl. ¶¶ 78, 90; *See also supra* section IV.A(1); *Cramer v. Consol. Freightways, Inc*., 209 F.3d 1122, 1130, n.9 (9th Cir. 2000) (*amended on other grounds* 255 F.3d 683 (9th Cir. 2001)) (claim under CIPA “Section 635[] requires proof that the plaintiff was ‘injured’ by the eavesdropping equipment, which in turn also depends on consent.”

### D. Plaintiffs fail to state claims under the Florida Security of Communications Act and the Illinois Eavesdropping Act (Claims 6 and 7)

Plaintiffs’ remaining claims for violations of the Florida Security of Communications Act, Fla. Stat. § 934.03 *et seq*. (“FSCA”) and the Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq*. (claims 6 and 7) both fail for much the same reasons.

***Florida Security of Communications Act.*** “To state a claim under the FSCA, a plaintiff must sufficiently plead 1) an oral, wire, or electronic communication was 2) intentionally intercepted, disclosed or used 3) in violation of the FSCA.” *Connor v. Whirlpool Corp.*, No. 21-cv-14180-WPD, 2021 WL 3076477, at *2 (S.D. Fla., July 6, 2021). ***First***, the FSCA does not apply where “all of the parties to the communication have given consent to such interception,” as is the case here. FSCA § 934.03(1)(d); *Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 WL

3191752, at *2–5 (N.D.Cal. 2021) (dismissing CIPA and FSCA claims based on plaintiffs' consent to the collection of the data under the terms of defendant's privacy policy); *see also* Compl. ¶ 104. Because both the Plaintiffs and Websites consented to the Websites' use of Google Analytics, Plaintiffs' FSCA claim must fail. *See supra* section IV.A(1). ***Second,*** as explained above, California courts have held in the context of CIPA that a mere vendor to the Websites cannot be liable for "intercepting" a communication. *Cf., Noom*, 533 F. Suppp. 3d at 833–33; *Williams*, 2022 WL 17869275, at *3; *see supra* section IV.A(2)(a). This reasoning applies equally to the FSCA. ***Third,*** Plaintiffs do not and cannot establish intent and their FSCA claim therefore fails. *See supra* section IV.A(3).

***Illinois Eavesdropping Act.*** This claim similarly fails because (1) Plaintiffs consented; (2) Google is merely serving as a vendor of analytics tools to the Websites and did not "intercept" or "record" any communications; and (3) Plaintiffs have not plausibly alleged Google engaged in intentional misconduct. *See supra* sections IV.A(1)–(3); 720 Ill. Comp. Stat. 5/14-2(a)(3) ("A person commits eavesdropping when he or she *knowingly and intentionally . . . [i]intercepts, records, or transcribes*, *in a surreptitious manner*, any private electronic communication to which he or she is not a party *unless he or she does so with the consent of all parties* to the private electronic communication.") (emphases added); *Henyard v. MV Transp.*, 2020 WL 7027540, at *5 (N.D. Ill., Nov. 29, 2020) (A plaintiff must plead and prove that the defendant "knowingly and intentionally recorded her without consent."); *see also* Compl. ¶ 109.

The Illinois Eavesdropping Act claim also fails because Plaintiffs have not plausibly alleged Google intended to intercept any communications "in a surreptitious manner." 720 Ill. Comp. Stat. 5/14-2(a); *see also Cook Au Vin, LLC v. Mid-Century Ins. Co.,* 2023 WL 3607748, at *4 (Ill. App. Ct., May 24, 2023) ("'[O]penly recording' a conversation, 'so that all parties are aware of the presence of an operating recording device,' is not surreptitious.") (citations omitted). Not only are there no allegations of any conduct Google engaged in that would suggest an intent to hide the use of Google Analytics from the Plaintiffs, the judicially noticeable documents actually disclose the opposite: that Google *required* disclosure of the use of Google Analytics and the Websites did so. *See supra* section IV.C(3). This claim should therefore be dismissed with prejudice.

### E. At a minimum, claims outside the limitations period must be dismissed

Where, as here, the running of the statute of limitations "is apparent on the face of the complaint," a claim may be dismissed pursuant to Rule 12(b)(6). *Hakimi v. Societe Air France, S.A.*, No. 18-cv-01387-JSC, 2018 WL 4826487, at *3 (N.D. Cal. Oct. 4, 2018). Plaintiffs allege that they have been using the Websites, who in turn have been using Google Analytics, since at least 2012, and at most 2021. *See* Compl. ¶¶ 5–14. But they did not file their complaint until July 14, 2023, and the longest limitation period for any of the claims, other than the Illinois Eavesdropping Act, is two years; the shortest is just one year.[11] All claims outside the applicable limitations periods, including all CIPA claims, all claims under the Florida Security of Communications Act, and most federal Wiretap claims, must be dismissed. Setting aside the many deficiencies identified above, what would remain is Plaintiffs Adams and Townsend's federal Wiretap claims, Plaintiff Townsend's Texas Wiretap claim, and Plaintiffs Smith, Wright and Taylor's Illinois Eavesdropping claims.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the Consolidated Complaint.

---

[11] The applicable limitations periods are: five years for the Illinois Eavesdropping Statute; two years for the federal Wiretap Act, the Florida Security of Communications Act, and the Texas Wiretap Act; and one year for CIPA. *See McDonald's Corp. v. Levine*, 439 N.E.2d 475, 485 (Ill. Ct. App. 1982) (Illinois Eavesdropping Act); 18 U.S.C. § 2520(e) (federal Wiretap Act); Fla. Stat. § 934.10(3) (FSCA); *Merisier v. Johnson Cnty.*, No. 4:20-cv-00520-SDJ-CAN, 2021 WL 1711468, at *4 (E.D. Tex. Jan. 31, 2021) (Texas Wiretap Act), *report and recommendation adopted*, 2017 WL 1709950 (Apr. 29, 2021); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (citing Cal. Civ. Proc. Code § 340(a)) (CIPA).

Date: December 15, 2023

**WILLKIE FARR & GALLAGHER LLP**

By: *_/s/ Benedict Hur_____________*

Benedict Hur
Simona Agnolucci
Eduardo E. Santacana
Joshua Anderson
Yuhan Alice Chi
Naiara Toker
Anika Holland

Attorneys for Defendant
Google LLC