**BURSOR & FISHER, P.A.**
Joel D. Smith, Cal. Bar No. 244902
Neal J. Deckant, Cal. Bar No. 322946
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
jsmith@bursor.com
ndeckant@bursor.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Rebecca A. Peterson, Cal. Bar No. 241858
Robert K. Shelquist
Kate M. Baxter-Kauf (*pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
rapeterson@locklaw.com
rkshelquist@locklaw.com
kmbaxter-kauf@locklaw.com

**FOSTER YARBOROUGH PLLC**
Patrick Yarborough (*pro hac vice*)
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
patrick@fosteryarborough.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice*)
Michael Liskow, Cal. Bar No. 243899
200 Park Avenue, Suite 1700
New York, NY 10166
Telephone: (646) 354-6534
lfeldman@4-justice.com
mliskow@4-justice.com

**THE HODA LAW FIRM, PLLC**
Marshal J. Hoda (*pro hac vice*)
12333 Sowden Road, Suite B
Houston, TX 77080
Telephone: (832) 848-0036
marshal@thehodalawfirm.com

**EMERSON FIRM, PLLC**
John G. Emerson
2500 Wilcrest Drive, Suite 300
Houston, TX 77042-2754
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
Email: jemerson@emersonfirm.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY SMITH *et. al*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No. 5:23-cv-03527-PCP<br>(Consolidated with 5:23-cv-04191-PCP)<br><br>**PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO DISMISS**<br><br>Date: March 7, 2024<br>Time: 10:00 a.m.<br>Location: Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts<br><br>Consolidated Class Action Complaint Filed: 10/09/2023 |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS .....................................................................................2

III.    ARGUMENT .........................................................................................................3

        A.      Google's Global Arguments For Dismissal Lack Merit...........................3

                1.      *Gershzon*, *Healthcare Litigation*, *FullStory*, and *Brown II*
                        Rejected the Same Arguments About Consent That Google
                        Makes Here...................................................................................3

                        a.      Google's Consent Argument Contradicts the
                                Pleadings..........................................................................4

                        b.      The Disclosures Do Not Furnish Consent. ......................5

                2.      Google's Assertion That It Is Not Liable Because It Acted
                        Solely as A "Vendor" Contradicts the Law and the Pleadings. ....7

                        a.      Google's Authorities Misapplied the Law and Are
                                Against the Weight of Authority. .....................................8

                        b.      Google's Authorities Are Distinguishable. .....................9

                3.      Google's Intent is Not a Basis to Dismiss This Lawsuit. ............11

                4.      Google's Timeliness Argument is Misplaced. .............................12

        B.      Plaintiffs Sufficiently Allege Statutory Wiretapping Claims. ................14

                1.      Plaintiffs Sufficiently Allege a Cause of Action Under CIPA
                        Section 631 (Count I). .................................................................14

                2.      Plaintiffs Sufficiently Allege a Cause of Action Under CIPA
                        Section 632 (Count II). ................................................................14

                3.      Plaintiffs Sufficiently Allege Causes of Action Under Section
                        2511 of the Federal Wiretap Act (Count IV) and the Texas
                        Wiretap Act (Count VIII). ...........................................................16

                        a.      Google's One-Party Consent Argument Cannot
                                Support Dismissal Because It Requires Drawing
                                Inferences in Google's Favor. ........................................16

                4.      Plaintiffs Sufficiently Allege Causes of Action Under CIPA
                        Section 635 (Count III) and Federal Wiretap Act Section
                        2512 (Count V)............................................................................17

                5.      Florida Security of Communications Act (Count VI) and
                        Illinois Eavesdropping Act (Count VII). ......................................19

IV.     CONCLUSION ....................................................................................................19

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Augustine v. Lenovo (U.S.), Inc.*,
5
    2023 WL 4938050 (S.D. Cal. Aug. 2, 2023)..........................................................................10

6

*BBL, Inc. v. City of Angola*,
7
    809 F.3d 317 (7th Cir. 2015) ..........................................................................................13

8

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..........................................................................17

9

*Brown v. Google LLC*,
10
    2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ........................................................*passim*

11

*DirecTV Inc. v. Little*,
    2004 WL 1811153 (N.D. Cal. Aug. 12, 2004) ................................................................19

12

*Doe I. v. Google LLC*,
13
    2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) ................................................................18

14

*Doe v. FullStory, Inc.*,
15
    2024 WL 188101 (N.D. Cal. Jan. 17, 2024)..........................................................*passim*

16

*Doe v. Meta Platforms, Inc.*,
    2023 WL 5837443 (N.D. Cal. Sept. 7, 2023)........................................................1, 12, 16

17

*In re Facebook, Inc. Internet Tracking Litig.*,
18
    956 F.3d 589 (9th Cir. 2020) ......................................................................................8, 9, 10

19

*In re Flash Memory Antitrust Litig.*,
20
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ....................................................................14, 16

21

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015)..............................................................................5

22

*Gershzon v. Meta Platforms, Inc.*,
23
    2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ......................................................*passim*

24

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
25
    563 U.S. 754 (2011) ........................................................................................................11

26

*Graham v. Noom*,
    533 F. Supp.3d 823 (N.D. Cal. 2021)......................................................................8, 9, 10

27

*Javier v. Assurance IQ, LLC*,
28
    649 F. Supp. 3d 891 (N.D. Cal. 2023).............................................................................8, 9

*Javier v. Assurance IQ, LLC,*
  2022 WL 1744107 (9th Cir. May 31, 2022) .................................................................9

*Javier v. Assurance IQ, LLC,*
  2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ............................................................5, 9

*Katz-Lacabe v. Oracle Am., Inc.,*
  2023 WL 2838118 (N.D. Cal. Apr. 6, 2023)..........................................................8, 10

*Khoja v. Orexigen Therapeutics, Inc.,*
  899 F.3d 988 (9th Cir. 2018) ......................................................................................5

*Kuzenski v. Uproxx LLC,*
  2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) ........................................................5, 6

*Levy v. Irvine,*
  66 P. 953 (Cal. 1901) ................................................................................................12

*Luis v. Zang,*
  833 F.3d 619 (6th Cir. 2016) ....................................................................................18

*In re Meta Pixel Healthcare Litig.,*
  647 F. Supp. 3d 778 (N.D. Cal. 2022)................................................................*passim*

*Nguyen v. Barnes & Noble, Inc.,*
  763 F.3d 1171 (9th Cir. 2014) .....................................................................................4

*In re: Nickelodeon Consumer Priv. Litig.,*
  827 F.3d 262 (3d Cir. 2016) ......................................................................................19

