**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@willkie.com
JOSHUA ANDERSON (SBN: 312836)
jdanderson@willkie.com
YUHAN ALICE CHI (SBN: 324072)
ychi@willkie.com
NAIARA TOKER (SBN: 346145)
ntoker@willkie.com
ANIKA HOLLAND (SBN: 336071)
aholland@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARY L. SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No.: 5:23-cv-03527-PCP<br>(Consol. w/ 5:23-cv-04191-BLF)<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: April 4, 2024<br>Time: 10:00 A.M.<br>Ctrm: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts<br><br>Complaint Filed: 7/14/2023<br>Trial Date: N/A<br><br>Hon. P. Casey Pitts, District Judge<br>San Jose Courthouse, Ctrm. 8 – 4th Floor |

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................................1

A. Plaintiffs' CIPA claims should be dismissed. .................................................2

B. Plaintiffs' federal and Texas wiretap claims must be dismissed. .....................8

C. Plaintiffs fail to plausibly plead that Google Analytics is a spying device. ....10

D. Plaintiffs' claims under the Florida Security of Communications Act and Illinois Eavesdropping Act must be dismissed. ..................................11

E. The claims outside the limitations period must be dismissed. .........................11

II. CONCLUSION.......................................................................................................12

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5

*Brown v. Google LLC*,
No. 4:20-cv-3664-YGR, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ....................3, 7

*Cook Au Vin, LLC v. Mid-Century Ins. Co.*,
No. 1-22-0601, 2023 WL 3607748 (Ill. App. Ct. May 24, 2023)....................11

*Doe I v. Google LLC*,
No. 23-cv-02431, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) ....................4, 6, 9

*Doe v. FullStory, Inc.*,
No. 23-CV-00059-WHO, 2024 WL 188101, at *1 (N.D. Cal. Jan. 17, 2024). ....................3, 11, 12

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................2

*Gershzon v. Meta Platforms, Inc.*,
No. 23-CV-00083-SI, 2023 WL 5420234, at *1 (N.D. Cal. Aug. 22, 2023)....................3, 6

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................4, 5

*Henyard v. MV Transp.*,
No. 1:15-cv-10835, 2020 WL 7027540 (N.D. Ill. Nov. 29, 2020) ....................11

*James v. Allstate Ins. Co.*,
No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) ....................5

*Javier v. Assurance IQ, LLC*,
2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ....................5

*Javier v. Assurance IQ, LLC*,
No. 4:20-CV-02860- JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021)....................2, 5

*Johnson v. Blue Nile, Inc.*,
No. 20-CV-08183-LB, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021)....................4

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................5

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 22-cv-04792-RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023)....................8

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................8

*Kurowski v. Rush Sys. for Health*,
No. 22 C 5380, 2023 WL 4707184 (N.D. Ill. July 24, 2023) ....................3

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ....................10

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778, 785, 793-94 (N.D. Cal. 2022). ....................3

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................6

*Personal Elec. Transp., Inc. v. Office of U.S. Tr.*,
313 F. App'x 51 (9th Cir. 2009) ....................11

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................9

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................7, 10

*Rodriguez v. Google, LLC*,
No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................2, 7

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 ( 1975) ....................4

*Sussman v. ABC, Inc.*,
186 F.3d 1200, 1202 (9th Cir. 1999). ....................9

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) ....................6

*United States v. Schweihs*,
569 F.2d 965 (5th Cir. 1978) ....................10

*Weiner v. ARS Nat'l. Servs., Inc.*,
887 F. Supp. 2d 1029 (S.D. Cal. 2012)....................7

*Williams v. DDR Media, LLC*,
No. 22-CV-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ....................4, 5

*Williams v. What If Holdings*,
No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022); ....................4

*Yale v. Clicktale, Inc.*,
No. 20-CV-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021)); ....................4

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................10

**Statutes**

18 U.S.C. Section 2511 ........ 8, 9, 10

26 U.S.C. Section 7213A ........ 9

26 U.S.C. Section 7216 ........ 9

Cal. Penal Code Section 631 ........ 5, 6

Cal. Penal Code Section 632 ........ 7, 8

Cal. Penal Code Section 635 ........ 10

Cal. Penal Code Section 637 ........ 10

Ill. Comp. Stat. 5/14-2(a) ........ 11

Tex. Code Crim. Pro. Art. 18A.502(1) ........ 8

Tex. Pen. Code Section 16.02(b) ........ 9

**Other Authorities**

*Attacks on Tax Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data* (July 2023) ........ 1, 6

