**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@willkie.com
JOSHUA ANDERSON (SBN: 312836)
jdanderson@willkie.com
YUHAN ALICE CHI (SBN: 324072)
ychi@willkie.com
NAIARA TOKER (SBN: 346145)
ntoker@willkie.com
ANIKA HOLLAND (SBN: 336071)
aholland@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARY L. SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No.: 5:23-cv-03527-PCP<br>(Consol. w/ 5:23-cv-04191-BLF)<br><br>**DEFENDANT GOOGLE, LLC'S STATEMENT OF RECENT DECISION**<br><br>Complaint Filed: 7/14/2023<br>Trial Date: N/A<br><br>Hon. P. Casey Pitts, District Judge<br>San Jose Courthouse, Ctrm. 8 – 4th Floor |

**DEFENDANT GOOGLE LLC'S STATEMENT OF RECENT DECISION**

Pursuant to Civil Local Rule 7-3(d)(2), Defendant Google LLC ("Google") respectfully submits for the Court's consideration the recent Order Granting Defendants' Motion to Dismiss in *Jones et al. v. Peloton Interactive, Inc.*, No. 23-cv-1082-L-BGS, 2024 WL 1123237 (S.D. Cal. Mar. 12, 2024), a true and correct copy of which is attached hereto as Exhibit A. The decision is relevant to Plaintiffs' claim for a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a), which Google has moved to dismiss.

Date: March 18, 2024

**WILLKIE FARR & GALLAGHER LLP**

By: *<u>/s/ Eduardo E. Santacana</u>*
Benedict Hur
Simona Agnolucci
Eduardo E. Santacana
Joshua Anderson
Yuhan Alice Chi
Naiara Toker
Anika Holland

*Attorneys for Defendant Google LLC*

# EXHIBIT A

2024 WL 1123237
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

JULIE JONES, et al., Plaintiff,
v.
PELOTON INTERACTIVE, INC., Defendant.

Case No.: 23-cv-1082-L-BGS
|
Filed 03/12/2024

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 10.]**

Hon. M. James Lorenz United States District Judge

***1** Pending before the Court in this putative class action asserting violations of California privacy laws is Defendant Peloton's Motion to Dismiss. [ECF No. 10.] The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated below, the Court grants the Motion to Dismiss.

I. FACTUAL BACKGROUND [1]

Plaintiff brings this putative class action against Defendant Peloton as the owner and operator of the website https://www.onepeloton.com ("Website") for violations of California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630-638, California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code§ 17200 *et seq*, and the California Constitution. Plaintiff's claims arise from Defendant's use of the third-party software called Drift which was embedded into its chat feature. Chat communications with the Website are automatically intercepted and recorded by Drift which creates transcripts of the conversations. Drift receives the communications while they are in transit because the imbedded code routes the communications directly to Drift. Website users are not informed that Drift is intercepting the communications but instead consumers believe they are interacting only with a Peloton representative. Drift allegedly harvests data from the chat transcripts it intercepts, and then interprets, analyzes, stores, and uses the data for a variety purposes. Information collected includes the full transcript of the conversation, the date and time the conversation began, the IP address of the visitor, the web browser they used to access the Website, the device used and which words triggered the Drift software to route the visitor to a particular Peloton representative. Visitors to the Website often share personal information on the chat due to the nature of Peloton's business. Plaintiff and other class members visited the Website within the class period using smart phones, and/or wifi-enabled tablets and laptops.

II. PROCEDURAL BACKGROUND

On June 9, 2023, Plaintiff filed a Complaint asserting violations of CIPA, the UCL and California Constitution in relation to the unauthorized interception, collection, recording, and dissemination of Plaintiff's and Class Members' communications and data. [ECF No. 1.] On August 16, 2023, Defendant filed the present Motion to Dismiss. (Motion [ECF No. 10.]) On September 5, 2023, Plaintiffs filed a response in opposition. (Opposition [ECF No. 12.]) On September 12, 2023, Defendants filed a Reply. [ECF No. 32.])

