**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@willkie.com
JOSHUA ANDERSON (SBN: 312836)
jdanderson@willkie.com
YUHAN ALICE CHI (SBN: 324072)
ychi@willkie.com
NAIARA TOKER (SBN: 346145)
ntoker@willkie.com
ANIKA HOLLAND (SBN: 336071)
aholland@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARY L. SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No.: 5:23-cv-03527-PCP<br>(Consol. w/ 5:23-cv-04191-BLF)<br><br>**GOOGLE LLC'S SUPPLEMENTAL BRIEF IN RESPONSE TO COURT'S ORDER [ECF NO. 72]**<br><br>Complaint Filed: 7/14/2023<br>Trial Date: N/A<br><br>*Hon. P. Casey Pitts, District Judge*<br>*San Jose Courthouse, Ctrm. 8 – 4th Floor* |

## I. INTRODUCTION

Pursuant to this Court's order dated March 26, 2024 (ECF No. 72), Google LLC ("Google") submits this supplemental brief addressing whether the order on Meta Platforms, Inc.'s ("Meta") Motion to Dismiss in *In Re Meta Pixel Tax Filing Cases*, No. 22-cv-07557 (2024 WL 1251350) (the "Order") relates to Google's arguments in its Motion to Dismiss (ECF No. 50).[1]

Although Plaintiffs mostly copy-paste their allegations from *Meta*, there are critical and dispositive distinctions. First, unlike Meta, Google has noted that Plaintiffs' allegations sound in fraud and require application of the heightened Rule 9(b) standard. Second, Plaintiffs' allegations demonstrate the defendants' technologies differ. Whereas the Meta plaintiffs made concrete allegations regarding the data Meta *affirmatively collects and uses*, Plaintiffs provide only hypothetical and vague allegations regarding the data Google's technologies *may*—or may not—collect and use.[2] The Complaint here is based on finger-pointing and speculation rather than factual allegations. Third, Google raises arguments concerning Plaintiffs' wiretapping claims. The Order is not dispositive of Google's motion, and the Court should dispose of Plaintiffs' claims.

## II. PLAINTIFFS' CLAIMS DO NOT SATISFY THE HEIGHTENED STANDARD OF RULE 9(b)

Meta did not ask this Court to consider whether Rule 9(b) applied. However, the crux of Plaintiffs' case here is that Google violated its own promises to developers and the public, and secretly collected and used sensitive financial information for its own gain. *See e.g.* Opp. at 2–3 ("Google knew … it received tax-filing information. . . [but] chose to continue 'collecting vast amounts of confidential tax information' on millions of Americans . . . despite its policies that forbid website developers from 'shar[ing] … sensitive information'") (citations omitted,), 10 ("Plaintiffs allege that Google's business model is largely based on data mining, and that it

[1] In denying in part Meta's motion to dismiss, this Court found it was not clear which policies were in place when the plaintiffs used the products. *See* Order at *8, 11. To address that issue, Google files herewith a Request for Judicial Notice ("RJN") that includes the publicly available policies in place throughout the relevant time period. The policies are all consistent with those Google supplied in its initial RJN, and do not change the arguments raised in the parties' briefing.

[2] *See* redline of the *Meta* Complaint against the Complaint in this action, Exhibit A to the declaration of N. Toker.

*surreptitiously* used Plaintiffs' tax return information for its own advertising purposes") (emphasis added), 12 ("Plaintiffs allege that Google's policies against disclosure of sensitive information are a sham."); Compl. ¶ 85 (wiretapping was "done for the purpose of violating laws prohibiting the unlawful disclosure and review of tax information."). To allege that Google prohibits websites from sending it PII, but intended the websites to violate the prohibition to monetize PII is a salacious allegation subject to Rule 9(b) particularity. Reply at 2.

Plaintiffs' fraud-based allegations therefore require application of a higher standard than the one the Court applied in ruling on Meta's motion. *Apumac, LLC v. Flint Hills Int'l*, 2015 WL 13306128, at *4 (C.D. Cal. Feb. 6, 2015) ("Rule 9(b) applies to allegations of fraud.").

