**BURSOR & FISHER, P.A.**
Neal Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

*Attorneys for Plaintiffs*

**COOLEY LLP**
Benedict Y. Hur (SBN: 224018)
bhur@cooley.com
Simona Agnolucci (SBN: 246943)
sagnolucci@cooley.com
Eduardo E. Santacana (SBN: 281668)
esantacana@cooley.com
Joshua Anderson (SBN: 312836)
joshua.anderson@cooley.com
Yuhan Alice Chi (SBN: 324072)
achi@cooley.com
Naiara Toker (SBN: 346145)
ntoker@cooley.com
Anika Holland (SBN: 336071)
anika.holland@cooley.com
Julia Irwin (SBN: 352861)
jirwin@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

*Attorneys for Google, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MARY L. SMITH, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE, LLC,

Defendant.

Case No.: 5:23-cv-03527-PCP
(Consol. w/ 5:23-cv-04191-BLF)

**JOINT STATEMENT REGARDING DISCOVERY DISPUTE**

Complaint Filed:  7/14/2023
Trial Date:          9/27/2027

*Hon. P. Casey Pitts, District Judge*
*San Jose Courthouse, Ctrm. 8 – 4th Floor*

Pursuant to Rule 7(b) of the Court's Civil and Discovery Referral Matters Standing Order, the parties submit this joint discovery letter regarding whether defendant Google must produce (1) custodial records from its former employee Blake Lemoine; (2) records relating to Google's use of algorithms, artificial intelligence, and automated decision-making processes in its collection, processing and monetization of user data; and (3) documents concerning, and data reflecting, Google's collection of relevant user data from third-party applications ("Apps").  The parties have met and conferred multiple times regarding these issues.

There are 288 days before the close of fact discovery, currently set for July 22, 2026.  *See* ECF No. 107.  The parties positions on the disputes, and any attempts at compromise, are as follows: Plaintiffs' position is that the records they seek are highly relevant to this case for the reasons discussed herein.  Plaintiffs have also made offers of compromise for certain RFPs at issue, as reflected in the chart attached as Exhibit A.  Given the breadth of discovery Google has already agreed to produce (and has produced), Google does not believe that any of Plaintiffs' requests herein are relevant or proportional and does not believe further compromises are appropriate.

## I.   Inclusion of Blake Lemoine as Google Document Custodian

### Plaintiffs' Position

Blake Lemoine, a Google employee from 2015 until 2022, should be included as a document custodian in Google's search for relevant records.  Google has refused to search for or produce any of Lemoine's custodial records on the sole ground that it does not believe Lemoine has a "relevant nexus" to this action.  However, as Google knows from similar litigation involving its collection of user data without consent through Google Analytics ("GA") and other tools, Lemoine has already testified to multiple relevant issues through a declaration and under oath at a deposition.

For example, in *Brown v. Google*, No. 4:20-cv-03664-YGR (N.D. Cal.) ("*Brown*"), alleging Google collects user data on websites and devices even when privacy settings are on, the plaintiffs submitted a sworn declaration from Lemoine attesting to facts that are also relevant here:

- At Google Lemoine worked on "various projects relating to search, backend infrastructure, machine learning, automation, and artificial intelligence (or AI)."  *Brown*, ECF No. 1042-1 at 3.  His work also required him to "gain knowledge of the data sources that [Google] Search uses as inputs."  *Id.*

- Google falsely "took the position that its internal limitations on access to end-user data . . . did not apply with respect to the algorithms, machine learning, and artificial intelligence services within Google that would use that data," and Lemoine "implemented privacy compliance according to this specification under protest." *Id.*

- Despite Google's above position, "[m]any of the core AI systems consume a broad collection of different data sources . . ." *Id.*

- "The Google algorithms, machine learning, and artificial intelligence that various Google teams worked on were able to use and in fact used data generated by end users not only from their regular browsing but also" from "private" browsing. *Id.* at 4.

