**BURSOR & FISHER, P.A.**
Neal Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

*Attorneys for Plaintiffs*

**COOLEY LLP**
Benedict Y. Hur (SBN: 224018)
bhur@cooley.com
Simona Agnolucci (SBN: 246943)
sagnolucci@cooley.com
Eduardo E. Santacana (SBN: 281668)
esantacana@cooley.com
Joshua Anderson (SBN: 312836)
joshua.anderson@cooley.com
Yuhan Alice Chi (SBN: 324072)
achi@cooley.com
Naiara Toker (SBN: 346145)
ntoker@cooley.com
Anika Holland (SBN: 336071)
anika.holland@cooley.com
Julia Irwin (SBN: 352861)
jirwin@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

*Attorneys for Google, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY L. SMITH, individually and on behalf of all others similarly situated,<br><br>                             Plaintiffs,<br><br>   v.<br><br>GOOGLE, LLC,<br><br>                             Defendant. | Case No.: 5:23-cv-03527-PCP<br>(Consol. w/ 5:23-cv-04191-BLF)<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTE**<br><br>Complaint Filed: 7/14/2023<br>Trial Date:       9/27/2027<br><br>*Hon. P. Casey Pitts, District Judge*<br>*San Jose Courthouse, Ctrm. 8 – 4th Floor* |

Pursuant to Rule 7(b) of the Court's Civil and Discovery Referral Matters Standing Order, the parties submit this joint discovery dispute statement ("Joint Statement") regarding whether defendant Google, LLC ("Google") must produce, within 21 days of an order by the Court, all available "Class Event Data" as described below.

The parties met and conferred regarding this issue on multiple dates including March 17, 2025, March 20, 2025 and August 8, 2025. The parties exchanged written communications regarding this issue on, among other dates, December 5, 2024; December 17, 2024; December 20, 2024; January 14, 2025; January 23, 2025; January 28, 2025; February 8, 2025; March 5, 2025; March 14, 2025; April 22, 2025; May 21, 2025; May 26, 2025; May 29, 2025; August 22, 2025; August 26, 2025; September 15, 2025 and September 16, 2025.

Despite these extensive efforts, the parties are unable to reach agreement on whether Google is required to produce the Class Event Data, or a date certain by which Google must do so. The parties therefore require the Court's assistance to resolve this dispute.

There are 286 days before the close of fact discovery, currently set for July 22, 2026. *See* ECF No. 107. The parties' positions on the dispute, and any attempts at compromise, are as follows: Plaintiffs have spent months negotiating the scope of the Class Event Data to be produced by Google, and then months more waiting for Google to make its production. After all this time Google now claims it never agreed to produce the Class Event Data, but as carefully detailed herein that is not the case. The Court should order Google to promptly and finally produce the promised Class Event Data. Although Google does not believe Plaintiffs' request herein is proportional to the needs of the action, Google has offered to produce an anonymized sample of the Google Analytics data associated with the Tax Websites' relevant Google Analytics properties.

I.   **Plaintiffs' Position**

The dispute here is straightforward. The Class Event Data at issue generally consists of event-level data Google received via Google Analytics (Universal Analytics and GA4) concerning individuals' interactions with certain digital properties of TaxAct, TaxSlayer, and H&R Block (the

"Tax Preparers"). As detailed below, Google explicitly committed in writing multiple times to produce the Class Event Data, and not just Event Data relating to the named Plaintiffs.[1]

Following Plaintiffs' initial demand for the Class Event Data, through their RFP #3 propounded on July 9, 2024, Plaintiffs spent months negotiating the specific details of the Class Event Data that would be produced, with the final details agreed to by March 2025. Following this agreement, Plaintiffs made numerous efforts to obtain a date certain by when Google would produce the Class Event Data. In doing so, Plaintiffs often explained that, due to the January 21, 2026 deadline for Plaintiffs to submit their Motion for Class Certification, *see* ECF No. 107 at 2, Plaintiffs needed the Class Event Data well in advance of that date in order to have sufficient time to review and analyze, potentially with the assistance of experts, what was certain to be an enormous amount of complex data.[2]

Despite these multiple requests, Google has refused to provide any date certain for its production of Class Event Data. Instead, in a letter dated September 16, 2025 (the "Letter"), Google claimed for the first time, in direct contravention of its prior commitments detailed below, that it had *never* agreed to produce Class Event Data because it "lacks the requisite consent to produce such data." *Id.* at 2. Google's sudden decision to renege on its prior commitments, and its unacceptable delay in responding to Plaintiffs' numerous requests since May 2025 for a date certain for the production of the Class Event Data, confirm that Google will not make this production in a timely manner without court intervention.

