# EXHIBIT A

**BURSOR & FISHER, P.A.**
Neal Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

*Attorneys for Plaintiffs*

*Additional Attorneys on Signature Page*

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
200 Park Avenue, Suite 1700
New York, New York 10166
Telephone: (646) 354-6534
E-mail: lfeldman@4-justice.com
            mliskow@4-justice.com
            e-service@4-justice.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY L. SMITH, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>   v.<br><br>GOOGLE, LLC.,<br><br>Defendant. | Case No. 5:23-cv-03527-PCP<br><br>**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **NATURE OF THE ACTION**

1.      This is a putative class action against Defendant Google, LLC ("Google") for wiretapping electronic communications on major on-line tax filing websites and apps offered by H&R Block, TaxAct, and TaxSlayer (collectively "Tax Preparers").  As a result of this wiretapping, U.S. consumers have been involuntarily transmitting their sensitive financial information to Google when they use the Tax Preparers' websites and apps to file their taxes online.  The information transmitted includes, among other things, income, refund amounts, filing status, and scholarship information, as well as identifying information about the consumers including their locations.

2.      What made this wiretapping possible is Google's "Google Analytics" tracking technology, a suite of Google-provided tools and processes that automatically collect, transmit, and process users' communications and interactions whenever users engage with a website or mobile application.  This tracking technology operates through a combination of code, scripts, tags, application interfaces, and related collection mechanisms that send data to Google's servers, and may be implemented in multiple ways, including through tag-management systems, direct integrations, or server-side measurement mechanisms, without regard to the specific technical method of deployment.  On mobile applications, Google Analytics operates through Google Analytics for Firebase ("GA4F"), which similarly collects and transmits app-user interactions and identifiers to Google's servers as part of the same analytics system.

3.      At all relevant times, the Tax Preparers used Google Analytics tracking technology, as described above, in connection with their online tax-preparation websites and mobile applications.

4.      Disclosing tax-return information without consent is a crime.  *See* 26 U.S. § 7216.  Aiding and abetting the unlawful disclosure of tax-return information is a crime.  Inspecting unlawfully obtained tax-return information is a crime.  *See* 26 U.S.C. § 7213A(a)(2).

5.      This action is brought on behalf of Plaintiffs and putative classes of all people in the United States who used the Tax Preparers' online tax preparation services when the Tax Preparers' websites and mobile applications deployed Google Analytics tracking technology, including through web-based and app-based implementations.  This action also seeks to certify putative subclasses by

1    Tax Preparer.  The complaint alleges violations of state and federal wiretapping laws.

2                                                **THE PARTIES**

3         6.    Plaintiff Mary L. Smith is a citizen of DuPage County, Illinois.  Since at least 2018,

4    Plaintiff Smith has used H&R Block's online tax-preparation services to prepare and file her taxes.

5    During that time, H&R Block has deployed Google Analytics tracking technology in connection with

6    those services.

7         7.    Plaintiff Tracylyn Patterson is a citizen of Brevard County, Florida.  Since at least

8    2020, Plaintiff Patterson has used TaxSlayer's online tax-preparation services to prepare and file her

9    taxes.  During that time, TaxSlayer has deployed Google Analytics tracking technology in connection

10   with those services.

11        8.    Plaintiff Cary Goldberg is a citizen of Broward County, Florida.  Since at least 2014,

12   Plaintiff Goldberg has used H&R Block's online tax-preparation services to prepare and file his

13   taxes.   During that time, H&R Block has deployed Google Analytics tracking technology in

14   connection with those services.

15        9.    Plaintiff Tiffany Layton is a citizen of Westchester County, New York.  Since at least

16   2020, Plaintiff Layton has used TaxAct's online tax-preparation services to prepare and file her taxes.

17   During that time, TaxAct has deployed Google Analytics tracking technology in connection with

18   those services.

19        10.   Plaintiff Jamila Armstrong is a citizen of Richland County, South Carolina.  Since at

20   least 2012, Plaintiff Armstrong has used either TaxAct's or TaxSlayer's online tax-preparation

21   services to file her taxes online.  During that time, TaxAct and TaxSlayer have deployed Google

22   Analytics tracking technology in connection with those services.

23        11.   Plaintiff Richard Almeda is a citizen of Placer County, California.  Since at least 2022,

24   Plaintiff Nino has used TaxAct's online tax-preparation services to prepare and file his taxes.  During

25   that time, TaxAct has deployed Google Analytics tracking technology in connection with those

26   services.

27        12.   Plaintiff Cecilia Yeager is a citizen of Stanislaus County, California.  Since at least

28   approximately 2012, Plaintiff Yeager has used TaxAct's and H&R Block's online tax-preparation

1    services to prepare and file her taxes.  During that time, TaxAct and H&R Block have deployed

2    Google Analytics tracking technology in connection with those services.

3          13.    Plaintiff Daniel Aaron is a citizen of Fresno County, California.  Since at least 2019,

4    Plaintiff Aaron has used H&R Block's online tax-preparation services to prepare and file his taxes,

5    including H&R Block's mobile applications.  During that time, H&R Block has deployed Google

6    Analytics tracking technology in connection with those services.

7          14.    Plaintiff Mario Alexander Gonzalez is a citizen of Los Angeles County, California.

8    Since at least 2012, Plaintiff Gonzalez has used H&R Block's online tax-preparation services to

9    prepare and file his taxes.  During that time, H&R Block has deployed Google Analytics tracking

10    technology in connection with those services.

11          15.    Google is a California corporation with its headquarters in Mountain View,

12    California.  Google does business throughout California.

13                          **JURISDICTION AND VENUE**

14          16.    This Court has subject matter jurisdiction over this class action.  This Court has

15    personal jurisdiction over Google because it is headquartered in this State.

16          17.    Venue is proper in this Court because Google conducts business in this County and

17    throughout the State of California and its principal place of business is in this County.

