**HECHT PARTNERS LLP**
Lori G. Feldman *(pro hac vice)*
Michael Liskow (State Bar No. 243899)
125 Park Avenue, 25th Floor
New York, NY 10017
Phone: (212) 851-6821
Fax: (888) 421-4173
E-mail: lfeldman@hechtpartners.com
     mliskow@hechtpartners.com

*Attorneys for Plaintiffs*

*Additional Attorneys on Signature Page*

**BURSOR & FISHER, P.A.**
Neal Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MARY L. SMITH, *et al.*, individually and on behalf of all others similarly situated,

                      Plaintiffs,

   v.

GOOGLE, LLC.,

                      Defendant.

Case No.: 5:23-cv-03527-PCP
(Consol. w/ 5:23-cv-04191-BLF)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

Date:          November 19, 2026
Time:          10:00 a.m.
Judge:        Hon. P. Casey Pitts
Complaint Filed: July 14, 2023

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 19, 2026, at 10:00 a.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 280 South First Street, San Jose, CA, 95113, Courtroom 8, 4th Floor in the Courtroom of Judge P. Casey Pitts, Plaintiffs will and hereby do move the Court for an order granting their motion to certify the proposed classes below, appoint plaintiffs Tiffany Layton, Jamila Armstrong, Joseph Sebastian Nino and Tracylyn Patterson ("Representative Plaintiffs") as class representatives, and appoint Lori G. Feldman of Hecht Partners LLP, and Neal Deckant of Bursor & Fisher, P.A., as class counsel.

Plaintiffs seek certification of claims for damages and injunctive relief under Rule 23(b)(3), and injunctive relief under Rule 23(b)(2).

This motion is made on the grounds that Representative Plaintiffs have met each requirement of Rules 23(a), 23(b)(2), and 23(b)(3). The Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all supporting declarations, exhibits, expert reports, the documents on file, and upon such matters as may be presented to the Court at the time of the hearing.

Plaintiffs seek certification of the following classes and subclasses:

**The Nationwide Eavesdropping Class and Subclasses (Cal. Penal Code §§ 632 and 635):**

Class: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiffs Layton, Armstrong, Nino and Patterson seek to be class representatives for this class.

TaxAct Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present. This subclass seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiffs Layton, Armstrong and Nino seek to be class representatives for this subclass.

TaxSlayer Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This subclass seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiff Patterson seeks to be a class representative for this subclass.

**The Nationwide Wiretapping Classes and Subclasses (18 U.S.C. §§ 2510, *et seq* and 18 U.S.C. § 2512):**

Class: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks certification of claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Plaintiffs Layton, Armstrong, Nino and Patterson seek to be class representatives for this class.

TaxAct Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present. This subclass seeks certification of claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Plaintiffs Layton, Armstrong and Nino seek to be class representatives for this subclass.

TaxSlayer Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This subclass seeks certification of claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Plaintiff Patterson seeks to be a class representative for this subclass.

**The California Wiretapping Class and Subclass (Cal. Penal Code §§ 631(a) and 635):**

Class: All individuals in California who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiff Nino seeks to be a class representative for this class.

TaxAct Subclass: All individuals in California who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present. This subclass seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiff Nino seeks to be a class representative for this subclass.

**The Florida Wiretapping Class and Subclass (Florida Security of Communications Act, Florida Statutes § 934.10):**

Class: All individuals in Florida who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks

certification of claims under Florida Statutes § 934.10. Plaintiff Patterson seeks to be a class representative for this class.

TaxSlayer Subclass: All individuals in Florida who completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This subclass seeks certification of claims under Florida Statutes § 934.10. Plaintiff Patterson seeks to be a class representative for this subclass.

**The Nationwide Pen Register Class and Subclasses (Cal. Penal Code § 638.51):**

Class: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks certification of claims under California Penal Code § 638.51. Plaintiffs Layton, Armstrong, Nino and Patterson seek to be class representatives for this class.

TaxAct Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present. This subclass seeks certification of claims under California Penal Code § 638.51. Plaintiffs Layton, Armstrong and Nino seek to be class representatives for this subclass.

TaxSlayer Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This subclass seeks certification of claims under California Penal Code § 638.51. Plaintiff Patterson seeks to be a class representative for this subclass.

Excluded from each of the Classes are the assigned Judge(s), Plaintiffs' counsel, Google's counsel, the parties' retained experts, Google's officers and directors, members of their immediate families, any entity in which Google has or had a controlling interest, and the successors or assigns of any of the foregoing. Plaintiffs reserve their right to modify the proposed class definitions as may be warranted, including to account for any arguments or evidence Google submits in opposition to class certification. *See* Fed. R. Civ. P. 23(c)(1)(C) (a class definition may be altered any time "before final judgment").

Dated: July 16, 2026

Respectfully submitted,

**HECHT PARTNERS LLP**

By: */s/ Michael Liskow*
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
125 Park Avenue, 25th Floor
New York, NY 10017
Phone: (212) 851-6821
Fax: (888) 421-4173
E-mail: lfeldman@hechtpartners.com
    mliskow@hechtpartners.com

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................1

II.  PROPOSED CLASSES AND REPRESENTATIVE PLAINTIFFS ...............................2

III.  SUMMARY OF FACTS COMMON TO ALL MEMBERS OF THE CLASSES ........................................................................................................................4

    A.  How Google Analytics Works................................................................................4

    B.  Types of Information Improperly Collected by Google Using Google Analytics................................................................................................................5

        1.  Tax Information.........................................................................................5

            a.  Tax Return Information ................................................................5

            b.  Tax Preparation Information .........................................................7

                i.  TaxAct Tax Preparation Information ...................................8

                ii.  TaxSlayer Tax Preparation Information...............................8

        2.  Pen Register Information...........................................................................9

    C.  Analytics Data Produced by Google ....................................................................10

    D.  Tax Preparers' Records Concerning Representative Plaintiffs and the Classes ................................................................................................................10

