**HECHT PARTNERS LLP**
Michael Liskow (State Bar No. 243899)
125 Park Avenue, 25th Floor
New York, NY 10017
Phone: (212) 851-6821
Fax: (888) 421-4173
E-mail: mliskow@hechtpartners.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARY L. SMITH, *et al.*, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br> v.<br><br>GOOGLE, LLC.,<br><br>          Defendant. | Case No.: 5:23-cv-03527-PCP<br>(Consol. w/ 5:23-cv-04191-BLF)<br><br>**DECLARATION OF MICHAEL LISKOW IN SUPPORT PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>The Honorable P. Casey Pitts<br>Courtroom 8, 4th Floor |

DECLARATION OF MICHAEL LISKOW ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 5:22-CV-07557-PCP

I, Michael Liskow declare as follows:

1.      I am a member of Hecht Partners LLP, one of the firms representing plaintiffs ("Plaintiffs") in this action. I am an attorney duly licensed to practice before the courts of the State of California.

2.      I make this declaration in support of Plaintiffs' Motion for Class Certification ("Motion"). I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently to them.

3.      The Motion seeks the appointment of Plaintiffs Tiffany Layton, Jamila Armstrong, Joseph Sebastian Nino and Tracylyn Patterson the "Representative Plaintiffs") as class representatives.

4.      Each Representative Plaintiff has prosecuted this class action vigorously on behalf of the members of the putative classes ("Classes"). Each has been an active and accessible participant in this litigation, including by interacting with Plaintiffs' counsel through multiple written communications and phone calls. The Representative Plaintiffs have reviewed multiple documents, including complaints and discovery responses, and have provide information necessary to advance the Classes' claims.

5.      Google has served on each Representative Plaintiff five Interrogatories, between 40 and 50 Requests for Production, and between 64 and 155 Requests for Admission. The Representative Plaintiffs worked extensively with Plaintiffs' counsel to investigate and respond to Google's discovery requests.

6.      Each Representative Plaintiff was also deposed by Google, with one, Layton, being deposed for over six hours on the record.

7.      Attached hereto as Exhibit 1 is a true and correct copy of the Expert Report of Jonathan Hochman, Ph.D.

8.    Attached hereto as Exhibit 2 is a true and correct copy of a document Google produced in this case, with Bates Number GOOG-SMITH-00121525.

9.    Attached hereto as Exhibit 3 is a true and correct copy of a document Plaintiffs produced in this case, with Bates Number LAYTON0000000001-8.

10.    Attached hereto as Exhibit 4 is a true and correct copy of a document third party TaxAct produced in this case, with Bates Number TaxAct_Google_000735-45.

11.    Attached hereto as Exhibit 5 is a true and correct copy of excerpts of the transcript of the 30(b)(6) deposition of Google conducted in this action on June 12, 2026.

12.    Attached hereto as Exhibit 6 is a true and correct copy of a document Google produced in this case, with Bates Number GOOG-SMITH-00114261.

13.    Attached hereto as Exhibit 7 is a true and correct copy of a document Plaintiffs produced in this case, with Bates Number – PLAINTIFFS0000000001-3.

14.    Attached hereto as Exhibit 8 is a true and correct copy of a document Plaintiffs produced in this case, with Bates Number – PLAINTIFFS0000000004-6.

15.    Attached hereto as Exhibit 9 is a true and correct copy of excerpts of the transcript of the deposition of Kevin Lam conducted in this action on April 17, 2026.

16.    Attached hereto as Exhibit 10 is a true and correct copy of Defendant Google LLC's Responses and Objections to Plaintiff's Second Set of Requests for Admission dated July 8, 2026.

17.    Attached hereto as Exhibit 11 is a true and correct copy of the Declaration of Steve Ganem Regarding Google Analytics in Opposition to Plaintiffs' Motion for Class Certification dated December 16, 2021, and submitted in the matter *Calhoun v. Google LLC*, Case No. 5:20-cv-5146-LHK-SVK (N.D. Cal.).

18.    Attached hereto as Exhibit 12 is a true and correct copy of Plaintiffs' Exhibit 18 dated June 11, 2026, a document created by Google titled "Smith v. Google – Tax Website Account

Information & Settings Overview."

19.     Attached hereto as Exhibit 13 is a true and correct copy of Hecht Partners' current firm resume.

20.     Attached hereto as Exhibit 14 is a true and correct copy of Bursor & Fisher's current firm resume.

I declare under penalty of perjury that the foregoing is true and correct. Executed in West Orange, New Jersey on July 15, 2026.

_/s/ Michael Liskow_
Michael Liskow

# EXHIBIT 1

# FILED UNDER SEAL

# EXHIBIT 2

# FILED UNDER SEAL

# EXHIBIT 3

# FILED UNDER SEAL

# EXHIBIT 4

# FILED UNDER SEAL

# EXHIBIT 5

# FILED UNDER SEAL

# EXHIBIT 6

# FILED UNDER SEAL

# EXHIBIT 7

# FILED UNDER SEAL

# EXHIBIT 8

# FILED UNDER SEAL

# EXHIBIT 9

# FILED UNDER SEAL

# EXHIBIT 10

# FILED UNDER SEAL

# <u>EXHIBIT 11</u>

# GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

# Declaration of Steve Ganem ISO Google's Opposition to Plaintiffs' Renewed Motion for Class Certification

**Exhibit
Plaintiffs 24**
06/11/2026

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA SAN JOSE DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, *et al*., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 5:20-cv-5146-LHK-SVK<br><br>**DECLARATION OF STEVE GANEM REGARDING GOOGLE ANALYTICS IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>The Honorable Lucy H. Koh<br>Courtroom 8 – 4th Floor<br>Date: February 17, 2022<br>Time: 1:30 p.m.<br>Amended Complaint Filed: April 16, 2021 |

**DECLARATION OF STEVE GANEM**

1.      My name is Steve Ganem.  I am Group Product Manager at Google.  In my role as Group Product Manager, I am familiar with the Google Analytics product and practices regarding handling of data received by Google Analytics when a user visits a website that uses this product. In this declaration, I provide a summary of Google's Analytics product and how it is used by Google's customers. I also describe the data that Google Analytics may receive when a user visits a website that uses Google Analytics. I next describe multiple factors that affect whether Google Analytics actually receives, stores, and/or uses that data for any given visit to a website that uses Google Analytics. Finally, I describe the factors that affect Google's revenue from the Analytics product. Except where otherwise indicated, I make this declaration based on my own personal knowledge and could competently testify thereto.

2.      Google Analytics is a measurement product offered by Google to help app and website owners better understand how visitors interact with their properties. To use Google Analytics on a website, customers must create an account, accept the relevant Google Analytics terms, and add a Google Analytics tag—a block of JavaScript code—to the HTML source code for one or more pages of the website. When a user visits a page to which the Google Analytics customer has added a Google Analytics tag, the tag will be included in the HTML source code delivered to the user's browser in response to the browser's request. When the user's browser encounters the Google Analytics tag, it will fetch JavaScript code that, when executed by the browser, performs certain tracking functions and may send related data to Google Analytics.

3.      I am informed that the alleged Class Period in this case is July 27, 2016 through the present. I am further informed that Plaintiffs allege Google improperly collected five categories of data during the Class Period when Chrome users visited websites that use Google web-services, including Google Analytics, regardless of whether users have enabled the Sync feature on their Chrome browser. According to Plaintiffs, the five categories of data that Google improperly collected are: "(a) The user's unique, persistent cookie identifiers; (b) The user's browsing history in the form of the contents of the users' GET requests and information relating to the substance, purport, or meaning of the website's portion of the communication with the user; (c) In many cases,

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

the contents of the users' POST communications; (d) The user's IP address and User-Agent information about their device; and (e) The user's x-client-data identifier." First Amended Complaint ¶ 141.

### A.    <u>Overview of the Data Google Analytics Receives</u>

4.    Before Google Analytics can receive *any* of the categories of data at issue in Paragraph 3 related to a user's visit to a specific website (except x-client data header since Google Analytics does not receive it), that website's owner must have installed Google Analytics scripts in the website's HTML code. These scripts may be viewed by any Chrome user by visiting the webpage using Google Analytics and clicking on "View," "Developer," "Developer Tools," "Sources."

5.    Whether an individual is using Chrome (as opposed to another brand of browser), does not affect whether Google Analytics receives the enumerated categories of data. Similarly, whether a Chrome user has enabled Chrome's Sync feature does not affect whether Google Analytics receives the enumerated categories of data.

6.    I generally understand that Chrome's Sync feature allows Chrome users to store the following categories of information in their Google Accounts so that the information can be made available to the user when they sign into their Google Accounts and enable Sync on other devices on which they have installed Chrome: Chrome browsing history; bookmarks; tabs; passwords and autofill information; and browser settings. *See* Chrome Privacy Notice,  GOOG-CABR-05287749 - 7755 (https://www.google.com/chrome/privacy/archive/20200520); *see also* Declaration of AbdelKarim Mardini. Google Analytics does not receive any of this information.

7.    When a user (in any brand of browser) visits a website that uses Google Analytics, the following categories of data may potentially be sent to Google Analytics:

- The HTTP request from the user's browser, including the hostname, browser type, referrer, and language, and depending on the browser used, Java support, Flash support, and screen resolution;

- IP address;

- Metrics concerning on-site activities; and

- Data associated with first party cookies.

These categories of data potentially received by Google Analytics are explained in Google's public disclosures[1]:

### Data Collected by Google Analytics ∧

#### First-party Cookies

Google Analytics collects first-party cookies, data related to the device/browser, IP address and on-site/app activities to measure and report statistics about user interactions on the websites and/or apps that use Google Analytics. Customers may customize cookies and the data collected with features like cookie settings, User-ID, Data Import, and Measurement Protocol. Learn more

Google Analytics customers who have for instance, enabled the analytics.js or gtag.js collection method can control whether or not they use cookies to store a pseudonymous or random client identifier. If the customer decides to set a cookie, the information stored in the local first-party cookie is reduced to a random identifier (e.g., 12345.67890).

For customers who use the Google Analytics for Apps SDK, we collect an App Instance Identifier, which is a number that is randomly generated when the user installs an app for the first time.

#### Advertising identifiers

Where customers use Google Analytics Advertising Features, Google advertising cookies are collected and used to enable features like Remarketing on the Google Display Network. These features are subject to the users' Ads Settings, the Policy requirements for Google Analytics Advertising Features and Google's EU User Consent policy, which requires customers to obtain consent for cookies where legally required—including consent for personalized ads. For more information about how Google uses advertising cookies, visit the Google Advertising Privacy FAQ. It is possible to implement Google Analytics without affecting normal data collection where Advertising features are disabled until consent is obtained (see Privacy Controls in Google Analytics), as well as prevent certain data from being used for advertising personalization purposes (See Advertising Personalization below).

#### IP Address

Google Analytics uses IP addresses to derive the geolocation of a visitor, and to protect the service and provide security to our customers. Customers may apply IP masking so that Google Analytics uses only a portion of an IP address collected, rather than the entire address. In addition, customers can override IPs at will using our IP Override feature.

#### PII Prohibition

Our contracts prohibit customers from sending Personally Identifiable Information to Google Analytics. Customers should follow these Best Practices to ensure PII is not sent to Google Analytics.

---

[1] *See* GOOG-CABR-00007815 - 7818 (https://support.google.com/analytics/answer/6004245#zippy=%2Cdata-collected-by-google-analytics).

-4-                                Case No. 5:20-cv-5146-LHK-SVK

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

8. As explained in the "Advertising identifiers" section of these public disclosures, "[w]here customers use Google Analytics Advertising Features, Google advertising cookies are collected and used to enable features like Remarketing on the Google Display Network." These Advertising Features are subject to the user's Ads settings (e.g., consent to the New Ads Control and Ad personalization) and policy requirements relating to Google Analytics Advertising Features. The policy requirements applicable to Analytics customers in relation to Google Analytics Advertising Features are also described in Google's public disclosures, including requirements relating to notifications to visitors[2]:

> If you've enabled any Google Analytics Advertising features, you are required to notify your visitors by disclosing the following information in your privacy policy:
>
> - The Google Analytics Advertising Features you've implemented.
>
> - How you and third-party vendors use first-party cookies (such as the Google Analytics cookie) or other first-party identifiers, and third-party cookies (such as Google advertising cookies) or other third-party identifiers together.
>
> - How visitors can opt-out of the Google Analytics Advertising Features you use, including through Ads Settings, Ad Settings for mobile apps, or any other available means (for example, the NAI's consumer opt-out).
>
> We also encourage you to point users to Google Analytics' currently available opt-outs ☐ for the web.

9. Chrome includes the x-client-data header only in messages it sends to certain domains, not including domains associated with Google Analytics. Therefore, Google Analytics does not receive the x-client-data header.

10. All other things being equal, the categories of data that Google receives from a Chrome browser visiting a website that uses Google Analytics services are the same as the categories of data Google receives from another brand of browser visiting the same website.

---

[2] *See* GOOG-CABR-00004459 - 4460 (https://support.google.com/analytics/answer/2700409).

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

**B.      A Multitude of Factors Affect Whether Google Ad Analytics Receives, Stores, and/or Uses the Data**

11.      However, whether Google *in fact* receives the data described in paragraph 7 above depends on numerous factors, including (1) features and settings enabled by the particular Google Analytics customer, and (2) features and settings enabled by the user.

**1.      Customer-Enabled Features That Affect Whether Google Receives The Data**

12.      Google receives and processes the information it receives through Google Analytics on behalf of Google Analytics customers.[3] Customers can view reports about visitors' interactions with their properties by logging into Google Analytics.

13.      Google Analytics customers can use a variety of privacy controls that limit, in whole or in part, the data sent to Google Analytics when users visit their website. Google explains these controls available to Google Analytics customers in documents that are publicly available online.[4]

14.      For example, a Google Analytics customer has the option to disable Google Analytics functionality on a webpage, without removing the Google Analytics tag itself.[5]   A customer might use this control to implement its own privacy policy.  If the customer gives its users the option to opt-out of Google Analytics measurement, then the customer may disable the Google Analytics functionality for that user without removing the Google Analytics tag itself.  To disable Google Analytics measurement, the customer sets a window property to "true" for each page on which Google Analytics measurement should be disabled.  Before sending any measurement data to Google Analytics servers, the Google Analytics Javascript code executing on the user's browser will check the value of that property.  If it is set to true, the Google Analytics Javascript code will not send the measurement data to the Google Analytics servers.

---

[3]  *See, e.g.,* GOOG-CABR-00894408 - 4415 (https://marketingplatform.google.com/about/analytics/terms/us/).

[4]  *See, e.g.,* GOOG-CABR-00004757 - 4759 (https://support.google.com/analytics/answer/9019185#zippy=%2Cin-this-article).

[5]  *See, e.g.,* https://developers.google.com/analytics/devguides/collection/analyticsjs/user-opt-out.

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

15.     As another example, a Google Analytics customer can request IP address anonymization. This feature is designed to help site owners comply with their own privacy policies or recommendations from local data protection authorities, which may prevent the transfer or storage of full IP address information. When a customer requests IP anonymization, the IP address is anonymized as soon as technically feasible, shortly after it is sent to Google. This IP anonymization feature sets the last octet of IPv4 user IP addresses and the last 80 bits of IPv6 addresses to zeros in memory. The full IP address is never written to disk in this case. This IP address anonymization feature is described in Google's public disclosures[6]:

> Since 25 May 2010, Analytics has provided the _anonymizeIp feature in the ga.js JavaScript library (and more recently ga('set', 'anonymizeIp', true) ☒ in the analytics.js library) to allow website owners to request that all of their users' IP addresses are anonymized within the product. This feature is designed to help site owners comply with their own privacy policies or, in some countries, recommendations from local data protection authorities, which may prevent the storage of full IP address information. The IP anonymization/masking takes place as soon as data is received by the Analytics Collection Network, before any storage or processing takes place.
>
> The process of IP anonymization in Analytics takes place within two steps in the collection pipeline: the JavaScript Tag and the Collection Network. These steps are explained below.



To request IP anonymization, the Google Analytics customer sets a corresponding parameter for their website to "true."[7]

---

[6]  *See, e.g.*, GOOG-CABR-00005790 - 5791 (https://support.google.com/analytics/answer/2763052).

[7]  *See, e.g.*, GOOG-CABR-00055916 – 5941 (https://developers.google.com/analytics/devguides/collection/analyticsjs/field-reference#anonymizeIp).

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

16.    As yet another example, a Google Analytics customer can prevent the Google Analytics Javascript code from setting cookies on the user's device.[8] To disable cookies, the Google Analytics customer sets a "storage" field on their website to "none." If a customer disables cookies in this manner, Google Analytics will not receive any value corresponding to the disabled cookies.

17.    Google Analytics customers have the option to activate certain features called Analytics Advertising Features and Google Signals. Google Analytics Advertising Features are described in Google's public disclosures:[9]

> ## About Advertising Features
>
> Analytics Advertising Features is a collection of features that takes advantage of the Google advertising cookies so you can do things like:
>
> - Create Remarketing Audiences based on specific behavior, demographic, and interest data, and share those lists with Google Ads
> - Use demographic and interest data in your Analytics reports
> - Create Segments based on demographic and interest data
>
> If you're an Analytics 360 user, you have access to the additional features of being able to see Campaign Manager 360 data in your reports, and being able to create remarketing lists in Analytics and share them with Display & Video 360.
>
> You enable Analytics Advertising Features so that Analytics can collect information about your users from the Google advertising cookies when they are present, along with the information Analytics normally collects.
>
> For more information about the Google's advertising cookies, visit the Google Advertising Privacy FAQ.
>
> If you implement Advertising Features, you must also adhere to the Analytics Advertising Features Policy.

When an Analytics customer enables Advertising Reporting Features for a given web property, Analytics collects the information it normally does, as well as Google advertising cookies when those cookies are present, as described in Google's public disclosures[10]:

---

[8] *See, e.g.*, GOOG-CABR-00073994 - 3997 (https://developers.google.com/analytics/devguides/collection/analyticsjs/ cookies-user-id#disabling_cookies).

[9] *See, e.g.*, GOOG-CABR-00002870 - 2871 (https://support.google.com/analytics/answer/3450482).

[10] *See, e.g.*, GOOG-CABR-00005544 - 5546 (https://support.google.com/analytics/answer/2444872).

18.    Google Signals is an Analytics feature that, when activated, updates existing remarketing and reporting features to include additional aggregated data regarding Google users who have Ad Personalization turned on.   Google Signals is also described in Google's public disclosures[11]:

## Introduction

When you activate Google signals, these existing Google Analytics features are updated to also include aggregated data from Google users who have left Ads Personalization turned on:

| Existing Google Analytics feature | With Google signals activated |
| --- | --- |
| **Remarketing with Google Analytics**<br><br>Create remarketing audiences from your Google Analytics data, and share those audiences with your linked advertising accounts. | Audiences that you create in Google Analytics and publish to Google Ads and other Google Marketing Platform advertising products can serve ads in Cross Device-eligible remarketing campaigns to Google users who have left Ads Personalization turned on.<br><br>Note: You need to activate Google signals in order to populate audiences that you export to YouTube.<br><br>Analytics creates separate custom models for ecommerce transactions and goal completions on your site based on the cross-device conversion data from users who have signed in to their Google accounts and who have left Ads Personalization turned on.<br><br>Learn more about cross-device conversion exports |
| **Advertising Reporting Features**<br><br>Google Analytics collects information per your measurement-code configuration, as well as Google advertising cookies that are present. | Google Analytics collects additional information about users who have left Ads Personalization turned on.<br><br>Learn more |

---

[11]   *See, e.g.*, GOOG-CABR-00006733 - 6735 (https://support.google.com/analytics/answer/7532985#zippy=%2Cin-this-article).

-9-                                    Case No. 5:20-cv-5146-LHK-SVK

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

| Demographics and Interests reports | Google Analytics collects additional information about users who have left Ads Personalization turned on. |
| --- | --- |
| Google Analytics collects additional information from the DoubleClick cookie (web activity) and from Device Advertising IDs | Learn more |
| | NOTE: If you deactivate Google signals, Analytics stops collecting this additional information. If you deactivate and then reactivate Google signals, you will have no demographic or interests information for the period during which Google signals was deactivated. |
| Cross Device reports (in beta) | Based on aggregated data from users who have left Ads Personalization turned on, Google Analytics models behavior for your whole user base across device types. The data is user based rather than session based. This behavior modeling does not require User-ID views. |
| Connect data about devices and activities from different sessions so you can get an understanding of user behavior at each step of the conversion process, from initial contact to long-term retention. | |

19. If an Analytics customer has chosen to enable Google Signals, and a Google Account holder has consented to Ad Personalization and Web & App Activity (described in further detail below), then the information received by Google through Google Analytics while that user is signed-in is also available to Google Account holders via their "My Activity" page.

20. Google Analytics will only process data associated with advertising cookies in certain scenarios. First, in the case of a website visitor (user) who is either not a Google Account holder or who is browsing in a signed-out state, Google Analytics will only process data associated with advertising cookies if the Analytics customer has enabled Analytics Advertising Features and the website visitor (user) has not opted out, as described in paragraph 8 above. Second, in the case of a website visitor (user) who is a Google Account holder and is browsing while signed-in, Google Analytics will only process data associated with advertising cookies if the Analytics customer has enabled either Analytics Advertising Features or Google Signals *and* the website visitor (the user) has turned Google Ad Personalization on at myaccount.google.com/data-and-privacy.

21. Additionally, even if a Google Analytics customer has enabled Google Analytics Advertising Features or Google Signals, they can disable those features programmatically by setting

Case No. 5:20-cv-5146-LHK-SVK

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

a value (e.g., "allowAdFeatures") to false.[12]  Doing so will prevent the Google Analytics Javascript code from sending advertising features messages to Google Analytics.

22.     Google Analytics customers may also choose to limit use of their data for advertising personalization purposes.[13] For example, a customer may choose to enable Google Signals to better understand how many unique users visit their website across devices but restrict such data from being exported for remarketing into a linked Ads account. Customers may choose to disable advertising personalization for data collected from their entire property, or to disable it for individual events or users (for apps, websites, and measurement protocol). Advertising personalization features can also be disabled by Google Analytics customers programmatically by setting a value (e.g., "allowAdPersonalizationSignals") to false.[14]

**2.     User-Enabled Features That Affect Whether Google Receives Or Uses The Data**

23.     Users can affect Google Analytics' data collection through (a) device-level settings on their browser; (b) account-level settings on their Google Account (for Google Account holders browsing while signed in); and (c) third party privacy features.

**(a)     Device-level settings on a user's Chrome browser can affect data collection**

24.     Device-level features and settings in Chrome that affect whether Google Analytics receives the data described in paragraph 7, or how that data is used, include cookie blocking and clearing options in Chrome settings, the Google Analytics Opt-out Browser Add-on, and Incognito and Guest modes:

a.     <u>Enabling "block all cookies" in Chrome settings</u>.  Chrome's settings, which

---

[12]  *See* https://developers.google.com/analytics/devguides/collection/analyticsjs/ display-features#disable-advertising-features.

[13]  *See* GOOG-CABR-00007709 - 7710 (https://support.google.com/analytics/answer/9626162); GOOG-CABR-00007815 - 7818 (https://support.google.com/analytics/answer/6004245#zippy=%2Cadvertising-personalization).

[14]  *See* https://developers.google.com/analytics/devguides/collection/analyticsjs/ display-features#disable-advertising-features.

are accessible via a drop-down menu or by navigating to chrome://settings/cookies, include an option to "block all cookies." When the user enables this feature, Chrome prevents websites and Google Analytics from setting any cookies. If all cookies are blocked in this manner, the Google Analytics tag will not be able to send those cookie values to Google Analytics. Below is a screenshot of this Chrome setting:

⦿ Block all cookies (not recommended)    ^

⊘   Sites can't use cookies to improve your browsing experience, for example, to keep you signed in or to remember items in your shopping cart

⊘   Sites can't use your cookies to see your browsing activity across different sites, for example, to personalize ads

⊘   Features on many sites may not work

b.    <u>Enabling "block third-party cookies" in Chrome settings</u>. Chrome's settings also include an option to "block third-party cookies." When the user enables this feature, Google Analytics does not receive data associated with any third-party cookies. Below is a screenshot of this Chrome setting:

⦿ Block third-party cookies    ^

🍪   Sites can use cookies to improve your browsing experience, for example, to keep you signed in or to remember items in your shopping cart

⊘   Sites can't use your cookies to see your browsing activity across different sites, for example, to personalize ads. Features on some sites may not work.

c.    <u>Disabling JavaScript in Chrome settings</u>.   Chrome's JavaScript settings, which are accessible via a drop-down menu or by navigating to chrome://settings/content/javascript, include the following option: "Don't

-12-            Case No. 5:20-cv-5146-LHK-SVK
DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

allow sites to use Javascript." Below is a screenshot of this Chrome setting:



← JavaScript          🔍 Search

Sites usually use Javascript to display interactive features, like video games or web forms

**Default behavior**

Sites automatically follow this setting when you visit them

◉   <> Sites can use Javascript

○   ⤬ Don't allow sites to use Javascript

When a user selects "Don't allow sites to use JavaScript," Chrome prevents websites from using JavaScript, including Google Analytics tags based on JavaScript. As a result, if JavaScript is disabled in this manner, the Google Analytics tag will not be able to send information to Google Analytics when a Chrome user visits a website that uses Google Analytics.

    d.    <u>Enabling "clear cookies and site data when you close all windows" in Chrome settings</u>. When the user enables this feature, cookies do not persist across browsing sessions and Google Analytics will not receive data associated with any cookies set in a prior session. Below is a screenshot of this Chrome setting:

Clear cookies and site data when you close all windows          🔵

    e.    <u>Installing the Google Analytics Opt-out Browser Add-on</u>.[15] This add-on is a Chrome browser extension available for download at the Chrome Web Store,

---

[15] *See* GOOG-CABR-00051336 (https://tools.google.com/dlpage/gaoptout); GOOG-CABR-00073998 - 4002 (https://chrome.google.com/webstore/detail/google-analytics-opt-out/fllaojicojecljbmefodhfapmkghcbnh?hl=en).

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

which indicates that it has "1,000,000+ users." When installed by a user, this browser extension will prevent the Google Analytics Javascript executing in Chrome from sharing information with Google Analytics about the user's website visit. Below is a screenshot of the description of the Google Analytics Opt-out Browser Add-on from the Analytics Help Center[16]:

## Google Analytics opt-out browser add-on

You can opt-out of having your site activity available to Google Analytics by installing the Google Analytics opt-out browser add-on ☒ . The add-on prevents the Google Analytics JavaScript (gtag.js, analytics.js) that is running on websites from sharing information with Google Analytics about visit activity.

Using the Google Analytics opt-out browser add-on will not prevent site owners from using other tools to measure site analytics. It does not prevent data from being sent to the website itself or in other ways to web analytics services.

☐! Give feedback about this article

Was this helpful?   [ Yes ]   [ No ]

f.   <u>Using Chrome in Incognito mode</u>. When a user activates Incognito mode, Chrome will create a new cookie jar that only stores cookies for the duration of that Incognito session, and those cookies are deleted when the Incognito session ends. Because Chrome creates a new cookie jar for the Incognito session, Google Analytics will not receive data associated with any cookies set in a prior session.

g.   <u>Using Chrome in Guest mode</u>. When a user activates Guest mode, Chrome will create a new cookie jar that stores cookies only for the duration of that Guest mode session, and those cookies are deleted when the Guest mode

---

[16] GOOG-CABR-00011290 (https://support.google.com/analytics/answer/181881).

session ends. Because Chrome creates a new cookie jar for the Guest mode session, Google Analytics will not receive data associated with any cookies set in a prior session.

> **(b)     Account-level settings on a user's Google Account can affect data collection**

25.    For Google Account holders, there are additional ways to control the information Google stores with their Google Account and its use when they browse in a signed-in state. Relevant account-level features and settings in a user's Google Account include Google Ad Personalization ("GAP") and Web and App Activity ("WAA") settings. Further, a Google Account holder can visit his or her My Activity to review, manage, and delete the information Google has associated with his or her Google Account, including a list of websites they have visited that use certain Google Services. The user can also enable auto-delete features and enable or disable numerous other settings that affect how information is stored and/or used by Google.

26.    As described above, the user's settings relating to GAP and WAA will impact whether Google Analytics receives data associated with advertising cookies, and will impact how that information can be used when received by Google Analytics. As to GAP, users can opt out of Google's use of cookies for interest-based advertising by visiting the Google Ad Settings page at adssettings.google.com and turning off "Ad personalization."[17] Below is an exemplary screenshot of the Ad personalization setting and associated description at adssettings.google.com:

---

[17]    A user can access the same Google Account settings at myaccount.google.com/data-and-privacy and myactivity.google.com/activitycontrols.