*Planned Parenthood Fed'n of Am., Inc., v. Ctr. For Med. Progress,*
  214 F. Supp. 3d 808 (N.D. Cal. 2016).......................................................................17

*Revitch v. New Moosejaw, LLC,*
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ...........................................17, 18, 19

*Ribas v. Clark,*
  38 Cal. 3d 355 (1985)..............................................................................................8, 9

*Roney v. Miller,*
  705 F. App'x 670 (9th Cir. 2017)..........................................................................12, 19

*Saleh v. Nike, Inc.,*
  562 F. Supp. 3d 503 (C.D. Cal. 2021)....................................................................9, 18

*Smith v. Facebook, Inc.,*
  262 F. Supp. 3d 943 (N.D. Cal. 2017).........................................................................6

*Tavernetti v. Super. Ct. of San Diego Cnty.,*
  22 Cal. 3d 187 (1978) ...............................................................................................11

*United States v. Lande*,
    968 F.2d 907 (9th Cir. 1992) ...................................................................................... 18

*Valenzuela v. Nationwide Mut. Ins. Co.*,
    2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) ............................................................ 9

*Williams v. What If Holdings, LLC*,
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .................................................. 8, 9, 10

*Yockey v. Salesforce, Inc.*,
    2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ................................................... 8, 9, 10

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................................................... 4

**Statutes**

18 U.S.C. § 2511(2)(d) ................................................................................................... 16

Cal. Penal Code § 502 .................................................................................................... 17

Cal. Penal Code § 631 ..............................................................................................*passim*

Cal. Penal Code § 635 ............................................................................................... 17, 19

Cal. Penal Code § 637 ............................................................................................... 17, 18

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................. 12

Fed. R. Civ. P. 9 ....................................................................................................... 11, 12

Fed. R. Civ. P. 11 .......................................................................................................... 13

Fed. R. Civ. P. 12 ............................................................................................... 13, 16, 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

This is a straightforward case. A United States Senate investigation revealed that, because of Google's technology called "Google Analytics," U.S. consumers who filed their taxes online using services like TaxSlayer, TaxAct, or H&R Block unknowingly transmitted their financial and tax-return information to Google without their consent.[1] (Consolidated Class Action Complaint (Dkt. 35) ("Compl.") ¶ 1.) The information transmitted to Google data such as income, refund amounts, filing status, and scholarship information—all highly valuable demographic markers for Google's advertising business. (*Id.* ¶¶ 1, 37.) Although TaxSlayer, TaxAct, and H&R Block contend they did not know that Google Analytics would transmit this information, Google admitted it never asked the companies to stop sharing this information with Google, nor did it suspend or terminate any of the companies' accounts for doing so. (*Id.* ¶ 42.) The Senate investigation also revealed that Google "failed to implement adequate safeguards to prevent the transfer of taxpayer's sensitive personal and financial information, despite [Google's] contentions that [it] did so." (*Id.* ¶ 43 (quoting *United States Senate, Attacks on Tax Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data*, at 18), available at https://www.warren.senate.gov/download/attacks-on-tax-privacy_final (visited Jan. 28, 2024).)

The instant motion follows a series of similar unsuccessful motions to dismiss filed by Meta in this District, in cases brought by plaintiffs over Meta's wiretapping of protected tax-filing, health, and DMV information to Meta. *See Gershzon v. Meta Platforms, Inc.*, No. 23-cv-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) (Illston, J.) ("*Gershzon*") (denying motion to dismiss in case involving Meta's interception of DMV information); *Doe v. Meta Platforms, Inc.*, No. 22-cv-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) (Orrick, J.) (denying in large part motion to dismiss in case involving Meta's interception of protected healthcare data); *Doe v. FullStory, Inc.*, No. 23-cv-00059-WHO, 2024 WL 188101 (N.D. Cal. Jan. 17, 2024) (Orrick, J.) ("*FullStory*") (largely denying motion to dismiss involving Meta's interception of protected healthcare and other

---

[1] All "Compl. ¶" references are to the Consolidated Class Action Complaint (Dkt. 35) unless otherwise noted.

1    personal data). In its motion to dismiss here, Google rehashes arguments that were rejected by these

2    courts. This Court should do the same.

3    **II.      STATEMENT OF FACTS**

4        Plaintiffs filed their taxes online using the H&R Block, TaxSlayer, or TaxAct websites.

5    (Compl. ¶¶ 5-14.) Unbeknownst to Plaintiffs, each of the websites of H&R Block, Tax Slayer, and

6    Tax Act (the "Tax Preparation Websites") transmitted their sensitive financial information to Google

7    via its Google Analytics tracking pixel. (*Id.* ¶¶ 1-2, 5-14, 32-33, 36.) Google's pixel intercepted

8    "income, refund amounts, filing status, . . . scholarship information," and other user data. (*Id.* ¶¶ 1,

9    37.) Google then used the tax-filing data "to improve its ad business and enhance its other business

10   tools." (*Id.* ¶ 2; *see also id*. ¶¶ 18-23, 29, 32-43.) Plaintiffs had an objectively reasonable expectation

11   that their tax-filing information would be kept confidential. (*Id.* ¶ 71.) Sharing tax-return information

12   without consent is a crime, as is inspecting unlawfully obtained tax-return information, (*id.* ¶ 3), and

13   Plaintiffs never consented to Google's collection or use of the data. (*Id.* ¶¶ 62-63, 78, 90, 105, 110,

14   115.)

15       Google collected the tax-filing information because its business model focuses on "extracting

16   meaning from the mass of data accumulating on the Internet." (*Id.* ¶ 18.) To achieve this goal, Google

17   offers advertisers "several platforms and analytics for advertisers to optimize their advertising

18   campaigns." (*Id.* ¶ 21.) Google Analytics is one such platform. (*Id.* ¶ 24.) It includes a Google pixel

19   as a "default feature" that "can collect a large range of user data of up to 200 different metrics." (*Id.*

20   ¶¶ 25, 27.) This "invisible 1x1 web bug" (*id*. ¶ 25) collects and "transmit[s] [user data] in real time

21   to Google, where the information is stored and processed into reports." (*Id.* ¶ 28; *see also id*. ¶ 33.)

22   Google can then "use the data it gleans from . . . the tracking pixel to power its algorithms, providing

23   it insight into the habits of users across the internet." (*Id.* ¶ 29.) The pixel has allowed Google to

24   "amass huge amounts of data in a detailed dossier, or digital fingerprint, that it keeps on its users and

25   other website visitors." (*Id.* ¶ 29.)