Federal Rule of Civil Procedure 9(b) ........ 2

## I. INTRODUCTION

Plaintiffs claim that users who filed their taxes using H&R Block, TaxAct, and TaxSlayer's websites ("the Websites") unknowingly transmitted unidentified confidential tax return information to Google—information which "*may*" have included income information, filing status, and refund amounts—via the Websites' use of Google Analytics. Opp. at 1 (emphasis added). Plaintiffs try to firm up the hypothetical allegations of the Complaint in response to Google's Motion to Dismiss, but the Court should not be swayed by this attempt to amend the pleadings through opposition briefing. The actual allegations in the Complaint fall far short of the plausibility threshold required to survive a motion to dismiss.

Nor should the Court be led astray by Plaintiffs' repeated references to the Senate Investigation Report, titled *Attacks on Tax Privacy: How the Tax Prep Industry Enabled* ***Meta*** *to Harvest Millions of Taxpayers' Sensitive Data* (July 2023) ("*Attacks on Tax Privacy*").[1] There is very little information pertaining to Google's conduct, and very little detail about the actual data Google is said to have received from the Websites. Indeed, the Report says that, at least as to TaxSlayer, "the Google Analytics Pixel does not collect name, address, filing status, information about dependents, income, assets, refunds owed, taxes owed, social security number, health savings information, Form 1040 or other tax forms, or any other sensitive information from tax returns." *Id.* at 12. The Report also acknowledges that unlike Meta, which used users' data for its own advertising purposes, any "data collected by Google appears to be used in a more limited way, by website publishers to better understand how people enter, use, and leave their websites." *Id.* at 6. Google's policies "explicitly state[] that customers who violate our policies are subject to account suspension or termination. Google also provides its customers with data deletion tools to help promptly remove data from our servers." *Id.* at 20 (internal quotations omitted). The *Attacks on Tax Privacy* Report does not identify any actionable conduct by Google, and Plaintiffs cannot copy-paste their claims against Meta here and expect to sail past Rule 12.

---

[1] https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf (last visited February 21, 2024) (emphasis to title added).

What's more, in an effort to aggrandize their case, Plaintiffs back themselves into the strictures of Rule 9(b), which applies to claims sounding in fraud. While the Complaint itself only alleges that strangers to Google experienced unlawful eavesdropping, the Opposition brief argues that Google made representations to Plaintiffs and the public that it never meant; in short, that it defrauded the public by promising it would not use sensitive information for advertising, but, Plaintiffs allege, it intended to do so, anyway. To the extent this is another attempt to amend the Complaint, the Court should apply Rule 9(b) to this theory of the case, as other courts in this District have done when plaintiffs make similar accusations. *See, e.g.*, *Rodriguez v. Google, LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021).

**A. Plaintiffs' CIPA claims should be dismissed.**

***Consent***. Google required the Websites to disclose their use of Google Analytics to Plaintiffs, and the Websites did. *See* RJN Exs. 4–6; Mot. at 7. Ample authority supports dismissing Plaintiffs' claims on this basis alone. *See Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860- JSW, 2021 WL 940319, at *2–3 (N.D. Cal. Mar. 9, 2021) (dismissing claims because plaintiffs consented to data collection described in privacy policy); *see also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015).