III. DISCUSSION

Defendant seeks dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

*A. Failure to State a Claim*

A 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain, in part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or " 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

***2** In reviewing a 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill*

*v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See* *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

*1. First Cause of Action-Violation of the California Invasion of Privacy Act, Cal Penal Code § 631*

Section 631(a) of the California Penal Code provides for civil and criminal liability where:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

Cal. Penal Code § 631(a).

The California Supreme Court has explained that Section 631(a) consists of three main clauses which cover "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978). "Section 631(a) further contains a fourth basis for liability, for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1134 (E.D. Cal. 2021)(quoting Cal. Penal Code § 631(a)). In the Complaint, Plaintiff alleges that Peloton "aids and abets Drift to commit both unlawful interception [Clause Two] and unlawful use [Clause Three] under Section 631(a), surreptitiously and as a matter of course." (Compl. ¶ 39). Plaintiff makes no allegations regarding Clause One.

*a) Section 631(a) Clause Two "Eavesdropping"*

Under section 631(a), a person is liable if he or she secretly listens to another's conversation. *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). Only a third party can "eavesdrop" on a conversation, therefore a party to the communication is exempt from liability under section 631. *See* *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020); *Warden v. Kahn*, 99 Cal.App.3d 805, 811 (Ct. App. 1979). "The party exception must be considered in the technical context of [a] case." *Facebook*, 956 F.3d at 607. "[C]ourts have applied Section 631(a) via the language of its second clause to the internet browsing context." *What If Holdings*, 2022 WL 17869275, at *2.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

*(i) Party Exception*

***3** Defendant argues that the claim must be dismissed because Drift was a party to the communications, and not an eavesdropper, and that Drift did not intercept the "contents" of Plaintiff's communications. Peloton explains that Drift functions as a "tool" to supply the information collected to Peloton, and Plaintiff does not assert any facts suggesting that Drift collects information to use for its own purposes, therefore it functions as an extension of Peloton. (*Mot.* at 6-7). Plaintiff counters that this case does not concern any recording by Peloton, but by Drift, which is a third-party aided and abetted by Peloton in the secret interception of consumers' conversations for Drift's own purposes. (Oppo. at 11). As a result, the party exception does not apply to Plaintiff's section 631(a) claims because Drift was not a mere extension of Peloton. (*Id.*)

Courts generally look to the third-party's use of the recorded conversations when determining whether a third-party is operating as a party or more akin to an eavesdropper for purposes of the party exception. *Graham v. Noom*, 533 F.Supp.3d 831, 833-34 (N.D. Cal. Apr. 8, 2021)(tracking service provider was a participant in the conversation under § 631(a) because that defendant only stored user's data and did not use or resell that data). In *Graham*, the court reasoned that the tracking defendant provided a tool, like a tape recorder, and therefore was not an eavesdropper. *Id.* at 833. In contrast, an independent party that captures data from a hosting website to sell to advertisers to generate revenue has been considered an eavesdropper. *Facebook*, 956 F.3d at 607-608. In *Facebook*, the court held, "[p]ermitting an entity to engage in the unauthorized duplication and *forwarding* of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id.* at 608 (emphasis added).

In the Complaint, Plaintiff asserts that:

> Defendant allows at least one independent Third Party (on information and belief, "Drift") to secretly intercept in real time, eavesdrop upon, interpret, analyze, store, and use for that Third-Party's own purposes transcripts of Defendant's chat communications with unsuspecting website visitors – even when such conversations are private and deeply personal.

(Compl. ¶ 12).

According to Plaintiff, Drift itself uses the information gathered for multiple purposes including the following:

> Drift boasts that it harvests data from the chat transcripts it intercepts, eavesdrops upon, interprets, analyzes, stores, and uses for a variety of its own purposes—all without Plaintiff's or class members' consent—saying, "In short, Drift does not allow conversations to be deleted. This is because Drift doesn't want to lose any activity with your contacts and/or leads. Instead of deleting conversations, Drift utilizes Conversation Statuses to help organize your chats."