## III. THE ALLEGATIONS ARE DISTINCT

### A. *Smith v. Google* and *Meta* Concern Different Technologies

The Complaint regurgitates the Senate Report. But the Report focused on Meta and contains little information about Google's conduct and the actual data Google is said to have received. As the Report acknowledges, Google's technology is different from Meta's: Plaintiffs do not (and could not) allege Google receives, processes, maintains and uses data from the Websites in the same way as Meta. *Attacks on Tax Privacy* (July 2023) ("Report") at 6, 8, 12, 20. Notably, key allegations made against Meta are conspicuously absent from the Complaint in this action.

*First,* while Meta admits to matching data to individual Facebook users, the data sent to Google Analytics is pseudonymous, and Plaintiffs do not allege that Google attempts to re-identify users. *Compare* Compl. ¶ 26 ("[T]he tracking code will collect … pseudonymous information about how that user interacted with the page.") *with Meta,* Compl. ¶¶ 1 ("Meta … matches [the information] with Facebook users."), 23–24, 32, 38–42, 61–62; *see also* Order at *1; *John Doe, et al., v. Kaiser Foundation Health Plan, Inc., et al*., 2024 WL 1589982, at *21 (N.D. Cal. Apr. 11, 2024) ("The fact that third parties may have assigned unique identifiers to individuals using the Kaiser website and mobile applications (i.e., so that they could be tracked) does not in and of itself mean that those individuals' actual *identities* could be divined.") (emphasis in original).

*Second,* while the Meta Pixel does not offer an analytic-only option, Google does. Plaintiffs here do not allege that the Websites used Google Analytics to engage in any advertising

or other non-analytic use. *See e.g.* Compl. ¶ 39 (alleging that websites *can* integrate Google Analytics with Google Ads without alleging any of the Websites did so). What's more, Plaintiffs here do not (and cannot) allege that they received any targeted advertising from Google based on data from the Websites. *Compare* Compl. ¶ 33 ("The information sent to Google *can* be used by the company to power its advertising algorithms") *with Meta*, Compl. ¶¶ 5, 8–9, 11–12 (alleging Plaintiffs saw targeted advertisements), 47–48 ("Meta uses data obtained from the tracking pixel to target users with advertisements"), 54 ("The information sent to Meta *is* used by Meta to power its advertising algorithms") (emphasis added). *See also* Order at *1; Reply at 6.

**B. No Allegations of Specific Data That Customers Sent To Google**

Plaintiffs offer insufficient facts about Google's data collection to survive dismissal. While Meta is alleged to collect names, email addresses, users' income, filing status, refund amounts, and dependents' college scholarship amounts, Plaintiffs here make hypothetical assertions about which data Google may—or may not—have received. *Compare* Compl. ¶¶ 37 ("The type of data collected by these sites *may* include email addresses, data on users' income, filing status, refund amounts, buttons that were clicked, and year of return"), 38 ("H&R Block … transmitted information about tax filers' *filings* to Google"), 39 ("TaxSlayer reportedly used the Google Analytics tracking pixel") *with Meta,* Compl. ¶¶ 56 ("The type of data *includes* names and email addresses, data on users' income, filing status, refund amounts, and dependents' college scholarship amounts), 58 ("H&R Block … transmitted information about tax filers' *health savings account usage and dependents' college tuition grants and expenses*"), 59 ("TaxSlayer reportedly used the Meta tracking pixel's "advanced matching" system … to transmit *phone numbers, filer names, and the names of any dependents added to the return*") (emphasis added). By alleging only what *could* possibly happen, Plaintiffs' allegations "stop short of the line between possibility and plausibility" even under a Rule 8 standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see also Kurowski v. Rush Sys. for Health*, 2023 WL 4707184, at * 3 (N.D. Ill. July 24, 2023).

The lack of allegations that Google actually received sensitive data is unsurprising given that the data sent to Google Analytics is fundamentally different from the data collected by the Meta Pixel. *Compare* Compl. ¶¶ 26 ("The tracking pixel will … collect information from the

browser like the language setting, the browser type, and the device and operating system on which the browser is running. It can even collect the 'traffic source'"), 27 (enhanced measurements beyond "[a]d [i]nteractions" and "[b]utton [c]lick [d]ata" are only collected if the customer enables certain options) *with Meta,* Compl. ¶¶ 36 ("Meta intercepts each page a user visits, what buttons they click, *as well as specific information they input into the website*") (emphasis added), 37 ("The financial and tax-filing information at issue here is included among the "Event Data" that Meta captures and attempts to match with Facebook users"); *see also* Order at *2.