- "Some of Google's algorithms, machine learning, and artificial intelligence were improved by learning about activities based on geographic location. In addition, they were trained to recognize browsing behavior and patterns originating from the same persons and devices. Thus, in my experience, Google's algorithms, machine learning, and artificial intelligence are still able to reidentify the same persons and devices, even if the end users decided to use private-mode web browsing. People's browsing patterns can serve as a signature of sorts which the AI can identify and use to transfer data about one "account" (e.g. a person's Incognito history) to a different "account" (e.g. that same person's normal Chrome experience). *Id.*

- At Google Lemoine conducted a study, and subsequently authored a report (the "Report"), concerning "many potential problems that [Google] should address before they harmed anyone" including that "data from a user's signed out session," meaning when a user was not even signed into their Google account, "may transfer to their signed in sessions, and vice versa." *Id.* The report further concluded that the "same technical issue applied to data transference between Chrome Incognito and regular Chrome sessions (as well as other Google surfaces), through the same mechanism." *Id.*

- Google "has a culture and practice of limiting the creation of written documentation regarding the sorts of issues discussed above, including through Google's 'Communicate with Care' program and efforts internally (by Google executives and others) to limit internal communications and punish people who raised ethical concerns about Google's practices." *Id.* at 4. This includes a statement by Lemoine's Director to Lemoine that his "VP was advised not to read the report in order to maintain plausible deniability." *Id.* at 4-5.

Following Google's refusal to produce Lemoine's documents in *Brown*, Judge Gonzalez Rogers ordered the production and Lemoine's deposition while explaining he was a "potential whistleblower" who "in many way 'guts'" Google's positions. *Id.*, ECF No. 1080 at 83, 85. When deposed by Google in *Brown* on December 21, 2023, Lemoine testified, as relevant here, that:

- Google's AI systems can re-identify users even when they are not signed into Google, and potentially individuals without any Google accounts, using browsing behaviors, device fingerprints, and IP addresses. *See id.*, ECF No. 1117-13 at 177:6-179:7.

- Google's "AI, algorithms, or machine learning" (1) learn using private browser data; (2) reidentify users when they are in private browsing mode; and (3) join user's private browsing histories with their normal Chrome account on the aggregate level, without Google having disclosed any of this to the public. *Id.* at 202:24-203:13.

- "In general, Google believes that its users are incompetent to make decisions related to privacy." *Id.* at 204:24-25.[1]

Google largely ignores Lemoine's testimony *under oath* via declaration and deposition on various relevant topics, including Google's purported practice of limiting the creation of internal records and attempts to maintain "plausible deniability."  Google instead chooses to attack Lemoine's character based on his use of narcotics.[2]  At the same time, Google fails to identify any disproportionate burden from adding to the current initial set of eight custodians (all proposed by Google), nor could it, as nine custodians is well below the typical number in complex class actions like this, and in similar cases against Google.  *See, e.g., Calhoun v. Google*, No. 5:20-cv-5146-LHK-SVK (N.D. Cal.), ECF No. 349 at 4 (Google custodians "capped at 42," mirroring cap in *Brown*).

Plaintiffs ask the Court to order that (1) within 30 days, Google complete its production of Lemoine's relevant custodial records; (2) within five days, Google provide Plaintiffs with proposed search terms, and a hit count of the terms' frequency in the custodial records; and (3) within ten days, the parties conclude any search term negotiations or, if no agreement is reached, submit any disputed terms to the Court for resolution.[3]

---

[1] Lemoine's testimony from *Brown* was also cited in the plaintiffs' successful opposition to summary judgment in *Rodriguez v. Google*, No. 3:20-CV-04688-RS (N.D. Cal.) ("*Rodriguez*"), *see id.*, ECF No. 427 at 3, a case alleging Google's "surreptitious interception, collection, saving, and use of consumers' highly personal browsing histories on their mobile devices whenever consumers use [apps] that have incorporated Google code" *Id.*, ECF No. 298 at 1.

[2] Google's personal attack is not well taken in light of reports that its co-founder and current board member Sergey Brin "dabbles in small amounts of magic mushrooms" and funded "a startup studying a hallucinogenic mental-health treatment."  https://www.wired.com/story/microdosing-workplace-shroom-boom/;  https://fortune.com/2024/07/23/sergey-brin-google-tesla-shares-elon-musk-catalyst4-mental-health-hallucinogens/.