The pertinent history of this dispute is important to recite to underscore the prejudice caused to Plaintiffs by Google's delay and about-face on producing the Class Event Data:

- On July 9, 2024, Plaintiffs propounded RFP #3 on Google seeking "[a]ll raw data that YOU received from the SUBJECT WEBSITES during the CLASS PERIOD via GOOGLE ANALYTICS. If this data is available in csv or similar structured data format, please produce it in that format."

---

[1] Plaintiffs are separately seeking the Plaintiffs' specific Event Data, with the parties hopefully close to resolving any outstanding issues, so this dispute concerns only Class Event Data.

[2] The Class Event Data is relevant to Plaintiffs' motion for class certification because, *inter alia*, it will identify or reflect various ways to calculate the damages in this action, including by quantifying Google's total number of statutory violations for Plaintiffs and for the putative classes.

- In responding to RFP #3, Google claimed confusion, including by objecting to the terms "raw data", "csv", and "structured data." Plaintiffs therefore began to diligently negotiate and narrow, over the course of many months, each aspect of the requested Class Event Data, including the specific tax preparation companies (the Tax Preparers) to be included in the search (resolved on January 28, 2025[3]), the Tax Preparers' specific digital properties to be searched (resolved on March 14, 2025), the time periods of the Class Event Data to be searched (resolved on March 5, 2025), and the types of data to be included as "Class Event Data" (resolved by the parties during a March 20, 2025 meet and confer).

- Crucially, during the course of these negotiations it was *always* clear that Google would produce Event Data for all potential members of the putative classes, and not just the named Plaintiffs, not least because *Google confirmed this multiple times*. Google first did so in its December 20, 2024 letter to Plaintiffs, where it committed that, with respect to RFP #3, "[s]ubject to the parties' confirmation of the relevant properties for the Tax Websites, Google will conduct a reasonable search for and produce event level data associated with *both* named Plaintiffs and the Tax Websites' properties from the Google Analytics event log Google's counsel previously identified." *Id.* at 3 (emphasis in original).

- In a January 14, 2025 letter to Plaintiffs, Google cited its December 20, 2024 letter in confirming it "has already agreed to produce certain data associated with the Tax Websites." *Id.* at 3. Similarly, in a February 8, 2025 letter to Plaintiffs, Google stated it "has set forth its agreement to produce the purported 'raw data' *Plaintiffs seek* in Google's letter dated December 20, 2024, and stand by its position as stated therein." *Id.* at 2 (emphasis added).

- During the parties' March 20, 2025 meet and confer, the parties reached agreement on the types of Class Event Data that would be produced by Google in response to RFP #3. In Plaintiffs' April 22, 2025 letter to Google memorializing the parties' March 20, 2025 agreement, Plaintiffs reiterated that:

    > Based on Google's December 20, 2024 letter and the parties' discussion during the March 2[0] 2025 meet and confer, among others, Plaintiffs understand that Google has agreed to conduct a reasonable search for, *and to produce*, event-level data from the Google Analytics Event Log *for the Tax Preparers*[']  *relevant properties* . . .

    *Id.* at 2 (emphasis added). *At no point* did Google respond to this letter to correct Plaintiffs' understanding from Google's prior statements that it would produce Class Event Data, and not just Event Data related to Plaintiffs.

- On May 21, 2025, Plaintiffs requested via email that Google provide a date certain by which it would produce the agreed-to Class Event Data.

- On May 26, 2025, Google's counsel emailed Plaintiffs' counsel and, without providing a date certain, *again* confirmed that "[a]s noted in Google's letter dated

---

[3] During the negotiations, Plaintiffs compromised by excluding from its discovery requests "TaxSlayer Pro," a website for tax professionals, and Ramsay Solutions, another online tax preparation service.

- December 20, 2024, Google agreed to produce the data associated with **both** the named Plaintiffs *and the Tax Websites' properties*." (Emphasis added).