18                          **STATEMENT OF FACTS**

19          *The Evolution of Google's Business Model: From Search Engine to Surveillance*

20          18.    Google is one of the world's most prominent and recognizable brands.  It is not just a

21    search engine company; Google offers a plethora of internet services and products ranging from e-

22    mail to software for mobile phones to cloud services for businesses.[1]  From its inception, Google has

23    been preoccupied with the idea of "extracting meaning from the mass of data accumulating on the

24    Internet" and has made a lucrative industry out of this venture.[2]

25    _____

26    [1]  *See* https://www.britannica.com/topic/Google-Inc  (last  accessed  Sept.  24,  2023);
      https://cloud.google.com/?utm_source=about&utm_medium=referral&utm_campaign=footer-link
27    (last accessed Sept. 24, 2023).

28    [2] https://www.britannica.com/topic/Google-Inc (last accessed Sept. 24, 2023).

_____

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; CASE NO. 5:23-CV-03527-PCP          3

19.     The main way Google has managed this is by expanding its search engine business into advertising by combining various marketing and advertisement firms' databases of information to tailor ads to consumers' individual preferences.[3]  Google has spent billions of dollars to acquire these web advertisement firms, services, and networks.[4]  The significance of the information gathered for targeted advertising cannot be understated and Google understands this well.  Google has been the market leader in online advertising for over a decade.[5]  Google has transformed its search engine capabilities into its top revenue generating feature by including ads as results for Google searches.[6]  Advertising on Google was launched in 2000 with the aim of connecting online businesses with users through "highly targeted ad serving technology" that enabled advertisers to monitor ad statistics such as click-through rates and visitor interest.[7]  By 2016, Google earned nearly all of its revenue from advertising based on Google users' search requests.[8]

20.     In 2020, Google generated $104 billion through advertising (71% of Google's entire revenue for that year).[9]  Google's revenue from advertising is expected to reach $201.05 billion by 2024.[10]

21.     Google offers several platforms and analytics for advertisers to optimize their advertising campaigns.[11]  Advertisers using Google products can bid on specific search words and

---

[3] *See id.*

[4] *See id.*

[5] *See How Google's $150 Billion Advertising Business Works,* https://www.cnbc.com/2021/05/18/how-does-google-make-money-advertising-business-breakdown-.html (last accessed Sept. 24, 2023).

[6] *See id.*

[7] https://www.blog.google/technology/ads/new-advertising-brands/ (last accessed Sept. 24, 2023); http://googlepress.blogspot.com/2000/10/google-launches-self-service.html (last accessed Sept. 24, 2023).

[8] *See* https://www.britannica.com/topic/Google-Inc (last accessed Sept. 24, 2023).

[9] *See* https://www.cnbc.com/2021/05/18/how-does-google-make-money-advertising-business-breakdown-.html (last accessed Sept. 24, 2023).

[10] *See* https://www.forbes.com/sites/bethkindig/2023/01/27/ad-budgets-set-to-slow-even-more-in-2023/?sh=6be6da1c554c (last accessed Sept. 24, 2023).

[11] *See* https://www.cnbc.com/2021/05/18/how-does-google-make-money-advertising-business-breakdown-.html (last accessed Sept. 24, 2023).

phrases that lead their ads to be more prominently displayed to relevant users in search results.[12] Google's search advertising capabilities are so powerful that they enable advertisers to target a specific location, language and audience.[13] Google's ads are not just embedded within Google search results, but also within other Google features such as Maps and YouTube.[14]

22.     Google prides itself on its "advanced" analytics products and services to provide advertisers a "holistic view into consumer behavior" to better target them.[15] To optimize advertising, Google offers data tracking technologies, including Google Analytics and GA4F, that track how users interact with ads and advertisers' websites. For instance, Google will track and analyze what words or ads drove the most sales for any given Google customer and what days users clicked on search ads the most. Google is also able to track groups of users "who have generated similar behavioral data or who share demographic or other descriptive data," *e.g.*, age group and gender.[16] In essence, Google's mining of the data collected from users is what drives and makes so precise Google's targeted advertising.

23.     Google's data collecting capabilities also include tracking user actions on customer websites and mobile applications that are referred to as "events," and important desired events (such as purchases) that are referred to as "conversions."[17] Tracked conversions can be used to measure the effectiveness of ads and monitor user behavior.[18] Google also generates reports to give its

---

[12] *See id*.

[13] *See id*.

[14] *See* https://www.business.com/articles/6-reasons-why-your-business-should-be-using-google-adwords/ (last accessed Sept. 24, 2023).

[15] https://blog.google/products/ads-commerce/5-tips-to-power-your-2023-marketing-strategy/?_ga=2.25524031.381675576.1689225706-1533121624.1689225706 (last accessed Sept. 24, 2023).

[16] https://support.google.com/analytics/answer/12799087?hl=en&sjid=3548329945210241384-NA (last accessed Sept. 24, 2023).

[17] https://support.google.com/analytics/answer/13128484?sjid=11475162976737609263-NA (last accessed Sept. 24, 2023).

[18] *See* https://support.google.com/analytics/answer/13128484?sjid=11475162976737609263-NA (last accessed Sept. 24, 2023); https://support.google.com/analytics/answer/13366706?sjid=11475162976737609263-NA (last accessed Sept. 24, 2023).

advertising customers "post-click performance metrics for users who clicked on [a]ds and then came through [an advertiser's] website, or installed and started using [an advertiser's] mobile app."[19] Google's data collecting and reporting capabilities are encapsulated in its Google Analytics services.

### Google Analytics

24.    Google Analytics is a suite of Google-provided tools and processes that Google claims help businesses and other website owners understand how visitors use their sites and mobile applications.[20]  It is a "platform that collects data from [advertisers'] websites and apps to create reports that provide insights into [their] business."[21]  For example, Google Analytics helps website owners "understand which sections of an online newspaper have the most readers, or how often shopping cards are abandoned for an online store."[22]  Google Analytics also allows its customers to collect such detailed information like the number of clicks, scrolls, searches, and downloads a site user performs.[23]  The most recent version of Google Analytics offers a feature called Reporting Identity, which helps customers identify users by "creat[ing] a single user journey from all the data associated with the same identity."[24]  Google Analytics offers advertisers machine learning technology to uncover and predict new user insights such as their behavior and identifies new audiences of users likely to make a purchase.[25]

25.    One such tool Google offers is Google Analytics' embedded measurement code, which is a piece of JavaScript code that website owners add to their website code for each page of their site to measure certain actions taken by users on the site, such as online purchases.[26]  Of

---

[19]    https://support.google.com/analytics/answer/4355493?hl=en&ref_topic=1308583&sjid=11475162976737609263-NA (last accessed Sept. 24, 2023).