    E.  Despite Having the Ability to Do So, Google █████████████████████████████████████████████████ ....................11

    F.  Google Benefitted From its Collection of the Tax Preparer Users' Tax Information and Pen Register Information........................................................11

IV.  ARGUMENT .................................................................................................................12

    A.  Each Of Rule 23(a)'s Requirements Are Satisfied..............................................12

        1.  Numerosity .............................................................................................12

        2.  Commonality ..........................................................................................12

        3.  Typicality................................................................................................13

        4.  Adequacy ................................................................................................14

    B.  The Proposed Damages Classes Satisfy Rule 23(b)(3) .......................................15

        1.  Common Questions Of Law Or Fact Predominate...................................15

            a.  CIPA § 632 ................................................................................16

            b.  CIPA § 635 ................................................................................17

            c.  CIPA § 631(a)............................................................................17

            d.  Federal Wiretap Act (18 U.S.C. §§ 2510, et seq and 18 U.S.C. § 2512) .....................................................................18

            e.  Florida Security of Communications Act § 934.10 ......................19

            f.  CIPA § 638.51 ...........................................................................20

g.  Statutory Damages Provide A Straightforward Method For Calculating Classwide Damages ...................................20

h.  Injunctive Relief is Appropriate Under Rule 23(b)(3) .....................21

2.  Class Litigation Is Superior To Other Methods Of Adjudication .........................................................................................22

C.  The Proposed Classes Satisfy Rule 23(b)(2) ...........................................................23

V.  CONCLUSION ......................................................................................................................24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans. & Tr. Funds*,
    568 U.S. 455 (2013) ................................................................................................ 12, 16

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
    2016 WL 3543699 (S.D. Cal. June 29, 2016) ............................................................... 17

*Brown v. Google, LLC*,
    2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ...................................................... 22, 23

*DZ Reserve v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024) ......................................................................................... 12

*Famular v. Whirlpool Corp.*,
    2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019) ............................................................... 15

*Frasco v. Flo Health, Inc.*,
    349 F.R.D. 557 (N.D. Cal. May 19, 2025) ............................................................. Passim

*Hawkins v. S2Verify*,
    2016 WL 3999458 (N.D. Cal. July 26, 2016) ................................................................ 21

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ................................................................................... 23

*In re Meta Pixel Tax Filing Cases*,
    826 F. Supp. 3d 1217 (N.D. Cal. 2026) ................................................................. Passim

*In re Toys R Us-Delaware, Inc.*,
    300 F.R.D. 347 (C.D. Cal. 2013) ................................................................................... 21

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015) ................................................................. 13, 17, 18, 20

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ................................................................................. 13, 20

*Lytle v. Nutramax Labs, Inc.*,
    114 F.4th 1011 (9th Cir. 2024) ...................................................................................... 20

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................................... 12, 13

*McMillion v. Rash Curtis & Assocs.*,
    2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) ................................................................ 16

*Mobile Emergency Housing Corp. v. HP, Inc.*,
   2023 WL 9550942 (N.D. Cal. Dec. 8, 2023) .................................................................. 24

*Moody v. C2 Educ. Sys. Inc.*,
   742 F. Supp. 3d 1072 (C.D. Cal. 2024)........................................................................ 10

*Palacios v. Penny Newman Grain, Inc.*,
   2015 WL 4078135 (E.D. Cal. July 6, 2015) ................................................................. 13

*Perez v. Rash Curtis & Assoc.*,
   2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) .............................................................. 15

*Rabin v. Google LLC*,
   787 F. Supp. 3d 934 (N.D. Cal. 2025) ..................................................................*Passim*

*Romero v. Securus Techs., Inc.*,
   331 F.R.D. 391 (S.D. Cal. 2018)..................................................................... 16, 22, 23

*Small v. Allianz Life Ins. Co. of N. Am.*,
   122 F.4th 1182 (9th Cir. 2024)...................................................................................... 14

*Smith v. Cardinal Logistics Mgmt. Corp.*,
   2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ............................................................... 16

*Smith v. Google, LLC*,
   735 F. Supp. 3d 1188 (N.D. Cal. 2024) ....................................................................... 19

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
   2014 WL 4627271 (C.D. Cal. Sept. 8, 2014)........................................................... 14, 23

*Tavernetti v. Superior Ct.*,
   22 Cal. 3d 187 (1978).................................................................................................... 18

*Torres v. Prudential Fin. Inc.*,
   2024 WL 4894289 (N.D. Cal. Nov. 26, 2024)........................................................ 12, 13

*Valentine v. NebuAd, Inc.*,
   804 F. Supp. 2d 1022 (N.D. Cal. 2011) ....................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)....................................................................................................... 13

*Zaklit v. Nationstar Mortg. LLC*,
   2017 WL 3174901 (C.D. Cal. July 24, 2017) .......................................................... 21, 23

**Statutes**

18 U.S.C. §§ 2510 ............................................................................................... 2, 1, 3, 19

18 U.S.C. § 2511 ............................................................................................................ 19

18 U.S.C. § 2512 ...................................................................................................................... 2, 1, 3, 19

18 U.S.C. § 2520(b)(1) ..................................................................................................................... 23

18 U.S.C.A. § 2520(c)(2)(B) ............................................................................................................ 21

Cal. Penal Code §§ 631(a) and 635 .........................................................................................*Passim*

Cal. Penal Code §§ 632 ...........................................................................................................*Passim*

Cal. Penal Code § 635 .............................................................................................................*Passim*

Cal. Penal Code § 637.2(a)(1) ......................................................................................................... 21

Cal. Penal Code § 638.51 ........................................................................................................*Passim*

Fla. Stat. Ann. § 934.03 ................................................................................................................... 20

Florida Statutes § 934.10 ...................................................................................................... 1, 2, 3, 21

**Rules**

Fed. R. Civ. P. 23(a)(1) ................................................................................................................... 12

Fed. R. Civ. P. 23(a)(2) ................................................................................................................... 12

Fed. R. Civ. P. 23(a)(3) ................................................................................................................... 13

Fed. R. Civ. P. 23(a)(4) ................................................................................................................... 14