-15-                                                   Case No. 5:20-cv-5146-LHK-SVK

27.     As described above, when GAP is turned off for a user, Google Analytics will not receive data associated with advertising cookies.

28.     Users can also control the information that Google associates with their Google Account via the Web & App Activity control options at myactivity.google.com/activitycontrols. Below is an exemplary screenshot of the Web & App Activity control options and associated description at myactivity.google.com/activitycontrols:

Case No. 5:20-cv-5146-LHK-SVK
DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION



29.     The Web & App Activity section explains that enabling this setting "[s]aves your activity on Google sites and apps, including associated info like location, to give you faster searches, better recommendations, and more personalized experiences in Maps, Search, and other Google services." It also explains that users can separately "[i]nclude Chrome history and activity from sites, apps, and devices that use Google services." It also offers users the opportunity to turn on an auto-delete policy and to "see and delete past activity."

30.     At myactivity.google.com/activitycontrols, a user is given the option to click on "Manage activity." If a user does so, the user is taken to their Web & App Activity page which lists

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

websites that use certain Google Services from which Google received data when the user visited those sites, searches conducted, and other activity saved by Google based on a user's interaction with Google Services. Users can also filter their Web & App Activity based on the type of Google Service that caused the data to be sent to Google (e.g. "Ads," "Google Analytics," "Search").

31. If the user chooses not to enable Web & App Activity, or chooses to enable Web & App Activity but not the sub-setting for "Include Chrome history and activity from sites, apps, and devices that use Google services," the data received by Google Analytics would not be stored in the user's Account or keyed to information that personally identifies her. Rather, it would be keyed to a pseudonymous cookie that the user can delete from her browser at any time.

32. If a user who does not have a Google Account uses Chrome (which necessarily would be in Basic, Guest, or Incognito mode because Sign-In and Sync modes are not available to non-Account holders) to visit a website that uses Google Analytics and has enabled Analytics Advertising Features, the data that Google receives is not tied to the user's identity or information that could personally identify the user such as name, address, email address, or phone number. Google may associate certain of the data it receives through Google Analytics with a cookie value, but the user can delete that cookie from her browser anytime, and, in Guest and Incognito modes, Chrome deletes cookies automatically when the user closes the session.

### 3. Use of third-party software by the Chrome user can also affect data collection

33. There are also a number of third-party privacy programs and tools users can employ that affect whether Google Analytics receives the data at issue in this case, including proxy servers, VPNs and firewalls.

    a. <u>Using a proxy server or VPN</u>. If a Chrome user or her network administrator employs a proxy server or VPN (Virtual Private Network) that masks the sending device's IP address, then Google Analytics would not receive the user's real IP address. Instead, Google Analytics would receive only the IP address associated with the VPN or proxy server.

    b. <u>Using a firewall</u>. If a Chrome user or her network administrator employs a

firewall that is configured to allow traffic only to specific domains (not including domains associated with Google Analytics), or to prevent traffic to specific domains (including domains associated with Google Analytics), then any transmissions that the Chrome browser attempts to send to Google Analytics will be blocked by the firewall.

### C. Factors That Affect Google's Revenue From Google Analytics

34. There are two versions of Google Analytics: (1) Google Analytics 360, which is the paid version of Google Analytics; and (2) Google Analytics, which is the free version of this product. The revenue Google receives for Google Analytics services will vary depending on whether the Google Analytics customers are using a cost-free or paid version of Google Analytics.

35. Revenue from Google Analytics 360 is based on the contract with each customer; the revenue per contract depends on the volume of hits Google Analytics processes for the customer. The free version of Google Analytics is available freely to any internet website, up to a certain volume of hits sent to Google Analytics. The customer must use the Google Analytics 360 product if it wants any traffic over that volume threshold to be included in the analytics tools provided by Google Analytics. The overwhelming number of websites on the internet use the free Google Analytics version.

36. Google Analytics does not calculate revenue or profits on a per-individual-website visitor (user) basis. Nor does Google Analytics calculate profits on the basis of the data Plaintiffs allege Google improperly collected, described in paragraph 3 above. Further, it would be impossible to calculate Google Analytics' revenue or profits on a per-individual-website visitor (user) basis. However, if one were to attempt to do so, I expect that the revenue and profit over a fixed period of time would vary widely from one individual to the next on the basis of which customer websites are visited, and the frequency and volume of these individuals' browsing.

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on this ___16th___ day of December 2021, at ___8:21 pm___.

_____
Steve Ganem

DECLARATION OF STEVE GANEM ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# **EXHIBIT 12**

*Smith v. Google* – **Tax Website Account Information & Settings Overview**

**H&R Block**
- **Account ID:  243598173**
- **Account Creation Date:  September 29, 2022**
- **Property ID(s):  334935698**
  - Earliest date for data:  **October 4, 2022**
- **Account settings:**
  - H&R Block accepted Google's Data Processing Terms for this account on September 29, 2022.  The controller-controller data protection terms for data shared from this account were accepted on September 29, 2022.
  - **Google products & services:  OFF**
    - Share your Google Analytics data with Google to help improve Google's products and services. Turning on this setting enables Google to better understand patterns of user behavior and expectation, and build features and functionalities that would benefit customers across our products, such as improving the Google Ads system tools that you use to create, manage, and analyze your ad campaigns. Google will not use your data for its own ad personalization or ad targeting. If you disable this option, data can still flow to other Google products linked to your property. Visit the product linking section in each property to view or change your settings.  Note: Data sharing settings availability may be limited for your Analytics account due to the industry category of 1 property in your account. Learn more about data sharing
  - **Modeling contributions & business insights**:  **ON**
    - Enable features like predictions, modeled data, and benchmarking that can provide you with richer business insights when you contribute aggregated measurement data. The data you share (including information about the property from which it is shared) is aggregated and de-identified before being used to generate business insights. Show Example.
  - **Technical support:  OFF.**
    - Let Google technical support representatives access your Google Analytics data and account when necessary to provide service and find solutions to technical issues.
  - **Recommendations for your business:  OFF.**
    - Give Google access to your Google Analytics account data, including account usage and configuration data, product spending, and users associated with your Google Analytics account, so that Google can help you make the most of Google products, providing you with insights, offers, recommendations, and optimization tips across Google Analytics and other Google products for business.
- **Data collection settings:**
  - **Google signals data collection:  ON** [Note: Enabling the above toggle causes Google Analytics to automatically collect additional data about your traffic to provide additional insights about your users and enable audience sharing.  If you don't want to collect data for Google signals, you should disable the toggle above as well as ensure that you have

**Exhibit
Plaintiffs 18**
06/11/2026

- not manually enabled Remarketing and Advertising Reporting Features in your Google Analytics tags.
  - **User-ID and user-provided data collection:  OFF**
    - The user-ID feature allows you to provide your own identifiers for your site and app users, so you can connect their behavior across different sessions and the various devices and platforms from which they visit.  Google Analytics interprets each distinct user-ID as a separate user, which provides you with more accurate user counts and a more holistic story about a user's interaction with your business.
      - You are responsible for ensuring that you use the user-ID feature in accordance with the Google Analytics Terms of Service.  This includes not sending Google Analytics personally identifiable information as user-IDs, and providing appropriate notice of your use of identifiers in your privacy policy.  For instructions on how to send user-Ids to Google Analytics see Send user-IDs.
    - User provided data collection.  This activates improved user and conversion measurement by giving you enriched more-detailed audience data.  Capabilities such as improved conversion measurement and audience sharing require having linked advertising accounts and Ads Personalization turned on in your Google Analytics property.  User-provided data collection supplements your existing Google Analytics data by allowing you to send your consented, hashed customer data to Google Analytics in a privacy-safe way.
      - By turning on user-provided data collection, you acknowledge you adhere to the user-provided data feature policy and the need to have the necessary privacy disclosures and rights from your end users for such use. Per our policy, use of this feature is prohibited for customers in sensitive categories.
    - **Granular location and device data collection:  ON**
- **Consent settings:**
  - Behavioral analytics consent signals:  **inactive**
    - Analytics cookie consent signals **inactive**
  - Advertising consent signals:  **inactive**
    - Ads cookie consent signals **inactive**
    - Ads measurement consent signals **inactive**
    - Ads personalization consent signals **inactive**
- **GA 360:  NO**
- **Linked Ads accounts:  GALE Media, Manager Account, personalized advertising enabled, linked January 12, 2023**

**TaxAct**
- **Account ID:  11663126**
- **Account Creation Date:  November 18, 2009**
- **Property ID(s):**
  - **164000822**
    - Earliest date for data: **November 17, 2017**
  - **285861034**
    - Earliest date for data:  **September 9, 2019**
  - **291895634**
    - Earliest date for data:  **November 5, 2021**
  - **291946637**
    - Earliest date for data:  **November 7, 2021**
  - **386921162**
    - Earliest date for data:  **June 17, 2023**
  - **152111938**
    - Earliest date for data:  **September 27, 2017**
- **Account settings:**
  - TaxAct accepted Google's Data Processing Terms for this account on April 1, 2019.  The controller-controller data protection terms for data shared from this account were accepted on June 3, 2019.
  - **Google products & services:  OFF**
    - Share your Google Analytics data with Google to help improve Google's products and services. Turning on this setting enables Google to better understand patterns of user behavior and expectation, and build features and functionalities that would benefit customers across our products, such as improving the Google Ads system tools that you use to create, manage, and analyze your ad campaigns. Google will not use your data for its own ad personalization or ad targeting. If you disable this option, data can still flow to other Google products linked to your property. Visit the product linking section in each property to view or change your settings.  Note: Data sharing settings availability may be limited for your Analytics account due to the industry category of 1 property in your account. Learn more about data sharing
  - **Modeling contributions & business insights**:  **ON**
    - Enable features like predictions, modeled data, and benchmarking that can provide you with richer business insights when you contribute aggregated measurement data. The data you share (including information about the property from which it is shared) is aggregated and de-identified before being used to generate business insights. Show Example.
  - **Technical support:  ON.**
    - Let Google technical support representatives access your Google Analytics data and account when necessary to provide service and find solutions to technical issues.
  - **Recommendations for your business:  ON.**

- Give Google access to your Google Analytics account data, including account usage and configuration data, product spending, and users associated with your Google Analytics account, so that Google can help you make the most of Google products, providing you with insights, offers, recommendations, and optimization tips across Google Analytics and other Google products for business.

- **Data collection settings:**
  - **Google signals data collection:  OFF**
    - Analytics features can be enhanced with data from users who have turned on Ads Personalization and are signed-in to their Google accounts. This provides you with deeper insights about your users, such as aggregated demographics and interests data. When Ads Personalization is turned on in your Google Analytics property, it also activates audience sharing with your linked advertising accounts. Learn more about activating Google signals.
    - When you turn on Google signals, Google Analytics will associate the session data it collects from your site and apps with Google's information from accounts of signed-in, consented users. By turning on Google signals, you acknowledge you adhere to the Google Advertising Features Policy, including rules around sensitive categories, have the necessary privacy disclosures and rights from your end users for such association, and that such data may be accessed and deleted by end users via My Activity.
  - **User-ID and user-provided data collection:  OFF**
    - The user-ID feature allows you to provide your own identifiers for your site and app users, so you can connect their behavior across different sessions and the various devices and platforms from which they visit.  Google Analytics interprets each distinct user-ID as a separate user, which provides you with more accurate user counts and a more holistic story about a user's interaction with your business.
      - You are responsible for ensuring that you use the user-ID feature in accordance with the Google Analytics Terms of Service.  This includes not sending Google Analytics personally identifiable information as user-IDs, and providing appropriate notice of your use of identifiers in your privacy policy.  For instructions on how to send user-Ids to Google Analytics see Send user-IDs.
    - User provided data collection.  This activates improved user and conversion measurement by giving you enriched more-detailed audience data.  Capabilities such as improved conversion measurement and audience sharing require having linked advertising accounts and Ads Personalization turned on in your Google Analytics property.  User-provided data collection supplements your existing Google Analytics data by allowing you to send your consented, hashed customer data to Google Analytics in a privacy-safe way.
      - By turning on user-provided data collection, you acknowledge you adhere to the user-provided data feature policy and the need to have the necessary privacy disclosures and rights from your end users for such

use. Per our policy, use of this feature is prohibited for customers in sensitive categories.
  - **Granular location and device data collection:  ON**
- **Consent settings:**
  - Behavioral analytics consent signals:  **inactive**
    - Analytics cookie consent signals **inactive**
  - Advertising consent signals:  **inactive**
    - Ads cookie consent signals **inactive**
    - Ads measurement consent signals **inactive**
    - Ads personalization consent signals **inactive**
- **GA 360:  YES**
- **Linked Ads accounts:  NONE**

**TaxSlayer**
- **Account ID:  83283**
- **Account Creation Date:  November 14, 2005**
- **Property ID(s):**
  - **282301641**
    - Earliest date for data: **September 27, 2021**
  - **12114318**
    - Earliest date for data:  **October 1, 2013**
  - **91442527**
    - Earliest date for data:  **December 15, 2014**
- **Account settings:**
  - TaxSlayer accepted Google's Data Processing Terms for this account on October 26, 2023.  The controller-controller data protection terms for data shared from this account were accepted on June 9, 2019.
  - **Google products & services:  OFF**
    - Share your Google Analytics data with Google to help improve Google's products and services. Turning on this setting enables Google to better understand patterns of user behavior and expectation, and build features and functionalities that would benefit customers across our products, such as improving the Google Ads system tools that you use to create, manage, and analyze your ad campaigns. Google will not use your data for its own ad personalization or ad targeting. If you disable this option, data can still flow to other Google products linked to your property. Visit the product linking section in each property to view or change your settings.  Note: Data sharing settings availability may be limited for your Analytics account due to the industry category of 1 property in your account. Learn more about data sharing
  - **Modeling contributions & business insights**:  **OFF**
    - Enable features like predictions, modeled data, and benchmarking that can provide you with richer business insights when you contribute aggregated measurement data. The data you share (including information about the property from which it is shared) is aggregated and de-identified before being used to generate business insights. Show Example.
  - **Technical support:  OFF.**
    - Let Google technical support representatives access your Google Analytics data and account when necessary to provide service and find solutions to technical issues.
  - **Recommendations for your business:  OFF.**
    - Give Google access to your Google Analytics account data, including account usage and configuration data, product spending, and users associated with your Google Analytics account, so that Google can help you make the most of Google products, providing you with insights, offers, recommendations, and optimization tips across Google Analytics and other Google products for business.
- **Data collection settings:**
  - **Google signals data collection:  OFF**

- ■ Analytics features can be enhanced with data from users who have turned on Ads Personalization and are signed-in to their Google accounts. This provides you with deeper insights about your users, such as aggregated demographics and interests data. When Ads Personalization is turned on in your Google Analytics property, it also activates audience sharing with your linked advertising accounts. Learn more about activating Google signals.
    - ■ When you turn on Google signals, Google Analytics will associate the session data it collects from your site and apps with Google's information from accounts of signed-in, consented users. By turning on Google signals, you acknowledge you adhere to the Google Advertising Features Policy, including rules around sensitive categories, have the necessary privacy disclosures and rights from your end users for such association, and that such data may be accessed and deleted by end users via My Activity.
  - ○ **User-ID and user-provided data collection:  OFF**
    - ■ The user-ID feature allows you to provide your own identifiers for your site and app users, so you can connect their behavior across different sessions and the various devices and platforms from which they visit.  Google Analytics interprets each distinct user-ID as a separate user, which provides you with more accurate user counts and a more holistic story about a user's interaction with your business.
      - ● You are responsible for ensuring that you use the user-ID feature in accordance with the Google Analytics Terms of Service.  This includes not sending Google Analytics personally identifiable information as user-IDs, and providing appropriate notice of your use of identifiers in your privacy policy.  For instructions on how to send user-Ids to Google Analytics see Send user-IDs.
    - ■ User provided data collection.  This activates improved user and conversion measurement by giving you enriched more-detailed audience data.  Capabilities such as improved conversion measurement and audience sharing require having linked advertising accounts and Ads Personalization turned on in your Google Analytics property.  User-provided data collection supplements your existing Google Analytics data by allowing you to send your consented, hashed customer data to Google Analytics in a privacy-safe way.
      - ● By turning on user-provided data collection, you acknowledge you adhere to the user-provided data feature policy and the need to have the necessary privacy disclosures and rights from your end users for such use. Per our policy, use of this feature is prohibited for customers in sensitive categories.
    - ■ **Granular location and device data collection:  ON**
- ● **Consent settings:**
  - ○ Behavioral analytics consent signals:  **inactive**
    - ■ Analytics cookie consent signals **inactive**
  - ○ Advertising consent signals:  **inactive**
    - ■ Ads cookie consent signals **inactive**

- ■ Ads measurement consent signals **inactive**
- ■ Ads personalization consent signals **inactive**
- **GA 360:  NO**
- **Linked Ads accounts:  TaxSlayer, Personalized Advertising enabled, date linked November 3, 2021.**

# EXHIBIT 13



**New York**

125 Park Avenue, 25th Floor, New York, NY 10017

**California**

2121 Avenue of the Stars, Suite 800, Los Angeles, CA 90067

**Texas**

111 Congress Avenue, Suite 500, Austin, TX 78701

**Florida**

9897 Lake Worth Rd, Suite 302, Lake Worth, FL 33467

**Minnesota**

1650 W. 82nd Street, Suite 880, Bloomington, MN 55431

https://www.hechtpartners.com



**Hecht Partners** is a litigation boutique focused on complex litigation and disputes, including class actions, high-stakes trials, and international arbitration. Our team integrates deep experience in class actions, public international law, and intellectual property, operating at the intersection of law, science, and technology.

We are driven by a commitment to restorative justice and the protection of individual rights. Our class action group represents consumers and other individuals in national complex litigation that seeks to protect, restore, and enforce the rights of these individuals. Our talented group of attorneys litigate a broad spectrum of class actions, including consumer protection, antitrust, greenwashing, product liability, data privacy, and human rights class actions.

Recently, Hecht Partners secured a $20.75 million class action bellwether trial victory in *Kashef, et al. v. BNP Paribas, et al.* for funding genocide in Sudan led by Hecht partner Kathryn Lee Boyd appointed as co-lead class counsel, reaffirming its reputation for delivering results against some of the world's largest and most sophisticated adversaries.

With an entrepreneurial culture and lean, technology-enabled infrastructure, our team — composed of lawyers, technologists, and scientists — collaborates seamlessly from anywhere in the world, allowing us to move faster and more efficiently than traditional firms. We embrace and encourage diversity among our lawyers and staff and respect the differences among us and our communities.

We aim to serve those taken advantage of, wronged, or exploited with an exceptional level of service, excellence, encouragement, respect and strength, backed years of collective legal experience, success and results.

125 Park Avenue, 25th Floor, New York, New York 10017



# David L. Hecht, Partner

David L. Hecht is the firm's founder and its co-managing partner. He is a fierce litigator representing individuals, companies, and nationwide classes in high-stakes commercial disputes. He was recognized as a "Legal Lion" by Law360 following his successful argument before the Ninth Circuit in connection with a copyright infringement case against Epic Games. The case, which redefined the limits of protection for choreography in the era of "short form" media, was also recognized by Law360 as one of the biggest copyright rulings of 2023.

David's legal prowess has been widely recognized. In 2025, David was recognized in the IAM 300: The World's Leading IP Strategists: "David is renowned for his fierce litigation skills in high-stakes disputes." In 2024, David was awarded the first annual David A. Pierce award by the National Society of Entertainment and Arts Lawyers ("NSEAL") for successfully championing the rights of artists. In 2023, he was selected as a member of the Multi-Million Dollar Advocates Forum (membership is limited to attorneys who have won multi-million dollar verdicts and settlements). In 2022, David was selected as one of Grazia Magazine's *Game Changers*.

David is a trained electrical and computer engineer and registered patent attorney. He has appeared in dozens of patent-related matters, including *inter partes* review proceedings, for industry giants including Samsung, Raytheon, Huawei, and MediaTek. He has tried numerous District Court and International Trade Commission (ITC) cases to verdict involving a wide range of computer, software, communications, and medical product-related technologies. Among the most notable of those trials was *Apple v. Samsung*, known as the "patent trial of the century." David was also part of the trial team that secured the first-ever exclusion order against Apple in the ITC.

David also has extensive experience in copyright and Digital Millennium Copyright Act (DMCA) cases. Most recently, he was lead counsel for Corellium in a bet-the-company litigation against Apple—and won. First, he won summary judgment. Then, Apple dropped the remainder of its claims on the eve of trial. David also helped secure a $25 million copyright jury trial win for music publishing house BMG Rights Management, named the largest verdict in Virginia in 2015.

David holds a rare and highly coveted educational trifecta: degrees in engineering (B.S. in electrical and computer engineering), business (M.B.A.), and law (J.D.). He worked as a network engineer prior to law school and a patent agent while a law student. David also founded several successful startups during the Great Recession, including real estate investment and event production companies. He draws from his diverse background and experience to understand the most intricate details of his clients' intellectual property and/or business. Prior to founding the firm, David worked for several international law firms, including Jones Day, Quinn Emanuel, and

Steptoe & Johnson. He also worked as in-house counsel for a publicly-traded company focused on licensing and intellectual property assertion.

David's high-profile cases have been featured in nearly every major publication and newscast in the United States, and the world, including *The Wall Street Journal*, *The New York Times*, BBC News, *USA Today*, *Newsweek*, Bloomberg, *Variety*, *Forbes*, *Huffington Post*, *Rolling Stone*, *Billboard*, *The Hollywood Reporter*, *Us Weekly*, TechCrunch, *The Verge*, NPR, CNN, CBC, NBC's *Today Show*, ABC's *Good Morning America*, *CBS This Morning*, and *Entertainment Tonight*.

David is rated by Martindale-Hubbell® as AV Preeminent® (this is Martindale's highest peer rating standard, signifying "a large number of the lawyer's peers rank him or her at the highest level of professional excellence for their legal knowledge, communication skills and ethical standards"). From 2015-2022, David was recognized as a New York Super Lawyer "Rising Star." In 2024, David was again recognized as a New York Super Lawyer.

David is also a Certified Information Privacy Professional (CIPP/US) and he was certified by the Blockchain Council as a Certified Blockchain and Law Professional, Certified Blockchain Expert, and Certified Bitcoin Expert. The CryptoCurrency Certification Consortium (C4) has also certified David as a Certified Bitcoin Professional.

**PRACTICE AREAS**
- Intellectual Property & Patent
- Commercial Litigation & Arbitration
- Transnational Litigation & Arbitration

**BAR ADMISSIONS**
- State of New York
- State of New Jersey
- State of Texas
- State of Pennsylvania
- State of Connecticut
- U.S. Patent & Trademark Office
- U.S. Court of Appeals, Second Circuit
- U.S. Court of Appeals, Third Circuit
- U.S. Court of Appeals, Ninth Circuit
- U.S. Court of Appeals, Eleventh Circuit
- U.S. Court of Appeals, Federal Circuit
- U.S. District Court, Southern District of New York
- U.S. District Court, Eastern District of New York
- U.S. District Court, Northern District of New York
- U.S. District Court, Western District of New York
- U.S. District Court, District of New Jersey

- U.S. District Court, Eastern District of Texas
- U.S. District Court, Western District of Texas
- U..S. District Court, Northern District of Texas
- U..S. District Court, Southern District of Texas
- U.S. District Court, Eastern District of Michigan
- U.S. District Court, Eastern District of Pennsylvania

**EDUCATION**
- J.D., Fordham University School of Law
- M.B.A., Rutgers University School of Business
- B.S., Rutgers University School of Engineering, Electrical and Computer Engineering, *cum laude*

---

**What Clients Say**

In 2024, in connection with his recognition in IAM, clients said: "*David is the most effective communicator in the patent industry. He is able to clearly explain the patent litigation process to those with no knowledge of IP, provides regular updates and, most importantly, he is smart and aggressive. David works extremely hard and gets great results.*"

In 2023, IAM wrote: "*David Hecht is appreciated for his elevated strategic thinking, diligence and superb technical acumen. He is completely dedicated to seeing his clients succeed and has an impressive track record of success in challenging high stakes disputes.*"

In 2022, a client commented to IAM: "*David immediately grasps the complexity of matters at every level and is quick to recognise a [patent] portfolio's value and strength. When it comes to litigation, he effortlessly stays on top of every crucial detail and manages complex parallel tasks, all while demonstrating superb strategic thinking.*"

In 2021, his clients described him as having "a *brilliant legal mind and a passion for the law along with free-flowing writing skills.*" "*He gives personal attention to his clients and their cases, is extremely patient, excellent at communication and brilliant on strategy.*"

In 2020, clients described David as doing "*everything humanly possible to keep clients happy and deliver the wins they seek — and he loves it.*" "*Entrepreneurial, tenacious, motivational, he does a superb job carrying the day in high-exposure computer, software, communications and medical technology cases.*"

In perhaps the ultimate of client endorsements, David has been "shouted out" in a rap music video by his client 2 Milly.

---

**Notable Representations**

Lead counsel for Corellium, LLC against Apple, Inc. in a bet-the-company lawsuit in the Southern District of Florida involving copyright infringement and DMCA claims; the matter settled favorably following a win on summary judgment across all of Apple's copyright claims and Apple's eventual withdrawal of its DMCA claims.

Lead counsel for Kyle Hanagami in a copyright infringement case against Epic Games; David won an appeal in the Ninth Circuit that redefined the limits of protection for choreography in the era of "short form" media; the matter resolved after reverse and remand, which resulted in new law being established in the field.

Co-lead counsel for Proxense LLC (with Susman Godfrey) against Google, represented by Quinn Emanuel, in a patent infringement case involving mobile payment technology in the Western District of Texas; achieved a clean-sweep at *Markman* and successfully opposed venue transfer, which was upheld on appeal to the Federal Circuit (i.e., Google's mandamus was denied); matter settled favorably before the pretrial conference.

Co-lead counsel for Proxense LLC (with Susman Godfrey) against Samsung, represented by Quinn Emanuel, in a patent infringement case involving mobile payment technology in the Western District of Texas; achieved a clean-sweep at *Markman* and won on partial summary judgment; matter settled favorably hours before jury selection.

Co-lead counsel for Proxense LLC (with Susman Godfrey) against Microsoft and Apple in patent infringement cases involving "passwordless" authentication technology in the Western District of Texas; secured clean-sweeps at *Markman* and successfully opposed venue transfer.

Lead counsel for Internet Patent Payments Ltd. in a patent infringement and trade secret case against PayPal involving payment technology.

Lead counsel for Edge Networking Systems in a patent infringement case against Microsoft involving cloud computing technology.

Lead counsel for Stone Interactive Ventures in a patent litigation suit against Electronic Arts; matter was resolved two weeks after David was engaged.

Lead counsel for world-famous saxophonist Leo P. in a false endorsement litigation against Epic Games; matter resolved after David overcame a motion to dismiss, which resulted in new law being established in the field.

Represented music publisher copyright holders against a large Internet Service Provider (ISP) relating to allegations of vicarious/contributory liability for copyright infringement by its customers.

Represented women-run Alex and Ani against Bank of America in litigation involving allegations of discriminatory and illegal lending practices (matter settled approximately one month after the complaint was filed)

Represented Alfonso Ribeiro (host of America's Funniest Home Videos), BlocBoy JB, Backpack Kid, and rapper 2 Milly in litigations involving misappropriation of likeness, copyright infringement, and/or trademark infringement against Epic Games and Take-Two Interactive.

Represented a putative class of airline ticket purchasers against Southwest Airlines and Boeing regarding the MAX 8.

Defended a major American defense contractor and industrial corporation before the Patent Trial and Appeal Board.

Defended Furniture World, a New Jersey furniture distributor, against allegations of design patent and copyright infringement by Ashley Furniture; the matter settled favorably.

Represented a pharmaceutical patent holder in several Hatch Waxman ANDA litigations relating to opioid dependence treatment medication

In November 2020 *Billboard* magazine featured a story on the copyright registration of "Single Ladies - Put a Ring on It." David's client, JaQuel Knight, was recognized as "the first commercial choreographer in pop music to succeed in [obtaining a copyright registration] for his work."

---

**Thought Leadership / Interviews / Speaking Engagements**

TechTainment (October 2025, Los Angeles) - Panelist, *Technology Track: Startup IP Bootcamp: From Prototype to Protection*

Arizona State University - AI/Emerging Tech and IP (March 2025) - Guest Lecturer

TechTainment (November 2024, Los Angeles) - Panelist, *The Next Level: Video Game Development and Designers' New Legal Fight*

ESI Lisbon 2024 (September 2024, Lisbon, Portugal) - Panelist, *Intellectual Property in Esports*

Beverly Hills Bar Association CLE (May 2024) - Speaker, *Dance Dance Revolution: Copyright in Choreography Hits its Stride*

*Own the 8 Count* (2023) - Documentary Interview

billboardPRO Spotlight (2022) - Interview, If You Like It, Put a © on It

NPR Planet Money (February 2019) - Interview, Backpack Kid Sues Fortnite For Stealing 'The Floss' Dance

*Fordham Intellectual Property, Media & Entertainment Law Journal*, Managing Editor

# Kathryn (Lee) Boyd, Partner



Kathryn "Lee" Boyd has over 20 years of experience handling complex litigation, international arbitration, and class actions in "impact" matters involving international human rights, rule of law, foreign affairs, as well as consumer and investor rights. Lee has litigated more than 30 trials and arbitrations and represented clients in a variety of high-profile disputes, including victims of Argentina's "dirty war," indigenous peoples suing bad actor sovereigns and multinational conspirators, and families of terrorist hijacking victims. She also has spent decades seeking the restitution of cultural and private property seized during the Armenian Genocide and the Holocaust.