26       That dossier includes Plaintiffs' tax-filing information. Google knew—or was at least

27   recklessly blind to the fact that—it received tax-filing information from the Tax Preparation

28   Websites. (*Id.* ¶ 40.) Yet it did nothing to prevent this transmission. (*Id.* ¶¶ 42-43.) Google instead

chose to continue "collecting vast amounts of confidential tax information" on millions of Americans. (Compl. ¶ 40, *see also id.* ¶ 38-39.) It did so despite its policies that forbid website developers from "shar[ing] data that includes health, *financial* or other categories of sensitive information." (*Id.* ¶ 47.) Only a 2023 Senate Investigation Report shed light on Google's mass collection of tax-filing data. (*Id.* ¶¶ 2, 38-39, 43.)

## III.    ARGUMENT

### A.    Google's Global Arguments For Dismissal Lack Merit

Google repeats arguments concerning consent, intent, whether it acted solely as a "vendor," and the statute of limitations. Those arguments are rebutted below to avoid repetition.

#### 1.    *Gershzon*, *Healthcare Litigation*, *FullStory*, and *Brown II* Rejected the Same Arguments About Consent That Google Makes Here

Google argues that because the respective privacy policies of the Tax Preparation Websites purportedly disclosed the use of Google Analytics, Plaintiffs consented to the disclosure of their tax-filing information to Google. (Dkt. 50 at 16.) In Google's view, these privacy policies are "judicially noticeable" and therefore establish consent as a matter of law.[2] (Dkt. 50 at 7; Dkt. 48 at 4-5.) This Court should reject Google's position and its request for judicial notice of these materials.

Not only does Google ask the Court to draw inferences in its favor from random versions of the privacy policies, but it also recycles an argument already rejected in similar cases involving the Meta tracking pixel. *See also Gershzon*, 2023 WL 5420234, at *9 n.3; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793-94 (N.D. Cal. 2022) ("*Healthcare Litigation*"); *FullStory*, 2024 WL 188101, at *1 n.3, *2-3. Judge Gonzalez Rogers also rejected the same argument a few months ago in *Brown v. Google LLC*, No. 4:20-cv-3664-YGR, 2023 WL 5029899, at *9 (N.D. Cal. Aug. 7, 2023) ("*Brown II*"). Here, Google's argument similarly lacks merit because: (a) it contradicts the pleadings and requires drawing inferences in Google's favor, and (b) the privacy policies Google cites did not disclose the sharing of tax-filing or other confidential financial information.

---

[2] Google's Request for Judicial Notice violates local rules governing page limits and should be struck accordingly.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**a.    Google's Consent Argument Contradicts the Pleadings**

Plaintiffs allege they did not consent to Google obtaining their tax-filing information. (Compl. ¶¶ 62-63, 78, 90, 105, 110.) Google seeks judicial notice of the Tax Preparation Websites' 2023 privacy policies to support its claim that Plaintiffs consented to the transmission of their highly sensitive tax information. (*See* Dkt. 48, Exs. 4-6.) Google concedes that these documents are not referenced in the Complaint. (*See* Dkt. 48 at 5-6.) But Google then argues that judicial notice is proper because these privacy policies are "integral to the allegations that Google violated Plaintiffs' 'objectively reasonable expectations of privacy' while using the tax filing websites referenced in the Complaint." (Dkt. 48 at 5.) This is incorrect.

Google cannot merely cite random versions of the privacy policies. First, Google submitted no evidence (judicially noticeable or otherwise) that any of the Plaintiffs saw and agreed to the documents relied on by Google to support any consent here. Google must show that Plaintiffs took "affirmative action to demonstrate assent," but it has not done so. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). Merely arguing that privacy policies or other terms existed without offering proof of actual assent does not establish consent. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080-81 (C.D. Cal. 2021) (applying *Nguyen*).[3]

Second, the privacy policies are dated either January 2023 (H&R Block and Tax Act) or October 2023 (TaxSlayer). (*See* Dkt. 48, Exs. 4-6.) But Plaintiffs allege that their financial information was disclosed *years* before those dates. (Compl. ¶¶ 5-14.) Like in *Gershzon*, Google's arguments raise factual questions about what the privacy policies said during the relevant period, and whether Plaintiffs ever agreed to them. The exhibits Google seeks to have judicial noticed leave those questions unanswered. Due to these open questions, the two opinions relied on by Google are distinguishable. Both cases included evidence that the plaintiffs had agreed to the terms of service, and there was no question about what the terms of service said when the plaintiffs agreed to them.

---

[3] This reasoning holds especially true for the Google Analytics Terms of Service (Dkt. 48, Ex. 2), because Google offers no explanation why any Plaintiff would have seen and agreed to those terms of service, and there is no legal basis to conclude on the pleadings that the Tax Preparation Websites complied with those terms.

1    *See, e.g., Javier v. Assurance IQ, LLC*, No. 4:20-cv-02860-JSW, 2021 WL 940319, at *2 (N.D. Cal.

2    Mar. 9, 2021) ("*Javier I*") ("[T]he parties do not dispute that Javier affirmatively clicked on 'View

3    My Quote' on Assurance's website to indicate 'intent to agree to th[e] website's Privacy Policy.'");

4    *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (explaining plaintiff did

5    not dispute the accuracy of the privacy policy). Neither opinion supports the proposition that a

6    defendant can establish consent merely by citing a privacy policy that may or may not have existed

7    during the relevant period, and that the plaintiff may have never seen. *See Gershzon*, 2023 WL

8    5420234, at *9 n.3 (denying Meta's request for judicial notice).

9          Even if the Court takes judicial notice of the privacy policies that Google cites, it must do so

10   in a limited manner. *See Kuzenski v. Uproxx LLC*, No. 2:23-cv-00945-WLH-AGR, 2023 WL

11   8251590, at *1 n.1 (C.D. Cal. Nov. 27, 2023) (judicial notice "for the limited purpose of

12   acknowledging its existence and that its content is publicly available but will not take judicial notice

13   of the truth of its content"); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018)

14   ("If defendants are permitted to present their own version of the facts at the pleading stage—and

15   district courts accept those facts as uncontroverted and true—it becomes near impossible for even

16   the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief."). The Court

17   may take notice of the privacy policies' existence, not the truth of their content, and cannot "draw

18   inferences from those documents in [Google's] favor." *Gershzon*, 2023 WL 5420234, at *9 n.3

19                    **b.    The Disclosures Do Not Furnish Consent**

20         Dismissal here is not warranted even if Plaintiffs had agreed to the cited privacy policies.

21   That is because the privacy policies say nothing about sharing confidential tax information from

22   third-party websites. (*See* Dkt. 50 at 13.) As such, it is not surprising that Google only argues that

23   the privacy policies disclose the use of "Google Analytics." (*See* Dkt. 50 at 13 (quoting the relevant

24   disclosures).)