Conspicuously, Plaintiffs stop short of arguing that they *did not consent* to the Websites' use of Google Analytics, or that the Websites did not inform them that they used Google's services to collect information. Presumably because they can't, as a factual matter, make such a claim in Court. So instead they contend that Google must meet its burden of establishing consent to the transmission of "confidential tax information," pointing to general allegations in the Complaint that Plaintiffs did not consent to "wiretaps." Opp. at 4-7; Compl. ¶¶ 62-63, 78. To the extent Plaintiffs allege they never consented to the transmission of their *confidential tax return information*, as opposed to their consent to the Websites' use of Google Analytics, it is Plaintiffs who have not met their burden to allege what "sensitive financial information" of theirs the Websites are said to have transmitted to Google. Compl. ¶¶ 1, 32. Plaintiffs say only that "[t]he type of data collected by these sites *may* include email addresses, data on users' income, filing status, refund amounts, buttons that were clicked, and year of return." Compl. ¶ 37 (emphasis

added). Hypothetical allegations about which data may—or may not—have been transmitted to Google strain plausibility. *See Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 4707184, at * 3 (N.D. Ill. July 24, 2023) (Plaintiff's "allegations are far too vague to allow an inference to be drawn that [the website] was actually disclosing [sensitive data], rather than just metadata.").

For the same reasons, the Court need not reach Plaintiffs' argument that general privacy policy disclosures "are insufficient to establish consent to the sharing of specific, sensitive information," because Plaintiffs do not plausibly allege that any specific or sensitive information was actually shared. *See* Opp. at 6. Plaintiffs' citation to *In re Meta Pixel Healthcare Litigation* is inapposite, as that case involved specific allegations that Meta's tracking pixel transmitted "information about doctors, medical conditions, and appointments associated with a patient's session" to Meta. 647 F. Supp. 3d 778, 785, 793-94 (N.D. Cal. 2022). Likewise, the plaintiffs in *Doe v. FullStory, Inc.* alleged that defendants FullStory, Meta, and TikTok, intercepted their "health insurance information, health data and other highly sensitive information, including prescription information, answers to health questions, medication information, allergies, age, and weight." *Doe v. FullStory, Inc.*, No. 23-CV-00059-WHO, 2024 WL 188101, at *1 (N.D. Cal. Jan. 17, 2024). And the plaintiffs in *Gershzon v. Meta Platforms, Inc.* specifically alleged that Meta obtained statutorily-protected "personal information and communications, including names, disability information, and email addresses" through Meta's pixel. No. 23-CV-00083-SI, 2023 WL 5420234, at *1 (N.D. Cal. Aug. 22, 2023). By contrast, all that Plaintiffs allege here is that certain categories of financial and tax information *may* have been—or may have not been—disclosed to Google. Plaintiffs' authority does not rescue the vague allegations of the complaint before the Court.[2]

Further, as discussed below, the mere use of Google for analytics services by the Websites cannot by itself subject Google to liability any more than the Websites' use of Dropbox to store

[2] Nor is *Brown v. Google LLC*, No. 4:20-cv-3664-YGR, 2023 WL 5029899, at *9 (N.D. Cal. Aug. 7, 2023) ("Brown II") instructive. *Brown II* involved Google's "incognito" mode, an entirely different technology than the web analytics tool at issue here.

their data, Amazon to host their web servers, or Ernst & Young to help them with their accounting. Plaintiffs cannot dispute that they gave the Websites consent to use Google Analytics. To the extent their argument is that the Websites mis-configured the service to send more information than they expected, that cannot be an issue for which Google must answer.

***Vendor***. It is undisputed that the manufacturer of a tape recorder would not be liable for the tape recorder's unlawful use to eavesdrop on a confidential communication. *Cf. Rogers v. Ulrich*, 52 Cal. App. 3d 894, 896 ( 1975). It is from this basic principle that the Court's analysis must begin, because Plaintiffs allege, in effect, that Google Analytics is a digital tape recorder used by the Websites to record their interactions with their own users. Plaintiffs' CIPA claims fail because a vendor who provides a tool for a website to record user interactions cannot be liable for the website's recording *solely because the website used the tool*. *Graham v. Noom*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). Something more is required. Else, every website would subject its every vendor to liability for hosting the site, processing its data, doing its accounting, and so on. It is the rare entity that hosts its own website on its own servers; to bless Plaintiffs' proposed rule would fly in the face of this obvious principle, which stems from blackletter agency principles.