(Compl. ¶ 15).

Next the Complaint states, "Drift claims that it analyzes Plaintiff's and class members' conversations to determine the likelihood they will buy a product or service from Defendant." (Compl. ¶ 16). In addition, Plaintiff asserts that "Drift utilizes a number of cookies to record a Website visitor's activity during and after the visitor's chat sessions with Defendant and to link to a current chat the transcripts of previously intercepted chats between the visitor and Defendant." Compl. ¶ 17).

At this stage in the pleading, the Court must assume the truth of Plaintiff's assertions that Drift surreptitiously records users' communications via the chat feature on Peloton's website. Although Plaintiff makes a conclusory assertion that Drift is using the data collected for its own purposes, the allegations do not support this claim. The assertions in the Complaint do not contend that Drift collects this information and aggregates the data for resale or distribution to other vendors which would make Drift a third-party. *See* *Facebook*, 956 F.3d at 608. Instead, Drift acts as an extension of Peloton, providing a tool that allows Peloton to "record and analyze its own data in aid of [Peloton's] business." *Graham*, 533 F.Supp. 3d at 832. Accordingly, Drift functions as an extension of Peloton making the party exception applicable.

*(i) Contents of Communication*

***4** For purposes of Section 631(a)'s second clause Plaintiff must allege that Peloton or Drift "read, or attempts to read, or to learn the contents or meaning of any message, report, or communication." Cal. Penal Code § 631(a). "The Ninth Circuit has held that the 'contents' of an online communication under federal wiretap law 'refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication.' " *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

Defendant argues that the claim must be dismissed because Plaintiff fails to identify any communication intercepted by Drift which qualifies as "content." (Mot. at 11). In response, Plaintiff contends that the Complaint sufficiently alleges she provided information in Peloton's chat feature which constitutes "content." (Oppo. at 5-6).

Here, Plaintiff asserts in the Complaint that "[g]iven the nature of Defendant's business, visitors often share highly sensitive personal data with Defendant via the Website's chat feature." (Compl. at ¶ 20). This information is used, according to the Complaint, in the following manner:

> Drift creates a "CQL score" for each unsuspecting visitor based on the degree to which Drift's AI thinks (1) they are interested in buying Defendant's produce or service and (2) their goals can be accomplished with Defendant's product or service. Each unsuspecting visitor has their conversations analyzed in combination with numerous other attributes that Drift has collected about the visitor, including through "Drift Intel." Drift Intel is comprised of Salesforce record details, HubSpot record details (using the email address of the visitor or data collected using the HubSpot cookie), a visitor's recently visited webpages, and the "full activity timeline" of the visitor. This data is measured in tandem with every detail that Drift can collect about a visitor's chat conversation, including the full transcript of the conversation, the date and time the conversation began, the IP address of the visitor, the web browser they used to access the Website (Chrome, Firefox, etc.), the device they used to have the chat conversation (iPhone 14, Microsoft Surface Pro, etc.), and which words in the visitor's conversation triggered Drift's software to route the visitor to a particular person or "bot playbook."

(Compl. ¶ 16).

The allegations in the Complaint do not sufficiently assert that "content" is intercepted. Plaintiff makes a conclusory assertion that Drift captures the "full transcript of the conversation" but does not identify enough facts about the content of the allegedly intercepted conversations to enable Defendants to defend itself effectively. *Starr*, 652 F.3d at 1216. Merely asserting that Drift uses the information it collects even when it is "private and deeply personal" is insufficient.

The additional information which Plaintiff claims is surreptitiously intercepted is "record" information such as the users' IP address, device used to connect to website, web browser used, date and time of communication, words used to prompt the chat to direct her to the appropriate Peloton advisor or "bot playbook". (Compl. ¶16). This information does not constitute "content" because it is "record information regarding the characteristics of the message that is generated in the course of the communication" including "the name, address and subscriber number or identity of a subscriber or customer." *Graham*, 533 F.Supp.3d at 833. In addition, "the source, destination, duration, and time of a call" are not considered "content" because "it is data that is incidental." *United States v. Reed*, 575 F.3d 900, 916 (9th Cir. 2009). Although the Court must assume the truth of assertions at this stage in the pleadings, the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also* Fed. R. Civ. P.