## IV. GOOGLE'S DEFENSES ARE DIFFERENT

### A. Plaintiffs' CIPA Claims Should Be Dismissed

***Vendor.*** The Court in *Meta* did not address whether Meta was a mere vendor to the Websites, and thus not liable under CIPA absent allegations of improper use. *See* Mot. at 8–9; Reply at 4–6; Order at *1. Unlike the Meta Pixel, which does not offer pure analytics services, Google Analytics "provides the data only to website publishers 'to improve or create new products and services,' not to serve ads or track or profile users across the internet." Report at 8. As explained in Google's Reply, Plaintiffs ask the Court to conclude that because Google *could have* used information provided by the Websites, it *must have* used those features here, with Plaintiffs' data, in an unlawful manner. But unlike with Meta, there is no allegation that Google used the data for any purpose other than to provide analytics services to the Websites. *See supra* section III.A.

***Section 632.*** Meta did not raise the argument Google asserts here—that the *Websites*, not Google, performed the alleged recording. *See* Mot. at 9, Reply at 7.

***Intent.*** Plaintiffs' hypothetical assertions about what Google *could* have received are dispositive. Google cannot intend to receive data it did not affirmatively collect in the first place.

### B. Wiretap Act Claim Should Be Dismissed Because Websites Consented

In holding Meta did not establish the websites consented to the alleged data*,* this Court relied on *Doe v. Meta*. There, Judge Orrick recognized the distinction between cases where the defendant assured the provider that its service was incapable of collecting PII and cases like this one, where consent was obvious, since the products were acquired for the complained-of purpose. 2023 WL 5837443, *5 (N.D. Cal. Sept. 7, 2023) (distinguishing *Brown v. Google LLC*, 2023 WL

5029899 (N.D. Cal. Aug. 7, 2023) from *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) and *Rodriguez v. Google LLC,* 2021 WL 2026726, (N.D. Cal. May 21, 2021)). Judge Orrick held the facts alleged in that case were closer to the former category, *as to Meta*. *Id*. Here, Plaintiffs' allegations fall in the latter category. Plaintiffs allege Google Analytics: (1) is available for "website owners [to] add to their website code for each page of their site"; (2) discloses the analytics purposes; and (3) allows customers to "configure the settings to allow them to customize what data is collected and how it is processed." Compl. ¶¶ 25–26. Further, enhanced measurements beyond "ad interactions" and "button click data" are only collected if the customer enables certain options. *Id.* ¶ 27. Given these allegations of Website control, Plaintiffs cannot claim the Websites sent sensitive financial information to Google Analytics without knowledge. *See Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299 at *4 (N.D. Cal Apr. 3, 2024) (holding websites consented to data collection because customers "had clear instruction regarding what data Oracle's tools would collect and how they could modify their operation.").

### C. CIPA § 635, Wiretap Act § 2512, and Illinois Eavesdropping Statute

In *Meta*, this Court held it must accept as true the allegation that the Meta Pixel was "primarily useful for surreptitiously intercepting communications." Order at *11. But here, the Court need not accept Plaintiffs' similar allegation at face value, because it is a legal conclusion unsupported by the substantive allegations in the Complaint. *See* Compl. ¶¶ 77, 97. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Additionally, Plaintiffs here have not plausibly pleaded Google intended to intercept communications in a "surreptitious manner," which is fatal to these claims. The judicially noticeable documents here establish that Google's policies required the Websites to disclose their use of Google Analytics—which they did. *See* RJN Exs. 1-A through 1-C. The Websites' judicially noticeable privacy policies have always made the presence of the so-called "web bugs" known. *See* RJN Ex. 2-A, 3-A and 4-A. Plaintiffs have not plausibly alleged that such a ubiquitous web traffic analysis tool was intended to be used surreptitiously.

## V. CONCLUSION

As argued in Google's motion to dismiss, this Court should dismiss Plaintiffs' claims.

Date: April 19, 2024

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Benedict Hur*
Benedict Hur
Simona Agnolucci
Eduardo E. Santacana
Joshua Anderson
Yuhan Alice Chi
Naiara Toker
Anika Holland

*Attorneys for Defendant Google LLC*