[3] Google should also produce relevant records from Lemoine, and for the RFPs discussed herein, identified through a reasonable investigation, even if not captured by search terms.  *See, e.g., Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009) (one must conduct reasonable inquiry into factual basis of discovery responses) (citations omitted).

JOINT STATEMENT REGARDING DISCOVERY DISPUTE
CASE NO. 5:23-CV-03527-PCP

1    **Google's Position**

2         This lawsuit challenges the use of Google Analytics ("GA") on three tax filing websites

3    offered by TaxAct, TaxSlayer, and H&R Block (together, the "Tax Websites"). Compl. ¶¶ 1–2.

4    Plaintiffs allege that "[t]hese tax preparation companies sent private tax return information to

5    Google through [GA] and its embedded tracking pixel." *Id.* ¶ 2. What does Blake Lemoine have to

6    do with this case? Nothing. Plaintiffs' regurgitation of Lemoine's declaration in *Brown v. Google*—

7    a different lawsuit involving different technology and facts—demonstrates his lack of relevance.

8    The Court should deny Plaintiffs' request seeking discovery from an irrelevant ex-employee,

9    particularly given the relevant custodians from whom Google has already agreed to produce.

10        Lemoine is "a former senior Google employee who worked on artificial intelligence

11   products and was later placed on leave when he tried to hire a lawyer for a chatbot he believed to

12   be sentient." *Rodriguez v. Google*, 2025 WL 2237720, at *4 (N.D. Cal. Aug. 6, 2025); *see also*

13   Lemoine Dep. at 217-1–9, *Rodriguez*, No. 3:20-cv-04688-RS, Dkt. No. 531-19 ("**A:** [. . .] LaMDA

14   definitely has a soul. . . . It's your essence that carries you forward in time, and it does have one of

15   those"). He testified under oath that he repeatedly consumed THC and psychedelic drugs at work.

16   Lemoine Dep., No. 3:20-cv-04688-RS, Dkt. No. 531-19, at 124:8–24. "After he blogged about the

17   prospect of being fired for his AI 'ethics' work and leaked information to major news outlets,

18   Google terminated him in July 2022." *Rodriguez*, 2025 WL 2237720 at *4.

19        To be sure, Lemoine is a font of colorful statements—that is why, in counsel's experience,

20   he is now a perennial source target of discovery by plaintiffs hoping to uncover an inflammatory

21   email, regardless of relevance.  Plaintiffs' reliance on *Rodriguez* is apt in this regard.  That case

22   involved a version of GA used on apps called Google Analytics for Firebase. *Rodriguez*, 2025 WL

23   2237720, at *5. Plaintiffs point out that plaintiffs there "cited" Lemoine's testimony in their own

24   briefing. But Plaintiffs omit that the court specifically excluded Lemoine from being called to trial,

25   as his testimony from *Brown* "about completely distinct technologies" was inadmissible hearsay

26   and not probative of any relevant issue. *See Rodriguez*, 2025 WL 2237720, at *5.

27        This case is in accord.  The allegations here concern the transmission of tax information to

28   Google via GA when users file taxes through one of three websites: H&R Block, TaxSlayer, and

1    TaxAct. At issue in *Brown*, however, was Google's alleged ability to obtain the browsing data of

2    users across the entire web, any time they use an Incognito browsing mode. *Brown v. Google*, 685

3    F. Supp. 3d 909, 918–19 (N.D. Cal. 2023).  Whatever alleged knowledge Lemoine had about the

4    ability of AI to tie multiple Incognito browsing sessions back to individual users is irrelevant here.

5    Indeed, the operative complaint alleges that the tax websites *already* send data to Google in a way

6    that makes it purportedly identifiable—no AI required. *See* Compl.¶¶ 32, 41. And, notably, the

7    words "Google Analytics" appears nowhere in Plaintiffs' recitation of Lemoine's knowledge.