- On May 29, 2025, Plaintiffs' counsel emailed Google's counsel to ask that Google "please provide a date certain by which . . . the raw data *associated with the Tax Website properties* . . . will be produced." (Emphasis added).

- Having received no such date certain, Plaintiffs' counsel again requested one during the parties' August 8, 2025 meet and confer. Google's counsel suggested (without promising) that Google might be able to provide an update by August 15, 2025.

- When no update was provided, Plaintiffs again requested, by emails dated August 22, 2025 and August 26, 2025, a date certain for the production of Class Event Data. Having still received no date, on September 15, 2025, Plaintiffs wrote Google by letter that:

  > In light of [the] looming [class certification] deadline, Google's delay, and silence regarding the status of this crucial production, can continue no longer. Plaintiffs require that Google confirm in writing, by September 19, 2025, that it will complete its production of the agreed-to raw data by September 30, 2025. If Google is unwilling or unable to make this commitment, Plaintiffs request that Google provide its availability for a meet and confer on or before September 22, 2025, in advance of Plaintiffs being forced to promptly raise this issue directly with the Court.

- The next day, on September 16, 2025, Google's Letter first disclosed its position that it "has not agreed to produce the Tax Websites' GA/UA event-level data associated with unnamed class members, as, among other reasons, Google lacks the requisite consent to produce such data." *Id.* at 2.

This sudden disavowal of Google's multiple prior written commitments to produce the Class Event Data, after months of negotiations and delay, and based on a previously undisclosed, vague and flimsy pretext, smacks of bad faith and unfortunately validates Plaintiffs' concern that Google is not willing to produce the promised Class Event Data within a reasonable time period prior to Plaintiffs' class certification deadline.[4] Moreover, Google's attempt herein to turn on its head the plain meaning of its December 20, 2024 commitment to produce the Class Event Data ignores both (1) the numerous subsequent written commitments made by Google and (2) Google's failure to make any attempt to "correct" Plaintiffs' multiple subsequent confirmations of Google's commitment

---

[4] Plaintiffs' concerns are underscored by recent allegations in another case before this Court that Google produced data crucial to class certification only weeks prior to the class deadline (and two and a half months after the court's initial deadline to make the data available), and then in an incomplete format. *See In re Google Generative AI Copyright Litigation*, Case No. 5:23-cv-03440-EKL (SVK), ECF No. 208 (N.D. Cal. Sept. 8, 2025).

until September 16, 2025, one day after Plaintiffs were forced to threaten to seek the Court's assistance to compel the production of the promised Class Event Data.[5]

Google's conduct following Plaintiffs' provision of its portion of this Joint Statement on September 19, 2025, further underscores why an order from the Court is necessary to compel Google to timely produce the promised Class Event Data.

- On September 25, 2025, during a meet and confer by the parties' counsel, Google's counsel chalked up Google's about-face to a "miscommunication," and was unable to confirm who Google contended it needed "consent" from to produce the Class Event Data. Google's counsel also asked for time to speak with Google about the scope of Class Event Data it might be willing to produce.
- During the follow up meet and confer on October 6, 2025, at that point 17 days after Plaintiffs provided their portion of this Joint Statement, Google's counsel was merely able to vaguely state they had "alignment" with Google to provide Plaintiffs a sample of "class data," and that there would be yet another meeting later in the week to determine the "scope" of what Google would "be able to produce."

Importantly, Google did not raise the idea of producing only a sample of Class Event Data, or even utter the word "sample" in the parties' numerous communications on this issue, until after Plaintiffs sent their portion of this Joint Statement on September 19, 2025, more than 14 months after Plaintiffs propounded their request for the Class Event Data. The Court should cut through Google's attempts to delay the production of the Class Event Data.

Furthermore, Google's new excuse that it cannot produce Class Event Data because it "lacks the requisite consent to produce such data," Letter at 2, notably failed to even bother to identify *who* any consent would be required from (the Tax Preparers, the "unnamed class members" or someone else), or why, something Google has only now deigned to disclose in its portion of this Joint Statement. Similarly, Google's statement below that it "is unclear why Plaintiffs would believe Google would require their consent to produce their data, yet would produce data associated with absent class members freely" is disingenuous. This was "unclear" because Google never even

---

[5] Google inaccurately claims Plaintiffs have "slowly rolled out" their "consents and identifiers" by conflating Plaintiffs' requests for their Event Date with their separate requests (not at issue here) for their "cookie ID" data. With respect to Plaintiffs' request for their "Event Data," Google was provided Plaintiffs' consents to produce this data as early as February 2025, with the final consent provided on July 10, 2025. Despite this, Google delayed producing any Event Data for Plaintiffs until September 30, 2025.