[20]    *See Some Facts About Google Analytics Data Privacy*, https://blog.google/around-the-globe/google-europe/google-analytics-facts/ (last accessed Sept. 24, 2023).

[21]    https://support.google.com/analytics/answer/12159447?hl=en (last accessed Sept. 24, 2023).

[22]    *Id.*

[23]    *See* https://www.mparticle.com/blog/google-tag-manager-vs-google-analytics/#:~:text=Google%20Analytics%20is%20an%20analytics,for%20granular%20user%20event%20insights (last accessed Sept. 24, 2023).

[24]    *Id.*

[25]    *See* https://blog.google/products/ads-commerce/prepare-for-future-with-google-analytics-4/ (last accessed Sept. 24, 2023).

[26]    *See* https://support.google.com/analytics/answer/12159447?hl=en (last accessed Sept. 24, 2023).

1   significance is that the tracking code is a default feature of Google Analytics.[27]

2        26.     Google describes Google Analytics as follows: "Every time a user visits a webpage

3   [with the code], the tracking code *will collect [purportedly] pseudonymous information about how*

4   *that user interacted with the page*."[28]  This includes dozens of data points about a user including

5   personal information, operating system information,[29] browser information, device type usage,

6   geolocation data, and other identifying information.  Google Analytics also collects "traffic source"

7   data detailing what brought users to the site or mobile application in the first place, such as a search

8   engine, an advertisement they clicked on, or an email marketing campaign.[30]  When the tracking

9   code collects data, "it packages the information up and sends it to Google Analytics to be processed

10  into reports."[31]  The reports are then organized based on particular criteria like whether a user's

11  device is mobile or desktop, or which browser they are using.[32]  A Google Analytics customer can

12  further configure the settings to allow them to customize what data is collected and how it is

13  processed.[33]

14       27.     Google Analytics has vast capabilities and can collect a large range of user data of up

15  to 200 different metrics, including the following according to Google:[34]

16   - **Ad Interactions** – Includes when users are exposed to ads, when users click ads, and
17     when ads grant rewards.

18   - **Button Click Data** – Includes when users click links that lead outside of the current
19     domain, when users click links leading to files, how often buttons are clicked, tracking
     common clicks, any buttons clicked by site visitors, when screen transitions occur,
20     every time a user's page loads or is changed by the active site, when a user scrolls to

---

21  [27] *See id.*

22  [28] *Id.*

23  [29] *See id.*

24  [30] *Id.*

25  [31] *Id.*

26  [32] *See id.*

     [33] *See id.*

27  [34]     *See*    https://support.google.com/firebase/answer/9234069?sjid=13198096824834568666-
     NA&visit_id=638248819935482735-1615699485&rd=1    (last    accessed    Sept.    24,    2023);
     https://support.google.com/analytics/answer/9216061?sjid=13198096824834568666-NA    (last
28  accessed Sept. 24, 2023).

the bottom of a page, each time a user performs a site search, first time site visits, and when users use and submit forms.

- **Enabling Options** – Google Analytics allows customers to enable "enhanced measurements" which allow for the collection of other types of optional data. The optional enhanced measurements do not require code changes; instead, once the options are enabled Google Analytics begins collecting the data. Examples of custom data events that can be collected include conversion events, page views based on browser history, scrolls, and site searches.

28.    Google Analytics tracking technology identifies or distinguishes users and devices and collects information about users' interactions with websites and mobile applications, including signaling and interaction data associated with those communications.



29.    Google Analytics tracking technology

30.

31.

32.

33.

1

2

3

4

5    34.   User website interactions and data collected by Google Analytics' tools are

6    transmitted in real time to Google, where the information is stored and processed into reports.

7    According to Google, once Google Analytics processes the data, Google stores it in a database where

8    it cannot be changed.[35]

9    35.   Google offers these technologies to customers for free because Google benefits (and

10   profits) from their use.  Google can use the data it gleans from Google Analytics to power its

11   algorithms, providing it insight into the habits of users across the internet.  Indeed, the data obtained

12   from Google Analytics allows Google to amass huge amounts of data on individuals in a detailed

13   dossier, or digital fingerprint, that Google keeps on its users and other website visitors.  To the benefit

14   of Google, Google Analytics also includes a feature that allows it to integrate with other Google data

15   collecting products such as Google Ads, Google Data Studio, Google AdSense, Google Optimize

16   360, Google Ad Manager, and Google Search Console.[36]

17   36.

18

19

20

21

22                                                                              [37]

23   37.   Google Analytics is widely deployed across many industries.

24   ─────────────

25   [35] *See* https://support.google.com/analytics/answer/12159447?hl=en (last accessed Sept. 24, 2023).

     [36]      *See*          https://www.techtarget.com/searchbusinessanalytics/definition/Google-
26   Analytics#:~:text=Google%20Analytics%20includes%20features%20that,and%20integration%20
     with%20other%20applications (last accessed Sept. 24, 2023).

27   [37] *See* https://support.google.com/analytics/answer/9379420?hl=en#zippy=%2Cin-this-article
     (linking Google Ads account to Google Analytics properties "take[s] . . . results to the next level.")
28   (last accessed December 18, 2025)

38.     Google Analytics has been available in some form to website developers since 2005. The most recent version of Google Analytics was adopted by Google on July 1, 2023.[38]

### *Google Secretly Hoovers Up Vast Amounts of Private Tax Return Information*

39.     Enabled by Google Analytics tracking technology, tax filing services such as H&R Block, TaxAct, and TaxSlayer have been quietly transmitting sensitive financial information to Google when Americans prepare and file their taxes on the Tax Preparers' websites and mobile applications .