Fed. R. Civ. P. 23(b)(3) ............................................................................................................... 1, 22

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................................... 3

**Other Authorities**

2 Newberg and Rubenstein on Class Actions § 4:37 (6th ed.) .......................................................... 23

## I.    INTRODUCTION

Plaintiffs petition the Court to certify various classes of individuals described below against Defendant Google, LLC ("Google"), stemming from its willful collection, using its own Google Analytics product, of enormous amounts of confidential tax information and other identifying information from unwitting customers of the online tax filing websites offered by TaxAct and TaxSlayer (collectively "Tax Preparers"). The tax information Google collected includes ████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████. Google also collected, now for over a decade, information about █ ███████████████████████████████████████████████████ ██████████████████. Incredibly, despite this litigation and investigations by various government entities, Google appears to *still* ████████ ████████ *even today*. Finally, Google has collected, and ██████████, extensive "pen register" information reflecting ███████████████████████████ ███████████████████████████████████████████████████ ████████████████████.

Google's collection of this cornucopia of information without consent is in clear violation of numerous statutes including multiple provisions of the California Invasion of Privacy Act ("CIPA"), the Federal Wiretap Act ("FWA") and the Florida Security of Communications Act ("FSCA"). ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████. Yet perhaps the most disturbing fact uncovered thus far is that Google, a company *synonymous* with searching through and monitoring large sets of data, ██████████ ███████████████████████████████████████████████████ ██████████████████. Instead, as Google's corporate representative testified, ███████████████████████████████████████████████ ██████████████████████████████████████████████

As Plaintiffs herein readily meet the requirements of Rule 23(a), 23(b)(2) and 23(b)(3), the Court should certify the classes and subclasses discussed below, appoint Tiffany Layton, Jamila Armstrong, Joseph Sebastian Nino (the "TaxAct Plaintiffs") and Tracylyn Patterson (collectively with the TaxAct Plaintiffs, the "Representative Plaintiffs") as class representatives, and appoint Lori G. Feldman of Hecht Partners LLP ("Hecht Partners") and Neal Deckant of Bursor & Fisher, P.A. ("Bursor & Fisher") as class counsel.

II.    **PROPOSED CLASSES AND REPRESENTATIVE PLAINTIFFS**

Plaintiffs seek certification of the following classes and subclasses:

**The Nationwide Eavesdropping Class and Subclasses (Cal. Penal Code §§ 632 and 635):**

Class: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiffs Layton, Armstrong, Nino and Patterson seek to be class representatives for this class.

TaxAct Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present. This subclass seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiffs Layton, Armstrong and Nino seek to be class representatives for this subclass.

TaxSlayer Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This subclass seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiff Patterson seeks to be a class representative for this subclass.

**The Nationwide Wiretapping Classes and Subclasses (18 U.S.C. §§ 2510, *et seq* and 18 U.S.C. § 2512):**

Class: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks certification of claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Plaintiffs Layton, Armstrong, Nino and Patterson seek to be class representatives for this class.

TaxAct Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present. This subclass seeks certification of claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Plaintiffs Layton, Armstrong and Nino seek to be class representatives for this subclass.

TaxSlayer Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This subclass seeks certification of claims under 18 U.S.C. §§ 2510, *et seq*. and 18 U.S.C. § 2512. Plaintiff Patterson seeks to be a class representative for this subclass.

**The California Wiretapping Class and Subclass (Cal. Penal Code §§ 631(a) and 635):**

Class: All individuals in California who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiff Nino seeks to be a class representative for this class.

TaxAct Subclass: All individuals in California who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present. This subclass seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiff Nino seeks to be a class representative for this subclass.

**The Florida Wiretapping Class and Subclass (Florida Security of Communications Act, Florida Statutes § 934.10):**

Class: All individuals in Florida who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks certification of claims under Florida Statutes § 934.10. Plaintiff Patterson seeks to be a class representative for this class.

TaxSlayer Subclass: All individuals in Florida who completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This subclass seeks certification of claims under Florida Statutes § 934.10. Plaintiff Patterson seeks to be a class representative for this subclass.

**The Nationwide Pen Register Class and Subclasses (Cal. Penal Code § 638.51):**

Class: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present, or completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This class seeks certification of claims under California Penal Code § 638.51. Plaintiffs Layton, Armstrong, Nino and Patterson seek to be class representatives for this class.

TaxAct Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through the present. This subclass seeks certification of claims under California Penal Code § 638.51. Plaintiffs Layton, Armstrong and Nino seek to be class representatives for this subclass.

TaxSlayer Subclass: All individuals in the United States who completed the process of preparing their federal tax return on the TaxSlayer website from February 1, 2013, through the present. This subclass seeks certification of claims under California Penal Code § 638.51. Plaintiff Patterson seeks to be a class representative for this subclass.

Each class and subclass identified above is collectively referred to herein as the "Classes."[1] All Classes *except* the Nationwide Pen Register Class and Subclasses are collectively referred to as the "Tax Information Classes," while the Nationwide Pen Register Class and Subclasses are collectively referred to as the "Pen Register Classes." All members of the TaxAct subclasses are the "TaxAct Users," and all members of the TaxSlayer subclasses are the "TaxSlayer Users." Finally, the "Relevant Time Periods" refer to the following: January 10, 2018, through the present for the TaxAct subclasses, and February 1, 2013, through the present for the TaxSlayer subclasses.

III.     **SUMMARY OF FACTS COMMON TO ALL MEMBERS OF THE CLASSES**

        A.     **How Google Analytics Works**

        Google Analytics is a suite of tools and processes created by Google that automatically collects, transmits to Google, and processes users' communications and interactions whenever users engage with a website on which Google Analytics has been installed. This tracking technology operates through a combination of code, scripts, tags, and related collection mechanisms that send

---

[1] Excluded from each of the Classes are the assigned Judge(s), Plaintiffs' counsel, Google's counsel, the parties' retained experts, Google's officers and directors, members of their immediate families, any entity in which Google has or had a controlling interest, and the successors or assigns of any of the foregoing.

data to Google's servers, and may be implemented in multiple ways, including through Google's own Google Tag Manager tag-management system. *See* Liskow Declaration ISO Class Certification ("Liskow Decl."), Ex.[2] 1 (Hochman Report), ¶ 35. After Google receives the data transmitted by Google Analytics ("Analytics Data"), Google has various uses for the data. *See id.*, ¶ 35 n.17.