Lee is an authority on international human rights, having taught, published, and practiced in the field. She brings an academic approach paired with practical litigation skills to her work, offering clients top shelf representation when the stakes are highest.

Lee also is a member of Victoria Associates, an elite international arbitration practice group comprised of international arbitration specialists from around the globe, which enhances her practice and ability to serve clients with transnational disputes, in commercial and investment arbitrations.

Prior to joining Hecht Partners, Lee was a tenured faculty member at Pepperdine Law School, where she taught international and human rights litigation as well as complex litigation. She also worked as a prosecutor in the Manhattan District Attorney's office, a clerk for the U.S. District Court for the District of Puerto Rico, and was a litigator at several prominent law firms.

In 2021, Crain's New York Business recognized Lee among its list of "Notable Women in Law."

**PRACTICE AREAS**
- Human Rights
- Class Actions
- Commercial Litigation & Arbitration
- Transnational Litigation & Arbitration

**BAR ADMISSIONS**
- State of New York
- State of California
- U.S. Supreme Court
- U.S. Court of Appeals, First Circuit

- U.S. Court of Appeals, Second Circuit
- U.S. Court of Appeals, Ninth Circuit
- U.S. Court of Appeals, Federal Circuit
- U.S. District Court, Southern District of New York
- U.S. District Court, Eastern District of New York
- U.S. District Court, Central District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California
- U.S. District Court, Eastern District of Texas

**EDUCATION**

J.D., Harvard Law School
B.A., University of Virginia

**LANGUAGES**
- Proficient in Spanish
- Conversational in French

**Notable Representations**

- Successfully represented a global entertainment and sports company against a FTSE 100 online gaming company in arbitration.

- Successfully represented U.S. terrorism victims in international litigation, arbitration, and enforcement of judgment against Iran.

- Successfully represented investors worldwide in international arbitrations, including current representation of investors in Bilateral Investment Treaty arbitrations.

- Successfully represented the Armenian Orthodox Church in seeking return of art stolen during the Armenian Genocide.

- Successfully litigated multiple class actions for employment law violations.

- Successfully represented family in Polish property restitution for immovable property stolen by Nazis and confiscated by communist regime.

**Memberships & Affiliations**

- Member, Victoria Associates, International Disputes

- New York State Bar Association, International Law Section

- California State Bar Association, Litigation Section

- International Law Association, American Branch (former Executive Board member), Human Rights Committee

- California Lawyers Association, International Law Section

- Board member, Transparency International Honduras Chapter, Association for a More Just Society

- California International Arbitration Council (CIAC)

- Institute for Transnational Arbitrators

**Thought Leadership**

- uthor, *International Arbitration and the Future of Holocaust Restitution in the Aftermath of Republic of Hungary v. Simon and Federal Republic of Germany v. Philipp*, Kluwer Arbitration Blog, 2021

- Author, *High Court Nazi Art Rulings Impede Restorative Justice*, Law360, 2021

- Co-author with Michael J. Bazyler, Kristen L. Nelson, and Rajika L. Shah, *Searching for Justice After the Holocaust: Fulfilling the Terezin Declaration and Immovable Property Restitution*, Oxford University Press, 2019

- Co-author, *Report From Jerusalem: The Continuing Struggle For Holocaust Justice*, Warsaw Point, June 22, 2016

- Author, *Unholy Profits: Holocaust Restitution and the Vatican Bank*, Chap. 12 in Holocaust Restitution; Perspectives on the Litigation and Its Legacy, Eds. M. Bazyler, R. Alford, 2006

- Author, *Universal Jurisdiction and Structural Reasonableness*, Texas International Law Journal, Vol. 40, 2004

- Author, *Collective Rights Adjudication in U.S. Courts: Enforcing Human Rights at the Corporate Level*, Brigham Young University Law School, Vol. No. 4, 1999

- Author, *The Inconvenience of Victims: Abolishing the Doctrine of Forum Non Conveniens in U.S. Human rights Litigation*, Virginia Journal of International Law Vol. 39, 1998



# Maxim Price, Partner

Maxim has litigated complex commercial and patent infringement cases for and against Fortune 500 companies. The cases Maxim works on have included the infamous smartphone patent wars, Digital Millennium Copyright Act defense, and the Mt. Gox bitcoin theft litigations. Before joining Hecht Partners, Maxim worked for Jones Day and Quinn Emanuel.

The _IAM Patent 1000: The World's Leading Patent Practitioners_ has ranked Maxim as one of the world's leading patent litigators since 2023. Clients said to IAM: "_Maxim is the consummate tactician and has complete mastery of the litigation process. He is highly knowledgeable, strategically brilliant and a wonderful partner._"

Maxim is also a serial entrepreneur, with multiple tech startups under his belt, featured in inc.com and The American Genius. His startups have focused on the advancement of open innovation through crowdsourcing. Maxim believes that the legal services industry is ripe for startup-style disruption as well and that this firm is the one to do it.

Maxim graduated _cum laude_ from Fordham University with a B.S. in Computer Science. He graduated _cum laude_ from Fordham University School of Law. His pro bono work includes trials under the federal International Child Abduction Remedies Act and petitions under the Violence Against Women Act.

**PRACTICE AREAS**
- Intellectual Property & Patent
- Commercial Litigation & Arbitration
- Transnational Litigation & Arbitration
- Class Actions
- Crisis Litigation

**BAR ADMISSIONS**
- State of New York

**EDUCATION**
J.D., Fordham University School of Law
B.S., Fordham University (Computer Science)

**Thought Leadership**
- Unify Biotechnologies, Board of Directors

- CEO ideaphore LLC, Co-Founder
- CEO CrowdRaising, Co-Founder
- World Intellectual Property Organization Research Fellow: Patents and Small Participants in the Smartphone Industry, published in Stanford Technology Law Review



# Delphine Knight Brown, Partner

Delphine Knight Brown is a Partner and experienced trial lawyer focused on Intellectual Property litigation and counseling with over twenty years of trial experience. Delphine's practice focuses on complex intellectual property and technology cases, with extensive experience in the life sciences industry.

Delphine has served as lead counsel for several global pharmaceutical companies in Hatch-Waxman litigation and trials involving dozens of drug products, dosage forms and delivery systems. Delphine's lead counsel expertise also includes patent litigation involving biotech, medical device, computer hardware and software, design and business method patents, and counseling of established and emerging biotechnology companies regarding intellectual property, regulatory and litigation issues. Delphine has served as lead trial counsel in complex trademark and copyright infringement, misappropriation of trade secrets, and unfair competition cases.

Delphine believes that the key to being the best lawyer is focusing on achieving both legal victory and strategic objectives in resolving disputes as quickly as possible to get the client back to running its business.

Delphine has three decades of experience representing both U.S. and foreign corporations in federal and state courts nationwide in pretrial proceedings, trials and appeals, and in arbitration proceedings. Delphine frequently publishes thought leadership and speaks on intellectual property issues.

Delphine is a trusted advisor to life sciences companies on patent landscape, patentability, potential patent challenges, and IPRs, as well as regulatory hurdles, including the potential impact of FDA Citizen Petitions.

Delphine has served as lead IP counsel in licensing matters; joint venture, collaboration, research and development, supply, manufacturing, and confidential disclosure agreements; and intellectual property due diligence for mergers and acquisitions.

Delphine received her bachelors degree from Princeton University and her J.D. from St. John's University School of Law. In her spare time, she serves on the boards of several private foundations, and the CT Selection Committee for the Princeton Prize in Race Relations, as well as a USA swimming official.

**PRACTICE AREAS**
- Intellectual Property Litigation and   Counseling
- Trademark Prosecution and Litigation
- Copyright Litigation
- Arbitration

**BAR ADMISSIONS**
- State of New York
- State of Connecticut
- United States Supreme Court
- U.S. Court of Appeals, Federal Circuit
- U.S. District Court, Southern District of New York
- U.S. District Court, Eastern District of New York
- U.S. District Court, District of Connecticut

**EDUCATION**

J.D., St. John's University School of Law, with highest honors

B.A., Princeton University

**Representative Matters**

- Lead counsel in patent litigations, including Hatch-Waxman litigation for several generic pharmaceutical manufacturers, handling notice letters, non-infringement and invalidity contentions, fact and expert discovery, preliminary injunction hearings, summary judgment motions, trials and appeals.

- Lead litigation and trial counsel representing luxury and consumer goods manufacturers in connection with several patent, trademark and copyright cases.

- Successfully defended a global pharmaceutical, medical device and healthcare company in arbitration of a $91 million claim involving breach of contract and tort allegations.

- Lead counsel in patent infringement cases on behalf of a foreign computer hardware patentee against a major U.S. smartphone and electronic device manufacturer, and a major computer manufacturer.

- Brought patent infringement and misappropriation of trade secrets case on behalf of inventors, involving a portfolio of computer software, hardware and business method patents, against major online shopping platforms.

- Represented a medical device developer and manufacturer in patent infringement and misappropriation of trade secrets cases in the U.S., Europe and Japan against global medical device manufacturer.

**Memberships & Affiliations**

- American Intellectual Property Lawyers Association
- New York Intellectual Property Lawyers Association, Patent Litigation Committee, and Women in IP Law Committee
- American Bar Association, Intellectual Property Section and Litigation Section
- Federal Circuit Bar Association
- New York City Bar Association, Women Partners' Roundtable
- National Association of Women Lawyers, Women in Fashion Law Group



# Michael Eggenberger, Partner

Michael K. Eggenberger focuses on high stakes complex litigation. He has represented clients on a wide range on issues, including class actions, securities litigation, bankruptcy, breach of fiduciary duty, appeals, RICO, breach of contract, and complex financial fraud. Michael has also counseled clients in internal and government investigations, insurance disputes, and VA disability claims. His clients have included several of the biggest financial firms in the world, hedge funds, technology companies, industry groups, developers, sports agencies and individuals. Michael previously practiced at the law firms of Gibson, Dunn & Crutcher LLP and Kaplan Rice LLP.

He graduated from New York University School of Law in 2013. Prior to studying law, Michael served as a Staff Sergeant in the United States Air Force working with remotely piloted aircraft communications.

**PRACTICE AREAS**

•        Commercial Litigation & Arbitration

**BAR ADMISSIONS**

•   State of New York

**EDUCATION**

J.D., New York University School of Law

# Lori G. Feldman, Partner



Ms. Feldman, a senior litigator, is known for building and leading high-stakes, complex class and individual actions from inception through resolution. She co-chairs Hecht Partners' Class Action Practice.

Her practice focuses on data privacy and cybersecurity incidents, consumer protection, and financial services litigation where she takes on sophisticated financial institutions, fintech companies, and national consumer brands for consumers and credit unions. Ms. Feldman is regularly appointed to leadership roles in major, multi-jurisdictional class actions.

She is frequently brought in to shape case strategy and drive meaningful results in matters involving systemic misconduct and large-scale consumer harm.

Ms. Feldman has joined the litigation team at Hecht Partners LLP in *Kashef, et al. v. BNP Paribas SA, et al.*, No. 1:2015cv03228 (S.D.N.Y.) (Hellerstein, J.), where Hecht Partners LLP (Lee Boyd, Esq.) is Co-Lead Counsel. Ms. Boyd and the firm obtained a landmark decision in which a Manhattan federal jury found BNP Paribas liable for its role in enabling the genocidal atrocities committed against Black African civilians in Sudan by the al-Bashir dictatorship from 1997 to 2011, paving the way for more than 20,000 Sudanese refugees living in the United States to seek billions more in recovery. The verdict marks a historic moment in human rights and financial accountability, setting a precedent for holding global banks civilly liable for facilitating regimes accused of crimes against humanity.

Prior to joining the Firm, Lori was the Managing Partner of the New York office of a national class action firm and Chair of the firm's Class Action Practice, a Partner and Executive Committee Member in one of the largest class action firms in the country, a Partner in a prestigious securities and consumer class action firm, and Of Counsel to one of the most tenacious criminal and civil litigation boutiques in the United States.

Ms. Feldman is based in New York and bicoastally licensed to practice law in New York and Washington States.

Lori was named a 2021 Plaintiff's Lawyers Trailblazer by the National Law Journal. From 2011 to 2025, Lori was named a New York Metro SuperLawyer. As a young lawyer, she was also named as a Rising Star in New York and Washington State.

**PRACTICE AREAS**
- Class Action Litigation

- Complex Commercial Litigation
- Consumer Protection
- Securities Fraud

**BAR ADMISSIONS**
- State of New York
- State of Washington
- U.S. Supreme Court
- U.S. District Court Southern District of New York
- U.S. District Court Eastern District of New York
- U.S. District Court Western District of New York
- U.S. District Court Western District of Washington
- U.S. District Court Northern District of Illinois
- U.S. District Court District of Colorado
- Second Circuit Court of Appeals
- Ninth Circuit Court of Appeals

**EDUCATION**

J.D., Albany Law School of Union University, *magna cum laude*

B.A., State University of New York at Albany, *magna cum laude*

**Notable Representations**
- Washington Mutual Securities Litigation ($41.5 million settlement)
- Century Link Sales Practices and Securities Litigation ($15.5 million settlement)
- General Electric Securities Litigation ($40.15 million settlement)
- In Re Gilead Securities Litigation ($8.5 million settlement)
- ConAgra Foods, Inc. Securities Litigation ($14.4 million settlement)
- In Re Amazon Securities Litigation ($25 million settlement)
- Shields Healthcare Group Data Breach Litigation ($15 million settlement)
- Morgan Stanley Data Breach Litigation ($60 million settlement)
- Independe nt Living Data Breach Litigation ($14 million settlement)
- Boston Childrens' Physicians Data Breach Litigation ($5 million settlement)
- In re Fortra Data Breach MDL ($20 million settlement)
- Actively litigating numerous data breach cases on behalf of consumers and credit unions

**Professional Associations**
- New York State Bar Association, Member, Present
- Washington State Bar Association, Member, Present
- National Association of Shareholder and Consumer Attorneys, Present



# David J. George, Partner

David J. George earned his Bachelor of Arts degree in Political Science from the University of Rhode Island, *summa cum laude*.  David then graduated at the top of his class at the University of Richmond School of Law.  At the University of Richmond, David was a member of the Law Review, was the President of the McNeill Law Society, and earned numerous academic awards, including Outstanding Academic Performance in each of his three years there.  Prior to joining Hecht Partners, David was the Managing Member of a nationally known class action firm he founded in 2018.

David, who is AV rated by Martindale-Hubbell (the highest rating available), was a partner in one of the largest class action firms in the world.  A zealous advocate of shareholder, consumer and EB-5 investor rights, David has been lead and/or co-lead counsel with respect to various securities class action matters throughout the United States, including: *In re Cryo Cell Int'l, Inc. Sec. Litig.* (M.D. Fla.) ($7 million settlement); *In re TECO Energy, Inc. Sec. Litig.* (M.D. Fla.) ($17.35 million settlement); *Baxter Int'l* (N.D. Ill.) ($42.5 million settlement); *In re Newpark Res., Inc. Sec. Litig.* (E.D. La.) ($9.24 million settlement); *In re Mannatech, Inc. Sec. Litig.* (N.D. Tex.) ($11.5 million settlement); *In re Gilead Sec. Litig.* (N.D. Cal.) ($8.25 million settlement); and *In re R.H. Donnelly* (D. Del.) ($25 million settlement).  David has also acted as lead counsel in numerous consumer class actions nationwide, including *Lewis v. Labor Ready, Inc.* ($11 million settlement); *In re Webloyalty, Inc. Mktg. & Sales Practices Litig.* (D. Mass.) ($10 million settlement); and *In re Navisite Migration Litig.* (D. Md.) ($1.7 million settlement).  Moreover, David was a member of the litigation team that secured a $925 million settlement in *In re UnitedHealth Grp. Inc. PSLRA Litig.* (D. Minn.).  The UnitedHealth Group settlement was the largest stock options backdating case in history.

David recently served as lead counsel in two of the Firm's EB-5 cases involving the Palm House Hotel at 160 Royal Palm Way in Palm Beach, Florida.  The litigation is entitled *Lan Li, et al. v. Joseph Walsh, et al.*, 16-cv-81871-KAM (S.D. Fla). and *Lan Li, et al. v. PNC Bank, N.A. and Ruben Ramirez*, 9:19-cv-80332-KAM (S.D. Fla), and David served as Lead Counsel for the Palm House EB-5 Investors.  David consults with EB-5 investors from all over the world, including China, Korea, South America, India, and Vietnam, and lectures on EB-5 related topics during his travels.  David's EB-5 practice includes projects in various cities across the U.S.

David also spent more than a decade as a commercial litigator with two of the largest corporate law firms in the United States.  During that time, David aggressively prosecuted and defended a wide array of complex commercial litigation matters, including securities class action matters,

non-compete litigation, fraud claims, and real estate-based litigation matters.  He is a member of the National Association of Shareholder and Consumer Attorneys.

David has been selected as a Super Lawyer from 2022 – 2026.  In addition, David was honored as a 2021 Plaintiffs' Lawyers Trailblazer by the National Law Journal.  He was also named as one of Florida's Most Effective Corporate/Securities Lawyers and was the only plaintiffs' securities class action counsel recognized.  He has a nationwide practice and successfully prosecutes commercial litigation and fraud cases throughout the U.S.

**PRACTICE AREAS**
- Class Action Litigation
- EB-5 Fraud Litigation
- Complex Commercial Litigation
- Consumer Protection

**BAR ADMISSIONS**
- State of Florida
- U.S. District Court Southern District of Florida
- U.S. District Court Middle District of Florida
- U.S. District Court Northern District of Florida
- U.S. Court of Appeals 1st Circuit
- U.S. Court of Appeals 5th Circuit

**EDUCATION**
J.D., University of Richmond, School of Law
B.A., University of Rhode Island, *summa cum laude*



# Michael M. Liskow, Partner

Michael Liskow is a Partner of the Firm. He has extensive experience litigating complex class actions on behalf of plaintiffs in data privacy, consumer fraud, insurance, antitrust, securities, housing, and wage and hour matters, among others. Michael has devoted his career to seeking justice for classes of individuals that have been taken advantage of by unscrupulous businesses.

Michael earned his Bachelor of Arts Degree in Psychology from the University of Kansas, and his Juris Doctor Degree from the University of Pennsylvania Carey Law School, where he was an Executive Board Member the Journal of Constitutional Law and received a Fulbright Award to the Slovak Republic.

Prior to joining the Firm, Michael was a clerk for the Honorable Steven H. Levinson of the Supreme Court of Hawai`i, an associate at Quinn Emanuel Urquhart & Sullivan, LLP, a Fulbright Teaching Assistant to the Slovak Republic, and a partner at other law firms practicing plaintiff-side class action litigation.

Michael has been recognized as a "New York Super Lawyer" each year since 2019, and was named a "Rising Star" by New York Super Lawyers from 2013-2018.

Michael is currently acting as lead counsel in multiple class actions challenging unlawful workers' compensation insurance premiums. He is also part of a team litigating class claims against Meta and Google for collecting individuals' sensitive tax information without their consent. Michael previously acted as lead counsel in data privacy class actions resulting in meaningful settlements, *Bokelman v. FCH Enters.*, No. 18-00209-RJB-RLP (D. Haw.) and *Mizrahi v. NBEO*, No. 16-cv-03146-JKB (D. Md.). He has initiated and litigated numerous other class actions to completion as the lead attorney through investigation, complaint, discovery, motion practice, appeal, and resolution. These include, among others, *Thompson v. Bethpage Fed. Credit Union*, No. 2:17-cv-00921 (E.D.N.Y.), alleging violations of the Real Estate Settlement Procedures Act resulting in a settlement where every class member received a full recovery, and *Egleston v. Verizon*, No. 194784/2011 (N.Y. Sup. Ct.), on behalf of overbilled Verizon customers resulting in a $5 million settlement providing full refunds plus interest and fees to the class. Michael also had a significant role in representing a class of overcharged tenants of Stuyvesant Town and Peter Cooper Village in New York City, resulting in a $173 million recovery, the largest recovery for tenants in United States history.

Michael is a member of the National Association of Shareholder and Consumer Attorneys and is licensed to practice in New York and California.

**PRACTICE AREAS**
- Class Action Litigation
- Consumer Fraud Litigation
- Data Privacy Litigation
- Insurance Litigation

**BAR ADMISSIONS**
- State of California
- State of New York
- U.S. District Court for Northern District of California
- U.S. District Court for Central District of California
- U.S. District Court for Southern District of California
- U.S. District Court for Eastern District of California
- U.S. District Court for Southern District of New York
- U.S. District Court for Eastern District of New York
- U.S. District Court for Northern District of New York
- U.S. District Court for Northern District of Illinois
- U.S. District Court for District of Colorado
- U.S. Court of Appeals 1st Circuit
- U.S. Court of Appeals 2nd Circuit
- U.S. Court of Appeals 3rd Circuit
- U.S. Court of Appeals 4th Circuit
- U.S. Court of Appeals 7th Circuit
- U.S. Court of Appeals 9th Circuit

**EDUCATION**
J.D., University of Pennsylvania
B.A. University of Kansas



# Kristen Nelson, Partner

Kristen Nelson is a litigator with extensive experience in domestic and international business litigation and atrocities and asset recovery.

Prior to joining Hecht Partners, Kristen was the Project Manager and Lead Researcher on a multi-year Holocaust real property restitution study commissioned by the Prague-based European Shoah Legacy Institute (ESLI), which was published by Oxford University Press in 2019 as Searching for Justice after the Holocaust: Fulfilling the Terezin Declaration and Immovable Property Restitution.

She was also of counsel to a California concierge litigation practice and was Assistant Managing Editor of the European Court of Human Rights module for Oxford Reports on International Law.

Kristen is the author of a number of legal articles and book chapters relating to post-atrocity property restitution.

Kristen has a Master of Laws in Human Rights from the University of Hong Kong, with distinction, a J.D. from Pepperdine University School of Law and B.A. from Washington University in St. Louis in International Studies.

**PRACTICE AREAS**
- Human Rights
- Commercial Litigation & Arbitration
- Transnational Litigation & Arbitration

**BAR ADMISSIONS**
- State of California
- State of Texas
- U.S. Court of Appeals, Ninth Circuit
- U.S. District Court, Central District of California

**EDUCATION**
LL.M., University of Hong Kong, Human Rights
J.D., Pepperdine University School of Law
B.A., Washington University in St. Louis

**Thought Leadership**

- Co-author with Michael Bazyler, Michael Scott Bryant, and Sermid Al-Sarraf, *Comparative Law: Global Legal Traditions*, Carolina Academic Press, August 2021.

- Benjamin B. Ferencz with Michael Bazyler and Kristen Nelson, "Seeking Redress for Hitler's Victims: Personal Remembrances" *in Reparations for Victims of Genocide, War Crimes and Crimes against Humanity, Second Edition,* Carla Ferstman and Mariana Goetz, eds., Brill, 2020.

- Co-author with Michael J. Bazyler, Kathryn Lee Boyd, and Rajika Shah, "Guided by the Terezin Declaration: A Review of Restitution of Stolen Jewish Property After the Holocaust" *in Reparations for Victims of Genocide, War Crimes and Crimes against Humanity, Second* Edition, Carla Ferstman and Mariana Goetz, eds., Brill, 2019.

- Co-author with Michael J. Bazyler, Kathryn Lee Boyd, and Rajika L. Shah, *Searching for Justice After the Holocaust: Fulfilling the Terezin Declaration and Immovable Property Restitution*, Oxford University Press, 2019.

- Author, *The Biggest Stolen House on the (Eastern) Bloc: Lessons From the Terezin Declaration to Poland for Enacting Holocaust Property Restitution Legislation,* Loy. L.A. Int'l & Comp. L. Rev. 41(3), December 2018.

- Co-author with Michael Bazyler, "Holocaust Property Theft and Restitution: The Right to an Effective Remedy under Article 8 of the Universal Declaration of Human Rights" *in Contemporary Human Rights Challenges: The Universal Declaration of Human Rights and Its Continuing Relevance*, Michael Newman and Carla Ferstman, eds., Routledge, 2018.

- Co-author with Kathryn Lee Boyd, *Report from Jerusalem: The Continuing Struggle for Holocaust Justice*, The Jewish Journal, 21 July 2016.

- Co-author with Rajika Shah, *An Immovable Property Restitution Legislation Database: ESLI's Initiative to Bring Present and Future Meaning to the Terezin Declaration Commitments*, Limes Plus – Nationalization, Confiscation, Restitution, 2015.

- Co-author with K. Lee Boyd, Rajika L. Shah, *Negotiating the Deal: Strategies to Avoid Costly Disputes*, 17 Gaming Law Review and Economics 335, 2013.



# Tremayne Norris, Partner

Tremayne Norris is a Partner in the Intellectual Property Group. Mr. Norris' practice focuses primarily on intellectual property litigation, including actions in the federal courts and actions arising under Section 337 of the Tariff Act of 1930 before the International Trade Commission.

Prior to becoming a lawyer, Mr. Norris worked as a patent agent at other prominent law firms where his work included patent preparation and prosecution as well as client counseling. He has drafted and prosecuted numerous patent applications in matters involving such diverse technologies as computer software/hardware devices, wireless network communication, databases, search engines, electromechanical devices, and business methods. Mr. Norris also worked as a patent examiner with the US Patent and Trademark Office where he reviewed patent applications in the network security and cryptography arts.

**PRACTICE AREAS**
- Intellectual Property & Patent

**BAR ADMISSIONS**
- Maryland
- District of Columbia
- U.S. Patent & Trademark Office

# Peter Park, Partner



Peter Park (박현준) is a Partner and a trusted client advisor.

Peter has over a decade of experience in high-stakes patent litigation, patent procurement and portfolio development, managing IP issues in multimillion-dollar deals, and counseling C-level executives on all things IP. As a former IP executive at two high-tech companies, Peter understands the realities of business and can expertly guide clients through the intricacies and impacts of IP litigation. He leverages his corporate experience to formulate creative and pragmatic litigation strategies and obtain favorable, cost-effective results while also minimizing disruption to clients' business activities. Having been in his clients' shoes, Peter works hard to anticipate and alleviate the various in-house pain points that can occur throughout the litigation process. Importantly, he uses his electrical engineering background and training to comprehend, analyze, and layperson-translate very complex technologies. Recently, Peter was Vice President of IP and Strategic Relations at AST SpaceMobile (NASDAQ: ASTS) – a high-tech satellite company specializing in direct-to-cell communications technology. Before that, Peter was the Head of IP Litigation at Analog Devices (NASDAQ: ADI) – a Fortune 500 semiconductor company specializing in data conversion, signal processing, power management, and numerous other specializations.

Peter has worked in Big Law as well as boutique firms. Peter also has extensive patent preparation and prosecution experience, which helps him break down and diagnose patents more effectively for litigation.

Peter received his law degree, with honors, from UNH Franklin Pierce School of Law after obtaining his B.S. in Electrical Engineering from the University of Virginia. Peter is fluent in Korean.

**PRACTICE AREAS**
- Intellectual Property

**BAR ADMISSIONS**
- State of New Jersey
- District of Columbia
- United States Patent and Trademark Office

**EDUCATION**
J.D., UNH Franklin Pierce School of Law
B.S., University of Virginia

# Rebecca A. Peterson, Partner



Rebecca A. Peterson is a Partner of the Class Action Practice Group. Her practice areas focus on consumer protection, greenwashing, product liability, data privacy, and accompanying regulatory issues. Ms. Peterson has extensive leadership experience, having been appointed by courts or acted in the capacity of lead counsel in numerous cases. Ms. Peterson has been part of the successful prosecution of actions on behalf of consumers in both state and federal courts and on various trial teams. In these actions, she has conducted and defended dozens of depositions, including expert depositions. She has vetted and worked extensively with experts that have the specific expertise required for consumer protection cases including survey and damages work. Ms. Peterson has also argued class certification motions and dispositive motions, such as summary judgment and handled cross-examination in *Daubert*.

Ms. Rebecca Peterson's litigation skills have also been recognized in Minnesota and nationally, as she has been named The National Trial Lawyers Top 100 from 2021 to 2024 and Minnesota Super Lawyer from 2022 to 2025. Ms. Peterson, alongside a group of attorneys, was recognized as Attorney of the Year by Minnesota Lawyer for her work on behalf of U.S. farmers. She was also recognized as a Patriotic Employer by the Employer Support of the Guard and Reserve.