25         To support its consent argument, Google seeks judicial notice of two pages of its website to

26   support *its interpretation* of the content of those websites. (*See* Dkt. 48, Exs. 1 and 3; *see also* Dkt.

27   50 at 11 n.1 (seeking judicial notice of European Google page for fact that the purpose of Google

28   Analytics is to "help[] owners of apps and websites understand how their users are engaging with

1   their sites and apps (and only their site or app)"); Dkt. 50 at 12 ("Google Analytics help pages for

2   developers similarly instruct developers to, among other things, 'remove PII from user-entered

3   information before it is sent to Analytics.'"). As such, Google's request for judicial notice should be

4   denied. Google is not entitled to judicial notice of the truth of these websites' *contents*, but only, at

5   most, of the fact of their existence. *See, e.g., Kuzenski*, 2023 WL 8251590, at *1 n.1 (taking judicial

6   notice of a website's existence only); *see also id.* (considering "that the Website may have looked

7   different during the relevant time period").

8       Google's statement that the Tax Preparation Websites' privacy policies disclose the

9   transmission of confidential tax-filing information contradicts its other assertion that it "forbid[s]"

10  websites from transmitting such information, and that the websites complied with Google's policies.

11  (Dkt. 50 at 3.) If the Tax Preparation Websites' privacy policies disclosed that they transmitted this

12  information to Google, then according to Google it would have taken action to enforce its policies

13  and terminated the Tax Preparation Websites' accounts. That never happened. (Compl. ¶ 42.)

14      The disclosures are also legally inadequate. General privacy policy disclosures are

15  insufficient to establish consent to the sharing of specific, sensitive information—particularly where,

16  as here, the defendant claims that sharing such information is forbidden. In the recent *Healthcare*

17  *Litigation* decision, which involves similar allegations about the sharing of health information, Judge

18  Orrick held that there was no basis to rule that Facebook users consented to the disclosure of sensitive

19  health information based on generalized disclosures—especially given that Meta expressly said it

20  would *not* collect that information. *See* 647 F. Supp. 3d at 793-94 & n.9. "[T]he nature of the data

21  collection that plaintiffs agreed to is akin to the general internet browsing," not "the collection of

22  protected [tax information] from a [tax-filing service]." *Id.* at 793-94 (distinguishing *Smith v.*

23  *Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), which

24  involved collection of general internet-browsing data only). The *Brown II* court reached a similar

25  decision. Judge Gonzalez Rogers held that Google could not establish consent to its data collection

26  practices based on a "general disclosure" that was inconsistent with Google's other statements about

27  the privacy features of "Incognito" mode in its Chrome web browser. *Brown II*, 2023 WL 5029899,

28  at *9.

The *FullStory* court dealt with a more detailed privacy policy. A healthcare website disclosed that it used "'Web Beacons' (also known as Web bugs, pixel tags or clear GIFs) . . . to deliver or communicate with cookies, to track and measure the performance of [its] Website, App and Service, to monitor how many visitors view our site, App and Service, and to monitor the effectiveness of our advertising." 2024 WL 188101, at *3. It also notified users that it "partner[s] with selected third-party vendors, such as Google Analytics and others," which would "collect[] and use" website visitors' information. *Id.* The *FullStory* court still refused to dismiss these claims based on consent despite these policies. *Id.* It noted that Plaintiffs had been able to point to sections of the website's policy that "disclaim[ed] that third parties will have access to 'personal information,'" and that its Privacy Policy purported not to cover "personal health information submitted by you" in the first place. *Id.* Dismissal was not appropriate because, "[a]t this point, the contents of each applicable policy or other binding representation made by [the defendant] regarding treatment of personal or healthcare information has not been established as a matter of law[,] [t]he data each of the defendant's tools intercepted has not been determined[,]" and "[h]ow reasonable persons would interpret the totality of the disclosures has not been decided." *Id.* The reasoning in *FullStory*, *Healthcare Litigation*, and *Brown II* applies equally here.

### 2. Google's Assertion That It Is Not Liable Because It Acted Solely as A "Vendor" Contradicts the Law and the Pleadings

Google cannot escape liability based on its claim that a vendor "is not 'intercepting' a communication and cannot be liable for the recording." (Dkt. 50 at 17.) This argument fails because (1) Google relies on a minority line of cases that misapplied CIPA section 631(a) and California Supreme Court authority; but (2) even if that were not the case, Google's authorities apply only where the technology company collected data *solely for the benefit of a third-party website owner*, which is not the case here.[4]

---

[4] Google repeats this same "vendor" argument for all of the wiretapping claims, but it only cites the minority line of cases addressing CIPA section 631(a). Google cites no authority for its "vendor" arguments with respect to the other statutory causes of action at issue here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### a. Google's Authorities Misapplied the Law and Are Against the Weight of Authority

In this District, Judges Breyer, Seeborg, and Tigar have all explained a split of authority exists about whether technology companies who monitor website activities can be liable under section 631(a). *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899 (N.D. Cal. 2023) (Breyer, J.) ("*Javier III*") (surveying authorities and providing an extensive analysis on the issue). The majority line of cases—supported by Ninth Circuit and California Supreme Court authority—holds that such companies may be liable under section 631(a) because they are not deemed to be "parties to the communication," even if they were authorized by website owners to secretly monitor activity on the websites. *See id.* at 899-900; *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118, at *9 (N.D. Cal. Apr. 6, 2023) (Seeborg, J.) ("Plaintiffs are correct that the weight of the authority in this Circuit teaches that Defendant is not a party to Plaintiffs' alleged communications."); *Yockey v. Salesforce, Inc.*, No. 22-cv-09067-JST, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (Tigar, J.) (analyzing split of authorities); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607-08 (9th Cir. 2020) (holding Facebook may be liable for intercepting communications between a browser and third-party website); *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (holding a third party could be liable for eavesdropping even though she did so at the request of one of the parties to the communication).

Google cites two cases that conclude otherwise: *Graham v. Noom*, 533 F. Supp.3d 823 (N.D. Cal. 2021) and *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022). These cases represent the minority view that technology companies that monitor internet activity *may* be treated as extensions of websites that employ them, and thus not liable under the statute—so long as they acted "for the sole benefit of the" website owners and did not "use[] the data for their own benefit." *Javier III*, 649 F. Supp. 3d at 899.