But Plaintiffs' supposed majority rule is a fabrication, anyway. California case law itself distinguishes the manufacturer of a tape recorder from a secret listener. *See Williams v. DDR Media, LLC,* No. 22-CV-03789-SI, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023) (noting that "whether [defendant's] software is more akin to a tape recorder or a secret listener . . . is a close question, and district courts have split on the issue."). Sometimes the factual allegations fall into the camp of tape recorder; other times, secret listener. *See* Mot. at 8 (citing, among others, *Williams v. What If Holdings*, No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022); *Johnson v. Blue Nile, Inc*., No. 20-CV-08183-LB, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021); *Yale v. Clicktale, Inc*., No. 20-CV-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021)); *see also Doe I v. Google LLC* , No. 23-cv-02431, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) ("Courts have drawn a distinction for purposes of CIPA liability between 'independent parties who mined information from other websites and sold it' versus vendors who provide 'a software service that captures its clients' data, hosts it on [its] servers, and allows the

clients to analyze their data.'") (internal quotations omitted). The Court's task here is to delineate which version Plaintiffs have plausibly pleaded.

Plaintiffs rely on dicta from *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *5 (N.D. Cal. Jan. 5, 2023), that can easily be reconciled with the *Noom* line of cases. In *Javier*, the Court noted that if the tool's provider "does not have the capability to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of its owner)," then liability will not lie; but if the tool has "the *capability* to use its record of the interaction for any other purpose," then the provider of the tool could be liable. *Id*. at *6 (emphasis added). To be sure, a focus on the tool's other capabilities is misplaced, because the second clause of section 631(a) "penalizes anyone who 'reads, or attempts to read, or to learn the contents or meaning of' the communication," and does not cover a software company that "merely recorded the communication for retrieval by a party to the same communication." *DDR Media, LLC,* 2023 WL 5352896, at *4 (quoting Cal. Penal Code § 631(a)); *see also James v. Allstate Ins. Co.*, No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) ("Plaintiff's allegation that 'this data is stored or can be accessed by Heap' is insufficient to support a plausible interference Heap attempted to read or learn the contents of the communication while in transit."). But in a case like this, Plaintiffs cannot distinguish the *Noom* line of cases by arguing that Google actively acquires information for its own purposes (an argument unrelated to the *capability* of the tool). Opp. at 8–9.

Ultimately, Plaintiffs are asking the Court to conclude that because Google *could have* used sensitive information provided by the Websites through Google Analytics for advertising, *ergo* it *must have* used those features here, with Plaintiffs' data, in an unlawful manner. This is precisely the type of speculative pleading that is impermissible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'") (cleaned up). This distinguishes Plaintiffs' allegations from the cases they rely on. *See* Opp. at 9; *Noom*, 533 F. Supp. 3d at 832 (distinguishing *In re Facebook, Inc*. as that case contained allegations that the vendor independently mined and sold information); *Katz-Lacabe v. Oracle Am., Inc.,* 668 F. Supp.

3d 928, 944 (N.D. Cal. 2023) (alleging "Oracle combines and sells information"). The Court should dismiss Plaintiffs' CIPA claims on the ground that Google acted as a mere vendor in providing its Google Analytics tool to the Websites.

***Intent***. Plaintiffs assert Google's intent, but do not back it up with plausible allegations.[3] Plaintiffs argue that because Google's "business model is largely based on data mining," that means Google must have "surreptitiously used Plaintiffs' tax return information for its own advertising purposes." Opp. at 10. If that were good enough to allege intent, every cloud service provider would be charged with the vicarious intent of anyone who misused their service for tortious or criminal purposes. And Google would be liable for everything every one of its cloud customers does. Products that can be used for legal and illegal purposes do not subject the manufacturer to vicarious liability for the product's every use, especially here where the vast majority of developers use Google's products in an indisputably legitimate manner. *Cf., e.g., Doe I*, 2023 WL 6882766, at *2 (finding it is possible, based on the evidence presented, that Google is merely a vendor providing the Google Analytics service); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016) ("[C]ourts have long understood that tracking cookies can serve legitimate commercial purposes.").