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

12(b)(6). For these reasons, Defendants motion to dismiss is granted on this ground.

*(b) Section 631(a) Clause Three "Use" Claim*

***5** The third clause of Section 631(a) prohibits a defendant from using or "attempting to use, in any manner, or for any purpose, or to communicate in any way, any information" obtained as outlined in the preceding clauses. Cal. Penal Code § 631(a); *see also* *Tavernetti*, 22 Cal.3d at 192.

As noted above, Plaintiff has not provided facts that assert Drift recorded the putative class members' chat information for some use other than collecting, assembling, and supplying it back to Peloton. *See generally* *Graham*, 533 F.Supp.3d at 832. Plaintiff has failed to plead sufficient facts to support her claim under clause two of Section 631(a) and does not assert a claim under clause one therefore, Plaintiff's claim based on an alleged violation of clause three also fails because maintaining a successful claim under the third clause of § 631 requires "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti*, 22 Cal. 3d at 192. Logically then, Plaintiff's claims of aiding and abetting are not supported because Drift has not engaged in wrongdoing. In light of the above, the Court grants Defendant's motion to dismiss without prejudice and with leave to amend.

*2. Second Cause of Action-Violation of California Invasion of Privacy Act-California Penal Code 632.7*

Section 632.7 imposes liability on anyone who aids in the interception and intentional recording of "a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone." In interpreting a California statute, the Court "first looks to the language of the statute, giving effect to the words' plain meaning; 'if the language is unambiguous, the plain meaning controls.' " *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 650 (9th Cir. 2016) (quoting *Voices of the Wetlands v. State Water Res. Control Bd.*, 257 P.3d 81, 93 (2011)). "A statute's plain meaning, however, cannot be determined without reference to the context in which the words are used." *Id.*

Defendant moves to dismiss Plaintiff's second cause of action claiming that Plaintiff does not allege the communication involved two telephones as required under section 632.7. (Mot. at 13). According to Defendant, Plaintiff does not plead that she used a telephone to communicate with Peloton via the chat function, and even if she did so allege, the statute only applies to communications transmitted by telephone, not internet. (Reply at 7).

Plaintiff counters that the statute should be read broadly to include communications between Peloton's website and the putative class members' cell phones, and other internet connected devices. According to Plaintiff, the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme. (Oppo. at 12). Because Section 632.7 broadly defines the term "Communication" to include transmission by "voice, data, or image, including facsimile" it would be reasonable to assume that the Legislature intended the term "landline telephone" to be broadly construed to include cell phones. (*Id.* at 14). In addition, Plaintiff argues that the internet works through a series of networks that connect devices using telephone lines, therefore the devices that are used to connect to the website are functionally equivalent to "landline telephones" under Section 632.7. (*Id.*)

***6** The Court finds that the plain language of section 632.7 limits the applicability of the statute to communications between certain types of telephones, not the internet, and Plaintiff did not allege that the communication was between two telephones as required by statute. *See* *Garcia v. Build.com, Inc.*, No. 22-CV-01985-DMS-KSC, 2023 WL 4535531, at *6 (S.D. Cal. July 13, 2023) (dismissing a section 632.7 claim where "Plaintiff makes no persuasive argument that the statute contemplates internet communications between a smart phone and an unspecified device on Defendant's end" (quotation omitted)). Indeed, "[t]ransmission by internet through a device called 'phone' is not sufficient." *Id.* Plaintiff cites no binding authority for the proposition that Section 632.7 should be interpreted to include internet connected devices, though the fact that internet connectivity may be dependent on telephone lines and the California legislature's intent to create broad privacy protections may result in changes to the statute to cover these

communications. Accordingly, Defendant's motion to dismiss Plaintiff's second cause of action is granted with leave to amend. *See* *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." (quotation omitted)).