8    Plaintiffs do not argue otherwise, choosing to, instead, rely on a flimsy suggestion that Google

9    purportedly "limit[]" records to create "plausible deniability"—presumably about the ability of a

10   sentient supercomputer to combine Incognito browsing sessions.  Putting aside that this accusation

11   is defied by the thousands of pages of custodian and noncustodial records (including data files)

12   Google already produced in this litigation, Plaintiffs' attempt to rely on such vague accusation

13   shows that this request is plainly a fishing expedition.

14          There is also no need for Lemoine's custodial files.  The parties months ago negotiated a set

15   of custodians that *actually do* work on the relevant product and with the relevant Tax Websites. This

16   includes the director and two product managers of GA, as well as various Google employees who

17   communicated directly with the Tax Websites.  It is their files, not Lemoine's, that will speak to

18   whether and how the data at issue here is processed and used within Google, and Google has already

19   made substantial productions of their custodial files.   Plaintiffs' months-long delay seeking

20   Lemoine's custodial documents underscores Lemoine's lack of relevance. *See Rodriguez*, 2025 WL

21   2237720, at *5 (plaintiffs' lack of diligence seeking discovery from Lemoine "hardly suggests that

22   his testimony is particularly probative").

23          In sum, even if Plaintiffs had shown that Lemoine possessed some relevant knowledge—

24   and they have not—they do not explain what information would be uniquely within his possession

25   that would justify a further burdensome custodial collection and production.  Plaintiffs' unjustified

26   request should be denied in its entirety. *See Roblox Corp. v. WowWee Grp.*, 2023 WL 5507176, at

27   *3 (N.D. Cal. Aug. 25, 2023) (denying additional custodian where "Plaintiffs have made no showing

28   that [he] has relevant information" and "only speculate" that such custodian would be relevant).

## II.  Plaintiffs' RFP 36 Concerning Algorithms, Artificial Intelligence, and Automated Decision-Making Processes

**Plaintiffs' Position**

Plaintiffs' RFP 36 seeks "All DOCUMENTS and COMMUNICATIONS CONCERNING YOUR use of algorithms, artificial intelligence ("AI") or automated decision-making processes in relation to WEBSITE VISITOR DATA during the CLASS PERIOD, including but not limited to the development, testing, implementation, and decisions regarding what data to collect, how to process it, and how to utilize it."  Exhibit B at 8-9.  After the parties met and conferred and exchanged writings regarding Google's objections to the RFP, on January 28, 2025 Plaintiffs offered to limit RFP 36 to "include only algorithms or AI systems used in the context of GA, Firebase Analytics, Google Tag Manager, and any other tools implemented on the Subject Websites or applied to Website Visitor Data during the CLASS PERIOD . . . includ[ing] systems used to develop, test, or process Website Visitor Data collected through these tools."

Despite this proposed compromise, Google has refused to produce documents responsive to RFP 36 because it does not believe the documents are relevant to Plaintiffs' claims.  Google also contends that "[o]ther than a bare supposition that Google uses Plaintiffs' data to train AI, Plaintiff does not explain how this issue relates to the claims or defenses in this action, which focus exclusively on interception."  *Id.*  However, while Plaintiffs' claims have a significant focus on Google's "interception" of user data, Plaintiffs' claims (and Google's defenses) also implicate, *inter alia*, how Google processes and monetizes Plaintiffs' and the Classes' data *after* it has been intercepted, and the products and tools used by Google for these tasks.  Per Lemoine's testimony discussed above, one such product is Google's AI, which has become increasingly prominent since Plaintiffs filed their operative complaint in October 2023.  *See* ECF No. 35.  Google's position also ignores Lemoine's testimony that Google trains its AI with user data it collected, even if the user does not have a Google account.[4]  As such, the records sought by RFP 36 are plainly relevant.

---

[4] Plaintiffs putative classes are not limited to individuals with Google accounts.  *See, e.g.,* ECF No. 35, ¶ 48 (seeking "Nationwide Class" of "All people in the United States who used online tax preparation providers such as H&R Block, TaxAct, or TaxSlayer, while those websites had the Google pixel installed on them.").