*suggested* any purported requirement that consent be obtained from all class members (something that self-evidently would require enormous resources and time, if possible at all) until September 16, 2025, and did not confirm this position until now. And even now Google does not claim it *cannot* produce Class Event Data without first obtaining consent, and instead only obliquely suggests this would raise "thorny issues of consent and liability." Google also offers no authority for this assertion apart from the inapposite *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025), which did not involve whether Google was required to obtain consent to produce data in litigation subject to a protective order, much less consent from all absent class members.

In any event, with a Protective Order in place in this litigation, *see* ECF No. 95, and with Google's ability at this class certification stage to, as one option, anonymize individuals' identities in the Class Event Data (while assigning such individuals unique IDs), Google's eleventh-hour, self-serving argument is baseless. The Court should see through and reject Google's transparent attempt to avoid having to produce *any* Class Event Data.[6]

In order to provide Plaintiffs with sufficient time to process, review and analyze the Class Event Data prior to moving for class certification, Plaintiffs ask the Court to order Google to complete its production of all Class Event Data within 21 days of the order.

## II.   Google's Position

Google has already produced the subset of the at-issue event-level data that pertains to the current or former Plaintiffs, and has offered to produce an anonymized sample of additional class data. This is more than enough for the limited purpose for which Plaintiffs claim they need the data, and further production is not justified.

Plaintiffs' core contention is that Google "sudden[ly] disavow[ed]" a purported agreement to produce class data. And almost exclusively on the basis of this purported "about face," Plaintiffs claim they are entitled to receive vast swaths of data that their allegations contend is private.

---

[6] In a similar case Plaintiffs' counsel are prosecuting before Judge Pitts, *In re Meta Pixel Tax Filing Cases*, Case 5:22-cv-07557-PCP, defendant Meta produced anonymized class member event data like that requested here without ever suggesting that consent of the absent class members might first be required. *See id.*, ECF No. 218 at 3 (discussing "sample Hive data from other members of the classes" produced by Meta).

1  Plaintiffs' self-serving narrative does not justify production, and they hardly even attempt to justify
2  the requested discovery on the merits.
3        Preliminarily, Google simply never agreed to produce event-level data for absent class
4  members. To the contrary, Google informed Plaintiffs of how it would limit its production 10
5  months ago. Specifically, by letter dated December 20, 2024, Google told Plaintiffs: "Subject to
6  the parties' confirmation of the relevant [Google Analytics] properties for the Tax Websites,
7  Google will conduct a reasonable search for and produce event level data *associated with* *both*
8  named Plaintiffs *and* the Tax Websites' properties from the Google Analytics event log Google's
9  counsel previously identified." This limitation conveyed that: (1) Google had not agreed to
10 produce data associated with the named Plaintiffs unrelated to the Tax Websites; and (2) Google
11 had not agreed to produce data from the Tax Websites that was unrelated to the named Plaintiffs.
12       Despite Google's express language, Plaintiffs apparently read this as a promise to
13 "produce event level data associated with ~~both~~ *either* named Plaintiffs ~~and~~ *or* the Tax Websites'
14 properties from the Google Analytics event log." And although they claim that supposed
15 "subsequent commitments" Google made have supported their misapprehension, they merely
16 point back to the same language from December 20, 2024. Whether or not Plaintiffs genuinely
17 held this understanding of Google's communications, it was not what Google agreed to for a
18 variety of reasons. Particularly, given Plaintiffs' allegations in this case, Google expected that
19 Plaintiffs' counsel understood the potential privacy interest absent class members might have
20 against disclosure. *See Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("Compelled
21 discovery within the realm of the right of privacy cannot be justified solely on the ground that it
22 may lead to relevant information.") (cleaned up). Additionally, right or wrong, plaintiffs
23 (including Plaintiffs here) routinely take the position that pseudonymous data—such as may be
24 collected by Google Analytics—constitutes the "contents" of communications pertaining to them.
25 *See, e.g.*, *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) (noting users
26 have a "stake" in pseudonymous Google Analytics data). This raises thorny issues of consent and
27
28

liability under the Stored Communications Act.[7] *See* 18 U.S.C. § 2702 (prohibiting unconsented disclosure of records pertaining to customers or subscribers).