40.     The information transmitted to Google via Google Analytics can be used by the company to power and refine its advertising algorithms and related commercial systems.  When Google Analytics is deployed on a website or mobile application, it automatically collects and transmits information about users' interactions with that site or application including pages viewed, buttons clicked, form interactions, and other behavioral signals as those interactions occur.  Google uses this information to analyze user behavior, measure advertising effectiveness, develop audience profiles, and improve targeted advertising products.  Users of Google Analytics can also access aggregated analytics reports generated from this data to understand how their own users enter, navigate, and exit their websites and mobile applications.

41.     Google markets Google Analytics as allowing businesses to understand how users interact across their websites and mobile applications, anticipate future customer behavior, and optimize marketing performance.[39]  Google promotes Google Analytics as easy to adopt and broadly accessible, including through default configurations and enhanced measurement features on websites that allow customers to enable data collection with minimal technical effort.[40]  Through these features, Google encourages widespread deployment of Google Analytics and the routine collection of user interaction data at scale.

42.     Google Analytics allows customers like the Tax Preparers to configure and customize the data collected through Google Analytics tracking technology.  Through configuration options

---

[38] *See* https://support.google.com/analytics/answer/11583528?hl=en (last accessed Sept. 24, 2023).

[39] *See* https://marketingplatform.google.com/about/analytics/ (last accessed January 2, 2026).

[40] *See* https://support.google.com/analytics/answer/9216061 (last accessed January 2, 2026).

and event settings, Google enables businesses to determine which user interactions and data points are collected and transmitted to Google, allowing more sophisticated customers to tailor Google Analytics to their specific tracking and reporting objectives.[41]

43.    H&R Block, TaxAct, and TaxSlayer are some of the most widely used electronic tax filing services in the United States.  These companies used and use used Google Analytics tracking technology.

44.    ███████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████████████████.

45.    H&R Block, TaxAct, and TaxSlayer each used Google Analytics tracking technology in connection with their online tax-preparation services.  Their use of Google Analytics resulted in the transmission of sensitive information, including tax-related information, to Google through Google Analytics including, *inter alia*, adjusted gross income and refund amounts.[42]  Each Plaintiff used one or more of the Tax Preparers' online tax-preparation services during periods when Google Analytics tracking technology was in use by the Tax Preparers, and each Plaintiff therefore had their tax-preparation activity and associated sensitive information transmitted to Google.

46.    Google would have known, or at best recklessly turned a blind eye to, the fact that it was collecting vast amounts of confidential tax and other sensitive information.  Income and other related financial information are highly valuable demographic markers for advertising purposes.

47.    Concerning the anonymity of the sensitive information collected, Google claims such information is not associated with the user's name or other identifiable information making it so that the information is not able to be linked to a specific user.  However, a Stanford and Princeton study found that Google's tracking software is able to "successfully carry out de-anonymization" through

---

[41]    *See*   https://support.google.com/analytics/answer/12131703?sjid=5199951762458264308-NA (last accessed Sept. 24, 2023).

[42] *See* United States Senate, *Attacks on Tax Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data*, at 6, *available at* https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf (last accessed Sept. 24, 2023).

a simple process that leverages a user's web browsing history collected by Google's tracking tools.[43] Regardless, data can be compiled and used by Google Analytics customers to target ad content, limiting the extent that anonymity can be protected. Further, Google company officials have admitted that if a Google Analytics customer so desired, they would be able to configure their settings to track sensitive taxpayer information such as adjusted gross income, and Google's systems would not filter this information or even alert anyone.

48.     Google purports to have policies in place that prohibit its Google Analytics customers from "passing any information that could be used by Google to identify individuals." Google further claims that "[c]ustomers who violate [their] policies are subject to account suspension or termination."[44] Yet Google has admitted to never having contacted any of the Tax Preparers about their sharing sensitive information with Google, and it did not suspend or terminate any of the Tax Preparers' accounts at any time.

49.     Evidence obtained as part of a recent Senate investigation appears to indicate that Google "failed to implement adequate safeguards to prevent the transfer of taxpayers' sensitive personal and financial information, despite their contentions that they did so."[45]

### *Google Did Not Receive Consent To Receive Confidential Tax Information*

50.     The Internal Revenue Code states that a tax return preparer may not disclose "any information furnished to him for, or in connection with, the preparation of any such return" or use "any such information for any purpose other than to prepare, or assist in preparing any such return." 26 U.S.C. § 7216 (a). Thus, taxpayers can (and do) furnish their returns and return information, *i.e.*, income, refund amount, and filing status, to tax prep companies presumably with confidence that their privacy will be maintained. Tax return information protected by law includes information that the taxpayer provided solely for tax preparation purposes. Under the Code, this information is prohibited from disclosure unless the taxpayer gives permission to do so. *See id.* Further, "disclosure" is defined as "the act of making tax return information known to any person in any

---

[43] *See id.* at 15.

[44] *See id.* at 20.

[45] *See id.* at 18.

manner whatever." 26 C.F.R. 301.7216-l(b)(5).

51.    Google Analytics provides tax preparation companies with aggregated statistical reports.    However, ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████. Further, the data transmitted to Google is not truly anonymous because it could be directly or indirectly associated with individual taxpayers through identifiers, device information, or other data points.

52.    Google also makes false representations and/or warranties that it does not collect sensitive information like the information at issue here.

53.    For Google customers who connect their Google Analytics account to Google's advertising products, the Google Analytics Advertising Features Policies apply.    Google's Advertising Policies expressly provide that website developers will not share data that includes health, *financial* or other categories of sensitive information.  However, Google does not enforce this policy.

## CLASS ACTION ALLEGATIONS

54.    Plaintiffs seek to represent the following classes and subclasses:

**The Nationwide Pen Register Class and Subclasses (Cal. Penal Code § 638.51):**

Class: All individuals in the United States who visited the Tax Preparers' websites, or used the Tax Preparers' mobile applications.  This class seeks certification of claims under California Penal Code § 638.51.  Each Plaintiff seeks to be a class representative for this class.