### B.    Types of Information Improperly Collected by Google Using Google Analytics

Google improperly collected two types of information at issue here from Representative Plaintiffs and the Classes, "Tax Information" and "Pen Register Information." For the purposes of this Motion, Plaintiffs specify the precise types of Analytics Data in these two categories.

#### 1.    Tax Information

Google used Google Analytics to collect highly sensitive "Tax Information" about the TaxAct and TaxSlayer Users. For the purposes of this motion, Plaintiffs limit the definition of "Tax Information" to Analytics Data: (a) reflecting specific information about TaxAct Users meant to be included on their tax returns ("Tax Return Information"), and (b) detailing the processes TaxAct and TaxSlayer Users followed in preparing their tax returns, including data showing whether they did, or did not, elect to prepare specific tax forms ("Tax Preparation Information"). While Google ██████ ███████████████████████████████████████████████████████████████████████████████ ██████████████████████████████

#### a.    Tax Return Information

As detailed in the accompanying Hochman Report, Google collected ██ types of "Tax Return Information" identified below[3] from each of the TaxAct Plaintiffs and from the TaxAct Users, all individuals who completed the process of preparing their federal tax return on the TaxAct website from January 10, 2018, through December 2, 2022.[4] *See* Ex. 1, ¶ 52. These ██ types of data reflect

---

[2] "Ex." alone refers to an exhibit to the Liskow Declaration.

[3] Google ███████████████████████████████████████████████████████████ ████████████████████████████ *See* Ex. 2 (GOOG-SMITH-00121525), at 3-4, 8. However, for the purposes of this motion (and for simplicity), Plaintiffs limit their definition of Tax Return Information to the ██ types identified.

[4] Google's collection of Tax Return Information ████████████████████████████, *see* Ex. 1, ¶8, 10 days after the November 22, 2022, publication of an article exposing Google's collection of the information. *See* https://themarkup.org/pixel-hunt/2022/11/22/tax-filing-websites-have-been-sending-users-financial-information-to-facebook (last viewed July 15, 2026).





b.      **Tax Preparation Information**

Google  also  collected  "Tax  Preparation  Information"  reflecting

---

[7] When TaxAct began using the new version of Google Analytics, Google Analytics 4 ("GA4"), Google

[8]



### i.    TaxAct Tax Preparation Information

From January 10, 2018, through the present, Google collected

### ii.    TaxSlayer Tax Preparation Information

From February 1, 2013, through the present, Google has collected



### 2.    Pen Register Information

Google Analytics also automatically collects ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ For the purposes of this motion, Plaintiffs limit this "Pen Register Information" to the following specific types of data, as illustrated by ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*See, e,g., Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) ("device and browser information," "geographic information" "plausibly fall within scope" of Section 638.51).

### C.    Analytics Data Produced by Google

Google

### D.    Tax Preparers' Records Concerning Representative Plaintiffs and the Classes

The Tax Preparers produced records

---

[13] The longitude and latitude Google collected and stored above identifies a location less than two miles as the crow flies from 52 7th Street, Pelham, NY 10803, *see* Ex. 1, ¶ 100 n.54, Layton's home address listed on her 2021 Tax Return. *See id.*, at 1.



**E.**  **Despite Having the Ability to Do So, Google**

**F.**  **Google Benefitted From its Collection of the Tax Preparer Users' Tax Information and Pen Register Information**

Google benefitted, and continues to benefit in various ways from its collection of Google Analytics data from websites generally, and from the Tax Preparers' websites specifically. *See, e.g.,* Ex. 11 (Ganem Declaration), ¶¶ 34-36 (Google earns revenue from Google Analytics). As just one example, Google directly benefits by charging certain customers, including the Tax Preparers, for their use of Google Analytics. Both Tax Preparers pay Google for access to the premium version of Google Analytics, Google Analytics 360 ("GA360"). *See* Ex. 12 ("Tax Website Account Information & Settings Overview"), at 3-5 (TaxAct used GA360); Ex. 5 at 177:16-25. The price Google charges

for GA 360 is dependent on the amount of Analytics Data a GA360 customer transmitted to Google, *see* Ex. 11, ¶ 35, thereby incentivizing Google to collect more.

## IV.    ARGUMENT

A party seeking certification must "meet the requirements of Rule 23(a), as well as one of three possible requirements under Rule 23(b)." *Torres v. Prudential Fin. Inc.*, 2024 WL 4894289, at *3 (N.D. Cal. Nov. 26, 2024). Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage, therefore "'[m]erits questions may be considered to the extent— but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232 (9th Cir. 2024) (quoting *Amgen Inc. v. Conn. Ret. Plans. & Tr. Funds*, 568 U.S. 455, 466 (2013)). As set forth below, Plaintiffs have satisfied each of the requirements for certification under Rules 23(a), 23(b)(2), and 23(b)(3).

### A.    Each Of Rule 23(a)'s Requirements Are Satisfied

#### 1.    Numerosity

Rule 23(a)(1) requires a class to be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, the numerosity requirement is met where plaintiffs' class contains forty or more members." *Rabin v. Google LLC*, 787 F. Supp. 3d 934, 944 (N.D. Cal. 2025) (Pitts, J.) Here, each of the proposed classes and subclasses include far more than 40 members. *See* Ex. 1, at ¶¶ 60, 93, 97, 104.