Ms. Peterson is also active in her community, serving as an Advisory Board Member for the Page Education Foundation and as a Board Member for the Sportsmen for the Boundary Waters. Ms. Rebecca Peterson also uses her leadership experience to mentor aspiring lawyers as a member of the Food Law Advisory Board at Mitchell Hamline Law School, where she is teaching a seminar on food law this semester.

Ms. Peterson initially practiced in California and her employment history includes extensive experience in complex class actions, appeals, and public relations.

**PRACTICE AREAS**
- Class Action Litigation
- Securities Litigation
- Product Liability
- Consumer Fraud Litigation

**BAR ADMISSIONS**
- State of California
- State of Minnesota
- U.S. District Court, District of Minnesota
- U.S. District Court, Northern District of California
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Southern District of California
- U.S. District Court, District of Colorado
- U.S. District Court, Central District of Illinois
- U.S. District Court, District of North Dakota
- U.S. District Court, Eastern District of Wisconsin
- U.S. Court of Appeals, Second Circuit
- U.S. Court of Appeals, Sixth Circuit
- U.S. Court of Appeals, Seventh Circuit
- U.S. District of Appeals, Eighth Circuit
- U.S. District of Appeals, Ninth Circuit
- U.S. District of Appeals, Tenth Circuit

**EDUCATION**
J.D., University of San Diego
B.A. St. Olaf's College

**Notable Representations**

- *In re Syngenta AG MIR162 Corn Litig.,* No. 14-md-2591-JWL-JPO (D. Kan.)

- *In re Syngenta Litig. (Minn. Producers),* No. 27-cv-15-3785 (Henn. Co. Dist. Ct., Minn.)

- *Zarinebaf et al. v. Champion Petfoods USA, Inc. et al.,* 1:18-cv- 06951 (N.D. Ill.)

- *In re Big Heart Pet Brands Litig.,* No. 4:18-cv-00861-JSW (N.D. Calif.) [Co-Lead Counsel]

- *Zeiger et al. v. WellPet LLC et al.*, 3:17-cv-04056-WHO (N.D. Calif.)

- *In re Plum Baby Food Litigation,* 4:21-cv-00913-YGR (N.D. Calif.) [Co- Lead Counsel]

- *In re Nurture Baby Food Litigation,* 1:21-cv-01217-MKV (S.D. NY) [Co- Lead Counsel]

- *In re Theo's Dark Chocolate Litigation*, 4:23-cv-02739 [N.D. Calif.] [Co-Lead Counsel]

- *In re Meta Pixel Tax Filing Cases,* 3:22-cv-07557 [N.D. Calif.] [Co-Lead Counsel]

- *Walton et al. v. WL Gore & Associates,* 1:25-cv-01948 (D. of MD.)

- *In re: Procter & Gamble Co. "Protect, Grow and Restore" Marketing and Sales Litigation Practice* 25-md-3157 (S.D. Ohio)

- *Amanda Seutter et al. V. Mead Johnson Nutrition Co.,* 0:24-cv-02179 (D. of Minn.)

- Author of Amicus Brief in *Karsjens, et al. v. Harpstead, et al.,* 11-cv-02359 (8th Cir.)

- *Huggins et al. V. Abbott Laboratories*, 2 :25-cv-02460 (N.D. Ill)

- *Brower et al. v Colgate-Palmolive Company,* 1:25-cv-03348 (S.D. NY)

- *Grimm v. APN, Inc. et al.,* 8 :17-cv-00356 (C.D. of Calif.)

- *Merriman Blum v. Amazon.com, Inc.,* 2:25-cv-00977 (W.D. Wash.)

- *Kennedy et al., v. Exxon Mobil Corp.* et al. 2 :25-cv-02378 (W.D. Wash.)

- *Schwarz et. al. v. Google*, LLC; 25-cv-03125 (N.D. of Calif.)

**Professional Associations**

- The National Trial Lawyers Top 100 (2021 – 2024)

- Best Lawyers in Minnesota 2022 by Minnesota Monthly (2022)

- Attorney of the Year (Syngenta litigation team) by Minnesota Lawyer (2017)

- Minnesota Super Lawyers – Class Action and Mass Torts Attorney (2022 – 2025)

**Community Involvement**

- Food Law Advisory Board at Mitchell Hamline Law School

- Adjunct Professor for Food Law Labeling and Advertising (Spring 2026)

- Advisory Board Member, Page Education Foundation

- Board Member, Sportsmen for the Boundary Waters

- Support in completing book on historical work of retired Minnesota Supreme Court Justice Page

# Janine L. Pollack, Partner



Janine L. Pollack is a Partner of the Firm and the Class Action Practice Group. She has been a class action litigator for over 35 years and has prosecuted cases that have resulted in the award of hundreds of millions of dollars to defrauded consumers and investors. She has been appointed by courts to lead numerous class actions and has had much success in securing refunds and other remedies for class members. She has prosecuted bench and jury trials as first chair, winning a jury verdict against R.J. Reynolds for wrongful death in a tobacco litigation.

Janine grew up in New Jersey and is a member of the New York and New Jersey bars. After graduating from University of Pennsylvania Carey Law School, she worked in a general litigation firm for approximately eighteen months before joining a large plaintiffs' class action firm in 1991 and has devoted her practice primarily to class actions since then.

Janine is a Certified Health and Well-Being Coach and the Firm's Chief Wellness Officer. Janine and the Firm are at the forefront of the focus on well-being in the legal profession. Her and the Firm's philosophy is that well-being is ground zero for all endeavors we undertake in life, including being an effective attorney. Since adolescence, her interests have revolved around her love for fitness, nutrition and the goal of uniting mind, body and soul and her enthusiasm for such interests has continued to grow over time. She strives to share that philosophy with her colleagues at the Firm and in the Bar to support them in finding strength, motivation and empowerment for fulfillment in their personal and professional lives.

Janine graduated from University of Pennsylvania Carey Law School in 1989, where she was elected to the Journal of International Business Law. Janine is active as an alumnus, participating in various programs, including regarding well-being. Prior to law school, she graduated in 1986 from Rutgers College at Rutgers University in New Brunswick, New Jersey with High Honors, Phi Beta Kappa, with a B.A., having double-majored in English and French. Fluent in French, she spent a semester abroad in 1985 at New York University in France.

Janine is Co-President of the National Association of Shareholder & Consumer Attorneys (NASCAT), a non-profit organization of attorneys that supports consumer and investor rights, including through the class action mechanism. Janine is also the Chair of the Women's Initiative at NASCAT, which seeks to advance women in the class action bar. She participated as a team leader in developing standards and best practices for increasing diversity in mass tort and class action litigation for the James F. Humphreys Complex Litigation Center at the George Washington Law School titled, "Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class-Action Litigation" (March 15, 2021). Janine

is also a member of the Women in the Legal Profession Committee of the Bar Association of the City of New York (City Bar), where she was a co-editor of the publication, *Street Smarts for Women Lawyers*. Her committee activities include wellness projects and presentations, as well as the Women on the Walls initiative that commissions portraits of women jurists for display at the City Bar. Janine is a member of the Mindfulness & Well-Being in Law Committee at the City Bar as well. Janine has also participated as a volunteer for the Institute for Well-Being in Law (IWIL), a non-profit organization whose focus is well-being within the legal community.

**PRACTICE AREAS**
- Class Action Litigation
- Product Liability
- Consumer Fraud Litigation

**BAR ADMISSIONS**
- State of New York
- State of New Jersey
- U.S. District Court Southern District of New York
- U.S. District Court Eastern District of New York
- U.S. District Court Northern District of New York
- U.S. District Court District of New Jersey
- U.S. District Court Northern District of Illinois
- U.S. Court of Appeals for the First Circuit
- U.S. Court of Appeals for the Ninth Circuit
- U.S. Court of Appeals for the Tenth Circuit

**EDUCATION**
J.D., University of Pennsylvania Carey Law School
B.A. Rutgers University

**Notable Representations**

- Lead litigator in consumer class actions against major banks for failure to pay interest on mortgage escrow monies; settlement achieved in one case

- One of lead litigators in consumer class action against lender for misrepresentations in financing documents to pay for energy-saving home improvements; settlement achieved

- Co-lead counsel in data breach against large clothing retailer for failure to exercise reasonable care in safeguarding personal information of its customers; settlement achieved

- Represented consumers nationwide in class actions against Skechers, Reebok and others for false claims regarding efficacy of "toning shoes"; worked with Federal Trade Commission in securing settlements

- The lead litigator in oft-cited seminal consumer class action in D. Mass. (*Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015)), against the manufacturer of "Vibram FiveFingers footwear" for mispresenting the health benefits of the shoes; settlement achieved

- One of lead litigators in consumer class action against makers of macaroni and cheese products for failure to disclose presence or risk of dangerous phthalates

- Working with various co-counsel in consumer class actions against makers of infant formula for failure to disclose presence or risk of heavy metals

- Working with various co-counsel in consumer class actions against several makers of baby foods for failure to disclose presence or risk of heavy metals

- Working with various co-counsel in consumer class action against maker of protein powder for failure to disclose presence or risk of heavy metals

- Co-lead counsel in consumer class action against maker of chocolate confectionary products for failure to disclose presence or risk of PFAS "forever chemicals"

- Worked with various co-counsel in consumer class actions against makers of herbs and spices for failure to disclose presence or risk of heavy metals

- Working with various co-counsel on numerous data breach and privacy class actions, many of which have had successful settlements

**Achievements**

Janine is honored to have been named as a Super Lawyer every year since 2012 and to Lawdragon's list of 500 Leading Plaintiff Financial Lawyers for numerous years. She has also enjoyed being appointed many times to Law360's editorial boards. Janine's prior firm where she was a founding partner was awarded the National Law Journal's 2020 Trailblazer Award for an Elite Boutique Firm. In 2012, Janine was one of the attorneys featured on the front page of The National Law Journal's Plaintiffs' Hot List for her work on toning shoe cases, including against Reebok and Skechers, which resulted in settlements jointly with the Federal Trade Commission.

**Thought Leadership**

Janine is a frequent public speaker on well-being, women's and other issues, including:

- Time Management & Practice Organization for New Attorneys CLE presentation, Lawline, March 29, 2026

- Turning Strategy to Action – Real World Tactics for Unlocking Participation and Driving Engagement, 7th Annual Employee Wellness for Legal Professionals Summit, March 3, 2026, Tampa, FL

- University of Pennsylvania NYC Alumni Panel Presentation on Wellness and Motivation, February 25, 2026

- Women Lawyers in Leadership, Practicing Law Institute (numerous years)

- Making Wellness Work for You, Class of Our Own Women's Summit, May 9, 2023

- Health and Wellness Panel, Class Action Law Forum, University of San Diego School of Law, March 18, 2022

- Taking Care of Our Own: Lawyer Well-Being Programs, AON Virtual Law Firm Symposium, October 14, 2021

- Harris Martin Webinar Series: Baby Food Litigation, April 8, 2021

- Taking Control of Your Well-Being: How to Leverage Your Legal Organization's Wellness Program, Practicing Law Institute, December 10, 2020

- How to Wow Motivation and Wellness: Your Guide to Grit and Fit, University of Pennsylvania Carey Law School, October 21, 2020 (highlighted in *Penn Law Journal*, Summer 2021)

# Adam Rader, Partner



Adam J. Rader has been assisting clients in the civil prosecution and defense of complex commercial business disputes in state and federal court for more than 20 years. His practice focuses on commercial litigation in state and federal court with an emphasis on international law.

Mr. Rader provides clients with creative and practical approaches to the resolution of complex commercial problems. He has been involved on behalf of his clients in a diverse array of complex commercial litigation matters, arbitration and mediation, international matters, executive employment disputes, and appellate matters.

Mr. Rader has represented both U.S. and international clients in a variety of state and federal civil and criminal cases including matters involving corporate and international litigation, arbitration, international trade, extradition, art law, trademark issues, entertainment law, and Native American Law.

**PRACTICE AREAS**

- Commercial Litigation & Arbitration
- Transnational Litigation & Arbitration

**BAR ADMISSIONS**

- State of New York
- U.S. Supreme Court
- U.S. District Court, Southern District of New York
- U.S. District Court, Eastern District of New York
-

**EDUCATION**

- University of Wisconsin-Madison, J.D.
- Connecticut College, B.A.

---

**Notable Representations**

Mr. Rader has been involved in several high profile cases including representation of a prominent German real estate developer in extradition proceedings and preparation of writ of habeas corpus; representation of an Azerbaijani law professor accused of attempting to sell works of art allegedly

stolen in World War II; and representation of Internet Tobacco sellers in complex federal litigation involving novel theories of trademark violation alleged by Philip Morris concerning grey goods and the sale of tobacco products by Native American business.

- Mr. Rader has consulted with and assisted in preparation of British counsel in connection with multi-jurisdictional matters with related litigation in both the U.S. and Great Britain.

- Mr. Rader has obtained an award of summary judgment in excess of $2.5 million on behalf of a client in a commercial litigation matter involving various breaches of fiduciary duties by establishing adverse inferences as a result of the defendant's destruction of computers and other relevant evidence. In several matters, Mr. Rader has obtained preliminary relief for clients involved in partnership disputes leading to a favorable resolution of "business divorce" actions.

- He recently settled a matter involving a partnership dispute over various real estate holdings in Brooklyn in which, after obtaining injunctive relief, his client received sole possession of a Brooklyn property worth several million dollars, plus cash payments in excess of $1 million.

# Lawrence Steckman, Partner



Lawrence Steckman is a partner in the law firm Hecht Partners LLP and has been litigating securities and business cases since 1988. In July, 2006, Super Lawyers Magazine, in its inaugural New York edition, identified Mr. Steckman as one of New York's first "Super Lawyers" in both securities and business litigation. He received that honor again in 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020 and 2021.  The largest independent attorney rating service, AVVO, awarded him its highest achievement level, "superb," based on a 10/10 score, placing Mr. Steckman in the top fraction of the top 1% of rated attorneys.  Mr. Steckman has handled billions of dollars in client matters, including individual matters exceeding one billion dollars, and been counsel in leading securities, derivatives and RICO litigations.  He has authored or been the principal and/or first author of more than fifty published works on the law.

Mr. Steckman's practice areas include securities and derivatives private and class suits, including Rule 10b-5 litigation, federal and state complex commercial litigation, prosecuting and defending civil RICO private and class suits, merger and acquisition, corporate and contract litigation, bond, arbitrage and real estate fraud and regulatory litigation, international, securities and broker customer arbitration, securities regulatory matters and professional liability defense litigation on behalf of accountants and attorneys.

Mr. Steckman has represented mutual, hedge and private equity funds, insurance companies, accounting firms and auditors, real estate companies, technology companies, a rating company, domestic and foreign companies, a mining company, banks, investment banks and bankers, securities brokers, law firms, lawyers, and foreign and domestic entrepreneurs and investors.  He has represented political figures ranging from a former member of the Egyptian Parliament and Germany's former Industrial Ambassador to the Middle East and Africa, to Panama's former Governor General and a high-profile Ukrainian Oligarch.

Mr. Steckman has published on federal procedure, evidence, constitutional law, attorney client privilege, securities fraud pleading, loss causation and causal modeling, the reliance element in securities fraud litigation, insider trading, risk arbitrage, fiduciary duty, class certification and preparation of expert reports, remedies and damage computation, mitigation and litigating damage offset defenses in securities and commercial cases, class suit attorney fees, corporate governance, and statute of limitation defenses.  He has published on modern portfolio theory and index adjusted damages as well as eligibility rule defenses, Mr. Steckman has published on civil RICO litigation, including on RICO predicate acts, RICO enterprise theory, RICO standing and the RICO

direct injury requirement, RICO claims accrual and statute of limitations, RICO loss causation, RICO extraterritoriality analysis and the PSLRA RICO Amendment.

Mr. Steckman's published work on public policy matters has been cited in areas ranging from international terrorism to government contract and constitutional law. He has published on philosophy of science and the philosophy of Nietzsche, Kierkegaard and the American pragmatists. In 2017, he co-authored a volume on existential psychology, published by Nova Science Publishers. He pursued doctoral studies in philosophy at Columbia University, where he was awarded a master's degree, after receiving his undergraduate degree *summa cum laude* in music (classic guitar). He began his legal career in Shea & Gould's New York office.

**PRACTICE AREAS**
- Commercial Litigation & Arbitration
- Transnational Litigation & Arbitration

**BAR ADMISSIONS**
- State of New York, 1989
- U.S. District Court, Southern District, New York
- U.S. District Court, Eastern District, New York
- U.S. District Court, Northern District, New York
- U.S. Court of Appeal for the Second Circuit
- U.S. District Court, Central District of California
- California Superior Court, Los Angeles County
- U.S. District Court, Maryland
- New Jersey Superior Court
- U.S. District Court, Western District, New York
- New Jersey Superior Court
- U.S. District Court, New Jersey (Newark)
- California Superior Court, Los Angeles County
- U.S. District Court, Central Division of Utah
- U.S. District Court, Southern District of California

**EDUCATION**
- Touro College Jacob D. Fuchsberg Law Center, J.D., cum laude, 1988, Law Review
- Columbia University, Doctoral Candidate Masters, Philosophy, 1983
- Long Island University, B.A., 1977 (Philosophy - summa cum laude)
- Long Island University, B.A., 1977 (music performance summa cum laude - classic guitar)

**Notable Representations**

1.        Robert W. Seiden, Esq., Receiver for China Valves Technology, Inc. v. Frazer Frost, LLP, Moore Stephens Wurth Frazer and Torbet, LLP and Frost, PLLC, 796 F. App'x 381, 2020 U.S. App. LEXIS 4005 (9th Cir. Jan. 3, 2020), *affirming* trial court, 2018 WL 6137618 (C.D.CA. July 31, 2018) (Carney, J.) (defense counsel to three accounting firms in action seeking $65 million on fraud, fiduciary and contract breach, and negligence and gross negligence theories brought by Receiver of a technology company.  The Ninth Circuit rejected the Receiver's effort to exploit the "adverse domination theory" to obtain equitable tolling of claims the defense argued were time-barred, dismissing, with prejudice, the Receiver's first-time-on complaint, holding repleading would be futile. Both courts rejected the Receiver's effort to exploit an *in pari delicto* argument to assert plaintiffs lacked incentive to sue because they would have concluded they could not have successfully pursued derivative claims). *En banc* review was unanimously denied.

2.        CMG Holdings Group v. Wagner, 2016 WL 4688865 (September 7, 2016) (Oetken, J.) (plaintiff counsel to advertising company suing several companies and former officers and employees for more than $60 million RICO damages arising from the looting of company over a five-year period, destroying hard copy and computer files and establishing, by theft and otherwise, a competing entity. The court refused to dismiss plaintiff's RICO claims, noting the "comprehensive" scheme and "extensive" concealment efforts pleaded. He sustained CMG's claim for ten times compensatory losses for damages from non-RICO predicate acts: "Based on CMG's allegations, this case may present a rare occasion where punitive damages may be potentially justified.").

3.        Hanson v. Frazer, LLP, 2015 WL 4561707 (July 17, 2015) (Rakoff, J.) (defense counsel to accounting firm in Rule 10b-5 class suit seeking more than $45 million.  This Order set forth the court's reasons for previously dismissing with prejudice plaintiffs' amended complaint which had alleged defendant accountant recklessly failed to include a subsequent events disclosure regarding alleged improper, related-party loans rendering auditor GAAP and PCAOB compliance opinion fraudulent under Rule 10b-5, holding plaintiffs failed to plead a strong inference of scienter).

4.        Arabi v. Javaherian, 2014 WL 3892098 (E.D.N.Y. May 1, 2014) (Korman, J.) (plaintiff's special RICO counsel in action arising from racketeering scheme to obtain a multi-year series of fraudulent loans. This order denied defendants' motions to dismiss for failure to state a RICO claim and a claim of successor liability and rejected, as well, lack of jurisdiction and improper venue defenses).

5.        In re China Valves Tech. Sec. Litig., 979 F.Supp.2d 395 (S.D.N.Y. 2013) (Kaplan, J.) (defense counsel to accounting firm in Rule 10b-5/Section 11 class suit seeking in excess of $20 million.  This decision rejected plaintiffs' amended claim alleging that differences between SAIC Chinese Regulatory filings and SEC US GAAP filings of Chinese reverse merger company were sufficient to show PSLRA scienter against auditor which opined that company financial statements

were in accord with GAAP and rejected plaintiffs' claims based on non-disclosure of alleged material, related party transactions. This decision dismissed plaintiffs' amended complaint with prejudice).

6.        Hanson v. Frazer Frost, LLP, 2013 WL 5372749 (S.D.N.Y., Sept. 24, 2013) (Rakoff, J.) (defense counsel to accounting firm in Rule 10b-5 class suit seeking in excess of $45 million.  This decision held allegations that auditor recklessly failed to include a subsequent events disclosure regarding alleged improper, related-party loans rendered its audit opinion regarding GAAP and PCAOB compliance fraudulent under Rule 10b-5, failed to state a claim, dismissing without prejudice).

7.        Perry v. Duoyuan Printing, Inc., 2013 WL 4505199 (S.D.N.Y., Aug. 22, 2013) (Daniels, J.) (defense counsel to accounting firm in Rule 10b-5/Section 11 class suit seeking in excess of $45 million.  This decision held auditor had no duty to review SAIC filings of defendant company and auditor opinion that company financial statements were prepared in accord with GAAP and that audit complied with PCAOB standards was not actionable, dismissing with prejudice).

8.        Islet Holdings v. Islet Sciences, 2:12-cv-00799 (U.S.D.C., January 28, 2013) (defense counsel to bio-medical technology company. By order from the Bench, the court granted dismissal of claims seeking declaratory relief and damages under theories of conversion, unjust enrichment, interference with potential economic relations, breach of fiduciary duty, negligent misrepresentation, misappropriation of trade secrets, patent infringement and fraud, following prior dismissal, from the Bench, of RICO and securities fraud claims, in excess of $15 million, for alleged misrepresentation as to ownership of technology related to diabetes treatment in SEC filings, for lack of properly-pleaded causation and damage elements).

9.        In re China Valves Tech. Sec. Litig., 2012 WL 4039852 (S.D.N.Y., Sept. 12, 2012) (Kaplan, J.) (defense counsel to outside auditor in Rule 10b-5 class suit seeking in excess of $20 million.  This decision rejected plaintiffs' claim that differences in financial metrics between SAIC Chinese Regulatory filings and SEC US GAAP filings of Chinese reverse merger public company were insufficient to show PSLRA scienter against auditor, and rejected claims based on alleged non-disclosure of material, related party transactions. This decision dismissed all claims).

10.        Fortress Credit Corp. v. Ruskin Moscou Faltischek P.C., 95 A.D.3d 685 **(1st Dep't May 22, 2012)** (defense/appellant's counsel to opinion-counsel law firm in action seeking $50 million out of pocket damages.  Reversing the trial court, the appeal court held plaintiff, alleging the law firm's opinion recklessly mis-stated material facts, including identity of client, failed to state a claim for fraud, negligence or breach of fiduciary duty, directing all claims be dismissed with prejudice).

11.        Lakah v. UBS, A.G, 600 F.Supp.2d 497 (S.D.N.Y.  March 6, 2009) (Cedarbaum, J.), March 17, 2009, N.Y.L.J. 29, Col. 3 (Decisions of Interest) (defense counsel to former member of Egyptian parliament and majority owner and controlling shareholder/officers of three Egyptian

companies seeking to stay arbitration against them in their personal capacity for bank/bond fraud and market manipulation of Cairo Exchange on claims exceeding $200 million. This decision enjoined a AAA Panel of arbitrators from determining their own jurisdiction to resolve arbitrability question).

12.     Mazzone v. Grant Wilfley Casting, No. 05-2267 (2007) (Wiginton, J.) (special RICO defense counsel to entertainment casting company and its owner sued for RICO violations based on predicate acts of alleged commercial bribery.  This order dated January 7, 2008 dismissed on summary judgment plaintiff's claims for reasons stated from the Bench during oral argument).

13.     Apex Equity Partners Inc. v. Murray, 18 Misc.3d 1137(A), 2008 WL 498468 (Sup. Ct. N.Y. Co. Feb. 5, 2008) (Fried, J.) (plaintiff's counsel to Canadian private equity firm seeking in excess of $95 million for defendant French aero-space conglomerates' misconduct in failed acquisition of Mexican, English and United States subsidiaries.  This decision upheld plaintiff's breach of contract, tortious interference and fraud claims on dismissal motion).

14.     Riggs v. Mass. Fin. Serv. Co., Civ. No. JFM-04-1162 (2006) (Motz, J.) (defense counsel to national bank officer accused of structuring swaps and derivatives to facilitate alleged market timed and late traded securities transactions in violation of Rule 10b-5 in action claiming damages in excess of $300 million.  This order dated March 1, 2006 (MFS Subtrack), implementing Multi-district Litigation Global Memorandum Decision In re Mut. Funds Invest. Litig., 384 F.Supp.2d 845 (D. MD. Aug. 35, 2005) (Janus Subtrack), dismissed all Rule 10b-5 fraud/market manipulation claims against bank officer, with prejudice).

15.     Parthasarathy v. RS Invest. Manag., L.P., Civ. No. JFM-04-3798 (2006) (Motz, J.) (defense counsel to national bank officer accused of structuring swaps and derivatives to facilitate alleged market timed and late traded securities transactions in violation of Rule 10b-5 in action claiming damages in excess of $300 million.  This order dated March 1, 2006 (RS Subtrack), implementing Multi-district Litigation Global Memorandum decision In  re Mut. Funds Invest. Litig., 384 F.Supp.2d 845 (D.Md. Aug. 35, 2005) (Janus Subtrack),  dismissed all securities claims against bank officer, with prejudice).

16.     Wyser-Pratte v. Babcock Borsig, AG, 23 A.D.3d 269, 808 N.Y.S.2d 3 (1st Dep't 2005) (defense/respondent's counsel to chairman of German company Babcock Borsig, AG, one of Germany's largest energy and engineering conglomerates in action seeking more than $60 million civil RICO damages arising from a multi-billion dollar alleged fraud.  Arguing appeal on behalf of all defendants, this decision affirmed dismissal on *forum non-conveniens* grounds, despite unavailability of RICO remedies and alleged inadequate trial procedures in Germany).

17.     Wyser-Pratte v. Babcock Borsig, AG, 2004 WL 3312835 (Sup. Ct. N.Y. Co. July 8, 2004) (Ramos, J.) (defense counsel to chairman of German company Babcock Borsig, AG, one of Germany's largest energy and engineering conglomerates, in action seeking more than $60 million

civil RICO damages arising from a multi-billion dollar alleged fraud – this order dismissed $60 million RICO claims against former Babcock Chairman, on *forum non conveniens* grounds).

18.       Chamberlin v. The Hartford Financial Services Inc., 2005 WL 2007894 (S.D.N.Y. Aug. 19, 2005) (Hellerstein, J.) (defense counsel to insurer in civil RICO class action alleging a RICO enterprise comprised of seven insurers.  This decision dismissed all RICO allegations rejecting claim that  insurers violated RICO by denying, in coordinated fashion, no-fault claims).

19.       Vera v. Saks & Co., 335 F.3d 109 (2d Cir. 2003) (defense counsel in class suit against national retailer.  This decision affirmed dismissal of class action, holding plaintiffs' claim that collective bargaining agreement provision was illegal under New York law was pre-empted under Labor Management Relations Act Sec. 301).

20.       Caiola v. Citibank, N.A., 295 F.3d 312 (2d Cir. 2002) (special derivatives counsel to securities fraud plaintiff seeking $40 million in losses arising from defendant's abandonment of a synthetic option hedging strategy and *sub silentio* adoption of a physical hedging strategy.  This decision held synthetic swap and option transactions were governed by Exchange Act §10(b), in the first case to construe the effect of the Commodities Futures Modernization Act on synthetic derivatives).

21.       Palazzetti Import/Export, Inc. v. Morson, 2002 WL 31819577 (2d Cir. 2002) (respondent's counsel to prevailing plaintiff in franchise matter. This decision affirmed the trial court's denial of motion for JNOV and denial of defendant's application for a new trial).

22.       Palazzetti Import/Export, Inc. v. Morson, 2001 WL 1568317 (S.D.N.Y. December 6, 2001) (Maas, J.) (plaintiff counsel in franchise matter.  This decision refused to amend $1.7 plaintiff jury award in plaintiff's favor).

23.       Double Alpha, Inc. v. Mako Partners, L.P., 2000 WL 1036034 (S.D.N.Y. July 26, 2000)(Chin, J.) (defense counsel for hedge funds.  This decision dismissed all 10b-5 claims against defendants that remained after plaintiff, on Rule 11 motion, was forced to voluntarily dismiss four RICO claims).