Numerous courts have concluded that the minority rule is contrary to the text of section 631(a) and California Supreme Court authority. Only one of the liability prongs under section 631(a) focuses on whether the defendant "used" the data, and under the California Supreme Court's decision in *Ribas*, a third-party eavesdropper may be liable even if they acted at the request

of one of the parties to the conversation. *See Javier III*, 649 F. Supp. 3d at 900 ("There are two problems with [Google's] reading of Section 631. …"); *Yockey*, 2023 WL 5519323, at *5 ("The Court agrees with the *Javier* court that *Graham* and its progeny are based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant."); *Valenzuela v. Nationwide Mut. Ins. Co.*, No. 2:22-cv-06177-MEMF-SK, 2023 WL 5266033, at *7 (C.D. Cal. Aug. 14, 2023) (declining to follow Google's authorities because "[w]hether the third party's use was purely for Nationwide's benefit, rather than for its own benefit, is immaterial under the statute"); *accord Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021).

Section 631(a) also expressly imposes liability for "employing" or authorizing another party to engage in wiretapping and requires the consent of "all parties" to the communication, including the website visitors. *See* Cal. Penal Code § 631(a); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("*Javier II*") (explaining that the all-party consent requirement "applies to Internet communications"). The idea that section 631(a) allows Google, as a vendor, to be employed or authorized by a website owner to secretly monitor website communications contradicts these two principles.

### b.      Google's Authorities Are Distinguishable

Even if the cases that Google cites correctly applied the law, they are distinguishable where the third-party technology provider (i.e., Google here) obtained the data at least in part for its own purposes, rather than acting solely for the benefit of the website owner. *See Javier III*, 649 F. Supp. 3d at 899 (analyzing Google's authorities). The *Noom* court concluded "there [were] no allegations here that FullStory intercepted and used the data itself," and on that basis, distinguished the Ninth Circuit's decision in *In re Facebook*, where the plaintiffs had alleged Facebook used website activity data for its own advertising purposes. 533 F. Supp. 3d at 832. The outcome in *What If Holdings* also turned in part on the lack of allegations that the technology company "independently 'use[d]' the gathered data in some way." 2022 WL 17869275, at *3. Other courts have held that, even if *Noom* and its progeny interpreted the law correctly, those opinions do not support dismissal when a third-party technology company utilizes the internet data it obtains from websites for its own purposes.

1    *See Katz-Lacabe*, 2023 WL 2838118, at \*9 (distinguishing *Noom*); *Yockey*, 2023 WL 5519323, at

2    \*5 (same); *Augustine v. Lenovo (U.S.), Inc.*, No. 22-cv-2027-L-AHG, 2023 WL 4938050, at \*3 (S.D.

3    Cal. Aug. 2, 2023) (declining to dismiss under *Noom* and *What If Holdings* because there were factual

4    questions about what the third-party company did with the data it recorded).

5          Unlike in *Noom* and *What If Holdings*, Plaintiffs allege that Google's business model is

6    largely based on data mining, and that it surreptitiously used Plaintiffs' tax return information for its

7    own advertising purposes. (Compl. ¶¶ 18-23, 32-43.) The Complaint details that "[f]rom its

8    inception, Google has been preoccupied with the idea of extracting meaning from the mass of data

9    accumulating on the Internet and has made a lucrative industry out of this venture." (*Id.* ¶ 18 (internal

10    quotation omitted).) Importantly, Plaintiffs allege that Google Analytics is "*not simply a 'tool'*

11    *utilized by website owners for their own purposes*":

12              Google offers these technologies to customers in a free version *because*
              *Google benefits (and profits from) their use.* Google can use the data it
13              gleans from tools like the tracking pixel to power its algorithms, providing
              it insight into the habits of users across the internet. Indeed, the data
14              obtained allows Google to amass huge amounts of data in a detailed dossier,
              or digital fingerprint, that it keeps on its users and other website visitors.
15

16    (*Id.* ¶ 29 (emphasis added).) Plaintiffs allege that income and other tax-filing information "are highly

17    valuable demographic markers for advertising purposes," (*id*. ¶ 40) and that they are "used by

18    [Google] to power its advertising algorithms" (*Id.* ¶ 33.)

19          Google emphasizes that website owners also benefit from using Google's technology. That

20    fact, however, has nothing to do with Google's liability under either the majority or minority line of

21    cases described above. Meta has long made the same argument about its similar pixel technology.

22    Google's own authority recognized that the Ninth Circuit has held that Meta nonetheless could be

23    liable where—just like Google here—it used the data for its own advertising purposes. *See Noom*,

24    533 F. Supp. 3d at 832 (distinguishing *In re Facebook* because Meta used the data it obtained from

25    websites for its own business purposes).

26

27

28

**3.      Google's Intent is Not a Basis to Dismiss This Lawsuit**

Google argues dismissal is required because there are "no allegations of any conduct Google engaged in that would suggest an intent to receive personally identifiable information." (Dkt. 50 at 19.) That argument lacks merit for three reasons.

First, intent is irrelevant to the claim under CIPA section 631(a). That is because section 631(a) has "three distinct and mutually independent" liability prongs, in addition to aiding and abetting liability. *Tavernetti v. Super. Ct. of San Diego Cnty.*, 22 Cal. 3d 187, 192-93 (1978). Only the first prong under section 631(a) includes an intent element; the other prongs do not. *See* § 631(a); *Gershzon*, 2023 WL 5420234, at *11 (explaining Meta's arguments about intent only applied to the first "wiretapping" prong of section 631(a) and were "moot" with respect to other prongs). Google's argument is only applicable to liability under the first prong of section 631(a), not for liability under the second and third prongs alleged here. (Compl. ¶ 58.)

Second, to the extent intent is an element for any of the causes of action alleged, the allegations meet the low pleading requirements for intent. *See* Fed. R. Civ. P. 9(b) (explaining that intent "may be alleged generally"). Plaintiffs allege that Google's business model is based on surveillance and data gathering for advertising. (Compl. ¶¶ 18-23.) Plaintiffs further allege how Google's technology is designed to further its business model by collecting that data. (*Id.* ¶¶ 24-31.) After setting that background, Plaintiffs allege that Google's collection of tax information was intentional and consistent with its business model; explaining, for example, that "income and other related financial information are highly valuable demographic markers for advertising purposes. (*Id.* ¶ 40; *id.* ¶¶ 32-39, 41-43.)

Plaintiffs also allege in the alternative that Google was willfully blind to the fact that it received and used tax information. This is because it had a financial incentive to turn a blind eye to the problem, and that Google made false representations about implementing safeguards to prevent the transfer of taxpayer's information. (*Id.* ¶¶40, 43.) Willful blindness is equivalent to actual knowledge. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (explaining that defendants who "deliberately shield[] themselves from clear evidence of critical facts that are strongly suggested by the circumstances . . . are just as culpable as those who have actual

1    knowledge"); *Levy v. Irvine*, 66 P. 953, 956 (Cal. 1901) (stating that defendant could not "willfully

2    shut his eyes to the means of information which he knows is at hand, and if he does so his willing

3    ignorance is to be regarded as equivalent to actual knowledge").