Plaintiffs' assertion of Google's intent is also called into question by the Senate Investigation Report, which Plaintiffs cite repeatedly in the Complaint and Opposition. *See supra* at 1. But the Report actually explains that the data collected by Google Analytics "is not used by Google for other purposes unless the customers explicitly opt-in to do so." *Attacks on Tax Privacy*, at 8. As stated in the Report, Google "provides the data only to website publishers 'to improve or create new products and services,' and not to serve ads or track or profile users across the internet." *Id.*

[3] Plaintiffs also claim that "intent is irrelevant to" a CIPA section 631(a) claim. Opp. at 11. Not so. As Plaintiffs' own authority indicates, a section 631(a) claim always requires intentional or willful conduct and criminalizes: "*intentional* wiretapping, *willfully* attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained *as a result of engaging in either of the previous two activities*." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978) (emphasis added); *see also Gershzon*, 2023 WL 5420234, at *11.

Plaintiffs argue in the alternative that Google was "willfully blind to the fact that it received and used tax return information" because it had a "financial incentive to turn a blind eye to the problem." Opp. at 11. But again, Plaintiffs never allege that the Websites transmitted any data to Google in particular, or that Google reviewed or used the data it received. Such paltry and conjectural allegations cannot support a CIPA claim.

***Section 632.*** Plaintiffs fail to rebut Google's argument, Mot. at 9, that the complaint does not allege wrongdoing on Google's part because the *Websites*, not Google performed the alleged recording. Indeed, Plaintiffs concede that website owners make the choice to add Google Analytics "to their website code for each page of their site to measure certain actions taken by users on the site." Compl. ¶ 25; Opp. at 14. A plain reading of the statutory text shows that CIPA section 632 only penalizes a *defendant who records* a confidential communication. *See* Cal. Penal Code § 632; *Weiner v. ARS Nat'l. Servs., Inc*., 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012); *see also Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) ("Section 632 'does not prohibit eavesdropping in general; it applies only to the use of 'any electronic amplifying or recording device' to eavesdrop upon or record a confidential communication.'").

Plaintiffs' citation to *Brown II*, 2023 WL 5029899, at *17, does not rescue this claim. *See* Opp. at 15. Plaintiffs ignore that even an "'objectively reasonable expectation' that their communications with third-party apps [would be treated as confidential] . . . does not reasonably give rise to the expectation that *nobody* (including the apps' developers) would record the communications. To make out the latter showing, plaintiffs must plead unique, definite circumstances rebutting California's presumption against online confidentiality." *Rodriguez*, 2021 WL 2026726, at *7. Put more simply, when a user surfs the web, and the website invites them to accept cookies and tells them certain information will be recorded, the user can hardly claim that she expected the browsing to be confidential, at least as to the website developer and its technology service provider. Unlike in *Brown II*, which concerned the plaintiffs' expectations of privacy when using Google's "Incognito" mode, here the Websites carefully and unambiguously disclosed their use of Google Analytics in their privacy policies, which undercuts any reasonable

expectation of confidentiality under Section 632. And the Plaintiffs are strangers to Google, not Google Chrome users who relied on a Google description of a Google feature when they believed they were browsing privately.

***Judicial Notice.*** Google's request for judicial notice of the foundational contracts is proper.[4] To start, Google is not asking the Court to assume the truth of these judicially noticeable documents. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); Opp. at 5. Google is not, for example, asking the Court to assume that the Websites in fact used Google Analytics just because that use was disclosed in their privacy policies. Moreover, Google does not cite "random versions of the privacy policies," but the most recent versions in effect. *See* Opp. at 4. Insofar as Plaintiffs argue that Google has not shown that they assented to these policies, or what prior versions of the policies said—and that argument is dispositive for the Court—Google respectfully requests that the Court order targeted discovery on just that question before the parties and the Court expend substantial resources litigating an otherwise doomed claim. Indeed, Plaintiffs stop notably short of claiming they never agreed to the use of Google Analytics, no doubt because they cannot truthfully do so.