*B. UCL Standing*

In the third cause of action, Plaintiff asserts that Peloton violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, by engaging in conduct which violated CIPA and Section 631. (Compl. ¶¶ 55-56). Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice." "[A] plaintiff must have suffered an injury in fact' and lost money or property as a result of the unfair competition' to have standing to pursue either an individual or a representative claim under the California Unfair Competition Law." *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 849 (2008); *see also* Cal. Bus. & Prof.Code § 17204. "Where standing is raised in connection with a motion to dismiss, the court is to 'accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party.' " *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009) (*quoting* *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009)).

Defendant argues that Plaintiff has not pled any facts sufficient to show she lost money or property as a result of Peloton's conduct, therefore she does not have standing to pursue this claim. (Mot. at 15). In response, Plaintiff claims that the putative class members' data has inherent economic value because Defendant and Drift harvested the data for financial gain. (Oppo. at 16).

The UCL claim is insufficient at this stage of the proceedings because it does not specify whether it is based on unlawful, unfair, or fraudulent business practices, and it does not include facts showing that Plaintiff suffered an economic injury as a result of Peloton's conduct. *Clark v. Countrywide Home Loans, Inc.*, 732 F.Supp.2d 1038, 1050 (E.D. Cal. 2010). "The relevant inquiry is not whether Defendants can profit from Plaintiff's personal information, but whether Plaintiff [herself] can profit from [her] own data" and here, Plaintiff has not demonstrated that "[her] data is economically profitable" to her. *Greenley v. Kochava, Inc.*, *18, 2023 WL 4833466 (S.D. Cal. 2023). For these reasons, Plaintiff's UCL claim is dismissed with leave to amend.

*C. Constitutional Privacy Claim*

In the Complaint, Plaintiff claims that Defendant violated the California Constitution by intentionally invading the privacy rights of the putative class members "and worked cooperatively with a third party to do so." (Compl. ¶ 64). To state a claim for invasion of privacy, "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.' " *Facebook*, 956 F.3d at 601. "Plaintiffs must show more than an intrusion upon reasonable privacy expectations. Actionable invasions of privacy also must be 'highly offensive' to a reasonable person, and 'sufficiently serious' and unwarranted so as to constitute an 'egregious breach of the social norms.' " *Id.* (*citing* *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009).

***7** Here, Defendant argues that Plaintiff fails to satisfy the elements of an invasion of privacy claim. First, Plaintiff fails to allege a legally protected privacy interest because she is presumably alleging a violation of her informational privacy interest but has not identified any "sensitive and confidential" information collected by Peloton. (Mot. at 17-18). Second, Plaintiff fails to allege a reasonable expectation of privacy in data that she intentionally and voluntarily provided to Peloton and Drift through the chat feature on the website. (*Id.* at 18). Third, even if Plaintiff sufficiently alleges a legally protected privacy interest and a reasonable expectation of privacy, she has not alleged that this conduct was an egregious violation of social norms. (*Id.* at 19). Instead, the collection of any data was routine commercial behavior, according to Defendant. (*Id.*)

Plaintiff counters that the determination of whether the conduct is "egregious," "offensive," or violates "social norms" is not appropriate for adjudication at this stage in the pleadings because it requires a determination of many factors including likelihood of serious harm to the victim, and the motives and objectives of the entity that intercepts the information. (Oppo. at 17). In addition, Plaintiff claims

that Peloton allowed the chat conversations to be secretly collected by Drift and that those conversations may concern "highly sensitive data" which demonstrates a violation of privacy. (*Id.*)