JOINT STATEMENT REGARDING DISCOVERY DISPUTE
CASE NO. 5:23-CV-03527-PCP

Plaintiffs ask the Court to order that (1) within 30 days, Google complete its production of records responsive to RFP 36; (2) within five days, Google identify (a) relevant ESI custodians and other sources of records responsive to RFP 36, and (b) proposed search terms to be applied to the custodians as well as hit counts of the terms' frequency in the custodial records; and (3) within ten days, the parties conclude any negotiations over custodians or search terms or, if no agreement is reached, submit any disputed custodians or terms to the Court for resolution.

**Google's Position**

Plaintiffs' request for discovery into "Google's AI" again seeks irrelevant information; the Court should deny this vague request outright.

Plaintiffs' argument makes clear that their only basis for RFP 36 is Lemoine's supposed testimony from *Brown* that "Google trains its AI with user data it collected, even if the user does not have a Google account." But, again, there is no nexus between Lemoine's testimony in *Brown* and the matters at issue here: Google's purported interception of tax information via GA. Plaintiffs merely speculate that relevant data from GA is used to train Google's AI. Further, Plaintiffs themselves illustrate that AI has nothing to do with the allegations in their complaint. *See supra* Section II ("Google's AI . . . has become increasingly prominent ***since*** Plaintiffs filed their operative complaint in October 2023.") (emphasis added). In short, Plaintiffs' request for documents related to Google's AI is untethered to any claims or defenses in this action and thus improper. *See Tri-Star Elec. Int'l, Inc. v. Preci-Dip Durtal SA*, 2012 WL 12964849, at *2–4 (C.D. Cal. Mar. 27, 2012) (discovery sought to develop new claims, but which was not relevant to alleged claims or defenses, was not appropriate)

Plaintiffs' assertion that such discovery relates vaguely to how Google "processes and monetizes" GA data gets them no closer. Google has already agreed in response to other requests to produce this very kind of information—both illustrating GA processing and any revenue Google received from the Tax Websites' use of GA. Indeed, as a result of conferring extensively, the parties have agreed on search terms that get at how Google receives, processes, stores, and uses GA data. Google *does not* intend to withhold responsive and relevant non-privileged information reflecting how Google may use GA data, including in any "algorithms," machine learning, or ads modeling.

1   What Google has not agreed, however, is to undertake a burdensome search for vague AI processing

2   or products untethered to the allegations in the operative complaint, such as documents relating to

3   Google's AI product Gemini. Accordingly, to the extent Plaintiffs seek this latter category of

4   documents, the Court should deny Plaintiffs' request to compel Google to produce irrelevant

5   documents about "Google's AI."

6   **III.   Plaintiffs' RFPs Concerning Apps Employing Google Analytics and Related Google
        Products, and "App-Related Data"**

7

8       **Plaintiffs' Position**

9       A number of Plaintiffs' RFPs seek documents concerning, or data reflecting, Google's

10  collection of user data from third-party Apps using GA and other tools. Specifically, RFPs 9, 12,

11  38 and 39 concern Google Analytics for Firebase and related technologies Google uses to collect

12  app data and send the data to Google. *See* Exhibit B at 5, 9; *see also, e.g.*,

13  https://firebase.google.com/docs/analytics ("Just add the Firebase SDK to your new or existing app,

14  and data collection begins automatically."). RFPs 9, 12, 27, 38 and 39 more generally seek records

15  concerning data Google collected from such Apps. *See* Exhibit B at 5, 7, 9. Finally, RFPs 3, 16

16  and 38 seek the underlying app-related data, and logs of such data, sent to Google from the Subject

17  Websites' mobile Apps and any related technologies. *See* Exhibit B at 6, 9; Exhibit D at 1-2.

18      In the interest of compromise, Plaintiffs have agreed to limit the scope of RFP 3, and have

19  offered to limit the scope of RFPs 16, 27 and 36. *See* Exhibit A (Joint Discovery Dispute Chart).