Google's course of conduct in discovery is consistent with these concerns. After Google served its letter on December 20, 2024, the parties engaged in several conferences to negotiate consent language for each of the named Plaintiffs to execute so that Google could search for and produce any Google Analytics data from the Tax Websites it could find associated with the Plaintiffs—including data associated with Plaintiffs' pseudonymous identifiers. Over the ensuing months, Plaintiffs would follow up about the production of "event level data," and Google would follow up to obtain appropriate consents from the Plaintiffs.[8]

Plaintiffs attempt to make hay from the fact that Google first raised issues concerning consent or sampling only after Plaintiffs provided a portion of a joint discovery letter. But they admit that it was *Google* that sought to clarify this issue in its September 16 letter and, instead of seeking to meet and confer, Plaintiffs sent their half of this joint letter on September 19. Given their choice to jump to a dispute, Plaintiffs left no option but for Google to try to seek resolution only after receiving their statement. And what's clear from their retelling is that Google acted promptly to make a workable proposal to avoid burdening the Court.

In any event, a party's misapprehension about what the other agreed to produce is not a basis for discovery under Rule 26, and Plaintiffs' fleeting effort to justify production of the data on the merits likewise falters. Plaintiffs assert that the data is relevant because, they claim, "it will

---

[7] The way case law has recently developed regarding analytics data has created real ambiguities with regard to whose consent is necessary under the Stored Communications Act—website developers, end users, or both. While Plaintiffs criticize Google for not offering a conclusive position, what is clear is that Google's unilateral interpretation of the statute will receive no deference in a civil action brought by a party who contends Google made the wrong call. *See* 18 U.S.C. § 2707(a). It is also clear that there is no carve-out from the statutory prohibitions simply because a protective order is in place. Plaintiffs criticize Google for not offering more direct authority on this issue. The lack of clear authority is precisely the point.

[8] While Plaintiffs accuse Google of "bad faith" and "delay," Plaintiffs have slowly rolled out their consents and identifiers, with the most recent provided on September 22, 2025. Plaintiffs seek to excuse their delay by suggesting the consents they provided less than three weeks ago concerned purportedly unrelated "cookie ID" data and not "Event Data," the type of data at issue here. In fact, *all* of the consents were for the event data—the only distinction is the identifier used to locate it—and Google promptly searched for and produced the data it found upon receiving the consents. Plaintiffs' apparent confusion about the data they are seeking simply underscores what Google's counsel stated in the meet-and-confer: the parties were simply not on the same page about the data to be produced.

1   identify or reflect various ways to calculate the damages in this action, including by quantifying
2   Google's total number of statutory violations for Plaintiffs and for the putative classes." (*Supra*
3   note 2).  But the burden on class certification is not to quantify a total number of purported
4   violations, but rather to propose a *method* for demonstrating damages on a classwide basis.  *See*
5   *Weston v. Docusign, Inc.*, 348 F.R.D. 354 (N.D. Cal. 2024). Plaintiffs do not show why classwide
6   data is necessary for the purpose of showing a *method* of determining damages rather than just
7   counting up alleged violations.  Nor do they explain why the data Google has already agreed to
8   supply would be inadequate to meet their actual burden.

9       In any event, in an effort to reach a compromise, Google offered to provide a meaningful
10  sample of anonymized classwide data.  Google proposed to explain the scope of the production by
11  Friday, October 10, 2025, after it investigated the technical feasibility of the production.[9]
12  Plaintiffs rejected this proposal and continue to demand the "complete set" of Analytics data.

13      Not only might Plaintiffs' demand for the "complete set" yield a production that is
14  unworkable and unwieldy for *both* parties, it is also unnecessary.  This case concerns the alleged
15  transmission of tax information when people use tax preparation websites to file their returns.  The
16  highly seasonal nature of the relevant data makes this request particularly susceptible to reasonable
17  limitations.  Plaintiffs offer no explanation for why data of this breadth is relevant to their claims or
18  proportional to the needs of this litigation.  Their request should therefore be denied.