H&R Block Subclass: All individuals in the United States who visited the H&R Block website, or used the H&R Block mobile application.  This class seeks certification of claims under California Penal Code § 638.51.  Plaintiffs Smith, Goldberg, Yeager, Aaron and Gonzalez seek to be class representatives for this subclass.

TaxAct Subclass: All individuals in the United States who visited the TaxAct website, or used the TaxAct mobile application.  This class seeks certification of claims under California Penal Code § 638.51.  Plaintiffs Layton, Armstrong, Almeda and Yeager seek to be class representatives for this subclass.

TaxSlayer Subclass: All individuals in the United States who visited the TaxSlayer website, or used the TaxSlayer mobile application.  This class seeks certification of

claims under California Penal Code § 638.51. Plaintiffs Patterson and Armstrong seek to be class representatives for this subclass.

**The Nationwide Eavesdropping Class and Subclasses (Cal. Penal Code §§ 632 and 635):**

Class: All individuals in the United States who visited the Tax Preparers' websites, or used the Tax Preparers' mobile applications. This class seeks certification of claims under California Penal Code §§ 632 and 635. Each Plaintiff seeks to be a class representative for this class.

H&R Block Subclass: All individuals in the United States who visited the H&R Block website, or used the H&R Block mobile application. This class seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiffs Smith, Goldberg, Yeager, Aaron and Gonzalez seek to be class representatives for this subclass.

TaxAct Subclass: All individuals in the United States who visited the TaxAct website, or used the TaxAct mobile application. This class seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiffs Layton, Armstrong, Almeda and Yeager seek to be class representatives for this subclass.

TaxSlayer Subclass: All individuals in the United States who visited the TaxSlayer website, or used the TaxSlayer mobile application. This class seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiffs Patterson and Armstrong seek to be class representatives for this subclass.

**The Nationwide Wiretapping Class and Subclasses (18 U.S.C. §§ 2510,** *et seq* **and 18 U.S.C. § 2512):**

Class: All individuals in the United States who visited the Tax Preparers' websites, or used the Tax Preparers' mobile applications. This class seeks certification of claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Each Plaintiff seeks to be a class representative for this class.

H&R Block Subclass: All individuals in the United States who visited the H&R Block website, or used the H&R Block mobile application. This class seeks certification of claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Plaintiffs Smith, Goldberg, Yeager, Aaron and Gonzalez seek to be class representatives for this subclass.

TaxAct Subclass: All individuals in the United States who visited the TaxAct website, or used the TaxAct mobile application. This class seeks certification of claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Plaintiffs Layton, Armstrong, Almeda and Yeager seek to be class representatives for this subclass.

TaxSlayer Subclass: All individuals in the United States who visited the TaxSlayer website, or used the TaxSlayer mobile application. This class seeks certification of

claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Plaintiffs Patterson and Armstrong seek to be class representatives for this subclass.

**The California Wiretapping Class and Subclasses (Cal. Penal Code § 631(a) and 635):**

Class: All individuals in the United States who visited the Tax Preparers' websites, or used the Tax Preparers' mobile applications. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiffs Yeager, Almeda, Aaron and Gonzalez seek to be class representatives for this class

H&R Block Subclass: All individuals in the United States who visited the H&R Block website, or used the H&R Block mobile application. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiffs Yeager, Aaron and Gonzalez seek to be class representatives for this subclass.

TaxAct Subclass: All individuals in the United States who visited the TaxAct website, or used the TaxAct mobile application. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiffs Almeda and Yeager seek to be class representatives for this subclass.

**The Florida Wiretapping Class and Subclasses (Florida Security of Communications Act, Florida Statutes § 934.10):**

Class: All individuals in Florida who visited the Tax Preparers' websites, or used the Tax Preparers' mobile applications. This class seeks certification of claims under Florida Statutes § 934.10. Plaintiffs Patterson and Goldberg seek to be class representatives for this class.

H&R Block Subclass: All individuals in Florida who visited the H&R Block website, or used the H&R Block mobile application. This class seeks certification of claims under Florida Statutes § 934.10. Plaintiff Goldberg seek to be a class representative for this subclass.

TaxSlayer Subclass: All individuals in Florida who visited the TaxSlayer website, or used the TaxSlayer mobile application. This class seeks certification of claims under Florida Statutes § 934.10. Plaintiff Patterson seeks to be a class representative for this subclass.

**The Nationwide UCL Public Injunctive Relief Class and Subclasses (Cal. Bus. & Prof. Code § 17200 *et seq*.):**

Class: All individuals in the United States who visited the Tax Preparers' websites, or used the Tax Preparers' mobile applications. This class seeks certification of claims under Cal. Bus. & Prof. Code § 17200. Each Plaintiff seeks to be a class representative for this class.

H&R Block Subclass: All individuals in the United States who visited the H&R Block website, or used the H&R Block mobile application. This class seeks

certification of claims under Cal. Bus. & Prof. Code § 17200.  Plaintiffs Smith, Goldberg, Yeager, Aaron and Gonzalez seek to be class representatives for this subclass.

<u>TaxAct Subclass</u>: All individuals in the United States who visited the TaxAct website, or used the TaxAct mobile application.  This class seeks certification of claims under Cal. Bus. & Prof. Code § 17200.  Plaintiffs Layton, Armstrong, Almeda and Yeager seek to be class representatives for this subclass.

<u>TaxSlayer Subclass</u>: All individuals in the United States who visited the <u>TaxSlayer</u> website, or used the <u>TaxSlayer</u> mobile application.  This class seeks certification of claims under Cal. Bus. & Prof. Code § 17200.  Plaintiffs Patterson and Armstrong seek to be class representatives for this subclass.

55.    Plaintiffs reserve the right to modify the definitions of the classes and subclasses, including by using additional subclasses, as appropriate based on further investigation and discovery obtained in the case.