#### 2.    Commonality

Commonality requires the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This factor "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). *See also In re Meta Pixel Tax Filing Cases*, 826 F. Supp. 3d 1217, 1232 (N.D. Cal. 2026) ("*Meta Tax*") (commonality where plaintiffs sought certification of same CIPA claims here because each "classes' CIPA claims turns on a common question, the answer to which 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Questions of law or fact common to the classes here include, among others:

- Whether Google Analytics is a "device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another" under CIPA § 635; a "machine, instrument, or contrivance" under CIPA § 631(a). *See Meta Tax*, 826 F. Supp. 3d at 1232 (inherent nature of Meta Pixel a common question); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 590-91 (N.D. Cal. 2015) (functionality of Yahoo's email software supported commonality in CIPA case).

- Whether under CIPA § 638.51 Google Analytics is a "pen register" that Google "installed" or "used." *See Meta Tax*, 826 F. Supp. 3d at 1232-33 (citations omitted).

- Whether Google intercepted or attempted to intercept electronic communications between members of the Classes and the Tax Preparers' websites. *See Torres*, 2024 WL 4894289, at *4 (commonality satisfied where plaintiffs alleged similar claim under CIPA); *In re Yahoo*, 308 F.R.D. at 590 (same).

- Whether Google acted "intentionally" or was "willfully blind." *See Meta Tax*, 826 F. Supp. 3d at 1232 (whether Meta's collection of class members' data "was willful does not turn on differences among class members"); *Torres*, 2024 WL 4894289, at *4, 8 ("Whether [defendant] acted willfully" common issue in case alleging claim under CIPA § 631(a)).

- Whether members of the Classes are entitled to statutory damages. *See Palacios v. Penny Newman Grain, Inc.*, 2015 WL 4078135, at *4 (E.D. Cal. July 6, 2015) (question "whether class members are entitled to statutory penalties" supported commonality).

Any one of these questions, standing alone, is sufficient to satisfy the commonality requirement. *See Mazza*, 666 F.3d at 589.

### 3.    Typicality

Rule 23(a)(3) requires Representative Plaintiffs' claims to be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The requirement is permissive," and Representative Plaintiffs' claims need only be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation omitted).

Typicality is satisfied here where each Representative Plaintiff, like each member of the Classes, visited the Tax Preparers' websites when Google Analytics was deployed on the websites. *See Meta Tax*, 826 F. Supp. 3d at 1233 (typicality where each named plaintiff asserted Meta "used the Pixel to collect their data without their consent"). Representative Plaintiffs also assert the same claims and seek the same statutory damages and injunctive relief as the putative members of the Classes. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574 (N.D. Cal. May 19, 2025) (typicality satisfied where named plaintiffs were surveilled by Meta's technology); *Steven Ades &*

*Hart Woolery v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at \*9 (C.D. Cal. Sept. 8, 2014) (typicality satisfied in CIPA case where named plaintiffs' claims derived from unlawful recording of telephone calls).

### 4.    Adequacy

To demonstrate adequacy under Rule 23(a)(4), Representative Plaintiffs and their counsel must have no conflicts of interest with other class members, must "'prosecute the action vigorously on behalf of the class,'" and Plaintiffs' counsel must be qualified. *Meta Tax,* 826 F. Supp. 3d at 1234 (quoting *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1202 (9th Cir. 2024)). Each element is satisfied here.

First, each Representative Plaintiff has proven their dedication to prosecuting this action, including by responding to various written discovery requests and sitting for depositions. *See* Liskow Decl., ¶¶ 4-6. They understand that their role in this litigation is to vigorously protect the interests of other members of the Classes, and expect to assist further in this case as needed, including testifying at trial. *See id.* None of the Representative Plaintiffs have any interest in this litigation that conflicts with the members of the Classes, or any relationship with counsel that would cause them to put their economic interests above those of the Classes they seek to represent. *See id.*

Second, proposed class counsel Lori G. Feldman of Hecht Partners and Neal Deckant of Bursor & Fisher, as well as the other attorneys working with them on this matter, have vigorously prosecuted this action since its inception, have no conflicts with the Classes, and have a strong record of litigating class actions through jury trials and appeal. *See* Exs. 13-14 (Firm Resumes). Hecht Partners and Ms. Feldman represent three bellwether plaintiffs in the certified class action *Kashef et al. v. BNP Paribas*, S.A., Case No. 1:16-cv-03228 (AKH) (S.D.N.Y.), pending before Judge Alvin Hellerstein. Following a successful Second Circuit appeal that revived the case, Hecht Partners, co-lead counsel in the case, led the presentation of evidence at the multi-week trial establishing defendant BNP Paribas' knowing assistance to the Sudanese government while it was committing atrocities. The jury returned a landmark verdict finding BNP Paribas liable and awarding more than $20 million in damages to the three plaintiffs. Ms. Feldman is a member of the Firm's *Kashef* litigation team. She has been a class action attorney for more than 30 years and has been appointed

to leadership positions in numerous class actions that have collectively settled for millions of dollars. *See* Ex. 13 (Hecht Partners Firm Resume).

In another class action in this District that proceeded to trial, Judge Gonzalez Rodgers noted the "general quality" of Bursor & Fisher's work and found that its attorneys had achieved "extraordinary" results after a jury awarded $267,349,000 in favor of class members. *Perez v. Rash Curtis & Assoc.*, 2020 WL 1904533, at *16, 21 (N.D. Cal. Apr. 17, 2020). Bursor & Fisher "has been appointed class counsel in dozens of cases in both federal and state courts, and has won several multi-million dollar verdicts or recoveries." *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *4 (S.D.N.Y. Mar. 19, 2019). *See also* Ex. 14 (Bursor & Fisher Firm Resume). And this Court previously accepted in the similar *Meta Tax* case that this same team of attorneys met the adequacy standard. *See id.*, 2026 WL 1025741, at *7.

### B. The Proposed Damages Classes Satisfy Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As set forth below, both requirements are satisfied here for each of the Classes.

#### 1. Common Questions Of Law Or Fact Predominate

Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Rabin*, 787 F. Supp. 3d at 949 (internal quotation omitted). "The analysis is grounded in the elements of the underlying cause[s] of action . . . ." *Frasco*, 349 F.R.D. at 574 (internal quotations omitted); *see also Rabin*, 787 F. Supp. 3d at 948-54 (analyzing predominance separately for different causes of action). "Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' . . . What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members." *Amgen*, 568 U.S. at 469 (emphasis and brackets in original; citation and internal quotations omitted).