24.       Washington National Ins. Co. of New York v. Morgan Stanley & Co. Inc., 1999 WL 461796 (S.D.N.Y. July 2, 1999) (Griesa, C.J.) (counsel to plaintiff insurance companies in Rule 10b-5 suit seeking $22 million damages arising from alleged $200 million fraud.  This decision denied underwriter, issuer and law firm defendants' motions for summary judgment).

25.       Bull & Bear U.S. Government Securities Fund, Inc. v. Karpus Management Inc., 1998 WL 388546, 1998 U.S. Dist. LEXIS 10282 (S.D.N.Y. July 13, 1998)(McKenna, J.) (defense counsel to proxy fight target of takeover attempt of closed end fund.  This decision sustained §16 claims filed by target after a state court denied five summary judgment motions seeking shareholder list).

26.         X v. Y,   (U.S.D.C.) (defense counsel to rating company in "SLAPP" litigation defamation law suit brought by one of the largest U.S. HMOs seeking more than $1 billion damages for publishing an alleged inaccurate financial strength rating. After motion practice, plaintiff consented to a $0 recovery, without modification of rating, under sealed settlement).

27.         Jeffries v. Harleston, 21 F.3d 1238 (2d Cir.), *cert. granted, judgment vacated by* Harleston v. Jeffries, 513 U.S. 996 (1994) (vacatur of Second Circuit decision which held Department head's First Amendment rights were violated by University officials), o*n remand,* Jeffries v. Harleston, 52 F.3d 9 (2d Cir.), *cert. denied,* Jeffries v. Harleston, 516 U.S. 862 (1995)).

28.         Goldberg v. Parker, 221 A.D. 2d 81, 634 N.Y.S.2d 81 (1st Dep't 1995) (appellate counsel to respondent in proceeding seeking to stay arbitration for lack of arbitral eligibility.  This decision affirmed that where eligibility for arbitration is defined by contract, because eligibility is not a "jurisdictional," such determination can be made by arbitrators.

29.         Goldberg v. Parker, 1995 WL 396568 (Sup. Ct. N. Y. Co. May 12, 1995); May 4, 1995, N.Y.L.J. 28 (page 1 at Col. 3) (Omansky, J.) (counsel to respondent on petition to dismiss arbitration alleged to be time-barred – court held that where arbitral eligibility is defined by contract, arbitrators, not courts, should make eligibility determinations -- arbitral eligibility held not to be  "jurisdictional").

30.         In re Integrated Resources Real Estate Limited Partnerships Sec. Litig., 850 F. Supp. 1105 (S.D.N.Y. 1994) (Sweet, J.) (defense counsel in consolidated Rule 10b-5 securities and RICO class suits.  This decision dismissed more than $1 billion in class damage claims).

### REPRESENTATIVE AUDIT-FIRM SETTLEMENTS

1.         Defense of securities class suit alleging GAAP violations compromised IPO funding, preventing loan repayment. Auditor defendant did not contribute to settlement and negotiated inclusion of a statement in pendency notice as follows: "[T]here were no sufficient factual bases to pursue claims against [the defendant's auditor and] . . . Had an amended complaint been filed [the auditor] . . . would not have been named."

2.         Defense of private and inter-related derivative actions alleging damages in excess of $30 million against *inter alia* auditor defendant.  Auditor Defendant settled for $125,000.

3.         Defense of securities class suit alleging Auditor Defendant violated Rule 10b-5 by failing to disclose defendant sold blocks of stock and improperly issuing an unqualified opinion.  Auditor Defendant paid $215,000 to settle all claims against itself and all successor auditors.

4.         Defense of securities class suit alleging Auditor Defendant violated GAAP by failing to timely detect Chinese employees applying Chinese GAAP instead of US GAAP causing artificial inflation, mispricing of stock and damages. Case settled for less than half projected discovery costs.

**REPRESENTATIVE SECURITIES ARBITRATION DISPUTES**

1.        ICDR Case No. 5 0148T00251 06 (defense counsel to arbitration respondent Egyptian issuer and parent and subsidiary guarantor companies in AAA International Arbitration arising from the first $100 million Euro Bond Offering in the Middle East. This Panel order dated November 7, 2007 denied the claimant banks' guarantee-based summary judgment motion for interim relief seeking in excess of $200 million, finding issues of fact precluded summary judgment on contract breach theory despite the existence of alleged unequivocal guarantees and waivers of defenses).

2.        N.A.S.D. No. 99-04205 (N.A.S.D. Arbitration) (defense counsel to investment banker accused of securities fraud; after five years of arbitration, claimant voluntarily withdrew $10 million in fraud claims against banker, under threat of sanctions).

3.        FINRA Dispute Resolution Arbitration No.: 09-03065 (claimants' counsel claimants seeking damages arising from investment in a municipal arbitrage opportunity fund.  Claimant trustee, a former securities firm branch manager, and individual claimant, head of an equities trading desk, alleged fraud and breach of fiduciary duty based on misrepresentations of risk, a misleading track record and violation of investment guidelines for the product.  After 20 hearing sessions, the Panel issued a $950,000 Claimants' award).

4.        N.A.S.D. No. 05-01325 (N.A.S.D. Arbitration  2006) (claimant's counsel; after settlement for full out-of-pocket damages by broker dealer and 10 hearing sessions against non-settling individual respondents, Panel awarded the claimant, over and above her out of pocket losses, extra-compensatory (benefit-of-the-bargain) damages in the amount of $88,000, $87,000 attorney fees, and $100,000 punitive damages against non-settling brokers, accused of securities fraud).

**REPRESENTATIVE PUBLICATIONS AND CITATIONS**

1.        Adverse Domination, Statutes of Limitations and the *in pari delicto* Defense  - Application in Cases Involving Claims of Accounting Malpractice and Corporate fraud, 37 *Touro Law Review* 697-737 (No. 2, 2021) (co-author Adam Rader) (forthcoming).

2.        RICO Extraterritoriality, *RJR Nabisco* and Shareholder Residence – Determining RICO Domestic Injury, *The RICO and Securities Fraud Law Reporter* 4-37 (Vol. 69, No. 6, June, 2019), reprinted in The Securities Litigation Reform Act Reporter 4-37 (Vol. 47, No. 3, June, 2019),  reprinted in updated and expanded form 35 Touro Law Review 1343 ( No. 4, 2020) (co-author Adam Rader).

3.        When May a Litigant Rely in its Own Complaint on Allegations from Another Complaint filed a Different Action? -- Lipsky *v. Commonwealth United Corp* and Its Progeny – Still an Unresolved Question, 32 *Touro Law Review*101 (No. 2, 2016) (co-author Joseph Johnson).

4.      The Availability of Benefit of the Bargain Expectancy-Based Damages for Buyers Defrauded in California Real Estate Transactions, 31 *Touro Law Review* 1043 (No. 4, 2015) (co-author Robert Conner and Kris Taylor).

5.      Loss Causation, Economic Loss Rules and Offset Defenses – Dismissal Motion Practice After *Acticon A.G. v. China N.E. Petroleum Holdings Ltd.*, 31 *Touro Law Review* 501 (No. 3, 2015) (co-authors Robert E. Conner and Kris Taylor), reprinted in expanded form from 37 *Private Securities Litigation Reform Act Reporter*, (No. 5 at 53, August, 2014).

6.      Determining When Extrinsic Evidence Not Attached to or Incorporated by Reference in a Pleading May be Considered on a Rule 12 Dismissal Motion, 31 *Touro Law Review* 115 (2014) (co-author Rita Turner).

7.      Financial Transparency and Disclosure: China Progress on Corporate Governance, 7 Journal of International Business Ethics 3 (University of Beijing (No. 1, July, 2014) (co-author T. Myers), cited Wasserman-Mitchell, 2:1 *The Business and Finance L. Rev*. 77, 111, n. 156 (Oct. 2018).

8.      Market Impact, Loss Causation and Multiple Regression Modeling -- the Importance of Modular Theories of Damage Causation in Antitrust Class Certification Motion  Practice After *Comcast v. Behrens,* 30 *Touro Law Review* 127 (2014) (co-authors R. Conner and S. Rosenthal), cited 1 *Commercial Damages Remedies in Business Litigation*, ¶ 22.02.

9.      Class Certification After *Comcast* -- Raising the Bar or Changing the Game in Antitrust Litigation?, *Private Securities Litigation Reform Act Reporter*, Vol. 35, Nos. 1 & 2, at 18 (symposium on the effect of *Comcast* on antitrust certification) (April-May, 2013) (co-author Robert E. Conner), cited Hutchinson, *Expert Witnesses Business & Economy*, § 4:8, at n.14 (2014).

10.     Reliance and Loss Causation in Securities Fraud Class Certification Motion Practice After *Halliburton II*, *Private Securities Litigation Reform Act Reporter*, Vol. 52, Nos. 4 and 5 at 16,  (June-July, 2014) (symposium on the effect of *Halliburton II* in Securities Litigation) (co-authors Robert E. Conner and Stuart S. Rosenthal).

11.     Litigating Offset Arguments in Compensatory Damage Litigation and Lead Plaintiff Motion Practice in Class Cases: Are Apparently Inconsistent Outcomes Reconcilable? 3 *Journal of Securities Law, Regulation & Compliance* 150-179 (No. 2, April, 2010) (co-author R. Conner).

12.     Punitive Damages Against Fiduciaries, Probate Cases, and Equitable Relief, 25 *Probate and Property Magazine* 43 (ABA, Issue No. 3,  May/June,  2011) (co-authors J. Pankauski and R. Conner), reprin*ted in expanded form*, Punitive Damages Against Fiduciaries: Allowing Punitive Damages Where Equitable Relief is Sought, 84 *Florida State Bar Journal* 40 (No. 9, November and No. 10, December, 2010, at 42), cited Fla. R. Civil Pro., Rule 1.040, One Form of Action (referenced commentary, Rule 1.040, Fla. Stat. 2011); cited Restatement (Third) of Trusts § 100, Part 6, Ch. 19, Comment d (2012); cited  Administration of Trusts in Florida, Ch. 2 (2014).

13.      The Assertion of Attorney-Client Privilege by Counsel in Legal Malpractice Cases – Policy, Privilege and the Search for Truth in Cases Involving Implied Waivers, 45 *Tort Trial & Insurance Practice Law Journal* 839-891  (ABA, Issue Nos. 3-4, Spring-Summer,  2010) (co-author R. Granofsky), cited *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, 2013 WL 4757486, \*8 at n. 20 (July 12, 2013); cited Duval, 32 *N. Ill. U. L .Rev.* 1, at  ns. 18, 99, and 177 (2011); cited Darley-Emerson, 80 *U. Cinn. L. Rev.*  537, 541, at n. 27 (2011); cited Perlmutter, 41 *SPG Brief* 46, 55, at n. 81 (2012); cited Reuben, 83 *Fordham L. Rev.* 2131, at n. 77 (2015); cited Beach, 90 *Notre Dame L. Rev.* 1663, 1689, at n. 135 (2015); cited Shachmurove, 37 *N. Ill. U. L. Rev.* 203, 268, at n. 402 (2017).

14.      Can Allegations of Aiding and Abetting Securities Fraud Violations Serve as Proper RICO Predicates Under the Reform Act?, 52 *The RICO Reporter* 157-173 (No. 2, August, 2010).

15.       Index Adjusted Portfolio Damages in Securities and Investment Fraud Litigation/Arbitration, 2 *Journal of Sec. Law, Reg. & Compliance* 360 (No. 4, September, 2009) (co-author R. Conner).

16.      The Unsuitability of the "Suitability Rule" -- Why FINRA's Current Interpretation of Conduct Rule 2310 Undermines Investor "Holding Claim" Entitlements in Contemporary Markets, 2 *Pepperdine Journal of Business, Entrepreneurship and the Law* 122-141 (No. 1, 2009) (co-author R. Conner), reprinted in modified form from *2008 SECURITIES ARBITRATION*, Ch. 15, 177-230 (P.L.I. 2008) (co-authors R. Conner and J. Trainer), cited Winnard, 104 *Nw. U. L. Rev.* 671, at ns.  200, 202 (Spring 2010).

17.      RICO Enterprise Theory in the Seventh and Second Circuits – Should "Prototype Theory" and the "Functional Unity Test" be applied to Corporations and Other Business Entity Enterprises?, 49 *The RICO Reporter* 5 (January, 2009).

18.      Derivative Standing for New York LLC Members – the Conflict Continues, 79 *New York State Bar Journal* 33 (No. 8, October, 2007) (co-authors D. Rothman and Y. Yamamoto), cited *Ribstein and Keatings on Limited Liability Companies*, Sec. 10:3, at n. 7 (2010), cited  Stoner, *New York Practice Series — New York Limited Liability Companies and Partnerships: A Guide to Law and Practice*, Sec. 7:14 at n.2 (April, 2010); discussed in 5b Real Estate Financing §11C.03 (2018).

19.      Using Policy Provisions to Control the Risks Created by Self-Insured Retentions, *Mealey's Litigation Report* (Vol. 21, No. 31, June 21, 2007) (co-authors A. Brouk and J. Zimring).

20.      Privilege and Methodology in Cases Involving Implied Waivers of the Attorney Client Privilege, 20 *Professional Liability Underwriting Society Journal* 6 (April, 2007) (co-author R. Granofsky).

21.       RICO Section 1962(c) Enterprises and the Present Status of the "Distinctness Requirement" in the Second, Third and Seventh Circuits, 42 *RICO Reporter* 284-341, 460-489 (No. 3, Sept., 2005 and No. 4, Oct., 2005), reprinted 21 *Touro Law Review* 1083-1297 (2006) cited

*Llacua v. Western Range Ass'n*, 930 F.3d 1161, 1182-1184  (10th Cir.  2019), <u>cited</u> *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, ns. 9 and 10, and concurrence, n. 1 (2d Cir. Sept. 18, 2017); <u>cited</u> Mitchell, Cunningham and Lentz, 13 *Fordham J. Corp. and Fin. L.* 1, at n. 133 (2008); <u>cited</u> Hemmer, 35 *N. Ky. L. Rev.* 127, at n. 137 (2008); <u>cited</u> Pierson, 85 *Temp. L. Rev.* 523, at n. 172 (2013).

22.    <u>Recurring Problems in Additional Insured Litigation</u>, *Mealey's Litigation Report: Insurance* (Vol. 18, No. 23, April 20, 2004), <u>reprinted</u> *LEXIS-NEXIS MEALY'S ADDITIONAL INSURED WORKBOOK*, at 77-111 (2004) (co-author B. Strikowsky), <u>cited</u> FISHER, SWISHER, STEMPLE, *PRINCIPLES OF INSURANCE LAW*, at 109-110 (3d Ed.) (Supp. 2006).

23.    <u>Securities Fraud Class Suits Again Threaten to Become RICO Battlegrounds</u>, 47 *Defense Research Institute, For the Defense* 12 (No. 12, April, 2005) (co-author S. Getzoff).

24.    <u>Professional Liability Insurance Coverage</u>, *Mealey's Emerging Insurance Disputes* (Vol. 8, No. 18, Sept. 23, 2003) (co-authors E. Portuguese and E. Spindler).

25.    <u>Mitigation of Damages and Undue Risks</u>, *New York Law Journal*, July 7, 2003 at 4, col. 4 (2003) (co-author S. Getzoff).

26.    <u>Mitigation of Damages in Securities Litigation and Securities Arbitration</u>, *2004 SECURITIES ARBITRATION*, Ch. 19, at 585 (P.L.I. 2004) (co-authors R. Conner, C. Bellaire and S. Getzoff), <u>discussed in</u> DAVID ROBBINS, SECURITIES ARBITRATION PROCEDURE MANUAL, § 5-17,  at 5-249-250 (2009).

27.    <u>Mitigation of Damages in Commercial and Securities Litigation and Arbitration – When is Proposed Mitigating Conduct Unreasonably Risky?</u>, 2 *Journal of Sec. L., Reg. & Compliance* 103 (No. 2, March, 2009) (co-authors R. Conner, C. Bellaire), <u>reprinted</u> *2009 SECURITIES ARBITRATION* 491, Ch. 13 (P.L.I. 2009).

28.    <u>Defendant's Breach of Own Contract and Tortious Interference</u>, *New York Law Journal*, March 13, 2003 at 4, col. 4 (co-author D. Rothman).

29.    <u>Reviewing Recent Developments in RICO Enterprise Litigation</u>, *New York Law Journal*, January 17, 2002 at 1, col. 1; *reprinted in expanded form*, Corporation/Officer Enterprises and the Distinctness Requirement After Cedric Kushner Promotions, Ltd. v. King, *RICO Law Reporter*, Vol. 35, No. 1, at 5 (Jan. 2002).

30.    <u>Attorney Liability for Securities Fraud After Washington National Life Ins. Co. of New York v. Morgan Stanley & Co</u>., 28 *Sec. Reg. L. J.* 207 (Fall, 2000), cited Steinberg, 56 *Washburn L. J.* 1, at n. 25 (Fall, 2006); <u>cited</u> HAZEN 4 Law Sec. Reg. § 12.25, n. 62 (Jan. 2013).

31.    <u>RICO Prototypes and Impeaching Presidents -- Absurd Applications of Statutory Remedies and the Abuse of Constitutional Safeguards</u>, *RICO Law Reporter*, Vol. 29, No. 1, at 9 (Jan. 1999), <u>reprinted</u> <u>from</u> *New York Law Journal*, Dec. 31, 1998 at 1, col. 1., <u>Analyzing</u>

Impeachable Offenses Through RICO Prototypes, <u>cited</u> DAVID ROBBINS, SECURITIES ARBITRATION PROCEDURE MANUAL, § 3-5 (2018).

32.        <u>Loss Causation Under Rule 10b-5, a Circuit-by-Circuit Analysis: When Should Representational Misconduct be Deemed the Cause of Legal Injury Under the Federal Securities Law?</u>, *1998 SECURITIES ARBITRATION*, Vol. 1, Ch. 16,  375-538 (P.L.I. 1998), <u>reprinted</u> *RICO Law Reporter*, Vol. 28, No. 2, at 173-231 (Aug. 1998), <u>reprinted</u> *Private Securities Litigation Reform Act Reporter*, Vol. 5, No. 6, at 897-956 (Sept., 1998) (co-author R. Conner), <u>cited</u> Razzano, 4 *The Securities Reporter* at 17 (1999); <u>cited</u> Escoffery, 68 *Fordham L. Rev.* 1781, ns. 16, 92, 94, 125, 152-154, 157, 164, 178, 206, 232, and 363 (April, 2000); <u>cited</u> Foster, 23 Mich. J. Int'l L. 265, 340, n. 213 (2002); <u>cited</u> Van Hoey, 60 *Wash. & Lee L. Rev.* 249, 307, n. 221 (2003); <u>cited</u> Holbrook, 39 *Tx. J. of Bus. L.* 215, 259, ns. 2, 42, 58, 178, 179, 253, 260, 301, 302, 304, 326 (2003); <u>cited</u> Thorson, 6 *Wym. L. Rev.* 623, 656, at n.72 (2006); <u>cited</u> Olazabals, 3 *Berkleley Bus. L. J.* 337, 380, n. 57 (2006).

33.        <u>Construction Industry AIEs - Problems of Contract Interpretation and Solutions</u>, 65 *Defense Counsel Journal* 78-99, January, 1998; (co-author J. Cleary), <u>cited</u> Richmond, 33 *Tort and Ins. L. J.* 945, n.21 (1998); <u>cited</u> Strode, 23 *St. Louis U. Pub. L. Rev.* 697,  ns. 98, 159, 207 (2004); <u>cited</u> Strode, 25-SUM *Constr.* 21, n. 51 (2005).

34.        <u>Computation of Benefit of the Bargain Damages in Rule 10b-5 Bond Fraud Cases</u>, *2001 SECURITIES ARBITRATION*, Vol. II, Ch. 37, at 1127 (P.L.I. 2001) (co-author R. Conner).

35.        <u>1998 Securities Arbitration Damages and Remedies</u>, in *Securities and Mediation and Arbitration -- Effective Advocacy* at 205-251 (Pub. N.Y.S.B.A, Securities Litigation. Committee of the Commercial and Federal Litig. Sec., Fall, 1998), <u>reprinted</u> *1999 SECURITIES ARBITRATION*, ch. 29, at 903-942 (P.L.I. 1999) (co-author C. Hecht), <u>cited</u> Lowenfels & Bromberg, 30 *Seton Hall L. Rev.* 1083, 1113, n. 62 (2000); <u>cited</u> HAZEN 5 Law Sec. Reg. § 14.20, n. 26 (Jan. 2013).

36.        <u>Report and Proposal of the Securities Litigation Committee of the New York State Bar Association on Attorney Compensation in Securities Class Action Cases: Are Counsel Fees in Class Actions Running Away?</u>, *New York Litigator***,** Vol. 2, No. 2 at 56-68 (November 1996) (Committee member and principal co-author).

37.        <u>Theories of Civil RICO Accrual</u>, *Civil RICO Report*, Vol. 13, No. 2, May 28, 1997 at 1.

38.        <u>Litigating State Statute of Limitations Defenses in Securities Arbitration</u>, in *1996 SECURITIES ARBITRATION,* Ch. 12, 645-678 (P.L.I. 1996), <u>cited</u> Davis, 62 *Brook. L. Rev.* 1561, 1573 (1996).

39.        <u>Pleading Scienter in Securities Fraud Cases Under Rule 9(b): Is the Pleading of Facts Sufficient to Give Rise to a Strong Inference of Fraudulent Intent Really Incompatible with the Federal Rules?</u>, N.Y.U. School of Law, 1995 Vol., Issue 1, *Survey of American Law* at 99-119 (co-

author K. Moltner), <u>cited</u> Miest, 82 *Minn. L. Rev.* 1103, ns. 41, 46 (1998); <u>cited</u> Dorelli, 31 *Ind. L. Rev*. 1189, n. 28 (1998); <u>cited</u> Briski, 32 *Loyola Univ. of Chicago L. J.* 155, 204, ns. 51, 58, 65 (2000); <u>cited</u> 28 U.S.C.A., FRCP Rule 9 (2015) (pleading special matters, Westlaw, cited reference); <u>cited</u> 28 U.S.C.A., FRCP Rule 56 (2015) (summary judgment, Westlaw, cited reference).

40.     <u>Arbitral Awards in Excess of Actual Damages</u>, New York Law Journal, Jan. 11, 1996 at 1 (co-author R. Conner); <u>cited</u> 9 U.S.C. §9 (2014) (Award of Arbitrators; Westlaw, cited reference).

41.     <u>Corporation/Employee Association-in-Fact Enterprises After Jaguar Cars</u>, *Civil RICO Report*, Vol. 11, No. 6, August 9, 1995 at 8 (co-author K. Moltner), <u>cited</u> and <u>discussed</u> <u>in</u> JEROLD S. SOLOVNY and DOUGLAS REES, *RICO*, Sec. 69.3, text at n. 43.

42.     <u>New Protections for Mid-project Licensed Home Improvement Contractors in New York</u>, *New York Law Journal*, August 23, 1995 at 1, col. 1; <u>reprinted</u> <u>in</u> <u>expanded</u> <u>form</u>, <u>Litigating After-Acquired License Cases</u>, 11 *J. of the Suffolk Academy of L.* 35 (Fall, 1996) (co-author L. Gates).

43.     <u>Computing Damages in Rule 10b-5 Unsuitability Cases: Litigating "Offset" Defenses</u>, in *1994 SECURITIES ARBITRATION*, Ch. 24 at 377-431 (P.L.I. 1994) (co-author R. Conner), <u>cited</u> Berg, *1995 SECURITIES ARBITRATION* 507, 522 (P.L.I. 1995); <u>cited</u> SOUTH CAROLINA DAMAGES, §VI.34.C.6 (2018); <u>cited</u> DAVID ROBBINS, SECURITIES ARBITRATION PROCEDURE MANUAL, § 6.7 (2018).

44.     <u>Securities Arbitration and Contractual Consent: Punitive Damage Remedies in the NASD</u>, *Securities Arbitration Commentator*, Vol. VI, No. 8, Sept. 1994, at 1.

45.     <u>Impairment of Contract in the Absence of Breach: Should Breach Really be an Element of Tortious Interference?</u>, *New York Law Journal*, October 27, 1993, at 1, col. 1 (coauthor M. Karlinsky).

46.     <u>Limiting Termination for Convenience Clauses in Government Contracts: Contractors' Actions for Anticipated Profits Under New York Law</u>, *New York Law Journal*, April 8-9, 1991, at 1, col. 1 (co-author J. Frankel); <u>reprinted</u> 21 *Public Contracts Law Journal* 63, Fall 1991, <u>cited</u> *Hellenic American Neighborhood Action Committee v. City of New York Human Resources Admin.*, *New York Law Journal* Vol. 215, No. 95, at 29, col. 6, May 16, 1996.

47.     <u>Recent Developments in Direct Injury Analysis in the Second Circuit: An examination of the Injury and Causation Elements of RICO Standing</u>, *New York Law Journal*, January 5, 1992, at 1, col. 1, <u>reprinted</u> 15 *RICO L. Rep.* 274, February, 1992 (co-author K. Moltner).

48.     <u>Attorney Inaction as Trial Strategy:</u>  6 *Journal of the Suffolk Academy of Law* 89 (Fall 1989) (co-author P. Daley), <u>cited</u> Gould, *Int'l J. of Law  & Psychiatry* 83, 95, n.96 (1995); <u>cited</u> Wilson, 22 *Wm. Mitchell L. Rev*. 1117, 1171, ns. 144, 147, 157 (1996); <u>cited</u> Van Arsdel, 39 *Hous.*

*L. Rev.* 835, n.252 (2002); <u>cited</u> Cunningham, 76 *Temp. L. Rev.* 827, n.106 (2003); White, 122 *Dickinson L. Rev*. 649, 667, n. 116 (2018).

49.      <u>Risk Arbitrage & Insider Trading: a Functional Analysis of the Fiduciary Concept Under Rule 10b-5</u>, 5 *Touro L. Rev.* 121 (Fall 1988); <u>cited</u> *The Journal of Applied Economy*, Vol. 2, at 87, n. 319 (2009); <u>cited</u> Jen-Guang Lin, 1 KLRI Journal. of Law and Legislation 205, 218, n. 45 (2011); <u>cited</u> Rowley, 9 *Causes of Action, Second Series*, Securities Fraud Under Section 10(b) of the 1934 Act and Rule 10b-5  (May, 2013); <u>cited</u> *The Free Dictionary* (on definition of "risk arbitrage," "equity arbitrage" and "merger arbitrage") (2013); <u>cited</u> *The Free Library*  (on "Criminal insider trading: prosecution. legislation, and justification," at n. 319) (2013).

50.      <u>Terrorism, Ideology and Rules of International Law</u>, 1 *Touro Journal of Transnational Law* 213-256 (Fall 1988) (co-author), <u>cited</u> *Ahmad v. Wigen*, 726 F. Supp. 389, 407 (E.D.N.Y.  1989) (Weinstein, J.); <u>cited</u> Greene, 16 *Vt. L. Rev*. 461, 498, n.81 (1992); <u>cited</u> Raimo, 14 *Am. U. Int'l L. Rev.* 1473, 1478, n.21 (1999).

## REPRESENTATIVE LAW LECTURES AND SEMINARS

1.      <u>Complexity and Securities Fraud Litigation</u>, Invited Lecturer, New York University, Stern School of Business (November 30, 2011).

2.      <u>Securities Class Suits</u>, Webnar, Invited Lecturer, Fireman's Fund Insurance (October 29, 2009)

3.      <u>Securities Class Suits – Recent Developments</u>, in-house CLE (October 29, 2009).

4.      <u>Litigating Securities and RICO Class Suits After SLUSA</u>, Invited Lecturer regarding the conflict among the Circuit Courts of Appeals on SLUSA pre-emption of state securities claims, Touro Law School (February 22, 2006).

5.      <u>Recent Developments in Civil RICO Jurisprudence</u>, National Meeting of ABA Committee on RICO and Antitrust (Labor Law Section) in Atlanta, Georgia, Invited Lecturer on recent developments in 2004 RICO cases <u>Wyser-Pratte v. Babcock Borsig, AG</u> and <u>Andrea Doreen v. Local 282</u> in which he acted, respectively, as defense and plaintiff RICO counsel (August 8, 2004).

6.      <u>The Effect of 20th Century Philosophy on Contemporary Securities, Derivatives and RICO Litigation</u>, Invited Lecturer, Long Island University (March 16, 2002).