4         The allegations cited above far exceed the "short," "plain," and "general" allegations of intent

5    required by Rules 8 and 9(b). The Complaint includes general allegations concerning Google's

6    willful blindness (Compl. ¶¶ 40, 43), bolstered by the detailed allegations about Google's business

7    model. (*Id.* ¶¶ 18-43.) Even if the allegations concerning intent were insufficient, however, the proper

8    course would be dismissal with leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir.

9    2017) (holding that the lower court erred by denying leave to amend after dismissing amended

10   complaint).

11        <u>Third</u>, Google asks the Court to take judicial notice of its own data privacy policy as

12   conclusive proof that it does not intend to obtain financial data from websites. (*See* Dkt. 50 at 12, 16,

13   19 (citing Dkt. 48, Ex. 2).) But as discussed above, Google is not entitled to judicial notice of its

14   preferred factual inferences. *See Gershzon*, 2023 WL 5420234, at *9 n.3; *FullStory*, 2024 WL

15   188101, at *4 ("The data each of the defendant's tools intercepted has not been determined."). 

16   Google again rehashes an argument that two judges in this District rejected in similar cases involving

17   the Meta tracking pixel. *See Gershzon*, 2023 WL 5420234, at *11 (rejecting Meta's argument that it

18   lacked the requisite intent because it "tells third parties not to send it any information unless it has

19   the legal right to do so"); *Doe*, 2023 WL 5837443, at *3 (rejecting same argument). Here, similarly,

20   Plaintiffs allege that Google's policies against disclosure of sensitive information are a sham.

21   (Compl. ¶¶ 42-43.) They also allege that Google admitted that it never enforced its policies by

22   suspending tax company accounts for sharing financial information. (*Id.*) As Judge Orrick concluded

23   when rejecting a similar argument, Google's reliance on its own internal policies involves factual

24   disputes that cannot be resolved on the pleadings. *Doe*, 2023 WL 5837443, at *3. This Court should

25   do the same.

26                    **4.    Google's Timeliness Argument is Misplaced**

27        Google argues that all of Plaintiffs' claims "outside the limitations period" must be dismissed.

28   This argument should be rejected for at least two reasons. <u>First</u>, the discovery rule tolls any applicable

1    statutes of limitations in light of Plaintiffs' extensive allegations that Google concealed its illegal

2    practices from Plaintiffs and the public. (*See* Compl. ¶¶ 1-2, 32, 38-39, 42-43.)

3         <u>Second</u>, Google's same argument was rejected in *FullStory*, a case involving tracking pixels,

4    including Google Analytics. In *FullStory*, Judge Orrick rejected defendants' argument, including

5    Google, that the discovery rule did not apply to the claims regarding healthcare information being

6    improperly intercepted. 2024 WL 188101, at *4. In doing so, Judge Orrick noted that the "argument

7    is not persuasive given the type of case this is – based on defendants' use of highly technical

8    proprietary software," especially given that, like here, the "plaintiff did not know or, on matters I can

9    judicially notice, have cause to know of her injury from the interception and use of her personal and

10   healthcare information because of her use of the [online healthcare] platform." *FullStory*, 2024 WL

11   188101, at *4 & n.8. Judge Illston also rejected deciding this the same argument at the pleading stage

12   in *Gershzon*. *See* 2023 WL 5420234, at *13 ("The Court agrees with plaintiff that the question of

13   tolling cannot be decided on the pleadings, and that Meta can renew its arguments on a fuller factual

14   record.")

15        The Court should find the same here. Plaintiffs allege that Google's wiretapping was

16   surreptitious and unknown to them until a Senate Investigative Report was published in 2023.

17   (Compl. ¶ 2; *see also id.* ¶¶ 32, 38-39, 43.) Plaintiffs also allege that Google made affirmative

18   misrepresentations that its policies forbid companies from transmitting sensitive information,

19   including financial information. (*Id.* ¶¶ 46-47.) These allegations support application of tolling,

20   equitable estoppel, and the discovery rule. These fact-bound issues require discovery—not piecemeal

21   line-drawing at the pleading stage. *Gershzon*, 2023 WL 5420234, at *13 (recognizing that these are

22   "factual question[s] that require[] discovery," and ruling that "the question of tolling cannot be

23   decided on the pleadings"); *see also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)

24   (emphasizing that "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissal of

25   *parts* of claims" and that factual issues should be resolved at the summary-judgment stage).

26        If the Court concludes the pleadings are insufficient, leave to amend should be permitted to

27   add allegations supporting application of tolling, equitable estoppel, and the discovery rule. Plaintiffs

28   can in good faith and consistent with Rule 11 add facts about the time and manner of discovery

1   (namely, the recent Senate Investigation already referenced in the Consolidated Complaint), and

2   about their inability to have made an earlier discovery.

3        **B.**     **Plaintiffs Sufficiently Allege Statutory Wiretapping Claims**

4             **1.**     **Plaintiffs Sufficiently Allege a Cause of Action Under CIPA**

5                   **Section 631 (Count I)**

6        Each of Google's arguments for dismissal of Plaintiffs' cause of action for violation of CIPA

7   section 631(a) are rebutted in the global responses above.

8             **2.**     **Plaintiffs Sufficiently Allege a Cause of Action Under CIPA**
                **Section 632 (Count II)**

9        Apart from an argument about intent and a passing reference to Google's "vendor" argument,

10  both of which are already rebutted in Section III.A, Google offers two other arguments for dismissal

11  of the cause of action under CIPA section 632. Neither has merit.

12       <u>First</u>, Google contends that "there is no allegation in the complaint that Google took any

13  action whatsoever to effectuate the wrongdoing" because "the alleged recording was performed by

14  the Websites, not Google." (Dkt. 50 at 18.) That is wrong. Google's argument ignores a lengthy

15  section of the Complaint explaining how Google—not the Tax Preparation Websites—developed

16  Google Analytics so that Google could profit from data mining. (Compl. ¶¶ 22-41.) Google's

17  argument that the recording was performed by the Tax Preparation Websites rather than Google is

18  based on a single allegation that website owners must install the technology on their websites. (*See*

19  Dkt. 50 at 18 (citing Compl. ¶ 25).) But it does not follow from that allegation that the recording was

20  performed by the website owners, rather than Google: instead, the allegation simply shows that

21  website owners made it possible for Google to collect tax-filing information. For the Court to accept

22  Google's argument, it would have to (1) ignore allegations in the Complaint that support Plaintiffs'

23  position (*see, e.g.*, Compl. ¶ 29), and (2) draw inferences in Google's favor. Doing either would be

24  the "antithesis of the standard of review applicable to a motion to dismiss." *In re Flash Memory*

25  *Antitrust Litig.*, 643 F. Supp. 2d 1133, 1145 (N.D. Cal. 2009).