**B. Plaintiffs' federal and Texas wiretap claims must be dismissed.**

***One-Party Consent.*** The federal and Texas wiretapping laws are one-party consent statutes. 18 U.S.C. § 2511(2)(d); Tex. Code Crim. Pro. Art. 18A.502(1). Plaintiffs allege that the Websites voluntarily installed Google Analytics by "add[ing it] to their website code for each page of their site to measure certain actions taken by users." Compl. ¶ 25. Because the Websites "must have chosen to deploy [Google's] tools on their websites, it necessarily follows that one of the parties to the communication—the websites themselves—gave prior consent to such interception." *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023) (quotation marks omitted). Plaintiffs argue that "Judge Orrick recently rejected" this argument and that Google must prove the Websites "were fully informed and consented to the

[4] Plaintiffs suggest that Google's request for judicial notice violates governing page limits. Plaintiffs cite no Local Rule that Google apparently violated, nor is there such a rule. The Court should disregard this unsupported and frivolous argument.

disclosure of the sensitive tax-filing information at issue here." Opp. at 16. But the allegations in the Complaint show just that; that the Websites as the "Google Analytics customer . . . configure[d] the settings to allow them to customize what data is collected and how it is processed." Compl ¶ 26; *see also id.* ¶¶ 24-25, 30-31, 33-34, 36. The Court need not draw any inferences in Google's favor to conclude that the Websites consented; this fact is apparent from the face of the Complaint.

***Tortious Purpose Exception.*** Plaintiffs make the same failed tortious purpose argument that has led to various dismissals in this Court. *See* Opp. at 16–17. The supposed crimes or torts are premised on the *same* alleged interception, and do not vitiate consent. *Doe I,* 2023 WL 6882766, at *2 (citing *Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). Plaintiffs allege that "Google's wiretapping was 'done for the purpose of violating laws prohibiting the unlawful disclosure and review of tax information.'" Opp. at 17; Compl. ¶ 85. But the Ninth Circuit has rejected that circular approach. In *Planned Parenthood,* the Ninth Circuit reversed the verdict on the Wiretap Act claim, holding the crime or tort exception did not apply because the purpose of the recording was the same as the purpose of the criminal or tortious act. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Similarly, here, even if Google *could* violate the tax laws Plaintiffs point to,[5] the purpose of that alleged violation is not separate and independent from the purpose of the recording.

***Intent.*** Plaintiffs do not plausibly allege that Google *intentionally* intercepted any communication, which is a necessary element under both statutes. *See* 18 U.S.C. § 2511; Tex. Pen. Code § 16.02(b). *See supra* at 6–7.

[5] The Complaint references 26 U.S.C. section 7213A(a)(2), which criminalizes inspection of unlawfully obtained tax return information, and section 7216, which criminalizes the disclosure and use of tax return information. *See* Compl. ¶ 3. But section 7213A(a)(2) is limited by the plain language of the statute to "[s]tate and other employees" who "willfully [] inspect, . . . any return or return information." 26 U.S.C. § 7213A(a)(2). And Section 7216 only applies to persons "engaged in the business of preparing, or providing services in connection with" preparing tax returns. *Id.* § 7216(a). Plaintiffs do not allege that Google provides its web analytics services to the Websites in connection with the preparation of tax returns; rather, they allege that Google Analytics is "used by website publishers to better understand how people enter, use, and leave their websites." Compl. ¶ 33. Plaintiffs have not shown that Google could violate these tax laws.

**C. Plaintiffs fail to plausibly plead that Google Analytics is a spying device.**

***No private right of action.*** "The three circuit courts that have considered the question" have squarely held that "there is no private right of action for the violation of § 2512(1) of the Wiretap Act." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1084-85 (C.D. Cal. 2021). Likewise, "CIPA § 637.2 does not provide [plaintiffs] with a private right of action to enforce CIPA § 635." *Id.* at 1085. Plaintiffs argue that a Sixth Circuit case, *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), "distinguished Google's authorities" by allowing private lawsuits under § 2512(1) for possessing a spying device if a plaintiff also asserts a claim under § 2511 for intercepting communications. Opp. at 18. But *Yoon* was decided after *Luis* and expressly rejected this reasoning. *Yoon*, 549 F. Supp. 3d at 1085. Moreover, *Luis* addressed only the federal Wiretap Act and said nothing about CIPA at all. In any event, there is no allegation that Google "plays an active role" in using Google Analytics to intercept communications. Opp. at 18. Plaintiffs do not allege that Google directed the Websites to transmit any sensitive financial data to Google in particular. To the contrary, Plaintiffs allegations make clear that it is the Websites that choose whether to implement Google Analytics, which data is collected, and how it is used. Compl. ¶¶ 25-26.