The Complaint does not sufficiently allege an invasion of privacy claim under the California Constitution because it consists of broad and conclusory assertions that do not address the necessary elements of the cause of action. First, Plaintiff has not asserted that she and the class members have a legally protected privacy interest in the content of chats with Peloton. There are two general categories of legally recognized privacy rights: (1) "informational privacy" which protects the dissemination of sensitive and confidential information, and "autonomy privacy" which protects the rights to bodily autonomy. *Hill v. Nat'l Collegiat Athletic Ass'n*, 7 Cal.4th 1, 35 (1994). Here, Plaintiff asserts an "informational privacy" claim but alleges only that Peloton used Drift to intercept chat communications "even when such conversations are private and deeply personal" and that "visitors often share highly sensitive personal data" with the chat feature. (Compl. ¶¶ 12, 20). Plaintiff does not allege that she shared any information with the chat feature, nor that if she did share information, it was of a "sensitive and confidential nature." Instead, she makes vague allegations that a chat *could* include private information and that users "often" share sensitive information. As a result, the Complaint does not contain enough facts to state a plausible claim on this ground. *Twombly*, 550 U.S. 544, 570

Second, Plaintiff makes no effort to allege that she and the putative class members have a reasonable expectation of privacy in the data that might be shared on the chat feature. Finally, even if Plaintiff had satisfied the first two elements of the cause of action, she has not alleged that Peloton's conduct constituted an egregious violation of social norms. As noted above, the Complaint vaguely asserts that Peloton, via Drift, collects chat communications "even when such conversations are private and deeply personal" and that "visitors often share highly sensitive personal data" but these claims do not affirmatively state that such sensitive personal information was shared on the chat. The collection of users information concerning various fitness products and services shared on the chat does not rise to the level of "an egregious breach of social norms but routine commercial behavior. *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (Cal. Ct. App. 2011)(citing *Hill v. Nat'l Coll. Athletic Ass'n*, 7 Cal.4th 1, 37 (1994).

***8** Plaintiff argues that questions regarding the seriousness of a privacy intrusion cannot be determine at this stage of pleadings but the cases cited for that proposition do not state a general rule, instead the determination as to whether conduct is "highly offensive" is determined under the particular circumstances of a case. *See* *Facebook*, 956 F.3d at 606; *Hernandez*, 47 Cal.4th at 287. In *Facebook*, the Ninth Circuit found that the question whether Facebook's "tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage" because Plaintiff pled sufficient facts to survive a motion to dismiss including that Facebook was collecting user data when users were not logged into Facebook, and that "the company's own officials recognized these practices as a problematic privacy issue." *Facebook*, 956 F.3d at 606. Here, Plaintiff has not alleged sufficient factual support for her claim that Peloton's collection via Drift of chat communications violates privacy rights, therefore Defendant's motion to dismiss this claim is granted.

*D. Standing for Injunctive Relief*

Defendant argues that Plaintiff lacks standing to seek injunctive relief because she makes no allegation that she intends to visit the Peloton website again or use the chat function. (Mot. at 20). Plaintiff counters that Defendant's conduct is continuing and that Drift continues to use Plaintiff's and putative class members' private conversations for its own purposes without consent therefore there is a current and future threat of harm. (Oppo. at 17).

To successfully assert a claim for injunctive relief, a plaintiff must contend that, despite knowledge of the asserted violative conduct, he or she may suffer an "actual and imminent" threat of future harm. *See* *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 969 (9th Cir. 2018). Plaintiff has not pled sufficient facts to support her claim that Drift is continuing to use her data, particularly in light of the fact that Drift captures the data to provide Peloton with marketing data concerning customers, and she has not asserted she will visit the Peloton site and use the chat feature in the future. If Plaintiff did visit the site and use the chat feature, she now has notice of Defendants' use of chat data harvesting

for Defendant's business purposes, therefore her use would constitute consent to Peloton and Drift's use of the data. *See* *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996). Plaintiff therefore has no standing to seek injunctive relief.

IV. CONCLUSION AND ORDER

For the forgoing reasons, Defendant's motion to dismiss is GRANTED with leave to amend.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2024 WL 1123237

## Footnotes

1 The facts are taken from the Complaint.

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.