20  Despite this, Google has maintained its refusal to produce any of the above "app-related" records

21  or data. Google's primary argument for its refusal is that Plaintiffs "have not shown the relevance

22  of [the app-related records] to Plaintiffs' complaint." But Google collected sensitive financial

23  information (and other personal information) without the consent of Plaintiffs or the putative class

24  using GA on *both* websites and Apps of third parties. *See, e.g., Rodriguez v. Google LLC*, 772 F.

25  Supp. 3d 1093, 1099 (N.D. Cal. 2025) (denying Google motion for summary judgment and

26  explaining "Google created software development kits, including Firebase . . . [which] are

27  incorporated into apps by third-party app developers and allow Google to collect user data . . .").

28      Moreover, Plaintiffs' operative complaint explicitly refers to Google's collection of data

1    from apps. *See, e.g.*, ECF No. 35, ¶ 23 ("Google's data collecting capabilities also include tracking

2    user actions on . . . apps"), ¶ 24 (GA "collects data from [advertisers'] websites and apps to create

3    reports that provide insights into [their] business.") (internal quotations omitted). And "[d]iscovery

4    is not limited to issues raised in [plaintiff's] complaint." *Pasadena Oil & Gas Wyoming LLC v.*

5    *Montana Oil Properties Inc.*, 320 Fed. Appx. 675, 677 (9th Cir. 2009) (citations omitted).

6         Plaintiffs therefore ask the Court to order that (1) within 30 days, Google complete its

7    production of records responsive to these RFPs; (2) within five days, Google identify (a) relevant

8    ESI custodians and other sources of records responsive to these RFPs, and (b) proposed search terms

9    to be applied to the custodians, as well as hit counts of the terms' frequency in the custodial records;

10   and (3) within ten days, the parties conclude any negotiations over custodians or search terms or, if

11   no agreement is reached, submit any disputed custodians or terms to the Court for resolution.

12        **Google's Position**

13        Although Plaintiffs exclusively allege use of Tax *Websites*, Plaintiffs seek discovery into the

14   websites' *mobile apps*, and the distinct technology—called Google Analytics for Firebase

15   ("GA4F"))[5]—that supports them. This is improper for several reasons and should be denied.

16        ***First***, Plaintiffs' complaint makes clear that they are suing Google for the use of GA on the

17   Tax ***Websites***. *See, e.g.*, Compl. ¶¶ 1 ("This is a putative class action . . . for wiretapping electronic

18   communications on major on-line **tax filing websites** . . ."), 2 (alleging "wiretapping" was enabled

19   by embedding GA "in the JavaScript of online tax preparation ***websites***"). There are no allegations

20   that any users' tax information was sent via apps or GA4F at all—because no Plaintiff alleges they

21   used such apps. *See* Compl. ¶¶ 5–14. They cannot seek discovery into a wholly separate product

22   and technology that they did not use. *See Alcala v. Monsanto Co.*, 2014 WL 1266204, at *5 (N.D.

23   Cal. Mar. 24, 2014) (documents "related to products [plaintiff] did *not* use are not relevant"). At

24   most, Plaintiffs offer a generic observation that Google *can* collect data from apps, including via

25   GA4F which was the at-issue technology in *Rodriguez*. *See supra* Section III (Plaintiffs' Position).

26   _____

27   [5] GA is a software tool that developers can incorporate into their platform to measure activity.
     GA4F is a specific version of GA that developers can implement on their apps to measure app
     performance. *See* What is Google Analytics for Firebase,

28   https://support.google.com/firebase/answer/7388022?hl=en. GA4F can only be used on mobile
     apps, and not websites. *See id.*

JOINT STATEMENT REGARDING DISCOVERY DISPUTE
CASE NO. 5:23-CV-03527-PCP

1  But a stray allegation in the complaint does not entitle them to discovery into a distinct technology

2  that is not relevant to their own claims. *See Tri-Star*, 2012 WL 12964849, at *2–4 ("a stray allegation

3  does not automatically become the basis of all claims").[6]

4      **Second**, other parts of Plaintiff's complaint expressly scoped out the relevance of any apps

5  and app-related data or record. They purport to represent various classes and subclasses of people

6  "who used online tax preparation providers such as H&R Block, TaxAct, or TaxSlayer, while ***those***

7  ***websites*** had the Google pixel installed on them." Compl. ¶¶ 4, 48. Documents or data regarding

8  GA4F or apps owned by the Tax Websites thus would not be probative of how Google allegedly

9  intercepted or used any putative class members' data transmitted via the Tax Websites.