---

[9] Google has not previously made productions of this kind and scale from this data source in other litigation.  Once this dispute came into focus, Google has worked expeditiously to determine the feasibility of sampling and anonymization, as well as the mechanics of a production. Plaintiffs, however, were unwilling to wait.

| | |
|---|---|
| Dated: October 9, 2025 | Respectfully Submitted, |
| | By: /s/ Michael Liskow |
| | **GEORGE FELDMAN MCDONALD, PLLC** |
| | Lori G. Feldman (*pro hac vice*) |
| | Michael Liskow (State Bar No. 243899) |
| | 745 Fifth Avenue, Suite 500 |
| | New York, NY 10151 |
| | Telephone: (917) 983-9321 |
| | E-mail: lfeldman@4-justice.com |
| | mliskow@4-justice.com |
| | eservice@4-justice.com |

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (241858)
1650 W 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
Fax: (888) 421-4173
Email: RPeterson@4-Justice.com
eService@4-Justice.com

**BURSOR & FISHER, P.A.**
Neal Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

**SMITH KRIVOSHEY, P.C**.
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor
Boston, MA 02216
Telephone: 617-377-7404
Email: joel@skclassactions.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Kate M. Baxter-Kauf (*pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com

|   |   |
|---|---|
|   | **THE HODA LAW FIRM, PLLC**<br>Marshal J. Hoda, Esq. (*pro hac vice*)<br>12333 Sowden Road, Suite B<br>Houston, TX 77080<br>Telephone: (832) 848-0036<br>Email: marshal@thehodalawfirm.com |
|   | **FOSTER YARBOROUGH PLLC**<br>Patrick Yarborough, Esq. (*pro hac vice*)<br>917 Franklin Street, Suite 220<br>Houston, TX 77002<br>Telephone: (713) 331-5254<br>Email: patrick@fosteryarborough.com |
|   | **EMERSON FIRM, PLLC**<br>John G. Emerson (*pro hac vice*)<br>2500 Wilcrest, Suite 300<br>Houston, TX 77042<br>Telephone: (800) 551-8649<br>Email: jemerson@emersonfirm.com |
|   | *Attorneys for Plaintiffs* |
| Dated: October 9, 2025 | **COOLEY LLP**<br><br>By: */s/ Joshua Anderson*<br>Benedict Y. Hur (SBN: 224018)<br>bhur@cooley.com<br>Simona Agnolucci (SBN: 246943)<br>sagnolucci@cooley.com<br>Eduardo E. Santacana (SBN: 281668)<br>esantacana@cooley.com<br>Joshua Anderson (SBN: 312836)<br>joshua.anderson@cooley.com<br>Yuhan Alice Chi (SBN: 324072)<br>achi@cooley.com<br>Naiara Toker (SBN: 346145)<br>ntoker@cooley.com<br>Anika Holland (SBN: 336071)<br>anika.holland@cooley.com<br>Julia Irwin (SBN: 352861)<br>jirwin@cooley.com<br>3 Embarcadero Center, 20th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 693-2000<br><br>*Attorneys for Google, LLC* |

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: October 9, 2025                         By: */s/ Michael Liskow*
                                                             Michael Liskow

**[PLAINTIFFS' PROPOSED] ORDER**

The Court, having reviewed the Joint Statement Regarding Discovery Dispute ("Joint Statement") submitted by Plaintiffs and Defendant Google LLC ("Google"), and for good cause shown, hereby ORDERS as follows:

Within twenty-one (21) days of this Order, Google must produce all available "Class Event Data," as described in Plaintiffs' portion of the Joint Statement.

Dated: _____

                                               Hon. Susan Van Keulen
                                               UNITED STATES DISTRICT JUDGE

**[GOOGLE LLC'S PROPOSED] ORDER**

The Court, having considered the pleadings and the parties' briefing, finds that the discovery requested by Plaintiffs is not warranted in light of the relevance and proportionality factors of Rule 26(b). Accordingly, it is denied.

Dated: _____

_____
Hon. Susan Van Keulen
UNITED STATES DISTRICT JUDGE