56.    Members of each of the putative classes and subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of each of the putative classes and subclasses number in the tens of thousands or more.  The precise number of members of each of the putative classes and subclasses and their identities are unknown at this time but may be determined through discovery.  Members of the putative classes and subclasses may be notified of the pendency of this action by mail and/or publication through the distribution records of Google.

57.    Common questions of law and fact exist as to all members of the putative classes and and subclasses, and predominate over questions affecting only individual class members.  Common legal and factual questions include, but are not limited to, whether Google has violated wiretapping statutes at issue here, and whether class members are entitled to statutory damages for the violations.

58.    The claims of the named Plaintiffs are typical of the claims of the members of the putative classes and subclasses because the named Plaintiffs, like all other class members, used the online tax-preparation services of H&R Block, TaxAct, or TaxSlayer and had their electronic communications intercepted and disclosed to Google through Google Analytics tracking technology.

59.    Plaintiffs are adequate representatives of the putative classes because their interests

do not conflict with the interests of the class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the members of the putative classes and subclasses will be fairly and adequately protected by Plaintiffs and their counsel.

60.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the members of the putative classes and subclasses.  Each individual member of the putative classes and subclasses may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Google's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Google's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

61.     Plaintiffs bring all claims in this action individually and on behalf of the members of the putative classes and subclasses against Google.

### COUNT I
### Violation of the California Invasion of Privacy Act,
### California Penal Code § 631

62.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

63.     Plaintiffs Almeda, Yeager, Aaron and Gonzalez bring this claim individually and on behalf of the members of the putative California Wiretapping Class and subclasses against Google.

64.     To establish liability under Section 631(a) of CIPA, a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including

the wire, line, cable, or instrument of any internal telephonic communication system,

Or

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

65.     Section 631(a) of CIPA is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc*., Case No. 15-CV-04062-LHK, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., No. C 06-05289 WHA, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

66.     Google Analytics tracking technology constitutes a "machine, instrument, contrivance, or … other manner" of interception, within the meaning of the applicable wiretapping and pen register statutes, and was used by Google to engage in the prohibited conduct at issue here.

67.     At all relevant times, through its operation of Google Analytics tracking technology, Google intentionally intercepted, acquired, and contemporaneously obtained the electronic communications exchanged between Plaintiffs and the members of the putative classes, and the Tax Preparers' websites and mobile applications, without the consent of Plaintiffs or the members of the putative classes and subclasses.

68.     At all relevant times Google, through its operation of Google Analytics tracking technology, willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read or learn the contents or meaning of electronic communications of Plaintiffs and the members of the putative classes and subclasses while those communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

69.     Plaintiffs and the members of the putative classes and subclasses did not consent to any of Google's actions in implementing the wiretaps.  Plaintiffs and the members of the putative classes and subclasses did not consent to Google's access, interception, reading, learning, recording, and collection of Plaintiffs' and putative members of the classes' and subclasses' electronic communications.

70.     Plaintiffs Almeda, Yeager, Aaron and Gonzalez, and the members of the putative classes and subclasses, seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

### COUNT II
### Violation of the California Invasion of Privacy Act,
### California Penal Code § 632

71.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

72.     Plaintiffs bring this Count individually and on behalf of the members of the putative Nationwide Eavesdropping Class and subclasses against Google.

73.     The California Invasion of Privacy Act ("CIPA") is codified at Sections 630 to 638 of the California Penal code.  The Act begins with its statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

CAL. PENAL CODE § 630.

1.     Section 632(a) provides, in pertinent part:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation.

74.    A defendant must show it had the consent of all parties to a communication.

75.    Google Analytics tracking technology constitutes "an electronic amplifying or recording device" under CIPA.

76.    The data collected by Google constitutes "confidential communications," as that term is used in Section 632 of CIPA, because Plaintiffs and the members of the putative classes and subclasses had objectively reasonable expectations of privacy with respect to their tax filing information and other sensitive information.

77.    Pursuant to Section 637.2 of the California Penal Code, Plaintiffs and members of the putative classes and subclasses have been injured by the violations of Section 632, and each seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

**COUNT III**
**Violation of the California Invasion of Privacy Act,**
**California Penal Code § 635**

78.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

79.    Plaintiffs bring this claim individually and on behalf of the members of the National Eavesdropping Class and subclasses, and the California Wiretapping Class and subclasses, against Google.

80.    Section 635 of the California Penal Code provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or

communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars ….

81.     At all relevant times, by implementing Google's wiretaps, Google intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

82.     Google Analytics tracking technology constitutes a "device" that is designed, in substantial part, to intercept, acquire, and record information about users' electronic communications and interactions with websites and mobile applications.  Through its design and operation, Google Analytics systematically collects information regarding users' navigation, searches, inputs, and other interaction data as those communications and interactions occur.

83.     Plaintiffs and the members of the putative classes and subclasses did not consent to any of Google's actions in implementing Google's wiretaps.

84.     Pursuant to Section 637.2 of the California Penal Code, Plaintiffs and members of the putative classes and subclasses have been injured by the violations of Section 635 of the California Penal Code, and each seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

**COUNT IV**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 638.51**

85.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

86.     Plaintiffs bring this claim individually and on behalf of the members of the putative Nationwide Pen Register Class and subclasses against Google.

87.     California Penal Code § 638.50(b) defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the

1   contents of a communication."

2        88.   California Penal Code § 638.51 prohibits any person from using a pen register without

3   a court order.

4        89.   Google Analytics tracking technology constitutes a "pen register" because it is a

5   device or process that records or decodes dialing, routing, addressing or signaling information from

6   the electronic communications transmitted between users and the Tax Preparers' online tax-

7   preparation services.

8        90.   Google Analytics tracking technology identifies or distinguishes users and devices

9   and collects information about users' interactions with websites and mobile applications, including

10  signaling and interaction data associated with those communications.

11       91.   ████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████.

15       92.   ████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████.

19       93.   ████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████.