"[F]ederal courts have recognized that individual issues will likely be present during class actions but that such issues should not prevent class certification so long as they do not override the

underlying common question." *Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at *10 (N.D. Cal. Sept. 5, 2008); *accord Rabin*, 787 F. Supp. 3d at 948-49.

### a.    CIPA § 632

Plaintiffs seek nationwide certification of the Classes' claim under Cal. Penal Code ("CIPA") § 632. The elements of the cause of action under Section 632 are simple and subject to common proof. Namely, liability turns on evidence that Google "[1] intentionally and without the consent of all parties to a confidential communication, [2] use[d] an electronic amplifying or recording device [i.e., Google Analytics] to [3] eavesdrop upon or record the confidential communication [i.e., information shared with tax filing websites]." Cal. Penal Code § 632.

The first question of whether Google acted intentionally may be proven with common evidence. *See Meta Tax*, 826 F. Supp. 3d at 1233 (intentionality is a "common question[] that do[es] not turn on any differences among individual class members"); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 411 (S.D. Cal. 2018) (rejecting argument that question whether defendant intentionally violated CIPA would involve "individualized inquiries"); *McMillion v. Rash Curtis & Assocs.*, 2017 WL 3895764, at *5 (N.D. Cal. Sept. 6, 2017) (defendant's willfulness was common question supporting predominance requirement). Whether Google Analytics eavesdrops on the communications at issue is also a common question. *See Meta Tax*, 826 F. Supp. 3d at 1233. Finally, whether Google eavesdropped without the consent of all parties to the communication is subject to resolution by common evidence, as there is no basis in the record to support Google's claim that the TaxAct and TaxSlayer Users consented to third-party Google obtaining their sensitive and confidential Tax Information and Pen Registration Information, and a jury could easily conclude that a reasonable person would not expect their communications with the Tax Preparers' websites to be surveilled by Google. *See, e.g.*, *Frasco*, 349 F.R.D. at 575.

Nationwide certification of claims under Section 632 is also appropriate. First, unlike Section 631(a) (addressed below), nothing in the plain text of Section 632 suggests any geographic limitations on where the plaintiff or defendant is located at the time of transmission. *Cf. Frasco*, 349 F.R.D. at 587 (distinguishing Section 631(a) from Section 632 because only the former includes geographic limitations). And numerous courts have held that CIPA applies to non-California

plaintiffs who were surveilled by a California defendant. *See, e.g.*, *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (CIPA governs California defendants who wiretap non-California plaintiffs); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (following *Valentine*). Here, Google is headquartered in California.

### b.    CIPA § 635

Representative Plaintiffs seek nationwide certification, and certification of California Classes, of claims under CIPA § 635. Section 635 is straightforward in imposing liability on "[e]very person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another." Cal. Penal Code § 635(a). Liability under Section 635 "therefore turns on common questions about [Google's] conduct (i.e., whether it manufactures, offers for sale, or furnishes [Google Analytics]) and the inherent nature of [Google Analytics] as a device." *Meta Tax*, 826 F. Supp. 3d at 1232 (brackets added). *See also In re Yahoo Mail Litig.*, 308 F.R.D. at 591 (nature of device a common question).

### c.    CIPA § 631(a)

Plaintiff Nino seeks certification of California Classes of TaxAct and TaxSlayer Users pursuing claims under CIPA § 631(a). A defendant is liable under Section 631(a) if they "by means of any machine, instrument, or contrivance, or in any other manner," do either of the following:

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state…

> [*Or*]

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained….

Cal. Penal Code § 631(a); *see also Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978) (Section 631(a) prohibits three "distinct and mutually independent patterns of conduct").

The elements of Section 631(a) are susceptible to classwide proof. Whether Google Analytics, like the Meta Pixel, is "a machine, instrument, . . . contrivance, or . . other manner"

---

represents a "common question that will not differ among class members." *Meta Tax*, 826 F. Supp. 3d at 1232. Whether Google acted willfully is also a common question. *See id*. And whether Google uses Google Analytics in a "manner" prohibited by Section 631(a) is a binary "yes or no" question that applies the same to all class members. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 591.

Another element under Section 631(a) is whether Google "read[] or attempt[ed] to read" internet communications, or "use[d] or attempt[ed] to use" information obtained from wiretapping. Here, the answer to this question is subject to common evidence, and Plaintiffs have identified such evidence showing how Google uses, and benefits from, the Analytics Data it collects. *See supra*, Section III.F (the price of Google's GA360 product purchased by the Tax Preparers increases depending on how much Analytics Data is collected by Google).

Plaintiffs acknowledge that Judge Donato in *Frasco* denied certification of a Section 631(a) class due to individualized issues about whether any particular class member was in California at the time of transmission, *see Frasco*, 349 F.R.D. at 587, but this case involves additional evidence curing this concern. The *Frasco* plaintiffs largely relied on evidence from a third-party app developer which consisted of "hundreds of lines of incomprehensible code, and a line or two reading something like "'time_zone':'America/New_York.'" *Id*. "What this evidence might mean or how it [was] germane to certification [was] unexplained." *Id*.

Here, by contrast, Google's Analytics Data includes ███████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ With these factors the Section 631(a) claim differs significantly from *Frasco*, and the Court should certify the Section 631(a) Classes.

### d. Federal Wiretap Act (18 U.S.C. §§ 2510, *et seq* and 18 U.S.C. § 2512)

The Federal Wiretap Act prohibits the intentional interception of the contents of any wire, oral, or electronic communications through the use of a device. See 18 U.S.C. § 2511. As explained

above, the question of Google's intent can be answered by common evidence. *See Meta Tax*, 826 F. Supp. 3d at 1233 (intentionality is a "common question[] that do[es] not turn on any differences among individual class members"). So are the answers to other arguments Google raised in its Motion to Dismiss concerning Plaintiffs' FWA claims, *see* Dkt. 50 at 10-12, including whether Google is a vendor (it either is or is not) and whether the two Tax Preparers "understood exactly what data would be sent to Google and how Google might use it." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1201 (N.D. Cal. 2024) ("*Google Tax*").