7.      LEXIS Counsel Connect 1995 On-Line Expert Seminars, Securities Arbitration

   *      Chairman, Statutes of Limitations and Eligibility (January-February, 1995)

   *      Chairman, Remedies and Damage Computation (January-February, 1995)

   *      Chairman, Punitive Damages (January-February, 1995)

8.     Pleading Civil RICO Claims in New York Federal Courts, Invited Lecturer, Touro Law School, May 1992

**EXPERT AND LAW-RELATED PROFESSIONAL EXPERIENCE**

**2012-2014     THORNAPPLE ASSOCIATES, INC.**, Summit, New Jersey

Consultant – providing services to attorneys prosecuting or defending Exchange Act, Securities Act or civil RICO claims in litigation/arbitration.

**1985- 1988     LOGICAT CORPORATION**, New York, New York

Senior Logician -- Hiring, training and coordinating activities of ten logic professors who produced problems for the logic section of the Law School Admission Test; developing logical reasoning problem-types and defending correctness of all challenged LOGICAT-produced problems before Educational Testing Service overseeing LSAT production.

**NON-LEGAL PUBLICATIONS**

**2012**          *Nietzsche, Kierkegaard, Dewey and James on Philosophy, Meaning and Resilience*, published as the afterward to Dr. Eric Kreuter's "FOSTERING RESILIENCE FOR LOSS AND IRRELEVANCE" (Pub. Springer, December, 2012).

**2014**          *Maladaptive Schemas and the Transfiguration of Core Beliefs – When and How Paradigms of Consciousness Shift – an Introduction to Dr. Kreuter's and Counselor Moltner's Analysis and Recommendations Regarding the Treatment of Certain Psychic Disorders*, published as the introduction to Dr. Eric Kreuter's "MANAGEMENT AND TREATMENT OF MALADAPTIVE SCHEMAS" (Pub. Springer, August, 2014) (co-author Dr. Lodze Steckman).

**2017**          LIFE TRANSITIONS: THEORY, STRATEGY AND PRACTICE (co-author Dr. Eric Kreuter) (Pub. NOVA SCIENCE PUBLISHERS, 2017).

# James Zak, Partner



James Zak is the co-chair of the PTAB practice group at the firm. He has a unique ability to learn and understand technology across a range of fields. Whether the mechanism of a chemical reaction and synthesis, the properties of materials, relating protein sequences to functional structure, a complex regulatory pathway, the physics of mechanical devices, or thousands of pages of software documentation, he puts in the work to understand the technology. Hecht Partners utilizes James's unique technical tenacity to architect infringement reads and patent assertion strategies, safely shepherding cases through the USPTO, and interfacing with technical experts.

In addition to earning his J.D. cum laude from the University of Minnesota Law School, James earned a B.S. in Biochemistry and a B.S. in Neuroscience. As an undergraduate, he was awarded research grants to investigate A.I. During Law School, James enrolled in the University of Minnesota Graduate School to study pharmacology. Developing a computer program to analyze images acquired with a confocal laser microscope, James continued exploring the application of machine learning to laboratory research.

Prior to joining Hecht Partners, James represented Fortune 500 companies in the areas of computers and A.I., pharmaceuticals, medical devices, chemistry, and materials science.

**PRACTICE AREAS**

- Intellectual Property

**BAR ADMISSIONS**

- State of Minnesota

**EDUCATION**

J.D., University of Minnesota
B.S., University of Minnesota

# Dr. Sarah Cork, Of Counsel



Dr. Sarah Cork is a seasoned patent attorney with extensive experience advising life sciences companies—from startups to global enterprises—on a wide range of intellectual property matters. She draws on more than a decade of practice in high-stakes life sciences patent and commercial matters at leading international law firms.

Sarah leverages her Ph.D. in Neuroscience and professional training in translational biologic drug discovery to bring scientific depth to her legal practice. Her technical expertise spans a broad array of cutting-edge technologies including immunotherapies, antibody-drug conjugates, AI-enabled precision medicine, cell-free diagnostic techniques, oligonucleotides for spatial transcriptomics and gene silencing, IVF and ocular surgical techniques, medical devices including pen injectors and aortic stents, gene sequencing, recombinant DNA technology, consumables, and biologic and small molecule therapies targeting diabetes, cancer, HIV, and dermatological, urological, and neurological conditions.

Sarah works closely with her clients to protect their innovations and develop IP strategies that support both immediate and long-term business objectives.

Her practice encompasses patent prosecution, IP due diligence, freedom-to-operate analyses, and strategic counseling on patent scope, validity, and enforceability. She also advises on due diligence in licensing and M&A transactions in the life sciences sector.

As a litigator and PTAB practitioner, Sarah is deeply familiar with all phases of a matter, from pre-suit investigation, discovery, and dispositive motion practice through trial and appeal. Her teams rely on her unique ability to craft sophisticated merits arguments and manage technical subject matter experts efficiently.

Sarah has special expertise with biologic drug litigation from her work on flagship cases under the Biologics Price Competition and Innovation Act (BPCIA). Her significant litigation practice also includes diverse pharmaceutical and Hatch-Waxman (ANDA) matters, post-grant proceedings, patent inventorship disputes, and drug product liability cases.

For her achievements, Sarah has been repeatedly ranked by Best Lawyers: Ones to Watch and Super Lawyers: Rising Stars.

Beyond her legal practice, Sarah serves as the Vice President of the Los Angeles Intellectual Property Law Association. She is also actively involved in the SoCal entrepreneurship scene and a member of the Pasadena Angels.

Sarah remains closely engaged with the scientific community, serving as an invited SBIR grant reviewer and a formal advisor and mentor to incubators and accelerators for early-stage life sciences companies. She is committed to mentoring early-career women science professionals and inventors.

**PRACTICE AREAS**
- Intellectual Property & Patent

**BAR ADMISSIONS**
- State of California
- U.S. Patent & Trademark Office
- U.S. Court of Appeals, Federal Circuit

**EDUCATION**
- J.D., University of Michigan-Ann Arbor, cum laude
  - *Editor in Chief, Michigan Telecommunications & Technology Law Review*
- Ph.D., Emory University
- B.S., Duke University, with distinction
  - James B. Rast Departmental Book Award (Comparative Organismal Biology)

---

**Notable Representations**

Patent Litigation and PTAB Practice

- *Genentech, Inc. v. Immunex Rhode Island Corp.*, 19-cv-00602 (D. Del.). Among other victories, represented Amgen in successfully defeating Genentech's attempt to enjoin the at-risk launch of Amgen's anti-cancer AVASTIN biosimilar (bevacizumab), as the district court and Federal Circuit agreed with Amgen's interpretation of the BPCIA, leading to favorable settlement.

- *Impossible Foods, Inc. v. Motif FoodWorks, Inc.*, 22-cv-00311 (D. Del.). Represented Motif in district court and PTAB in multi-patent litigation on genetic expression systems and recombinant food technology, leading to patent invalidation and favorable settlement.

- *10x Genomics, Inc. v. Vizgen, Inc.*, 22-cv-00595 (D. Del.). Represented Vizgen in multi-patent and antitrust litigation over oligo-based spatial transcriptomics cellular imaging technology, resulting in favorable settlement.

- *Natera, Inc. v. CareDx, Inc.*, 20-cv-00038 (D. Del.). Represented Natera in multi-patent infringement dispute over transplant rejection testing technologies, leading to eight-figure trial verdict.

- *SynAffix B.V. v. Hangzhou DAC Biotech Co., Ltd.*, IPR2022-01531. Represented patentee DAC in obtaining denial of institution of *inter partes* review on linker technology for antibody-drug conjugates.

- *Regeneron Pharms., Inc. v. Samsung Bioepis, Inc.*, 23-cv-00094 (N.D. W. Va.). Represented Bioepis in pending BPCIA litigation and related IPRs concerning EYLEA biosimilar (aflibercept) for the treatment of retinal diseases.

- *Sanofi-Aventis U.S. LLC v. Merck Sharp & Dohme Corp.*, 16-cv-812 (D. Del.). Represented Sanofi in Hatch-Waxman litigation over market-leading LANTUS recombinant insulin product (insulin glargine), leading to favorable settlement.

- *Sumitomo Dainippon Pharma Co. v. Emcure Pharm. Ltd.*, 15-cv-280 (D.N.J.). Represented plaintiff-patentees in multi-jurisdictional Hatch-Waxman litigation concerning atypical antipsychotic agent LATUDA (lurasidone HCl), leading to favorable settlement.

- *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 15-cv-1202 (E.D. Tex.). Represented plaintiff-patentee in infringement dispute concerning methods of treating benign prostatic hyperplasia using phosphodiesterase inhibitors, resulting in an eight-figure judgment.

Inventorship and Commercial Litigation

- *Nektar Therapeutics v. Eli Lilly & Co.*, 23-cv-03943 (N.D. Cal.). Represented Nektar in pending breach of contract dispute relating to development of an IL-2 derivative drug candidate for autoimmune disorders.

- *Gilead Tenofovir Cases*, CJC-19-005043 (Cal. Super. Ct.) and related federal cases. Represented Gilead in drug product liability litigation concerning the development of small-molecule therapies for HIV. This case, which has attracted more than 100 amici and is currently pending before the California Supreme Court, involves the question of whether a manufacturer of a non-defective product has a duty to develop, without delay, a different product that is safer for some consumers.

- *Altaire Pharms. Inc. v. Paragon BioTeck Inc.*, 17-cv-01837 (E.D.N.Y.); PGR2015-00011. Represented Altaire in inventorship litigation over alleged misappropriation of ophthalmic drug invention in defendant's patent, leading to favorable settlement. Among other victories, the Federal Circuit agreed that Altaire had Article III standing to appeal a PGR final written decision of the patent and reversed and vacated the PTAB.

- *Previvo Genetics, LLC v. Pagidas*, 16-cv-02261 (N.D. Cal.). Represented Previvo in patent inventorship dispute over novel *in vitro* fertilization technologies, leading to favorable settlement.

**Thought Leadership**

S.M. Cork *et al., A furin/MMP-14 proteolytic cascade releases a novel 40 kDa vasculostatin from tumor suppressor BAI1,* 31 Oncogene 5144–52 (2012)

S.M. Cork &amp; E.G. Van Meir, *Emerging roles for the BAI1 protein family in the regulation of phagocytosis, synaptogenesis, neurovasculature and tumor development,* 89 J. Mol. Med. 743–52 (2011)

B. Kaur, S.M. Cork, *et al. Vasculostatin inhibits intracranial glioma growth and negatively regulates in vivo angiogenesis through a CD36-dependent mechanism,* 69 Cancer Res. 1212–20 (2009)

*Michigan Telecommunications & Technology Law Review,* Editor in Chief



# Kinza Hecht, Of Counsel

With almost a decade-and-a-half of patent experience, Kinza Hecht has drafted and procured hundreds of patents for some of the world's leading technology companies. She has prosecuted for Google, AT&T, Red Hat, and Siemens, among many others. Her years of experience in patent prosecution and reexamination give her deep insight into a patent's vulnerabilities, enabling her to draft patents that deter future challenges. Kinza, a registered patent practitioner since 2008, focuses on hardware and software technologies, including mobile devices, operating system and applications software, computer peripheral devices and control methods, network security, medical devices, e-commerce, semiconductors, and telecommunications.

Kinza works with both large corporations and startups. She specializes in assisting corporations create a budget for their intellectual property needs and managing worldwide patent dockets.

Kinza holds a Bachelor's degree in Electrical Engineering from the University of Windsor, where she went on to complete her Master's coursework in the same field. She most recently attended Rutgers University School of Law - Newark.

Kinza has worked at several well-regarded firms in New York and New Jersey, including Lowenstein Sandler.

**PRACTICE AREAS**
•       Intellectual Property & Patent


**BAR ADMISSIONS**
- State of New York
- U.S. Patent & Trademark Office


**EDUCATION**
Rutgers University School of Law (Completed first year law school requirement under §520.4 of the Rules of the Court of Appeals for the Admission of Attorneys and Counselors at Law)
B.S., University of Windsor, School of Engineering, Electrical Engineering (M.S., coursework completed)

# Patrick Maloney, Of Counsel

Patrick Maloney represents clients in a range of intellectual property disputes and has significant experience representing patent owners in patent post-grant proceedings, including *inter partes* reviews (IPRs), covered business method reviews, and *ex parte* reexaminations.

Before joining Hecht Partners, Patrick spent a decade at leading post-grant litigation boutiques.  Patrick got his start in post-grant litigation in 2013, shortly after IPRs were created by the America Invents Act.  Since then, Patrick has represented clients in over 200 post-grant proceedings before the Patent Trial and Appeal Board, securing numerous wins at both the institution and final written decision stages.  Patrick has also successfully represented parties in District Court litigation and before the Federal Circuit Court of Appeals.

Along with his litigation practice, Patrick also counsels startups and small businesses looking to develop and protect their intellectual property.  Patrick previously worked in the University of Southern California's Stevens Center for Innovation, helping to evaluate, manage, and license intellectual property developed at USC.

Patrick is a registered patent attorney with a background in chemistry who has handled matters involving a range of technologies, including telecommunications, streaming media distribution, medical devices, diagnostics, circuitry, network access control, secure electronic transactions, and antenna design.

Patrick has been recognized for his extensive work in *inter partes* review.  In 2021, Patrick was ranked 9th on Managing IP's list of top lawyers for patent owners in IPRs filed in 2021.  In 2020, Patexia ranked Patrick as number 19 on its list of most-active patent owners' counsel in IPRs since 2015.

Patrick is also actively involved in the patent community.  He currently serves on the Board of Directors for the Los Angeles Intellectual Property Law Association.  Patrick is also heavily involved in the PTAB Bar Association, where he is a vice-chair on the Appeals from the PTAB Committee.  Patrick appears in webinars and panel discussions for both organizations and has authored numerous articles on recent developments in patent law.

**PRACTICE AREAS**
- Intellectual Property & Patent

**BAR ADMISSIONS**
- State of California
- United States Patent and Trademark Office

**EDUCATION**

J.D., University of California, Davis, School of Law senior editor, *Environs* Environmental Law and Policy Journal president, Jewish Law Student Association
B.S., Chemistry, University of California, Davis.

# Wen Wu, Of Counsel



Wen Wu is a Of Counsel at Hecht Partners with a focus on all aspects of intellectual property litigation. This includes patent cases, where he has represented high-profile clients in complex litigations across a wide range of technologies, including biometric authentication, nano-particles, mobile devices, pharmaceuticals (particularly Hatch-Waxman), peer-to-peer systems, financial trading software, and tissue grafting. Wen's patent experience extends to all levels of disputes, ranging from *inter partes* review at the Patent Trial and Appeal Board, extensive trial experience in federal district courts, and appeals at the Federal Circuit. Wen also represents clients extensively in high-profile trademark disputes between luxury watch brands and trailblazing cases over copyright for choreography.

Wen has previously practiced at the law firms of Alston & Bird and Pierce Bainbridge Beck Price & Hecht, and graduated *cum laude* from Fordham University School of Law. Prior to his law career, Wen was a computer programmer and holds a B.S. in Information Technology from Rochester Institute of Technology.

**PRACTICE AREAS**
- Intellectual Property & Patent

**BAR ADMISSIONS**
- State of New York
- U.S. Court of Appeals, Second Circuit
- U.S. Court of Appeals, Third Circuit
- U.S. Court of Appeals, Federal Circuit
- U.S. District Court, Southern District of New York
- U.S. District Court, Eastern District of New York
- U.S. District Court, Eastern District of Texas

**EDUCATION**
J.D., Fordham University School of Law
B.S., Rochester Institute of Technology



# Brittany L. (Brown) Sackrin, Senior Counsel

Brittany L. (Brown) Sackrin is an associate in Hecht Partner's Class Action Practice Group. Brittany earned her Bachelor of Science degree in Business Administration (Finance) at the University of Florida. Brittany then graduated near the top of her class with honors from the University of Miami School of Law, where she was an inaugural member of the school's Investor Rights Clinic through which she passionately represented investors in securities arbitration claims before FINRA.

While in law school, Brittany also interned with the U.S. Securities and Exchange Commission's trial unit in its downtown Miami office. She was a member of the University of Miami Trial Team, and was awarded a scholarships for her performance in the Litigation Skills Program and for her demonstrated academic achievement in the interrelationship between law and economics.

Before joining the firm, Brittany was an associate at one of the largest securities defense litigation law firms in the country, where she focused her practice on complex securities litigation, specifically class and derivative actions with an emphasis on securities and regulatory matters.

Brittany is a passionate advocate for plaintiffs where she focuses her practice representing plaintiffs in consumer fraud class actions. Her class action experience includes significant time spent working on privacy and data breach cases, including working closely with lead counsel on privacy cases against Meta Platforms, Inc., *In Re Meta Pixel Tax Filing Cases*, 3:22-cv-07557 (N.D. Cal.), and Google, LLC, *Smith v. Google, LLC*, 5:23-cv-03527 (N.D. Cal.). Brittany is also involved in representing parents and children in cases alleging privacy violations against educational technology companies.

Brittany's data breach experience spans a variety of different industries and includes *Geleng v. Independent Living Systems, LLC*, No. 23-cv-21060-KMW (S.D. Fla.), *In re Shields Health Care Grp., Inc.*, 1:22-cv-10901 (D. Mass.), *Fleet v. Southern Orthopedic Associates, P.S.C.*, 5:22-cv-00109 (W.D. Ky.), *Tate v. EyeMed Vision Care, LLC*, 1:21-cv-00036 (S.D. Ohio), *Hollandsworth v. Highmark Health*, 2:23-cv-00376 (W.D. Penn.), *Skurauskis v. NationsBenefits Holdings, LLC*, 0:23-cv-60830 (S.D. Fla.), *In re: Canon Data Breach Litig.*, 1:20-cv-06239 (E.D.N.Y.), *In re Waste Mgmt. Data Breach Litig.*, 1:21-cv-06199 (S.D.N.Y.), *Bowen v. Paxton Media Grp., LLC*, 5:21-cv-143 (W.D. Ky.), *In re Morgan Stanley Data Sec. Litig.*, 1:20-cv-05014 (S.D.N.Y.), and *In re Lakeview Loan Servicing Litig.*, Case No. 1:22-cv-20955 (S.D. Fla.), among others.

Brittany also has significant experience litigating class action cases involving heavy metals and other contaminants in consumer products, including working closely with lead counsel in a case relating to heavy metals in baby food, *In re Nurture Baby Food Litig.*, 1:21-cv-01217 (S.D.N.Y.).

Through her work representing plaintiffs in class actions, Brittany has honed her skills in researching and drafting briefs, vetting and evaluating plaintiffs and class representatives, and engaging in and guiding clients through the discovery process, as well as working collaboratively and in conjunction with all plaintiffs' counsel.

She was appointed to the Executive Committee in *Geleng v. Independent Living Systems, LLC*, 23-cv-21060-KMW (S.D. Fla.) through which she led the Defensive Discovery Subcommittee.

Brittany is a zealous advocate for those seeking justice and brings her attention to detail and expert legal research and writing skills to all her cases.

**PRACTICE AREAS**

•      Consumer and Securities Class Action Litigation

**BAR ADMISSIONS**

- State of Florida

**EDUCATION**

J.D., University of Miami Law School
B.S. University of Florida, Business Administration - Finance

# J. Tanner Murphy, Senior Associate



Tanner is a senior associate at Hecht Partners. His practice primarily focuses on complex intellectual property and commercial disputes. He has robust experience representing and defending clients in federal and state courts through all phases of litigation including pre-suit analysis, discovery, motion practice, and trial. Tanner strives to deliver results that align with his client's business objectives. Tanner graduated *cum laude* from the University of Miami with a B.A. in Economics. He graduated from Suffolk University Law School *with distinction.*

His pro bono work includes representing indigent criminal defendants in Massachusetts state courts.

**PRACTICE AREAS**
- Intellectual Property
- General Litigation

**BAR ADMISSIONS**
- State of Massachusetts

**EDUCATION**
J.D., Suffolk University Law School
B.A., University of Miami



# Justin Alvarez-Herman, Associate

Justin Alvarez-Herman is an Associate in Hecht Partner's Class Action Practice Group, resident in the New York Office. Since joining HP, Justin's practice has primarily focused on class action litigation with an emphasis on data privacy, cybersecurity, and consumer protection. Justin earned his bachelor's degree in political science from the State University of New York at New Paltz, and his J.D. from Brooklyn Law School, where he was awarded multiple scholarships for his academic achievements.

Prior to joining the firm, Justin worked at a boutique litigation firm where his practice encompassed class actions, consumer protection, civil rights, municipal representation, and commercial litigation. His experience includes work on several wrongful death lawsuits concerning the Fisher-Price Rock 'n Play Sleeper; a class action against one of New York State's largest counties alleging discrimination in its tax assessment process; matters involving survivors of childhood sexual assault pursuing justice under New York's Child Victims Act; and a lawsuit against a New York university alleging violations of Title IX and state law.

Justin earned his bachelor's degree in political science from the State University of New York at New Paltz and his J.D. from Brooklyn Law School, where he was awarded multiple scholarships in recognition of his academic achievements.

Outside of his legal practice, Justin's interests include political theory, astronomy, and sports.

**PRACTICE AREAS**
- Class Action Litigation

**BAR ADMISSIONS**
- State of New York
- U.S. District Court Southern District of New York.

**EDUCATION**
J.D., Brooklyn Law School
B.S. State University of New York at New Paltz

# Krista K. Freier, Associate



Krista is an associate in the Class Action Practice Group and has extensive experience in complex litigation, products liability, and consumer protection cases. Krista is a member of the Leadership Committee in *In re Allianz Life Insurance Company of North America Data Incident Litigation*, case number 0:25-cv-2777-KMM-JFD (D. Minn.).

Krista is a 2009 graduate of Hamline University School of Law where she was a Student Attorney in Hamline's Child Advocacy Clinic and interned with the Honorable Gregory G. Galler in Minnesota State Court. While attending law school, Krista clerked with the Hennepin County Attorney's Office in the divisions of Juvenile Prosecution-Victim Witness and Child Support. Previously, Krista was an associate at a law firm practicing in class action litigation and worked for the University of Minnesota and a local nonprofit organization.

**PRACTICE AREAS**
- Class Action Litigation

**BAR ADMISSIONS**
- State of Minnesota
- U.S. District Court Northern District of Illinois

**EDUCATION**
J.D., Hamline University
B.A. Concordia College



# Catherine A. Peterson, Associate

Catherine Peterson practices in Hecht Partner's Class Action Practice Group. Catherine is an experienced class action lawyer and has represented victims in a wide variety of consumer class actions. Prior to joining HP, in addition to her experience as a class action lawyer, she practiced immigration law, representing clients before the Immigration Court, United States Citizenship and Immigration Services, and Federal Court. She also served on the staffs of U.S. Senator Byron Dorgan, U.S. Senator Kent Conrad, and U.S. Senator Heidi Heitkamp. She has experience on political campaigns and assisting with political compliance matters. Catherine has also served over 15 years in the Army National Guard.

**PRACTICE AREAS**

- Class Action Litigation
- Product Liability
- Consumer Fraud Litigation

**Professional Associations**

- American Legion
- American Legion Auxiliary
- American Immigration Lawyers Association
- 

**BAR ADMISSIONS**

- State of Minnesota
- State of Virginia
- 

**EDUCATION**

J.D., University of North Dakota School of Law in Grand Forks
Texas A&M University



# Tiffany Wong, Associate

Tiffany Wong is an Associate in HP's Class Action Practice Group and is based in HP's New York office.

Tiffany's practice is primarily focused on consumer protection and data privacy litigation across a wide variety of industries. She is a graduate of Brooklyn Law School, where she was awarded scholarships for her academic achievements, multiple CALI Excellence for the Future Awards, and the Robert A. Morse Memorial Prize.

Prior to joining the firm, Tiffany was an associate at an intellectual property litigation firm where she was focused on copyright litigation, particularly in representing small businesses and individuals against large corporations. As a daughter of immigrants, she is also passionate about both corporate and humanitarian immigration law.

**PRACTICE AREAS**
- Class Action Litigation

**BAR ADMISSIONS**
- State of New York
- U.S. District Court Southern District of New York.
- U.S. District Court Eastern District of New York.

**EDUCATION**
J.D., Brooklyn Law School
B.S. Fashion Institute of Design and Merchandising, Los Angeles, California

# EXHIBIT 14

# BURSOR & FISHER

P.A.

www.bursor.com

**50 MAIN STREET**
**WHITE PLAINS, NY 10606**

**1990 N. CALIFORNIA BLVD.**
**WALNUT CREEK, CA 94596**

**1330 AVE. OF THE AMERICAS**
**NEW YORK, NY 10019**

**701 BRICKELL AVENUE**
**MIAMI, FL 33131**

## FIRM RESUME

With offices in Florida, New York, and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won multi-million-dollar verdicts or recoveries in six of six class action jury trials since 2008. Our most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act. During the pendency of the defendant's appeal, the case settled for $75.6 million, the largest settlement in the history of the Telephone Consumer Protection Act.

In August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel, we won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Honda, Verizon Wireless, AT&T Wireless, Sprint, Haier America, and Michaels Stores as well as purchasers of Avacor™, Hydroxycut, and Sensa™ products. Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

1. *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

2. *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

3. *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

4. *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

5. *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012) to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

6. *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012) to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

7. *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012) to represent a certified nationwide class of purchasers of Sensa weight loss products,

8. *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers,

9. *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

10. *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

11. *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

12. *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015) to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

13. *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015) to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

14. *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

15. *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015) to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards,

16. *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products,

17. *In re Trader Joe's Tuna Litigation* (C.D. Cal. December 21, 2016) to represent purchaser of allegedly underfilled Trader Joe's canned tuna.

18. *In re Welspun Litigation* (S.D.N.Y. January 26, 2017) to represent a proposed nationwide class of purchasers of Welspun Egyptian cotton bedding products,

19. *Retta v. Millennium Products, Inc.* (C.D. Cal. January 31, 2017) to represent a certified nationwide class of Millennium kombucha beverages,

20. *Moeller v. American Media, Inc.*, (E.D. Mich. June 8, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

21. *Hart v. BHH, LLC* (S.D.N.Y. July 7, 2017) to represent a nationwide class of purchasers of Bell & Howell ultrasonic pest repellers,

22. *McMillion v. Rash Curtis & Associates* (N.D. Cal. September 6, 2017) to represent a certified nationwide class of individuals who received calls from Rash Curtis & Associates,

23. *Lucero v. Solarcity Corp.* (N.D. Cal. September 15, 2017) to represent a certified nationwide class of individuals who received telemarketing calls from Solarcity Corp.,

24. *Taylor v. Trusted Media Brands, Inc.* (S.D.N.Y. Oct. 17, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

25. *Gasser v. Kiss My Face, LLC* (N.D. Cal. Oct. 23, 2017) to represent a proposed nationwide class of purchasers of cosmetic products,

26. *Gastelum v. Frontier California Inc.* (S.F. Superior Court February 21, 2018) to represent a certified California class of Frontier landline telephone customers who were charged late fees,

27. *Williams v. Facebook, Inc.* (N.D. Cal. June 26, 2018) to represent a proposed nationwide class of Facebook users for alleged privacy violations,

28. *Ruppel v. Consumers Union of United States, Inc.* (S.D.N.Y. July 27, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

29. *Bayol v. Health-Ade* (N.D. Cal. August 23, 2018) to represent a proposed nationwide class of Health-Ade kombucha beverage purchasers,

30. *West v. California Service Bureau* (N.D. Cal. September 12, 2018) to represent a certified nationwide class of individuals who received calls from California Service Bureau,

31. *Gregorio v. Premier Nutrition Corporation* (S.D.N.Y. Sept. 14, 2018) to represent a nationwide class of purchasers of protein shake products,

32. *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast* (S.D.N.Y. Oct. 24, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

33. *Bakov v. Consolidated World Travel Inc. d/b/a Holiday Cruise Line* (N.D. Ill. Mar. 21, 2019) to represent a certified class of individuals who received calls from Holiday Cruise Line,

34. *Martinelli v. Johnson & Johnson* (E.D. Cal. March 29, 2019) to represent a certified class of purchasers of Benecol spreads labeled with the representation "No Trans Fat,"

35. *Edwards v. Hearst Communications, Inc.* (S.D.N.Y. April 24, 2019) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

36. *Galvan v. Smashburger* (C.D. Cal. June 25, 2019) to represent a proposed class of purchasers of Smashburger's "Triple Double" burger,

37. *Kokoszki v. Playboy Enterprises, Inc.* (E.D. Mich. Feb. 7, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

38. *Russett v. The Northwestern Mutual Life Insurance Co.* (S.D.N.Y. May 28, 2020) to represent a class of insurance policyholders that were allegedly charged unlawful paper billing fees,

39. *In re: Metformin Marketing and Sales Practices Litigation* (D.N.J. June 3, 2020) to represent a proposed nationwide class of purchasers of generic diabetes medications that were contaminated with a cancer-causing carcinogen,

40. *Hill v. Spirit Airlines, Inc.* (S.D. Fla. July 21, 2020) to represent a proposed nationwide class of passengers whose flights were cancelled by Spirit Airlines due to the novel coronavirus, COVID-19, and whose tickets were not refunded,

41. *Kramer v. Alterra Mountain Co.* (D. Colo. July 31, 2020) to represent a proposed nationwide class of purchasers to recoup the unused value of their Ikon ski passes after Alterra suspended operations at its ski resorts due to the novel coronavirus, COVID-19,

42. *Qureshi v. American University* (D.D.C. July 31, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by American University due to the novel coronavirus, COVID-19,

43. *Hufford v. Maxim Inc.* (S.D.N.Y. Aug. 13, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

44. *Desai v. Carnegie Mellon University* (W.D. Pa. Aug. 26, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Carnegie Mellon University due to the novel coronavirus, COVID-19,

45. *Heigl v. Waste Management of New York, LLC* (E.D.N.Y. Aug. 27, 2020) to represent a class of waste collection customers that were allegedly charged unlawful paper billing fees,

46. *Stellato v. Hofstra University* (E.D.N.Y. Sept. 18, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Hofstra University due to the novel coronavirus, COVID-19,

47. *Kaupelis v. Harbor Freight Tools USA, Inc.* (C.D. Cal. Sept. 23, 2020), to represent consumers who purchased defective chainsaws,

48. *Soo v. Lorex Corporation* (N.D. Cal. Sept. 23, 2020), to represent consumers whose security cameras were intentionally rendered non-functional by manufacturer,

49. *Miranda v. Golden Entertainment (NV), Inc.* (D. Nev. Dec. 17, 2020), to represent consumers and employees whose personal information was exposed in a data breach,

50. *Benbow v. SmileDirectClub, Inc.* (Cir. Ct. Cook Cnty. Feb. 4, 2021), to represent a certified nationwide class of individuals who received text messages from SmileDirectClub, in alleged violation of the Telephone Consumer Protection Act,

51. *Suren v. DSV Solutions, LLC* (Cir. Ct. DuPage Cnty. Apr. 8, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

52. *De Lacour v. Colgate-Palmolive Co.* (S.D.N.Y. Apr. 23, 2021), to represent a certified class of consumers who purchased allegedly "natural" Tom's of Maine products,

53. *Wright v. Southern New Hampshire University* (D.N.H. Apr. 26, 2021), to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Southern New Hampshire University due to the novel coronavirus, COVID-19,

54. *Sahlin v. Hospital Housekeeping Systems, LLC* (Cir. Ct. Williamson Cnty. May 21, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

55. *Landreth v. Verano Holdings LLC, et al.* (Cir. Ct. Cook Cnty. June 2, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act.