26       <u>Second</u>, Google argues there is a *general* presumption that internet-based communications

27  are not confidential, and that this presumption should apply to the tax-filing information at issue

28  here. That is an extreme position given that this case involves tax-filing information that is by law

1   confidential. (Compl. ¶ 3.) Taken to its logical conclusion, Google's position suggests that *nothing*

2   done over the internet is confidential—not tax filing, not banking, not remote medical care, not

3   attorney-client communications, or anything else that people reasonably believe involves

4   confidential or sensitive information.

5         Google's interpretation lacks legal support. In *Brown II*, Judge Gonzalez Rogers recently

6   held that Google's "argument[] that California courts have developed a presumption that users do

7   not have an expectation of privacy over internet communications, fails on examination." 2023 WL

8   5029899, at *17. As the *Brown II* court explained, under California Supreme Court authority,

9   "confidentiality, under Section 632, requires 'nothing more than the existence of a reasonable

10  expectation by one of the parties that no one is listening in or overhearing the conversation.'" *Id.*

11  (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 772-73 (2002)). "California courts have never

12  recognized a legal 'presumption' that internet communications are not confidential under Section

13  632." *Brown II*, 2023 WL 5029899, at *18. Such a presumption would be inconsistent with the

14  principle "that CIPA was intended to cover newer forms of communication," like the internet. *Id.* at

15  *17. Judge Orrick's recent holding in the similar *Healthcare Litigation* proceedings against Meta is

16  consistent with this principle. As Judge Orrick explained, section 632 may apply to health-related

17  information shared over the internet, because "plaintiffs will likely be able to show that they had an

18  objectively reasonable expectation that their communications with their medical providers were

19  confidential." *Healthcare Litigation*, 647 F. Supp. 3d at 799. For similar reasons, Judge Gonzalez

20  Rogers held in *Brown II* that communications made under Google's private privacy modes may fall

21  within the ambit of section 632.

22        Here, Plaintiffs allege they had an objectively reasonable expectation that their tax-filing

23  information would be treated as confidential. (Compl. ¶¶ 3, 42-43, 62-63, 78, 90, 105, 110, 116.)

24  That is a plausible and reasonable allegation given that sharing tax-return information without

25  consent is a crime, as is inspecting unlawfully obtained tax return information. (*Id.* ¶ 3.) Google

26  offers the Court no reason to distinguish those cases or to conclude that a different result should

27  apply to tax-filing information.

28

1

2

   **3.**  **Plaintiffs Sufficiently Allege Causes of Action Under**
      **Section 2511 of the Federal Wiretap Act (Count IV) and**
      **the Texas Wiretap Act (Count VIII)**

3

   With respect to the Federal and Texas Wiretap Acts, Google repeats its "intent" and "vendor"

4

arguments, which are already rebutted in Section III.A above. Google cites no authority in support

5

of its "vendor" argument. Google makes two additional arguments concerning the Federal and Texas

6

Wiretap Act claims, which are addressed below.

7

    **a.**  **Google's One-Party Consent Argument Cannot**
      **Support Dismissal Because It Requires Drawing**

8

      **Inferences in Google's Favor**

9

   Google argues that the claims based on the section 2511 of the Federal Wiretap Act and the

10

Texas Wiretap Acts must be dismissed because they are "one-party" consent statutes and, in

11

Google's view, the third-party tax providers "obviously consented" to the use of Google Analytics,

12

even if Plaintiffs did not. (Dkt. 50 at 20.) That argument fails for three reasons.

13

   <u>First</u>, Judge Orrick recently rejected the same argument in *Doe*, and the reasoning is equally

14

applicable here. *Doe*, 2023 WL 5837443, at *5. As in *Doe*, Google bears the burden of proving that

15

the Tax Preparation Websites were fully informed and consented to the disclosure of the sensitive

16

tax-filing information at issue here. *See id.* ("Meta has not pointed to anything I can judicially notice

17

on this motion to dismiss to show as a matter of law that the healthcare providers did not just

18

presumably but *actually* consented to the sending of sensitive healthcare information of its

19

customers."); *Brown II*, 2023 WL 5029899, at *13 ("[T]he burden is on [defendant] to prove

20

consent"). Google's general disclosures are not sufficient. *See Healthcare Litigation*, 647 F. Supp.

21

3d at 793. Accepting Google's argument requires drawing an inference in Google's favor that

22

website owners were fully informed of the consequences of installing Google Analytics on their

23

websites. But the Court should not draw inferences in Google's favor on a Rule 12(b)(6) motion. *See*

24

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d at 1145; *Gershzon*, 2023 WL 5420234, at *9,

25

n.3.

26

   <u>Second</u>, the one-party consent defense does not apply if the "communication is intercepted

27

for the purpose of committing any criminal or tortious act" under federal or state law. 18 U.S.C.

28

1   § 2511(2)(d). In *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ("*Brown I*"),

2   "consent [was] not a defense to Plaintiff's Wiretap Act claims" because the plaintiffs alleged that the

3   wiretapping was done for the purpose of violating California Penal Code section 502 and invading

4   users' privacy. *See also Planned Parenthood Fed'n of Am., Inc., v. Ctr. For Med. Progress*, 214 F.

5   Supp. 3d 808, 828 (N.D. Cal. 2016) (holding the one-party consent rule inapplicable for similar

6   reasons stated in *Brown I*). Like in *Brown I*, Plaintiffs here allege that Google's wiretapping was

7   "done for the purpose of violating laws prohibiting the unlawful disclosure and review of tax

8   information." (Compl. ¶ 85.) Google conspicuously ignores this allegation in its brief, so its consent

9   argument lacks merit.

10   <u>Third</u>, without developing the argument or elaborating in any way, Google makes a passing

11   reference to the idea that the crime-tort exception does not apply where the defendant's goal was to

12   make money, rather than commit a crime. (*See* Dkt. 50 at 21-22.) In *Brown I*, however, the court

13   rejected the same argument. It held that allegations that Google intercepted communications so it

14   could associate data with pre-existing user profiles supported the crime-tort exception. *Brown I*, 525

15   F. Supp. 3d at 1067. Plaintiffs here allege that the data Google collects can be de-anonymized

16   (Compl. ¶ 41), and that the wiretapping "allows Google to amass huge amounts of data in a detailed

17   dossier, or digital fingerprint, that it keeps on its users and other website visitors." (Compl. ¶ 29.)