***Google Analytics is not inherently unlawful.*** Section 2512 of the Wiretap Act is "narrowly drawn" and bans only "a narrow category of devices," like "martini olive transmitters, spike mikes, and microphones disguised as wristwatches and fountain pens." *United States v. Schweihs*, 569 F.2d 965, 968 (5th Cir. 1978). There is no liability for "electronic equipment designed for regular use in varied nonsurreptitious activities, even though the equipment is capable of being used in a surreptitious manner." *Id.* Google Analytics is a commonplace internet analytics tool used for legitimate business purposes (even if the Websites here used it improperly). Compl. ¶¶ 24, 30-31. Plaintiffs argue that their claims should proceed based on a single sentence of a Judge Chhabria opinion, which concluded without analysis that "the Court must assume the truth of [plaintiff's]" allegation that [defendant's] code is a 'device . . . primarily or exclusively designed or intended for eavesdropping upon the communication of another.'" *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *see* Opp. at 18. But Plaintiffs' theory defies plausibility and would require the Court to make a sweeping

assumption that *all* web analytics tools are unlawful spying devices, rather than lawful, commercially ubiquitous web traffic analysis tools. This is not the law.

**D. Plaintiffs' claims under the Florida Security of Communications Act and Illinois Eavesdropping Act must be dismissed.**

Plaintiffs' claims under Florida and Illinois law fail for many of the same reasons their CIPA claims fail, as articulated in Google's opening papers. Mot. at 14–15; *see supra* at 2–7.

Additionally, Plaintiffs' Opposition fails to dispute the inadequacy of their allegations with respect to the Illinois Eavesdropping Act claim, which requires Plaintiffs to show Google engaged in intentional misconduct *and* that Google intended to intercept any communications in a "surreptitious manner." *See* Mot. at 15; 720 Ill. Comp. Stat. 5/14-2(a); *Henyard v. MV Transp.*, No. 1:15-cv-10835, 2020 WL 7027540, at *5 (N.D. Ill. Nov. 29, 2020) ; *see also Cook Au Vin, LLC v. Mid-Century Ins. Co.*, No. 1-22-0601, 2023 WL 3607748, at *4 (Ill. App. Ct. May 24, 2023). When, as here, a plaintiff fails to provide a defense for a claim in opposition, the claim should be deemed waived. *See Personal Elec. Transp., Inc. v. Office of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009). If the Court is not persuaded by Google's global arguments for dismissal, the Court should—at the very least—dismiss the Illinois Eavesdropping Act claim based on these deficiencies, which Plaintiffs fail to rebut.

**E. The claims outside the limitations period must be dismissed.**

Plaintiffs make the cursory assertion that the "discovery rule tolls any applicable statute of limitations," but they fail to cite any authority or make any specific arguments as to why it should apply here. "For the discovery rule to apply, the plaintiff 'must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1156 (N.D. Cal. 2023) (citation omitted). Plaintiffs fundamentally fail to allege facts supporting their reasonable diligence, and therefore cannot show that the discovery rule applies. Instead, Plaintiffs rely on *FullStory* to suggest that the discovery rule will rescue untimely claims whenever "proprietary software" is at issue. Opp. at 13. But the complaint in *Fullstory* contained detailed allegations about the defendants' "exclusive knowledge" of the "highly technical" technology at issue in that

case, and there "were no disclosures" that would inform reasonable consumers that their data was being shared with third parties. *FullStory, Inc.*, 2024 WL 188101, at *3. Plaintiffs do not, and cannot make similar allegations here in light of the fact that the Websites disclosed their use of Google Analytics. Plaintiffs' untimely claims—including the CIPA claims, all claims under the Florida Security of Communications Act, and most federal Wiretap claims, must be dismissed. Mot. at 16.

## II. CONCLUSION

For all these reasons, the Court should dismiss the complaint.

Date: February 21, 2024

**WILLKIE FARR & GALLAGHER LLP**

By: _/s/ Benedict Hur_____________
Benedict Hur
Simona Agnolucci
Eduardo E. Santacana
Joshua Anderson
Yuhan Alice Chi
Anika Holland
Naiara Toker

Attorneys for Defendant
Google LLC