10      **Fourth**, to the extent Plaintiffs seek records relating to generic "third-party apps" that are not

11  even tethered to H&R Block, Tax Act or TaxSlayer, that must be denied as it's even ***more*** farfetched

12  from the claims and defenses in this case. *See* Fed. R. Civ. P. 26(b)(1).

13      **Lastly**, Plaintiffs cannot seek app-related *data* via RFP 3, 16, or 38, as they claim. RFPs 3

14  and 39 facially do not call for any mobile app data—RFP 3 seeks "data . . . received from the

15  SUBJECT ***WEBSITES*** . . . via GOOGLE ANALYTICS" and RFP 38 seeks only "DOCUMENTS

16  and COMMUNICATION," not any data (in contrast to RFP 3 seeking "data"). As for RFP 16,

17  where Plaintiffs do seek named Plaintiffs' data "sent to Google from the Subject Websites' mobile

18  Apps and any related technology," it's unclear (1) how such mobile data could exist where no named

19  plaintiffs allege that they used the Tax Websites' apps, and (2) what Plaintiffs are referring to by

20  "any related technology." *See supra* Section III (Plaintiffs' Position).

21      To be sure, Google has agreed to run agreed search terms for many of the RFPs identified

22  herein as they relate to the Tax *Websites*. Google has also agreed to search for and produce any data

23  it can locate associated with the named Plaintiffs from the GA data transmitted by the Tax *Websites*.

24  But, for all the reasons stated herein, any other records related to GA4F, mobile apps, or the app

25  version of the Tax Websites are irrelevant. Plaintiffs have not met the basic relevance showing and

26  the Court should deny Plaintiffs' requests herein.

27

28  _____

[6] The lack of nexus between the discovery Plaintiffs seek and the issues and products raised in the Complaint distinguish the authority cited by Plaintiffs.

Dated: October 7, 2025

Respectfully Submitted,

By: */s/ Michael Liskow*
**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (917) 983-9321
E-mail: lfeldman@4-justice.com
mliskow@4-justice.com
eservice@4-justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (241858)
1650 W 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
Fax: (888) 421-4173
Email: RPeterson@4-Justice.com
eService@4-Justice.com

**BURSOR & FISHER, P.A.**
Neal Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jsmith@bursor.com

**SMITH KRIVOSHEY, P.C**.
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor
Boston, MA 02216
Telephone: 617-377-7404
Email: joel@skclassactions.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Kate M. Baxter-Kauf (*pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com

**THE HODA LAW FIRM, PLLC**
Marshal J. Hoda, Esq. (*pro hac vice*)
12333 Sowden Road, Suite B
Houston, TX 77080
Telephone: (832) 848-0036
Email: marshal@thehodalawfirm.com

**FOSTER YARBOROUGH PLLC**
Patrick Yarborough, Esq. (*pro hac vice*)
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
Email: patrick@fosteryarborough.com

**EMERSON FIRM, PLLC**
John G. Emerson (*pro hac vice*)
2500 Wilcrest, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Email: jemerson@emersonfirm.com

*Attorneys for Plaintiffs*

Dated: October 7, 2025

**COOLEY LLP**
By: */s/ Joshua Anderson*
    Joshua Anderson

Benedict Y. Hur (SBN: 224018)
bhur@cooley.com
Simona Agnolucci (SBN: 246943)
sagnolucci@cooley.com
Eduardo E. Santacana (SBN: 281668)
esantacana@cooley.com
Joshua Anderson (SBN: 312836)
joshua.anderson@cooley.com
Yuhan Alice Chi (SBN: 324072)
achi@cooley.com
Naiara Toker (SBN: 346145)
ntoker@cooley.com
Anika Holland (SBN: 336071)
anika.holland@cooley.com
Julia Irwin (SBN: 352861)
jirwin@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone:  (415) 693-2000

*Attorneys for Google, LLC*

- 12 -
JOINT STATEMENT REGARDING DISCOVERY DISPUTE
CASE NO. 5:23-CV-03527-PCP

1

**<u>CIVIL L.R. 5-1(i)(3) ATTESTATION</u>**

2

     Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest under penalty of perjury that

3

concurrence in the filing of this document has been obtained from all signatories.