23       94.   Google was not authorized by any court order to use a pen register to track and collect

24  location data and other personal information from Plaintiffs and the members of the putative classes

25  and subclasses.

26       95.   Plaintiffs seek all available relief under this cause of action.

27

28

**COUNT V**
**Violation of the Federal Wiretap Act,**
**18 U.S.C. §§ 2510, *et seq.***

96.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

97.     Plaintiffs bring this claim individually and on behalf of the members of the putative Nationwide Wiretapping Class and subclasses against Google.

98.     The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, prohibits the intentional interception of the contents of any wire, oral, or electronic communications through the use of a device.  *See* 18 U.S.C. § 2511.

99.     The Federal Wiretap Act protects both the sending and receiving of communications.

100.    Section 2520(a) of the Federal Wiretap Act provides a private right of action to any person whose wire, oral or electronic communication is intercepted.

101.    Google's actions in intercepting and tracking the information at issue here were intentional and done for the purpose of violating laws prohibiting the unlawful disclosure and review of tax information.

102.    Google's intentional interception of internet communications that Plaintiffs and the members of the putative classes and subclasses were sending and receiving while navigating websites and using mobile applications that integrated Google Analytics was done contemporaneously with the Plaintiffs' and the classes' sending and receipt of those communications.

103.    The communications intercepted by Google included "contents" of electronic communications made by Plaintiffs and the members of the putative classes and subclasses.

104.    The transmission of data between the tax-filing service websites and mobile applications, and the members of the putative classes and subclasses, were "transfer[s] of signs, signals, writing, … data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetics, photoelectronic, or photooptical system that affects interstate commerce[,]" and were therefore "electronic communications" within the meaning of Section 2510(12) of the Federal Wiretap Act. *See* 18 U.S.C. § 2510(12).

105.    Google Analytics tracking technology constitutes a "device" within the meaning of

Section 2510(5) of the Wiretap Act. *See* 18 U.S.C. § 2510(5).

106.    Google was not an authorized party to the communications because Plaintiffs and the members of the putative classes and subclasses were unaware of Google's monitoring.  The members of the putative classes and subclasses did not consent to Google's interception or continued gathering of the user's communications.

107.    The interceptions by Google were unlawful and tortious, and were done in furtherance of one or more crimes baring disclosure or review of confidential tax information, and tortious invasion of privacy.

108.    After intercepting the communications, Google used the contents of the communications knowing or having reason to know that such information was obtained through the interception of electronic communications in violation of Section 2511(a) of the Federal Wiretap Act. 18 U.S.C. § 2511(a).

109.    Plaintiffs and the members of the putative classes and subclasses seek all available relief for the violations asserted here.

**COUNT VI**
**Violation of the Federal Wiretap Act,**
**18 U.S.C. § 2512**

110.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

111.    Plaintiffs bring this claim individually and on behalf of the members of the putative Nationwide Wiretapping Class and subclasses against Google.

112.    Section 2512 of the Federal Wiretap Act, in pertinent part, holds "any person" liable who manufactures, assembles, possesses or sells "any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce."  18 U.S.C. § 2512(1)(b).

113.    The technology at issue here is an "electronic, mechanical, or other device" as defined by Section 2510(5) of the Federal Wiretap Act and is primarily useful for the purpose of the

1    surreptitious interception of electronic communications. *See* 18 U.S.C. § 2510(5).

2    114.    Google manufactured, marketed, and sold the technology at issue here with

3    knowledge that it would primarily be used to illegally intercept electronic communications.

4    115.    Google's conduct violated Section 2512 of the Federal Wiretap Act and therefore

5    gives rise to a claim under Section 2520 of the Federal Wiretap Act. *See* 18 U.S.C. §§ 2512, 2520.

6    116.    Pursuant to Section 2520, Plaintiffs and the members of the putative classes and

7    subclasses are entitled to the greater of actual damages or statutory damages or not less than $100 a

8    day for each day of violation or $10,000, whichever is greater. *See* 18 U.S.C. § 2520.

**COUNT VII**
**Violation of the Florida Security of Communications Act,**
**Florida Statutes § 934.10**

9
10

11    117.    Plaintiffs Patterson and Goldberg repeat the allegations contained in the paragraphs

12    above as if fully set forth herein.

13    118.    Plaintiffs Patterson and Goldberg bring this claim individually and on behalf of the

14    members of the Florida Wiretapping Class and subclasses against Google.

15    119.    Florida's Security of Communications Act, Fla. Stat. § 934.03, *et seq.*, provides that

16    any person whose wire, oral, or electronic communication is intentionally intercepted, disclosed, or

17    used in violation of the statute may bring a civil cause of action against any person or entity who

18    "intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such

19    communications."

20    120.    The Florida Security of Communications Act prohibits companies from intentionally

21    intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to

22    intercept any wire, oral, or electronic communication without the prior consent of all parties to the

23    communication.

24    121.    Google's conduct violated the Florida Security of Communications Act because

25    Google intentionally intercepted and/or recorded, by device or otherwise, private communications

26    between Plaintiffs Patterson, Goldberg and the members of the Florida Wiretapping Class and

27    subclasses and their online tax-filing service providers, as described more fully herein, without first

28    obtaining consent from Plaintiffs Patterson and Goldberg and the members of the Florida

1    Wiretapping Class and subclasses.

2        122.    Plaintiffs Patterson and Goldberg and the members of the Florida Wiretapping Class

3    and subclasses suffered harm as a result of Google's violations of the Florida Security of

4    Communications Act, and therefore seek all available relief under that statute.

5

6

7                                    **COUNT VIII**
                      **Violation Of California's Unfair Competition Law**
8                      **(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

9        123.    Plaintiffs hereby incorporate all other paragraphs as if fully stated herein.

10        124.    Plaintiffs bring this claim individually and on behalf of the members of the putative

11    Nationwide UCL Public Injunctive Relief Class and subclasses against Google.

12        125.    California Business and Professions Code section 17200 ("UCL") prohibits any

13    "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading

14    advertising . . ."