Section 2512(1)(b) also holds liable "any person who intentionally . . . manufactures, assembles, possesses, or sells any electronic . . . or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be . . . transported in interstate or foreign commerce." 18 U.S.C. § 2512(1)(b). As with CIPA § 635, whether Google manufactures, possesses or sells Google Analytics, and whether it is an "electronic . . . or other device" under Section 2512(1)(b) are common questions of fact. *See Meta Tax*, 826 F. Supp. 3d at 1232. So is whether Google intentionally took the alleged actions, as with CIPA § 631. *See supra*, Section IV.B.1.a (citing *Meta Tax*, 826 F. Supp. 3d at 1233). And whether Google transported Google Analytics in interstate and foreign commerce, which it did, at a minimum, through its sale of GA360 services to the Tax Preparers, *see supra*, Section III.F, is in any event a question with a common answer for all members of the Classes.

### e.    Florida Security of Communications Act § 934.10

Plaintiff Patterson seeks certification of Florida Classes of TaxAct and TaxSlayer Users pursuing claims under FSCA § 934.10. To demonstrate a violation of Section 934.10, a plaintiff must show that Google intentionally intercepted, disclosed or used their wire, oral, or electronic communications. *See id.*; *see also* Fla. Stat. Ann. § 934.03. As with the claims discussed above, whether Google intercepted, disclosed or used the Section 934.10 Classes' Tax Information and Pen Register Information, and whether Google did so intentionally, are matters susceptible to common proof. *See supra*, Section IV.B.1.a. CIPA § 631. So too are whether all parties consented to the interception, and whether Google is a vendor. *See* supra, Sections IV.B.1.a, IV.B.1.d.

### f.    CIPA § 638.51

CIPA § 638.51 provides that "a person may not [1] install or use [2] a pen register or a trap and trace device [3] without first obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Penal Code § 638.51. As this Court explained in *Meta Tax*, "[a]t least the first two elements . . . involve questions common to every class member." *Id.*, 826 F. Supp. 3d at 1233 (either Google installed or used Google Analytics or not, and Google Analytics either is or is not a pen register device). *See also In re Yahoo Mail Litig.*, 308 F.R.D. at 591 (functionality of Yahoo's email software was common question). There is also no evidence Google ever obtained a court order pursuant to Sections 638.52 or 638.53, nor has Google ever suggested it has.

Plaintiffs also seek nationwide certification of their claim under Section 638.51, which is permissible for same reasons stated above with respect to Section 632, including that the text of Section 638.51 includes no geographic limitations. *Cf. Frasco*, 349 F.R.D. at 587 (distinguishing Section 631(a) from 632 because only former includes geographic limitations).

### g.    Statutory Damages Provide A Straightforward Method For Calculating Classwide Damages

At class certification, "[p]laintiffs need only show that [class] damages can be determined without excessive difficulty and attributed to their theory of liability." *Just Film*, 847 F.3d at 1121. "[D]amage calculations alone cannot defeat certification" and "[t]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Id.* at 1120 (internal quotations omitted). Nor is it necessary to calculate the total amount of classwide damages at the class certification stage. *See Lytle v. Nutramax Labs, Inc.*, 114 F.4th 1011, 1025 (9th Cir. 2024) (at class certification stage only need show "damages *could* be calculated on a classwide basis, even where such calculations have not yet been performed") (emphasis in original).

Under this standard, classwide damages pose no obstacle to predominance where, like here, Plaintiffs seek only statutory damages. *See Hawkins v. S2Verify*, 2016 WL 3999458, at *6 (N.D. Cal. July 26, 2016) ("[P]laintiff's counsel represented that both plaintiff and the class seek only statutory damages. Damages can therefore be proven through class-wide proof."); *Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017) ("[C]ourts have been

more willing to find predominance where, as here, the class seeks only statutory damages.") (quoting *In re Toys R Us-Delaware, Inc.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013)). Each claim provides for straightforward methods of calculating statutory damages. *See* Cal. Penal Code § 637.2(a)(1) (statutory damages of $5,000 "per violation" of CIPA); Fla. Stat. Ann. § 934.10(1)(b) (providing for "[a]ctual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher"); 18 U.S.C.A. § 2520(c)(2)(B) (providing for "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000"). Analysis of the ██████████████████████████ shows that a statutory damages framework can be applied to the data to determine classwide damages here by, for example, multiplying the statutory damages permitted above by the number of instances where TaxAct and TaxSlayer Users completed the process of preparing their federal tax returns, or the number of days on which these instances occurred. *See* Ex. 1, at ¶¶ 113-16 (addressing methods of identifying when instances occurred by date).

### h.    Injunctive Relief is Appropriate Under Rule 23(b)(3)

Representative Plaintiffs seek the same injunctive relief for the Classes under Rule 23(b)(3) as under 23(b)(2). *See Rabin*, 787 F. Supp. 3d at 954 (injunctive relief can be addressed under both rules). Representative Plaintiffs specifically seek an injunction (1) precluding Google from collecting further Tax Information and Pen Register Information; (2) requiring Google to delete any such information currently stored; (3) requiring Google to institute technological and other measures to prevent the continued receipt of Tax Information and Pen Register Information; (4) requiring Google to remove any services that were developed or improved with the Classes' Tax Information and Pen Register Information; and (5) appointing an independent third-party to verify that the injunctive relief has been implemented. These are some of the same measures Judge Gonzalez Rogers held would be "important changes" when it certified a 23(b)(2) class in *Brown v. Google, LLC*, 2022 WL 17961497, at *20 (N.D. Cal. Dec. 12, 2022). And this relief is warranted here because Google ██████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ *See supra*, Section IV.B.1.h.

As Representative Plaintiffs' requested injunctive relief would apply uniformly to the Classes, this is another "common, aggregation-enabling" issue supporting Plaintiffs' satisfaction of the predominance requirement.