56. *Rocchio v. Rutgers, The State University of New Jersey*, (Sup. Ct., Middlesex Cnty. October 27, 201), to represent a certified nationwide class of students for fee refunds after their classes were moved online by Rutgers due to the novel coronavirus, COVID-19,

57. *Malone v. Western Digital Corp.*, (N.D. Cal. Dec. 22, 2021), to represent a class of consumers who purchased hard drives that were allegedly deceptively advertised,

58. *Jenkins v. Charles Industries, LLC*, (Cir. Ct. DuPage Cnty. Dec. 21, 2021) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

59. *Frederick v. Examsoft Worldwide, Inc.*, (Cir. Ct. DuPage Cnty. Jan. 6, 2022) to represent a certified class of exam takers who used virtual exam proctoring software, in alleged violation of the Illinois Biometric Information Privacy Act,

60. *Isaacson v. Liqui-Box Flexibles, LLC, et al.*, (Cir. Ct. Will Cnty. Jan. 18, 2022) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

61. *Goldstein et al. v. Henkel Corp.*, (D. Conn. Mar. 3, 2022) to represent a proposed class of purchasers of Right Guard-brand antiperspirants that were allegedly contaminated with benzene,

62. *McCall v. Hercules Corp.*, (N.Y. Sup. Ct., Westchester Cnty. Mar. 14, 2022) to represent a certified class of who laundry card purchasers who were allegedly subjected to deceptive practices by being denied cash refunds,

63. *Lewis v. Trident Manufacturing, Inc.*, (Cir. Ct. Kane Cnty. Mar. 16, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

64. *Croft v. Spinx Games Limited, et al.*, (W.D. Wash. Mar. 31, 2022) to represent a certified class of Washington residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Washington law,

65. *Fischer v. Instant Checkmate LLC*, (N.D. Ill. Mar. 31, 2022) to represent a certified class of Illinois residents whose identities were allegedly used without their consent in alleged violation of the Illinois Right of Publicity Act,

66. *Rivera v. Google LLC*, (Cir. Ct. Cook Cnty. Apr. 25, 2022) to represent a certified class of Illinois residents who appeared in a photograph in Google Photos, in alleged violation of the Illinois Biometric Information Privacy Act,

67. *Loftus v. Outside Integrated Media, LLC*, (E.D. Mich. May 5, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

68. *D'Amario v. The University of Tampa*, (S.D.N.Y. June 3, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by The University of Tampa due to the novel coronavirus, COVID-19,

69. *Fittipaldi v. Monmouth University*, (D.N.J. Sept. 22, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Monmouth University due to the novel coronavirus, COVID-19,

70. *Armstead v. VGW Malta Ltd. et al.* (Cir. Ct. Henderson Cnty. Oct. 3, 2022) to present a certified class of Kentucky residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Kentucky law,

71. *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, (N.D. Ill. Oct. 26, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

72. *Delcid et al. v. TCP HOT Acquisitions LLC et al.* (S.D.N.Y. Oct. 28, 2022) to represent a certified nationwide class of purchasers of Sure and Brut-brand antiperspirants that were allegedly contaminated with benzene,

73. *Kain v. The Economist Newspaper NA, Inc.* (E.D. Mich. Dec. 15, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

74. *Strano v. Kiplinger Washington Editors, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

75. *Moeller v. The Week Publications, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

76. *Ambrose v. Boston Globe Media Partners, LLC* (D. Mass. May 25, 2023) to represent a nationwide class of newspaper subscribers who were also Facebook users under the Video Privacy Protection Act,

77. *In re: Apple Data Privacy Litigation*, (N.D. Cal. July 5, 2023) to represent a putative nationwide class of all persons who turned off permissions for data tracking and whose mobile app activity was still tracked on iPhone mobile devices,

78. *Young v. Military Advantage, Inc. d/b/a Military.com* (Cir. Ct. DuPage Cnty. July 26, 2023) to represent a nationwide class of website subscribers who were also Facebook users under the Video Privacy Protection Act,

79. *Whiting v. Yellow Social Interactive Ltd.* (Cir. Ct. Henderson Cnty. Aug. 15, 2023) to represent a certified class of Kentucky residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Kentucky law,

80. *Kotila v. Charter Financial Publishing Network, Inc.* (W.D. Mich. Feb. 21, 2024) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

81. *Schreiber v. Mayo Foundation for Medical Education and Research* (W.D. Mich. Feb. 21, 2024) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

BURSOR&FISHER
P.A.

82. *Norcross v. Tishman Speyer Properties, et al.* (S.D.N.Y. May 17, 2024) to represent a class of online ticket purchasers under New York Arts & Cultural Affairs Law § 25.07(4).

## SCOTT A. BURSOR

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in six of six civil jury trials since 2008.  Mr. Bursor's most recent victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector for violations of the Telephone Consumer Protection Act (TCPA).

In *Ayyad v. Sprint Spectrum L.P.* (2013), where Mr. Bursor served as lead trial counsel, the jury returned a verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor.  The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict.  Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury.  Mr. Bursor's perfect record of six wins in six class action jury trials, with recoveries ranging from $21 million to $299 million, is unmatched by any other lawyer.  Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996.  He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif.  Prior to starting his own practice, Mr. Bursor was a litigation associate at a large New York based law firm where he represented telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second, Third, Fourth, Sixth, Ninth and Eleventh Circuits, and the bars of the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central, Southern and Eastern Districts of California, the Southern and Middle Districts of Florida, and the Eastern District of Michigan.

### *Representative Cases*

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified.  Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans.  Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified).  These settlements required Verizon and Sprint to open their wireless networks to

third-party devices and applications.  These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation.  Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class.  Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert.  This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members.  In December 2016, after more than 13 years of litigation, the case was settled for $304 million, including $79 million in cash payments plus $225 million in debt cancellation.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims.  In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.*  Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system.  In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case.  Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006.  This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*.  After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested

motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement.  The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, included a $20 million cash payment to provide refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and an injunction that reduced other late fee charges by $18.6 million.

## L. TIMOTHY FISHER

L. Timothy Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.

Mr. Fisher has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud. With his partner Scott A. Bursor, Mr. Fisher has tried five class action jury trials, all of which produced successful results. In *Thomas v. Global Vision Products*, Mr. Fisher obtained a jury award of $50,024,611 — the largest class action award in California in 2009 and the second-largest jury award of any kind. In 2019, Mr. Fisher served as trial counsel with Mr. Bursor in *Perez. v. Rash Curtis & Associates*, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.

Mr. Fisher was admitted to the State Bar of California in 1997. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit, the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Northern District of Illinois, the Eastern District of Michigan, and the Eastern District of Missouri. Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004.  In 2010, he contributed jury instructions, a verdict form and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010). In January 2014, Chief Judge Claudia Wilken of the United States District Court for the Northern District of California appointed Mr. Fisher to a four-year term as a member of the Court's Standing Committee on Professional Conduct.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first-year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science.  Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council."  He is also a member of Phi Beta Kappa.

BURSOR&FISHER
P.A.

## *Representative Cases*

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court).  Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor.  The case lasted more than seven years and involved two trials.  The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000.  The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

*In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court).  Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems.  Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions.  The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

*In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission).  In separate cases that are a part of the same coordinated litigation as the Handset Locking Actions, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million.  In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

## *Selected Published Decisions*

*Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 30, 2016) (certifying 10-jurisdiction class of purchasers of cold remedies, denying motion for summary judgment, and denying motions to exclude plaintiff's expert witnesses).

*Salazar v. Honest Tea, Inc.*, 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015) (denying motion for summary judgment).

*Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015) (certifying California class of purchasers of refrigerators that were mislabeled as Energy Star qualified).

*Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252 (N.D. Cal. 2015) (denying motion to dismiss claims alleging unlawful late fees under California Civil Code § 1671).

*Forcellati v. Hyland's, Inc.*, 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) (denying motion for summary judgment in case alleging false advertising of homeopathic cold and flu remedies for children).

*Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) (denying motion to transfer venue pursuant to a forum selection clause).

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of purchasers of homeopathic cold and flu remedies for children).

*Hendricks v. StarKist Co.*, 30 F.Supp.3d 917 (N.D. Cal. 2014) (denying motion to dismiss in case alleging underfilling of 5-ounce cans of tuna).

*Dei Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. October 25, 2013) (denying motion to dismiss in case alleging that certain KitchenAid refrigerators were misrepresented as Energy Star qualified).

*Forcellati v. Hyland's Inc.*, 876 F.Supp.2d 1155 (C.D. Cal. 2012) (denying motion to dismiss complaint alleging false advertising regarding homeopathic cold and flu remedies for children).

*Clerkin v. MyLife.com*, 2011 WL 3809912 (N.D. Cal. August 29, 2011) (denying defendants' motion to dismiss in case alleging false and misleading advertising by a social networking company).

*In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010) (affirming order approving $21 million class action settlement).

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007) (affirming order denying motion to compel arbitration).

### ***Selected Class Settlements***

*Melgar v. Zicam* (Eastern District of California) - $16 million class settlement of claims alleging cold medicine was ineffective.

*Gastelum v. Frontier California Inc.* (San Francisco Superior Court) - $10.9 million class action settlement of claims alleging that a residential landline service provider charged unlawful late fees.

*West v. California Service Bureau, Inc.* (Northern District of California) - $4.1 million class settlement of claims under the Telephone Consumer Protection Act.

*Gregorio v. Premier Nutrition Corp.* (Southern District of New York) - $9 million class settlement of false advertising claims against protein shake manufacturer.

*Morris v. SolarCity Corp.* (Northern District of California) - $15 million class settlement of claims under the Telephone Consumer Protection Act.

*Retta v. Millennium Products, Inc.* (Central District of California) - $8.25 million settlement to resolve claims of bottled tea purchasers for alleged false advertising.

*Forcellati v. Hyland's* (Central District of California) – nationwide class action settlement providing full refunds to purchasers of homeopathic cold and flu remedies for children.

*Dei Rossi v. Whirlpool* (Eastern District of California) – class action settlement providing $55 cash payments to purchasers of certain KitchenAid refrigerators that allegedly mislabeled as Energy Star qualified.

*In Re NVIDIA GTX 970 Graphics Chip Litigation* (Northern District of California) - $4.5 million class action settlement of claims alleging that a computer graphics card was sold with false and

misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.* (Northern District of California) – $12 million class action settlement of claims alleging that 5-ounce cans of tuna were underfilled.

*In re Zakskorn v. American Honda Motor Co.* Honda (Eastern District of California) – nationwide settlement providing for brake pad replacement and reimbursement of out-of-pocket expenses in case alleging defective brake pads on Honda Civic vehicles manufactured between 2006 and 2011.

*Correa v. Sensa Products, LLC* (Los Angeles Superior Court) - $9 million settlement on behalf of purchasers of the Sensa weight loss product.

*In re Pacific Bell Late Fee Litigation* (Contra Costa County Superior Court) - $38.6 million settlement on behalf of Pac Bell customers who paid an allegedly unlawful late payment charge.

*In re Haier Freezer Consumer Litigation* (Northern District of California) - $4 million settlement, which provided for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - $30 million settlement on behalf of a class of purchasers of a hair loss remedy.

*Guyette v. Viacom, Inc.* (Alameda County Superior Court) - $13 million settlement for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.

## JOSEPH I. MARCHESE

Joseph I. Marchese is a Partner with Bursor & Fisher, P.A.  Joe focuses his practice on consumer class actions, employment law disputes, and commercial litigation.  He has represented corporate and individual clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Joe has diverse experience in litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, privacy violations, unlawful and junk fees, data breach claims, and violations of the Telephone Consumer Protection Act and Servicemembers Civil Relief Act.

Joe also has significant experience in multidistrict litigation proceedings.  Recently, he served on the Plaintiffs' Executive Committee in *In Re:  Blue Buffalo Company, Ltd. Marketing And Sales Practices Litigation*, MDL No. 2562, which resulted in a $32 million consumer class settlement.  Currently, he serves on the Plaintiffs' Steering Committee for Economic Reimbursement in *In Re: Valsartan Products Liability Litigation*, MDL. No. 2875.

Joe is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York,

**BURSOR&FISHER**
P.A.

and the Eastern District of Michigan, as well as the United States Courts of Appeals for the First, Second and Sixth Circuits.

Joe graduated from Boston University School of Law in 2002 where he was a member of The Public Interest Law Journal.  In 1998, Joe graduated with honors from Bucknell University.

### *Selected Published Decisions:*

*Farwell v. Google, LLC*, 595 F. Supp. 3d 702 (C.D. Ill. Mar. 31, 2022), denying defendant's motion to dismiss BIPA claims brought on behalf of Illinois students using Google's Workspace for Education platform.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. Sept. 7, 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

*Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. June 17, 2016), denying publisher's motion to dismiss its subscriber's allegations of state privacy law violations in putative class action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), denying retailer's motion to dismiss its customers' state law consumer protection and privacy claims in data breach putative class action.

### *Selected Class Settlements:*

*Schreiber v. Mayo Foundation*, Case No. 22-cv-0188-HYJ-RSK (W.D. Mich. 2024) – final approval granted for $52.5 million class settlement to resolve claims of periodical subscribers for alleged statutory privacy violations.

*Edwards v. Mid-Hudson Valley Federal Credit Union*, Case No. 22-cv-00562-TJM-CFH (N.D.N.Y. 2023) – final approval granted for $2.2 million class settlement to resolve claims alleging unlawfully charged overdraft fees on accounts with sufficient funds.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Marquez v. Google LLC*, Case No. 2021-CH-1460 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $100 million class settlement to resolve alleged BIPA violations of Illinois residents appearing on the Google Photos platform.

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

In *re Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB (S.D.N.Y. 2018) – final approval granted for $47 million class settlement to resolve false advertising claims of purchasers of combination grass seed product.

*In Re:  Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) – final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*Rodriguez v. Citimortgage, Inc.*, Case No. 11-cv-4718-PGG (S.D.N.Y. 2015) – final approval granted for $38 million class settlement to resolve claims of military servicemembers for alleged foreclosure violations of the Servicemembers Civil Relief Act, where each class member was entitled to $116,785 plus lost equity in the foreclosed property and interest thereon.

*O'Brien v. LG Electronics USA, Inc., et al.*, Case No. 10-cv-3733-DMC (D.N.J. 2011) – final approval granted for $23 million class settlement to resolve claims of Energy Star refrigerator purchasers for alleged false advertising of the appliances' Energy Star qualification.

## SARAH N. WESTCOT

Sarah N. Westcot is the Managing Partner of Bursor & Fisher's Miami office. She focuses her practice on consumer class actions, complex business litigation, and mass torts.

She has represented clients in a wide array of civil litigation, and has substantial trial and appellate experience.  Sarah served as trial counsel in *Ayyad v. Sprint Spectrum L.P.*, where Bursor & Fisher won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Sarah also has significant experience in high-profile, multi-district litigations.  She currently serves on the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924 (S.D. Florida).  She also serves on the Plaintiffs' Executive Committee in *In re Apple Inc. App Store Simulated Casino-Style Games Litigation,* MDL No. 2985 (N.D. Cal.) and *In Re: Google Play Store Simulated Casino-Style Games Litigation*, MDL No. 3001 (N.D. Cal.).

BURSOR&FISHER
P.A.

Sarah is admitted to the State Bars of California and Florida, and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the United States District Courts for the Southern and Middle Districts of Florida, and the bars of the United States Courts of Appeals for the Second, Eighth, and Ninth Circuits.

Sarah received her Juris Doctor from the University of Notre Dame Law School in 2009. During law school, she was a law clerk with the Cook County State's Attorney's Office in Chicago and the Santa Clara County District Attorney's Office in San Jose, CA, gaining early trial experience in both roles. She graduated with honors from the University of Florida in 2005.

Sarah is a member of The National Trial Lawyers Top 100 Civil Plaintiff Lawyers, and was selected to The National Trial Lawyers Top 40 Under 40 Civil Plaintiff Lawyers for 2022.

## PHILIP L. FRAIETTA

Philip L. Fraietta is the Managing Partner of Bursor & Fisher, P.A.'s White Plains office. Phil focuses his practice on data privacy, complex business litigation, and consumer class actions. Phil has been named a "Rising Star" in the New York Metro Area by Super Lawyers® every year since 2019.

Phil has significant experience in litigating consumer class actions, particularly those involving privacy claims under statutes such as the Michigan Preservation of Personal Privacy Act, the Illinois Biometric Information Privacy Act, and Right of Publicity statutes. Since 2016, Phil has recovered over $100 million for class members in privacy class action settlements. In addition to privacy claims, Phil has significant experience in litigating and settling class action claims involving false or misleading advertising.

Phil is admitted to the State Bars of New York, New Jersey, Illinois, Michigan, and California, the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Western District of New York, the Northern District of New York, the District of New Jersey, the Eastern District of Michigan, the Western District of Michigan, the Northern District of Illinois, the Central District of Illinois, and the United States Court of Appeals for the Second, Third, and Ninth Circuits. Phil was a Summer Associate with Bursor & Fisher prior to joining the firm.

Phil received his Juris Doctor from Fordham University School of Law in 2014, graduating cum laude. During law school, Phil served as an Articles & Notes Editor for the Fordham Law Review, and published two articles. In 2011, Phil graduated cum laude from Fordham University with a B.A. in Economics.

### *Selected Published Decisions:*

*Garner v. Me-TV National Limited Partnership*, 132 F.4th 1022 (7th Cir. Mar. 28, 2025), reversing grant of motion to dismiss under federal Video Privacy Protection Act and specifying standard for being a "consumer" under the Act.

*Jancik v. WebMD LLC*, 2025 WL 560705 (N.D. Ga. Feb 20, 2025), certifying the first ever contested class under the federal Video Privacy Protection Act.

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), certifying class of Illinois residents for alleged violations of Illinois' Right of Publicity Act by background reporting website.

*Kolebuck-Utz v. Whitepages, Inc.*, 2021 WL 157219 (W.D. Wash. Apr. 22, 2021), denying defendant's motion to dismiss for alleged violations of Ohio's Right to Publicity Law.

*Porter v. NBTY, Inc.*, 2019 WL 5694312 (N.D. Ill. Nov. 4, 2019), denying supplement manufacturer's motion for summary judgment on consumers' allegations of false advertising relating to whey protein content.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

### *Selected Class Settlements:*

*Ramos v. ZoomInfo Technologies, LLC*, Case No. 21-cv-02032-CPK (N.D. Ill. 2024) – final approval granted for $29.5 million class settlement to resolve claims for alleged statutory right of publicity violations.

*Awad v. AMC Entertainment Holdings, Inc.*, Index No. 607322/2024 (Sup. Ct. Nassau Cnty. 2024) – final approval granted for $12.3 million class settlement to resolve claims for alleged New York ticket fee claims.

*Schreiber v. Mayo Foundation for Medical Education and Research*, Case No. 22-cv-00188-HYJ (W.D. Mich. 2024) – final approval granted for $52.5 million class settlement to resolve claims of newsletter subscribers for alleged statutory privacy violations.

*Fischer v. Instant Checkmate LLC*, Case No. 19-cv-04892-MSS (N.D. Ill. 2024) – final approval granted for $10.1 million class settlement to resolve claims for alleged statutory right of publicity violations.

*Young v. Military Advantage, Inc.*, Case No. 2023LA000535 (Cir. Ct. DuPage Cnty. 2023) – final approval granted for $7.35 million class settlement to resolve claims of newsletter subscribers for alleged federal Video Privacy Protection Act claims.

*Rivera v. Google LLC*, Case No. 2021-CH-1460 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $100 million class settlement to resolve alleged BIPA violations of Illinois residents appearing in photos on the Google Photos platform.

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

BURSOR&FISHER
P.A.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2021) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

## **NEAL J. DECKANT**

Neal J. Deckant is a Partner with Bursor & Fisher, P.A., where he serves as the firm's Head of Information & e-Discovery. Neal focuses his practice on complex business litigation and consumer class actions. Prior to joining Bursor & Fisher, Neal counseled low-income homeowners facing foreclosure in East Boston.

Neal is admitted to the State Bars of California and New York, and is a member of the bars of the United States District Court for the Northern District of California, the United States District Court for the Eastern District of California, the United States District Court for the Central District of California, the United States District Court for the Southern District of California, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, and the bars of the United States Courts of Appeals for the Second and Ninth Circuits.

Neal received his Juris Doctor from Boston University School of Law in 2011, graduating cum laude with two Dean's Awards. During law school, Neal served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms, both of which were cited by the New York Court of Appeals, the highest court in the state. Neal was also awarded Best Oral Argument in his moot court section, and he served as a Research Assistant for his Securities Regulation professor. Neal has also been honored as a 2014, 2015, 2016, and 2017 Super Lawyers Rising Star. In 2007, Neal graduated with Honors from Brown University with a dual major in East Asian Studies and Philosophy.

## *Selected Published Decisions:*

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (N.D. Cal. Mar. 29, 2019), granting class certification of false advertising and other claims brought by purchasers of Benecol spreads labeled with the representation "No Trans Fats."

*Dzielak v. Whirlpool Corp.*, 2017 WL 6513347 (D.N.J. Dec. 20, 2017), granting class certification of consumer protection claims brought by purchasers of Maytag Centennial washing machines marked with the "Energy Star" logo.

*Duran v. Obesity Research Institute*, LLC, 204 Cal. Rptr. 3d 896 (Cal. Ct. App. 2016), reversing and remanding final approval of a class action settlement on appeal, regarding allegedly mislabeled dietary supplements, in connection with a meritorious objection.

*Marchuk v. Faruqi & Faruqi, LLP*, et al., 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*In Re NVIDIA GTX 970 Graphics Chip Litigation*, Case No. 15-cv-00760-PJH (N.D. Cal. Dec. 7, 2016) – final approval granted for $4.5 million class action settlement to resolve claims that a computer graphics card was allegedly sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) – final approval granted for $12 million class action settlement to resolve claims that 5-ounce cans of tuna were allegedly underfilled.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – class action claims resolved for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy, following claims that its olive oil was allegedly sold with false and misleading representations.

### *Selected Publications:*

Neal Deckant, *X. Reforms of Collateralized Debt Obligations: Enforcement, Accounting and Regulatory Proposals*, 29 Rev. Banking & Fin. L. 79 (2009) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014)).

Neal Deckant, *Criticisms of Collateralized Debt Obligations in the Wake of the Goldman Sachs Scandal*, 30 Rev. Banking & Fin. L. 407 (2010) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014); *Lyon Village Venetia, LLC v. CSE Mortgage LLC*, 2016 WL 476694, at *1 n.1 (Md. Ct. Spec. App. Feb. 4, 2016); Ivan Ascher, Portfolio

Society: On the Capitalist Mode of Prediction, at 141, 153, 175 (Zone Books / The MIT Press 2016); Devon J. Steinmeyer, *Does State National Bank of Big Spring v. Geithner Stand a Fighting Chance?*, 89 Chi.-Kent. L. Rev. 471, 473 n.13 (2014)).

## **YITZCHAK KOPEL**

Yitzchak Kopel is a Partner with Bursor & Fisher, P.A. Yitz focuses his practice on consumer class actions and complex business litigation.  He has represented corporate and individual clients before federal and state courts, as well as in arbitration proceedings.

Yitz has substantial experience in successfully litigating and resolving consumer class actions involving claims of consumer fraud, data breaches, and violations of the telephone consumer protection act.  Since 2014, Yitz has obtained class certification on behalf of his clients five times, three of which were certified as nationwide class actions.  Bursor & Fisher was appointed as class counsel to represent the certified classes in each of the cases.

Yitz is admitted to the State Bars of New York and New Jersey, the bar of the United States Court of Appeals for the Second, Eleventh, and Ninth Circuits, and the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, Eastern District of Missouri, Eastern District of Wisconsin, Northern District of Illinois, and District of New Jersey.

Yitz received his Juris Doctorate from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Yitz served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Yitz graduated *cum laude* from Queens College with a B.A. in Accounting.

### *Selected Published Decisions:*

*Bassaw v. United Industries Corp.,* 482 F.Supp.3d 80, 2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020), denying motion to dismiss claims in putative class action concerning insect foggers.

*Poppiti v. United Industries Corp.*, 2020 WL 1433642 (E.D. Mo. Mar. 24, 2020), denying motion to dismiss claims in putative class action concerning citronella candles.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 6699188 (N.D. Ill. Dec. 9, 2019), granting summary judgment on behalf of certified class in robocall class action.

*Krumm v. Kittrich Corp.*, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019), denying motion to dismiss claims in putative class action concerning mosquito repellent.

*Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding Raid insect fogger.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019), certifying a class of persons who received robocalls in the state of Illinois.

BURSOR&FISHER
P.A.

*Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding mosquito repellent.

*Hart v. BHH, LLC*, 323 F. Supp. 3d 560 (S.D.N.Y. 2018), denying defendants' motion for summary judgment in certified class action involving the sale of ultrasonic pest repellers.

*Hart v. BHH, LLC*, 2018 WL 3471813 (S.D.N.Y. July 19, 2018), denying defendants' motion to exclude plaintiffs' expert in certified class action involving the sale of ultrasonic pest repellers.

*Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 2334983 (E.D. Mo. Feb. 5, 2018), denying bourbon producers' motion to dismiss fraud and consumer protection claims in putative class action.

*West v. California Service Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), certifying a nationwide class of "wrong-number" robocall recipients.

*Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), certifying nationwide class of purchasers of ultrasonic pest repellers.

*Browning v. Unilever United States, Inc.*, 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), denying motion to dismiss fraud and warranty claims in putative class action concerning facial scrub product.

*Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016), denying motion to dismiss warranty and consumer protection claims in putative class action concerning baby wipes.

*Hewlett v. Consolidated World Travel, Inc.*, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016), denying telemarketer's motion to dismiss TCPA claims in putative class action.

*Bailey v. KIND, LLC*, 2016 WL 3456981 (C.D. Cal. June 16, 2016), denying motion to dismiss fraud and warranty claims in putative class action concerning snack bars.

*Hart v. BHH, LLC*, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) denying motion to dismiss warranty and consumer protection claims in putative class action concerning ultrasonic pest repellers.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting clients' motion for judgment as a matter of law on claims for retaliation and defamation in employment action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), denying diet pill manufacturers' motion to dismiss its purchasers' allegations for breach of express warranty in putative class action.

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014), denying online job board's motion to dismiss its subscribers' allegations of consumer protection law violations in putative class action.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Hart v. BHH, LLC*, Case No. 1:15-cv-04804 (S.D.N.Y. Sept. 22, 2020), resolving class action claims regarding ultrasonic pest repellers.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014), resolving class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

*West v. California Service Bureau*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019), resolving class action claims against debt-collector for wrong-number robocalls for $4.1 million.