18   Therefore, application of the crime-tort exception in this case is consistent with *Brown I* and *Planned*

19   *Parenthood*. Even if this Court disagrees, the proper outcome would be dismissal with leave to

20   amend the allegations concerning the crime-tort exception.

21          **4.     Plaintiffs Sufficiently Allege Causes of Action Under CIPA**

22                   **Section 635 (Count III) and Federal Wiretap Act Section**
                     **2512 (Count V)**

23   In *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D.

24   Cal. Oct. 23, 2019), Judge Chhabria denied a motion to dismiss a cause of action under section 635,

25   and this Court should too. The statute expressly permits a cause of action under section 635. It

26   imposes liability on "[e]very person who . . . possesses . . . or furnishes to another any device which

27   is primarily or exclusively designed or intended for eavesdropping." Cal. Penal Code § 635. In turn,

28   section 637.2(b) permits any person to "bring an action to enjoin and restrain any violation of this

1  chapter ….." Cal. Penal Code § 637.2(b). Here, Plaintiffs allege they were injured as a result of
2  Google's furnishing its surveillance technology, which allowed the wiretapping to occur. (Compl.
3  ¶¶ 24-47, 79.) This Court should follow *Revitch* and allow this claim to proceed.

4      Google relies on factual assertions outside the pleadings to argue that its tracking tool is not
5  primarily useful for secretly intercepting communications. Judge Chhabria also rejected the same
6  argument in *Revitch*, explaining "the Court must assume the truth of [plaintiff's]" allegation that
7  [defendant's] code is a 'device … primarily or exclusively designed or intended for eavesdropping
8  upon the communication of another.'" 2019 WL 5485330, at *3 (quoting Cal. Penal Code § 635).

9      Google next argues that there is never a private right of action for violating section 2512 of
10 the Federal Wiretap Act. In *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), the Sixth Circuit rejected this
11 argument in a similar case involving internet spyware. The *Luis* court distinguished Google's
12 authorities because in those cases, "the courts were focused on whether a defendant's possession of
13 a wiretapping device, without more, was sufficient to support a private cause of action." *Id.* at 637.
14 But where, as here, a defendant not only possesses and markets spyware, but also "plays an active
15 role" in using the spyware to intercept communications, then that defendant "is subject to a private
16 suit under § 2520." *Id.*; *but see Saleh*, 562 F. Supp. 3d at 523.[5]

17     Google concludes by arguing that Plaintiffs have not sufficiently alleged that the technology
18 at issue in this case is primarily useful for surreptitious interception of communications, which—in
19 Google's telling—undermines their manufacturing claims. The first problem with this argument is
20 that Plaintiffs *do* allege precisely that. (Compl. ¶¶ 2, 32, 38-39, 42-43, 76-77, 97, 109.) The next
21 problem with this argument is that the cases Google cites do not support its point. In *United States*
22 *v. Lande*, the court did not purport to set down any sort of rule *requiring* that it be "difficult to
23 imagine any purpose for [the technology] other than the unauthorized interception of
24 communications," as Google appears to suggest. 968 F.2d 907, 910 (9th Cir. 1992). The sentence
25 Google cites simply describes the device that happened to be before the court in that case. *Id.* The
26 other cases Google cites are similarly inapposite. *See Doe I. v. Google LLC*, No. 23-cv-02431-VC,

27
28 [5] Google's argument concerning consent is already rebutted in Section III.A. above.

2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) (no discussion of 18 U.S.C. section 2512 or Cal. Penal Code section 635); *In re: Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016) (same); *DirecTV Inc. v. Little*, No. CV-03-2407-RMW, 2004 WL 1811153 (N.D. Cal. Aug. 12, 2004) (considering motion for summary judgment rather than motion to dismiss). The Court should ignore this attempt to use out-of-context snippets and immaterial citations to distract from *Revitch*, which is directly on point.

**5.    Florida Security of Communications Act (Count VI) and Illinois Eavesdropping Act (Count VII)**

Google's arguments concerning the Florida and Illinois statutes rehash arguments already addressed above. First, Google offers nothing new when it argues that "both the Plaintiffs and the Websites consented to the Website's use of Google Analytics." (Dkt. 50 at 24.) As shown in Sections III.A.1 and III.B.3.a, Google's arguments require the Court to make a host of assumptions and inferences in Google's favor, which is improper on a Rule 12(b)(6) motion; and in any event, Google did not disclose that it was receiving confidential financial information, and but instead said the opposite. Second, Google repeats its "vendor" argument, which is already rebutted in Section III.A.2 above. Google again fails to cite a single case applying its arguments in the context of either the Florida or Illinois statutes. Finally, Google's arguments about intent are rebutted in Section III.A.3 above.

## IV.    CONCLUSION

The Court should deny Google's motion in its entirety. If the Court determines that the pleadings are deficient in any respect, Plaintiffs request leave to amend to cure any such deficiencies. *See Roney*, 705 F. App'x at 671 (lower court erred by denying leave to amend after dismissing amended complaint).

1   Dated:  January 29, 2024

**GEORGE FELDMAN MCDONALD, PLLC**

By:  s/ *Lori G. Feldman*
Lori G. Feldman (*pro hac vice*)
Michael Liskow (Cal. Bar No. 243899)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (917) 983-9321
lfeldman@4-justice.com
mliskow@4-justice.com
eservice@4-justice.com

**BURSOR & FISHER, P.A**.
Joel D. Smith (Cal. Bar No. 244902)
Neal Deckant (Cal. Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jsmith@bursor.com
            ndeckant@bursor.com

**LOCKRIDGE GRINDAL NAUEN PLLP**
Rebecca A. Peterson (Cal. Bar No. 241858)
Robert K. Shelquist
Kate M. Baxter-Kauf (*pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rapeterson@locklaw.com
rkshelquist@locklaw.com
kmbaxter-kauf@locklaw.com

**THE HODA LAW FIRM, PLLC**
Marshal J. Hoda (*pro hac vice*)
12333 Sowden Road, Suite B
Houston, TX 77080
Telephone: (832) 848-0036
marshal@thehodalawfirm.com

**FOSTER YARBOROUGH PLLC**
Patrick Yarborough (*pro hac vice*)
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
patrick@fosteryarborough.com

**EMERSON FIRM, PLLC**
John G. Emerson
2500 Wilcrest, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
jemerson@emersonfirm.com

*Attorneys for Plaintiffs*