4

Dated: October 7, 2025               By: *<u>/s/ Michael Liskow</u>*

5

                           Michael Liskow

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT REGARDING DISCOVERY DISPUTE
CASE NO. 5:23-CV-03527-PCP

1

**[PLAINTIFFS' PROPOSED] ORDER**

2

    The Court, having reviewed the Joint Statement Regarding Discovery Dispute submitted by

3

Plaintiffs and Defendant Google LLC ("Google"), and for good cause shown, hereby ORDERS as

4

follows:

5

    1.    Google must perform a reasonable search of the custodial records of Blake Lemoine

6

and produce any such non-privileged records to Plaintiffs.  Within five (5) days of this Order,

7

Google must provide Plaintiffs with proposed search terms to be applied to Lemoine's custodial

8

records, as well as a hit count of the search terms' frequency in the custodial records.  Within ten

9

(10) days of this Order, the parties must conclude any negotiations over search terms to be applied

10

to Lemoine's custodial records or, if the parties cannot reach agreement by this time, they must

11

submit any disputed search terms to the Court for resolution.  Google shall complete its production

12

of Lemoine's responsive, non-privileged custodial records within thirty (30) days of this Order.

13

    2.    Google must perform a reasonable search for records responsive to Plaintiffs' RFP 36

14

and produce any such non-privileged records to Plaintiffs.  Within five (5) days of this Order,

15

Google must provide Plaintiffs with proposed search terms to be applied to identify documents

16

responsive to RFP 36, as well as a hit count of the search terms' frequency in the custodial records.

17

Within five (5) days of this Order, Google must identify relevant ESI custodians and other sources

18

of records responsive to RFP 36.  Within ten (10) days of this Order, the parties must conclude any

19

negotiations over search terms to be applied, or Google ESI custodial records or other sources to be

20

searched, to identify records potentially responsive to RFP 36.  If the parties cannot reach agreement

21

within ten (10) days of this Order, they must instead submit any disputed search terms and/or ESI

22

custodians to the Court for resolution.  Google shall complete its production of non-privileged

23

records responsive to RFP 36 within thirty (30) days of this Order.

24

    3.    Google must perform a reasonable search for records responsive to Plaintiffs' RFPs

25

3, 9, 12, 16, 27, 38 and 39 (the "App Data RFPs"), and produce any such non-privileged records to

26

Plaintiffs.  Within five (5) days of this Order, Google must provide Plaintiffs with proposed search

27

terms to be applied to identify documents responsive to the App Data RFPs, as well as a hit count

28

of the search terms' frequency in the custodial records.  Within five (5) days of this Order, Google

must identify relevant ESI custodians and other sources of records responsive to the App Data RFPs. Within ten (10) days of this Order, the parties must conclude any negotiations over search terms to be applied, or Google ESI custodial records or other sources to be searched, to identify records potentially responsive to the App Data RFPs.  If the parties cannot reach agreement within ten (10) days of this Order, they must instead submit any disputed search terms and/or ESI custodians to the Court for resolution.  Google shall complete its production of non-privileged records responsive to the App Data RFPs within thirty (30) days of this Order.

Dated: _____        _____

                                       Hon. Susan Van Keulen
                                       UNITED STATES DISTRICT JUDGE

1

## GOOGLE LLC'S [PROPOSED] ORDER

2

The Court, having considered the pleadings and the parties' briefing, finds that the

3

discovery requested by Plaintiffs is not warranted in light of the relevance and proportionality

4

factors of Rule 26(b).  Accordingly, it is denied.

5

6

7

8

Dated: _____                    _____

9

                                               Hon. Susan Van Keulen
                                               UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT REGARDING DISCOVERY DISPUTE
CASE NO. 5:23-CV-03527-PCP