15        126.    Plaintiffs base their UCL cause of action on the "unlawful" and "unfair" prongs of

16    the UCL.  Google has engaged in unlawful and unfair business acts and practices in violation of the

17    UCL.

18        127.    Google has engaged in unlawful acts or practices under section 17200 by its

19    violations of the statutory claims asserted in this complaint.

20        128.    Google has engaged in unfair acts and practices under section 17200 by

21    surreptitiously collecting the data at issue in this litigation for its own business purposes.

22        129.    Google's actions offend public policy.

23        130.    Google's unfair and/or unlawful conduct has also impaired competition within the

24    tax-preparation and financial services market in that those actions have prevented Plaintiffs and the

25    members of the putative Nationwide UCL Public Injunctive Relief Class and subclasses from

26    making fully informed decisions about whether to communicate online with their financial services

27    providers and to use their providers' websites and mobile applications in the first instance.

28        131.    Plaintiffs and the members of the putative Nationwide UCL Public Injunctive Relief

Class and subclasses have suffered an injury in fact, including the loss of money and/or property, as a result of Google's unfair and unlawful practices, to wit, the disclosure of their tax filing data and other sensitive information which has value as is demonstrated by the use and sale of it by Google. While only an identifiable "trifle" of injury is needed to be shown, as set forth above, Plaintiffs, the Class Members, and the public at large value their tax filing and other information at more than a trifle. And sale of this confidential and valuable information has now diminished the value of such information to Plaintiffs and the members of the putative Nationwide UCL Public Injunctive Relief Class and subclasses.

132.    Google's actions caused damage to and loss of Plaintiffs', the members of the putative Nationwide UCL Public Injunctive Relief Class and subclasses', and other taxpayers' property right to control the dissemination and use of their personally identifiable financial and tax data and communications.

133.    Each Plaintiff also suffered economic injury by the loss of their personal tax filing and other information to Google.

134.    Google's actions caused damage to and loss of Plaintiffs', the members of the putative Nationwide UCL Public Injunctive Relief Class and subclasses', and other taxpayers' property rights to control the dissemination and use of the personally identifiable communications.

135.    Plaintiffs and the members of the putative Nationwide UCL Public Injunctive Relief Class and subclasses have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Google alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and the members of the putative Nationwide UCL Public Injunctive Relief Class and subclasses are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

131.    The wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Google's business.  Google's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, in the State of California.

132.    Each Plaintiff wants to continue using tax-filing websites to prepare their tax returns, including one or more of the tax filing websites at issue here. They have no practical way of determining whether Google is continuing to collect financial information and other data from those websites.

133.    Plaintiffs seek public injunctive relief prohibiting Google from using the technologies at issue here.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Google, as follows:

a.    For an order certifying the putative classes and subclasses, naming Plaintiffs as the representatives of the putative classes and subclasses, and naming Plaintiffs' attorneys as Class Counsel to represent the members of the putative classes and subclasses;

b.    For an order declaring that Google's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs and the putative classes and subclasses on all counts asserted herein;

d.    For actual and/or statutory damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For injunctive relief as pleaded or as the Court may deem proper; and

g.    For an order awarding Plaintiffs and the putative classes and subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

1    Dated:  January 23, 2026                    Respectfully submitted,

2                                                **BURSOR & FISHER, P.A**.

3                                                By:  ___*/s/ Neal J. Deckant*___

4
                                                Neal J. Deckant, Cal. Bar No. 322946
5                                                1990 North California Blvd., Suite 940
                                                Walnut Creek, CA 94596
6                                                Telephone: (925) 300-4455
                                                Facsimile: (925) 407-2700
7                                                Email: ndeckant@bursor.com

8                                                **GEORGE FELDMAN MCDONALD, PLLC**
                                                Lori G. Feldman, *Admitted Pro Hac Vice*
9                                                Michael Liskow, Cal. Bar No. 243899
                                                200 Park Avenue, Suite 1700
10                                                New York, New York 10166
                                                Telephone: (646) 354-6534
11                                                Email: lfeldman@4-justice.com
                                                Email: mliskow@4-justice.com
12
                                                **GEORGE FELDMAN MCDONALD, PLLC**
13                                                Rebecca A. Peterson (State Bar No. 241858)
                                                1650 West 82nd Street, Suite 880
14                                                Bloomington, MN 55431
                                                Telephone: (612) 778-9595
15                                                Facsimile: (888) 421-4173
                                                E-mail: rpeterson@4-Justice.com
16
                                                **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
17                                                Kate M. Baxter-Kauf, *Admitted Pro Hac Vice*
                                                100 Washington Avenue South, Suite 2200
18                                                Minneapolis, MN 55401
                                                Telephone: (612) 339-6900
19                                                Facsimile: (612) 339-0981
                                                Email: kmbaxter-kauf@locklaw.com
20
                                                **THE HODA LAW FIRM, PLLC**
21                                                Marshal J. Hoda, *Admitted Pro Hac Vice*
                                                12333 Sowden Road, Suite B, PMB 51811
22                                                Houston, TX 77080
                                                Telephone: (832) 848-0036
23                                                E-mail: marshal@thehodalawfirm.com

24                                                **FOSTER YARBOROUGH PLLC**
                                                Patrick Yarborough, *Admitted Pro Hac Vice*
25                                                917 Franklin Street, Suite 220
                                                Houston, TX 77002
26                                                Telephone: (713) 331-5254
                                                Facsimile: (713) 513-5202
27                                                Email: patrick@fosteryarborough.com

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; CASE NO. 5:23-CV-03527-PCP        29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EMERSON FIRM, PLLC**
John G. Emerson, *Admitted Pro Hac Vice*
2500 Wilcrest Drive, Suite 300
Houston, TX 77042-2754
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
Email: jemerson@emersonfirm.com

**SMITH KRIVOSHEY, P.C.**
Joel D. Smith, Cal. Bar. No. 244902
867 Boylston Street
5th Floor, #1520
Boston, MA 02116
Telephone: 617-377-7404
joel@skclassactions.com

*Attorneys for Plaintiff*