### 2. Class Litigation Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) also examines whether a class action is superior to other available methods for fair and efficient adjudication of this action. *See* Fed. R. Civ. P. 23(b)(3). Relevant factors include: "(1) the class members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Where, as here, "recovery on an individual basis would be dwarfed by the cost of litigation on an individual basis, this factor weighs in favor of class certification." *Rabin*, 787 F. Supp. 3d at 954 (internal quotation omitted). *See also Frasco*, 349 F.R.D. at 587 ("The record amply demonstrates discovery was complicated and voluminous, to say the least, and defendants are represented by law firms with deep resources, all of which demonstrate that litigating these claims entails relatively high costs.") (internal quotation omitted).

A class action is also superior because the secretive nature of Google's violations means that many absent members of the classes would not, and could not, have knowledge of their entitlement to bring an individual claim. *See Romero*, 331 F.R.D. at 412 (fact that "a significant number of class members may not know that their calls were recorded" supported superiority in CIPA class action). And even if that were not the case, a class action would avoid a multiplicity of actions. *See id.* at 412. CIPA does not provide for fee-shifting, so any individual judgment would be dwarfed by the attorneys' fees and costs incurred to obtain that judgment. As a result, the statutory penalties under CIPA are too low to sufficiently "motivate individual litigation involving complex factual and legal issues as to weigh against class certification." *Zaklit*, 2017 WL 3174901, at *10; *accord Omni Hotels*, 2014 WL 4627271, at *14.

Finally, although this case is complex, there is nothing unique about it that would render a class action unmanageable. The Court's concern with manageability in *Meta Tax*, stemming from the need to resolve Meta's "statute-of-limitations defense as to each proposed class member" with "a line-by-line review of thousands or millions of lines of data in the Hive tables" is not at issue here. *Id.*, 826 F. Supp. 3d at 1236.

### C.    The Proposed Classes Satisfy Rule 23(b)(2)

In order to certify a class under Rule 23(b)(2), Plaintiffs need only show that Google "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* Plaintiffs seek various types of injunctive relief described *supra*, Section IV.B.1.h, under CIPA, the Federal Wiretap Act and the FSCA.[14] Google has acted on grounds that apply generally to the Classes, including by collecting illicit Analytics Data using the same device or process, Google Analytics, for all members of the Classes.

Plaintiffs recognize that this Court has denied certification of a class under Rule 23(b)(2) when the "primary relief sought [was] monetary damages or restitution. *See Rabin*, 787 F. Supp. 3d at 954. However, Plaintiffs ask the Court to reconsider the issue in light of the Ninth Circuit authorities holdings to the contrary. *See, e.g.*, *Brown*, 2022 WL 17961497, at *20 ("'Ninth Circuit precedent indicates that [courts] can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class.'") (quoting *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014)); *see also Mobile Emergency Housing Corp. v. HP, Inc.*, 2023 WL 9550942, at *14 (N.D. Cal. Dec. 8, 2023) ("the Court may certify an injunctive class under Rule 23(b)(2) regardless of whether Plaintiffs primarily seek to obtain monetary relief in this action overall."); 2 Newberg and Rubenstein on Class Actions § 4:37 (6th ed.) ("[A] case may be certified under Rule 23(b)(2) for some purposes [i.e., injunctive relief] and under other portions of the Rule for money damages.").

---

[14] *See* CIPA § 637.2(b) (providing for injunctive relief); 18 U.S.C. § 2520(b)(1) (providing for "equitable or declaratory relief as may be appropriate" for violations of Federal Wiretap Act); FSCA § 934.10(1)(a) (providing for "equitable or declaratory relief as may be appropriate").

And if the Court declines to reconsider, Plaintiffs seek injunctive relief on behalf of all Classes, in the alternative, under Rule 23(b)(3). *See supra*, Section IV.B.1.h; *see also Rabin*, 787 F. Supp. 3d at 954 ("injunctive relief can be addressed under Rule 23(b)(3)").

## V.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully ask the Court to certify the Classes described herein; appoint Tiffany Layton, Jamila Armstrong, Joseph Sebastian Nino and Tracylyn Patterson as class representatives; and appoint Lori Feldman of Hecht Partners LLP, and Neal Deckant of Bursor & Fisher, P.A., as class counsel.

Dated: July 16, 2026                     Respectfully submitted,

**HECHT PARTNERS LLP**

By: */s/ Michael Liskow*
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
125 Park Avenue, 25th Floor
New York, NY 10017
Phone: (212) 851-6821
Fax: (888) 421-4173
E-mail: lfeldman@hechtpartners.com
        mliskow@hechtpartners.com

**BURSOR & FISHER, P.A**.
Neal J. Deckant, Cal. Bar No. 322946
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

**HECHT PARTNERS LLP**
Rebecca A. Peterson (State Bar No. 241858)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
Facsimile: (888) 421-4173
E-mail: rpeterson@hechtpartners.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Kate M. Baxter-Kauf, *Admitted Pro Hac Vice*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: kmbaxter-kauf@locklaw.com

**THE HODA LAW FIRM, PLLC**
Marshal J. Hoda, *Admitted Pro Hac Vice*
12333 Sowden Road, Suite B, PMB 51811
Houston, TX 77080
Telephone: (832) 848-0036
E-mail: marshal@thehodalawfirm.com

**FOSTER YARBOROUGH PLLC**
Patrick Yarborough, *Admitted Pro Hac Vice*
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com

**EMERSON FIRM, PLLC**
John G. Emerson, *Admitted Pro Hac Vice*
2500 Wilcrest Drive, Suite 300
Houston, TX 77042-2754
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
Email: jemerson@emersonfirm.com

**SMITH KRIVOSHEY, P.C.**
Joel D. Smith, Cal. Bar. No. 244902
867 Boylston Street
5th Floor, #1520
Boston, MA 02116
Telephone: 617-377-7404
joel@skclassactions.com

*Attorneys for Plaintiffs*