### ALEC M. LESLIE

Alec Leslie is a Partner with Bursor & Fisher, P.A. He focuses his practice on consumer class actions, employment law disputes, and complex business litigation.

Alec is admitted to the State Bar of New York and is a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York. Alec was a Summer Associate with Bursor & Fisher prior to joining the firm.

Alec received his Juris Doctor from Brooklyn Law School in 2016, graduating *cum laude*. During law school, Alec served as an Articles Editor for Brooklyn Law Review. In addition, Alec served as an intern to the Honorable James C. Francis for the Southern District of New York and the Honorable Vincent Del Giudice, Supreme Court, Kings County. Alec graduated from the University of Colorado with a B.A. in Philosophy in 2012.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final

approval granted for class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Wright v. Southern New Hampshire Univ.*, Case No. 1:20-cv-00609-LM (D.N.H. 2021) – final approval granted for class settlement to resolve claims over COVID-19 tuition and fee refunds to students.

*Mendoza et al. v. United Industries Corp.*, Case No. 21PH-CV00670 (Phelps Cnty. Mo. 2021) – final approval granted for class settlement to resolve false advertising claims on insect repellent products.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, Case No. 8:19-cv-01203-JVS-DFM (C.D. Cal. 2021) – final approval granted for class settlement involving allegedly defective and dangerous chainsaws.

*Rocchio v. Rutgers Univ.*, Case No. MID-L-003039-20 (Middlesex Cnty. N.J. 2021) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*Malone v. Western Digital Corporation*, Case No. 5:20-cv-03584-NC (N.D. Cal.) – final approval granted for class settlement to resolve false advertising claims on hard drive products.

*Frederick et al. v. ExamSoft Worldwide, Inc.*, Case No. 2021L001116 (DuPage Cnty. Ill. 2021) – final approval granted for class settlement to resolve claims over alleged BIPA violations with respect to exam proctoring software.

*D'Amario et al. v. Univ. of Tampa*, Case No. 7:20-cv-07344 (S.D.N.Y. 2022) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*Olin et al. v. Meta Platforms, Inc.*, Case No. 3:18-cv-01881-RS (N.D. Cal. 2022) – final approval granted for class settlement involving invasion of privacy claims.

*Croft v. SpinX Games et al.*, Case No. 2:20-cv-01310-RSM (W.D. Wash. 2022) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

*Armstead v. VGW Malta Ltd. et al.*, Case No. 22-CI-00553 (Henderson Cnty. Ky. 2023) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

*Barbieri v. Tailored Brands, Inc.*, Index No. 616696/2022 (Nassau Cnty. N.Y.) – final approval granted for class settlement involving untimely wage payments to employees.

*Metzner et al. v. Quinnipiac Univ.*, Case No. 3:20-cv-00784 (D. Conn.) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*In re GE/Canon Data Breach,* Case No. 1:20-cv-02903 (S.D.N.Y.) – final approval granted for class settlement to resolve data breach claims.

*Davis v. Urban Outfitters, Inc.,* Index No. 612162/2022 (Nassau Cnty. N.Y.) – final approval granted for class settlement involving untimely wage payments to employees.

*Armstead v. VGW Malta LTD et al.,* Civil Action No. 22-CI-00553 (Henderson Cir. Ct. Ky.) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

*Casler et al. v. Mclane Company, Inc. et al.,* Index No. 616432/2022 (Nassau Cnty. N.Y.) – final approval granted for class settlement involving untimely wage payments to employees.

*Wyland v. Woopla, Inc.,* Civil Action No. 2023-CI-00356 (Henderson Cir. Ct. Ky.) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

*Graziano et al. v. Lego Systems, Inc.,* Index No. 611615/2022 (Nassau Cnty. N.Y.) – final approval granted for class settlement involving untimely wage payments to employees.

*Lipsky et al. v. American Behavioral Research Institute, LLC,* Case No. 50-2023-CA-011526-XXXX-MB (Palm Beach Cnty. Fl.) – final approval granted to resolve allegedly deceptive automatic renewal and product efficacy claims.

*Whiting v. Yellow Social Interactive Ltd.,* Civil Action No. 2023-CI-00358 (Henderson Cir. Ct. Ky.) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

## STEPHEN BECK

Stephen is a Partner with Bursor & Fisher, P.A. Stephen focuses his practice on complex civil litigation and class actions.

Stephen is admitted to the State Bar of Florida and is a member of the bars of the United States District Courts for the Southern and Middle Districts of Florida, the Eastern District of Missouri, and the Northern District of Illinois.

Stephen received his Juris Doctor from the University of Miami School of Law in 2018. During law school, Stephen received an Honors distinction in the Litigation Skills Program and was awarded the Honorable Theodore Klein Memorial Scholarship for excellence in written and oral advocacy. Stephen also received the CALI Award in Legislation for earning the highest grade on the final examination. Stephen graduated from the University of North Florida with a B.A. in Philosophy in 2015.

## MAX S. ROBERTS

Max Roberts is a Partner in Bursor & Fisher's New York office.  Max focuses his practice on class actions concerning data privacy and consumer protection.  Max was a Summer Associate with Bursor & Fisher prior to joining the firm.

Since 2023, Max has been named "Rising Star" in the New York Metro Area by Super Lawyers®.

Max received his Juris Doctor from Fordham University School of Law in 2019, graduating *cum laude.* During law school, Max was a member of Fordham's Moot Court Board, the Brennan Moore Trial Advocates, and the Fordham Urban Law Journal, for which he published a note entitled *Weaning Drug Manufacturers Off Their Painkiller: Creating an Exception to the Learned Intermediary Doctrine in Light of the Opioid Crisis.* In addition, Max served as an intern to the Honorable Vincent L. Briccetti of the Southern District of New York and worked as an intern in the Fordham Criminal Defense Clinic. Max graduated from Johns Hopkins University in 2015 with a B.A. in Political Science.

Outside of the law, Max is an avid triathlete.

### *Selected Published Decisions:*

*Huertas v. Bayer US LLC*, 120 F.4th 1169 (3d Cir. 2024), reversing district court and holding plaintiffs had alleged an injury-in-fact sufficient for Article III standing. Max personally argued the appeal before the Third Circuit, which can be listened to here.

*Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), affirming district court's denial of motion to compel arbitration. Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), reversing district court and holding that Section 631 of the California Invasion of Privacy Act requires prior consent to wiretapping. Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Mora v. J&M Plating, Inc.*, 213 N.E.3d 942 (Ill. App. Ct. 2d Dist. 2022), reversing circuit court and holding that Section 15(a) of Illinois' Biometric Information Privacy Act requires an entity to establish a retention and deletion schedule for biometric data at the first moment of possession. Max personally argued the appeal before the Second District, which can be listened to here.

*Newman v. Bayer Corp.*, 348 F.R.D. 567 (S.D.N.Y. 2025), certifying class of New York purchases of "One A Day" gummy multivitamins.

*Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100 (N.D. Cal. 2025), denying motion to dismiss alleged violations of California pen register statute.

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024), denying motion to dismiss alleged violations of California pen register statute.

*Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945 (N.D. Cal. 2024), denying motion dismiss alleged violations of California and Pennsylvania wiretapping statutes.

*Rancourt v. Meredith Corp.,* 2024 WL 381344 (D. Mass. Jan. 11, 2024), denying motion to dismiss alleged violations of federal Video Privacy Protection Act, and finding personal jurisdiction over operator of mobile application.

*Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24 (D. Mass. 2024), denying motion to dismiss alleged violations of federal Video Privacy Protection Act.

*Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1 (D. Mass. 2022), denying motion to dismiss and motion to strike class allegations in case involving sneakers marketed as "Made in the USA."

### *Selected Class Settlements:*

*Sholopa v. Turk Hava Yollari A.O. (d/b/a Turkish Airlines)*, Case No. 1:20-cv-3294-ALC (S.D.N.Y. 2023) – final approval granted for $14.1 million class settlement to resolve claims of passengers whose flights with Turkish Airlines were cancelled due to COVID-19 and who did not receive refunds.

*Payero v. Mattress Firm, Inc.*, Case No. 7:21-cv-3061-VB (S.D.N.Y. 2023) – final approval granted for $4.9 million class settlement to resolve claims of consumers who purchased allegedly defective bed frames.

*Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-534-AT (D. Nev. 2021) – final approval granted for class settlement valued at over $4.5 million to resolve claims of customers and employees of casino company stemming from data breach.

*Malone v. Western Digital Corp.*, Case No. 5:20-cv-3584-NC (N.D. Cal. 2021) – final approval granted for class settlement valued at $5.7 million to resolve claims of hard drive purchasers for alleged false advertised.

*Frederick v. ExamSoft Worldwide, Inc.*, Case No. 2021-L-001116 (18th Judicial Circuit Court DuPage County, Illinois 2021) – final approval granted for $2.25 million class settlement to resolve claims of Illinois students for alleged violations of the Illinois Biometric Information Privacy Act.

### *Bar Admissions*

- New York State
- California
- Massachusetts
- Southern District of New York
- Eastern District of New York
- Northern District of New York
- Northern District of California
- Central District of California
- Eastern District of California
- Southern District of California
- District of Massachusetts
- Northern District of Illinois
- Central District of Illinois
- Eastern District of Michigan
- District of Colorado
- First Circuit Court of Appeals
- Second Circuit Court of Appeals
- Third Circuit Court of Appeals
- Seventh Circuit Court of Appeals
- Ninth Circuit Court of Appeals

## ANDREW J. OBERGFELL

Andrew Obergfell is Counsel with Bursor & Fisher, P.A. Andrew focuses his practice on complex civil litigation and class actions.

Andrew graduated from Drew University with *summa cum laude* distinction. While at Drew University, Andrew was captain of the varsity baseball team. Andrew was inducted into the Phi Beta Kappa honor society and was President of the college's chapter of the Pi Sigma Alpha political science honor society.

Andrew attended Seton Hall University School of Law, where he obtained his law degree with *magna cum laude* distinction, and was inducted into the prestigious Order of the Coif honor society. While in law school, Andrew was an editor and published author for the Seton Hall Law Review, participated in the Impact Litigation Clinic, and was a member of the Interscholastic Moot Court Board. As part of the Interscholastic Moot Court Board, Andrew received the national best-brief award in the 2015 ABA National Appellate Advocacy Competition, as well as the 2015 best student-written brief of the year award as recognized by Scribes, the American Society of Legal Writers.

Prior to joining the firm, Andrew practiced at an AmLaw 100 law firm. He also clerked for The Honorable Douglas M. Fasciale in the New Jersey Superior Court, Appellate Division, in Newark, New Jersey.

### *Selected Published Decisions:*

*Kirkbride, et al. v. The Kroger Co.,* 349 F.R.D. 160 (S.D. Ohio April 9, 2025), granting class certification of three consumer classes of insured purchasers of prescription drugs at Kroger who allegedly overpaid for prescription drugs due to Kroger's usual and customary price reporting practices, and denying Defendant's *Daubert* motions directed at certain of Plaintiffs' experts.

## DANIEL GUERRA

Daniel Guerra is Counsel with Bursor & Fisher, P.A. Dan focuses his practice on complex civil litigation and consumer class actions.

Prior to working at Bursor & Fisher, Dan practiced at a national law firm in San Francisco. He helped represent various companies during internal investigations and in complex civil litigation, including product liability litigation and commercial disputes. He also advised clients on a range of matters including regulatory compliance, litigation risk assessment, and product counseling.

Dan is admitted to the State Bar of California, all California Federal District Courts, and the United States District Court for the Western District of Texas.

Dan received his Juris Doctor from the University of California Law, San Francisco (formerly U.C. Hastings College of the Law) in 2009.

## STEFAN BOGDANOVICH

Stefan Bogdanovich is an Associate with Bursor & Fisher, P.A. Stefan litigates complex civil and class actions typically involving privacy, intellectual property, entertainment, and false advertising law.

Prior to working at Bursor & Fisher, Stefan practiced at two national law firms in Los Angeles. He helped represent various companies in false advertising and IP infringement cases, media companies in defamation cases, and motion picture producers in royalty disputes. He also advised corporations and public figures on complying with various privacy and advertising laws and regulations.

Stefan is admitted to the State Bar of California and all of the California Federal District Courts. He is also a Certified Information Privacy Professional.

Stefan received his Juris Doctor from the University of Southern California Gould School of Law in 2018, where he was a member of the Hale Moot Court Honors Program and the Trial Team. He received the highest grade in his class in three subjects, including First Amendment Law.

## SPENCER N. MIGOTSKY

Spencer Migotsky is an Associate with Bursor & Fisher, P.A. Spencer focuses his practice on data privacy, complex commercial litigation, and consumer class actions. He has experience litigating data privacy class actions under the California Invasion of Privacy Act, the federal Video Privacy Protection Act, and the Arizona Telephone, Utility, and Communication Service Records Act.

Prior to joining Bursor & Fisher, Spencer practiced at a national law firm in New York City. He is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York. Spencer received his J.D. from Harvard Law School in 2019. In 2014, Spencer graduated magna cum laude from New York University with a B.A. in Economics.

## JULIA K. VENDITTI

Julia K. Venditti is an Associate with Bursor & Fisher, P.A. Julia focuses her practice on complex civil litigation and class actions. Julia was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julia is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Julia received her Juris Doctor in 2020 from the University of California, Hastings College of the Law, where she graduated *cum laude* with two CALI Awards for the highest grade in her Evidence and California Community Property classes. During law school, Julia was a member of the UC Hastings Moot Court team and competed at the Evans Constitutional Law

Moot Court Competition, where she finished as a national quarterfinalist and received a best brief award.  Julia was also inducted into the UC Hastings Honors Society and was awarded Best Brief and an Honorable Mention for Best Oral Argument in her First-Year Moot Court section.  In addition, Julia served as a Research Assistant for her Constitutional Law professor, as a Teaching Assistant for Legal Writing & Research, and as a Law Clerk at the San Francisco Public Defender's Office.  In 2017, Julia graduated *magna cum laude* from Baruch College/CUNY, Weissman School of Arts and Sciences, with a B.A. in Political Science.

### JULIAN DIAMOND

Julian Diamond is an Associate with Bursor & Fisher, P.A.  Julian focuses his practice on privacy law and class actions.  Julian was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julian received his Juris Doctor from Columbia Law School, where he was a Harlan Fiske Stone Scholar.  During law school, Julian was Articles Editor for the Columbia Journal of Environmental Law.  Prior to law school, Julian worked in education.  Julian graduated from California State University, Fullerton with a B.A. in History and a single subject social science teaching credential.

### MATTHEW GIRARDI

Matt Girardi is an Associate with Bursor & Fisher, P.A.  Matt focuses his practice on complex civil litigation and class actions, and has focused specifically on consumer class actions involving privacy violations, illegal gambling, financial misconduct, and false advertising.  Matt was a Summer Associate with Bursor & Fisher prior to joining the firm.

Matt is admitted to the State Bar of New York, and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Eastern District of Michigan, the Western District of Michigan, the First Circuit Court of Appeals, and the Ninth Circuit Court of Appeals.

Matt received his Juris Doctor from Columbia Law School in 2020, where he was a Harlan Fiske Stone Scholar.  During law school, Matt was the Commentary Editor for the Columbia Journal of Tax Law, and represented fledgling businesses for Columbia's Entrepreneurship and Community Development Clinic.  In addition, Matt worked as an Honors Intern in the Division of Enforcement at the U.S. Securities and Exchange Commission.  Matt graduated from Brown University in 2016 with a B.A. in Economics, and worked as a Paralegal Specialist at the U.S. Department of Justice in the Antitrust Division prior to law school.

### *Selected Class Settlements:*

*Armstead v. VGW Malta Ltd. et al.*, Case No. 22-CI-00553 (Henderson Cnty. Ky. 2023) – final approval granted for $11.75 million class settlement involving allegedly deceptive and/or illegal gambling practices.

BURSOR & FISHER
P.A.

*Edwards v. Mid-Hudson Valley Federal Credit Union, Case No. 22-cv-00562-TJM-CFH*
(N.D.N.Y. 2023) – final approval granted for $2.2 million class settlement to resolve claims that an upstate New York credit union was unlawfully charging overdraft fees on accounts with sufficient funds.

*Fischer, et al. v. Instant Checkmate LLC, et al.*, No. 19-cv-04892 (N.D. Ill. 2024) – final approval granted for state-by-state non-reversionary cash settlements involving alleged violations of right of publicity statutes totaling in excess of $10.1 million.

*Wyland v. Woopla, Inc.,* Civil Action No. 2023-CI-00356 (Henderson Cir. Ct. Ky. 2023) – final approval granted for $835,000 class settlement involving allegedly deceptive and/or illegal gambling practices.

*Whiting v. Yellow Social Interactive Ltd.,* Civil Action No. 2023-CI-00358 (Henderson Cir. Ct. Ky. 2023) – final approval granted for $1.32 million class settlement involving allegedly deceptive and/or illegal gambling practices.

## KAILI LYNN

Kaili Lynn is an Associate in Bursor & Fisher's Walnut Creek office, where she focuses her practice on complex civil litigation and class actions involving data privacy and consumer protection. She is admitted to the State Bars of California and Kentucky.

Kaili earned her Juris Doctor from the University of Southern California, Gould School of Law in 2020. During law school, she was a member of the Hale Moot Court Honors Program and the International Human Rights Clinic. In 2016, Kaili graduated from the Georgia Institute of Technology with highest honors earning a Bachelor of Science in International Affairs and Modern Languages.

Prior to joining Bursor & Fisher, Kaili served as a trial attorney for the Kentucky Department of Public Advocacy, where she litigated cases involving indigent juveniles and adults charged with misdemeanor and felony offenses. Kaili also worked for two law firms in Southern California, gaining experience in appellate practice and class action litigation.

## JENNA GAVENMAN

Jenna Gavenman is an Associate with Bursor & Fisher, P.A.  Jenna focuses her practice on complex civil litigation and consumer class actions.  Jenna was a Summer Associate and a part-time intern with Bursor & Fisher prior to joining the firm as a full-time Associate in September 2022.

Jenna is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Jenna received her Juris Doctor in 2022 from the University of California, Hastings College of the Law (now named UC Law SF).  During law school, she was awarded an Honorable Mention for Best Oral Argument in her First-Year Moot Court section.  Jenna also

participated in both the Medical Legal Partnership for Seniors (MLPS) and the Lawyering for Children Practicum at Legal Services for Children—two of UC Hastings's nationally renowned clinical programs. Jenna was awarded the Clinic Award for Outstanding Performance in MLPS for her contributions to the clinic. In addition, Jenna volunteered with her law school's Legal Advice and Referral Clinic and as a LevelBar Mentor.

In 2018, Jenna graduated *cum laude* from Villanova University with a B.A. in Sociology and Spanish (double major). Jenna was a Division I athlete, competing on the Villanova Women's Water Polo varsity team for four consecutive years.

### IRA ROSENBERG

Ira Rosenberg is an Associate with Bursor & Fisher, P.A. Ira focuses his practice on complex civil litigation and class actions.

Ira received his Juris Doctor in 2022 from Columbia Law School. During law school, Ira served as a Student Honors Legal Intern with Division of Enforcement at the U.S. Securities and Exchange Commission. Ira also interned during law school in the Criminal Division at the United States Attorney's Office for the Southern District of New York and with the Investor Protection Bureau at the Office of the New York State Attorney General. Ira graduated in 2018 from Beth Medrash Govoha with a B.A. in Talmudic Studies.

### LUKE SIRONSKI-WHITE

Luke Sironski-White is an Associate with Bursor & Fisher, P.A., focusing on complex civil litigation and consumer class actions. Luke joined the firm as a full-time Associate in August 2022.

Luke is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Luke received his Juris Doctor in 2022 from the University of California, Berkeley School of Law. During law school, Luke was on the board of the Consumer Advocacy and Protection Society (CAPS), edited for the Berkeley Journal of Employment and Labor Law, and volunteered with the Prisoner Advocacy Network.

In 2017, Luke graduated from the University of Chicago with a B.A. in Anthropology. Before entering the field of law Luke was a professional photographer and filmmaker.

### INES DIAZ

Ines Diaz is an Associate with Bursor & Fisher, P.A. Ines focuses her practice on complex civil litigation and class actions.

Ines is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Ines received her Juris Doctor in 2023 from the University of California, Berkeley School of Law.  During law school, Ines served as an Executive Editor of the California Law Review. She also served as an intern with the East Bay Community Law Center's Immigration Clinic and as a Fellow of the Berkeley Law Academic Skills Program.  Additionally, Ines served as an instructor with the University of California, Berkeley Extension, Legal Studies Global Access Program where she taught legal writing to international law students.  In 2021, Ines was selected for a summer externship at the California Supreme Court where she served as a judicial extern for the Honorable Mariano-Florentino Cuéllar.

### CAROLINE C. DONOVAN

Caroline C. Donovan is an Associate with Bursor & Fisher, P.A.  Caroline focuses her practice on complex civil litigation, data protection, mass arbitration, and class actions.  Caroline interned with Bursor & Fisher during her third year of law school before joining full time in Fall 2023.

Caroline is admitted to the State Bar of New York.

Caroline received her Juris Doctor in 2023 from Brooklyn Law School.  During law school, Caroline was a member of the Moot Court Honor Society Trial Division, where she was chosen to serve as a National Team Member.  Caroline competed and coached in numerous competitions across the country, and placed second at regionals in AAJ's national competition in both her second and third year of law school.  Caroline was also the President of the Art Law Association, and the Treasurer of the Labor and Employment Law Association.

During law school, Caroline was a judicial intern for Judge Kenneth W. Chu of the National Labor Relations Board.  She also interned at the United States Attorney's Office in the Eastern District of New York, as well as a securities class action firm.

### JOSHUA B. GLATT

Joshua Glatt is an Associate with Bursor & Fisher, P.A.  Joshua focuses his practice on complex civil litigation and consumer class actions.  Joshua was a Summer Associate with Bursor & Fisher prior to joining the firm as an Associate.

Joshua is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Joshua earned his Juris Doctor from the University of California College of the Law, San Francisco (formerly U.C. Hastings).  While there, he received a CALI Award for earning the highest grade in Constitutional Law II and served on the executive boards of the Jewish Law Students Association and the American Constitution Society.  Prior to law school, Joshua graduated *summa cum laude* from the Walter Cronkite School of Journalism and Mass Communication at Arizona State University in 2016 and earned a master's degree from the University of Southern California in 2018.

## JOSHUA R. WILNER

Joshua Wilner is an Associate with Bursor & Fisher, P.A. Joshua focuses his practice on complex civil litigation, data privacy, consumer protection, and class actions. Joshua was a Summer Associate at Bursor & Fisher prior to joining the firm full time in Fall 2023.

Joshua is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Joshua received his Juris Doctor in 2023 from Berkeley Law. During law school, he received the American Jurisprudence Award for Constitutional Law.

During law school, Joshua served on the board of the Berkeley Journal of Employment and Labor Law. Joshua also interned at Disability Rights California, Legal Aid at Work, and a private firm that worked closely with the ACLU of Northern California to enforce the California Racial Justice Act. In 2022 and 2023, Joshua worked as a research assistant for Professor Abbye Atkinson.

## VICTORIA ZHOU

Victoria Zhou is an Associate in Bursor & Fisher's New York office. Victoria focuses her practice on class actions concerning data privacy and consumer protection.

Victoria is admitted to the State Bar of New York.

Victoria received her Juris Doctor from Fordham Law School in 2023. During law school, Victoria served as an Associate Editor of the Moot Court Board and competed in multiple mock trial competitions as a member of the Brendan Moore Trial Advocates. In addition, Victoria served as a judicial extern to Chief Judge Mark A. Barnett of the United States Court of International Trade. In 2019, Victoria graduated *magna cum laude* from Fei Tian College with a B.F.A. in Classical Dance.

## KYLE D. GORDON

Kyle Gordon is an Associate with Bursor & Fisher, P.A. Kyle focuses his practice on class actions concerning data privacy and consumer protection. Kyle was a Summer Associate with Bursor & Fisher prior to joining the firm.

Kyle is admitted to the State Bar of New York.

Kyle received his Juris Doctor from Columbia Law School in 2023, where he was a Harlan Fiske Stone Scholar. During law school, Kyle was a Staff Editor for the Columbia Science and Technology Law Review. In 2020, Kyle graduated *summa cum laude* from New York University with a B.A. in Politics and became a member of Phi Beta Kappa. Prior to law school, Kyle interned in the Clerk's Office of the United States District Court for the District of Columbia.

## ELEANOR R. GRASSO

Eleanor Grasso is an Associate with Bursor & Fisher, P.A.  Eleanor focuses her practice on complex civil litigation, including data privacy and consumer protection class actions.

Eleanor is admitted to the State Bars of New York and Florida, and is a member of the bars of the United States District Courts for the Southern District of New York and Eastern District of New York.

Eleanor earned her Juris Doctor from Fordham University School of Law.  During law school, Eleanor was a member of the Fordham Journal of Intellectual Property, Media & Entertainment Law, serving as Symposium Editor for Volume XXXIV.  Eleanor was also a member of the Brendan Moore Trial Advocacy Team, served as a Research Assistant, and was a member of the Board of Student Advisors.

Throughout her time in law school, Eleanor interned for the Office of the Public Defender for the Sixth Judicial Circuit of Florida in the Misdemeanor Unit, the Office of the Federal Public Defender for the Middle District of Tennessee in the Capital Habeas Unit, the ACLU of Florida, and for the Honorable Kiyo A. Matsumoto in the United States District Court for the Eastern District of New York.  Eleanor was a Summer Associate with Bursor & Fisher and also interned part-time during her third year of law school.

Eleanor earned her Bachelors from the University of Florida, with a double-major in Criminology & Law and Political Science and a minor in French & Francophone studies.

## LOGAN HAGERTY

Logan Hagerty is an Associate with Bursor & Fisher, P.A.  Logan is admitted to the State Bar of New York and the Southern District of New York.

Logan received his Juris Doctor from Boston College Law School in 2024, where he received a certificate in Land & Environmental Law.

During law school, Logan was President of the Environmental Law Society.  In addition, Logan worked for a class action firm, a general practice firm, and interned at a Massachusetts state agency.

Logan earned his Bachelors from St. Lawrence University, where he graduated magna cum laude with a double major in History and Environmental Studies and a minor in African Studies.  He is also a member of Phi Beta Kappa.

## KAREN VALENZUELA

Karen Valenzuela is an Associate with Bursor & Fisher, P.A.  Karen focuses her practice on complex civil litigation and class actions.  Karen was a Summer Associate and a part-time intern with Bursor & Fisher prior to joining the firm as a full-time Associate.

Karen is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Karen received her Juris Doctor in 2024 from the University of California, Berkeley School of Law. During law school, Karen was part of the Consumer Protection Public Policy Order, and interned for the Los Angeles County Public Defender's Office. Karen also participated in the International Human Rights Law Clinic, La Alianza Workers' and Tenants' Rights Clinic, and the Death Penalty Clinic.

Prior to law school, Karen graduated from the University of California, Berkeley with a B.A. in Gender and Women's Studies and a minor in Global Poverty and Practice.

### LAUREN A. VANHEMEL

Lauren A. VanHemel is an Associate with Bursor & Fisher, P.A. Lauren focuses her practice on complex civil litigation, data privacy, and class actions. She was a Summer Associate and part-time law clerk with Bursor & Fisher before joining the firm full time in Fall 2025.

Lauren is admitted to the State Bar of Florida. She received her Juris Doctor in 2025 from the University of Florida Levin College of Law. During law school, Lauren served as internal vice president of the Florida Moot Court Team and notes & comments editor of the UF Journal of Law and Public Policy. Lauren competed and coached numerous moot court competitions, winning best brief and second overall at the 2023-2024 McGee National Civil Rights Moot Court Competition and second-best brief at the 2024-2025 NAAC ABA Philadelphia Regional Competition.

Prior to law school, Lauren graduated cum laude from the University of Florida with a B.A. in Criminology in 2022.

### ZACHARY J. BRAVERMAN

Zachary J. Braverman is an Associate with Bursor & Fisher, P.A. Zach focuses his practice on complex civil litigation, labor and employment, consumer protection, and class actions. Zach was a Summer Associate and part-time law clerk with Bursor & Fisher prior to joining the firm as a full-time associate.

Zach is admitted to the State Bar of New York. He earned his Juris Doctor from Brooklyn Law School. During law school, Zach was a member of The Brooklyn Sports and Entertainment Law Society and The Brooklyn Journal of Corporate, Financial and Commercial Law, serving as an Articles Editor and publishing a note. Zach also studied international law at The University of Amsterdam.

Prior to law school, Zach graduated from Binghamton University with a B.S. in Financial Economics and B.A. in Philosophy, Politics, and Law.