COOLEY LLP
BENEDICT HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO SANTACANA (281668)
(esantacana@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
ANIKA HOLLAND (336071)
(anika.holland@cooley.com)
EMILY ABBEY (341762)
(eabbey@cooley.com)
NAIARA TOKER (346145)
(ntoker@cooley.com)
JULIA M. IRWIN (352861)
(JIrwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
GOOGLE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARY SMITH et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No. 5:23-cv-03527-PCP<br>(Consol. w/ 5:23-cv-04191-BLF)<br><br>**DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Dept: Ctrm. 8 – 4th Floor<br>Judge: Honorable P. Casey Pitts<br><br>Date Action Filed: 7/14/2023 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND ........ 2
III. LEGAL STANDARD ........ 5
IV. ARGUMENT ........ 5
A. Plaintiffs Lack Article III Standing ........ 5
1. Plaintiffs' Labels Are Meaningless ........ 5
2. Plaintiffs Lack Standing Based Upon "Tax Return Information" ........ 6
3. Plaintiffs Lack Standing Based Upon "Tax Preparation Information" ........ 7
a. TaxAct Preparation Information ........ 7
b. TaxSlayer Tax Preparation Information ........ 8
4. Plaintiffs Lack Standing Based Upon "Pen Register Information" ........ 9
B. Plaintiffs Lack Standing to Seek Injunctive Relief on Behalf of a Class ........ 11
C. Individualized Issues Preclude Certifying a Damages Class ........ 11
1. Consent is an Individualized Inquiry ........ 11
a. Express Consent ........ 12
b. Implied Consent ........ 14
2. Individual Issues Relating to Damages and Uninjured Class Members Predominate ........ 16
3. Individualized Issues Predominate Regarding the Location of Alleged Interception ........ 18
4. Choice of Law Issues Predominate in the Nationwide Class ........ 19
5. "Confidentiality" is Predominantly Individual ........ 21
D. The Court Should Deny Certification Under Rule 23(b)(2) Because Plaintiffs Primarily Seek Monetary Relief ........ 22
E. Named Plaintiffs Are Not Adequate or Typical Class Representatives ........ 22
1. The California Wiretapping Class Has No Adequate Class Representative ........ 22
2. Nino and Patterson Are Not Adequate Because Their Credibility Issues Subject Them to Unique Defenses ........ 23
V. CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ... 5

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ... 22

*In re Apple iPhone Antitrust Litig.*,
2022 WL 1284104 (N.D. Cal. Mar. 29, 2022) ... 16

*Briggs v. OS Rest. Servs., LLC*,
2020 WL 6260001 (C.D. Cal. Aug. 26, 2020) ... 23

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ... 11

*Campbell v. Facebook Inc.*,
315 F.R.D. 250 (N.D. Cal. 2016) ... 17

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ... 11

*Comcast Corp. v. Behrend*,
569 U.S. 27 – 37 (2013) ... 16

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ... 10

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ... 20

*DZ Rsrv v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) ... 5, 11

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ... 6

*Frasco v. Flo Health*,
349 F.R.D. 557 (N.D. Cal. 2025) ... 18, 19

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ... 11, 16

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ... 12, 13, 14, 15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Google Privacy Policy Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ........ 8, 11

*In re Google RTB Consumer Priv. Litig.*,
2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ........ 12, 14, 15, 16

*Ingraham v. Cap. One Fin. Corp.*,
2026 WL 1755170 (N.D. Cal. May 22, 2026) ........ *passim*

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 10

*James v. Uber Techs. Inc.*,
338 F.R.D. 123 (N.D. Cal. 2021) ........ 22

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 20

*Khamooshi v. Politico, LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ 10

*Malko v. GNC Holdings, LLC*,
2026 WL 2218133 (C.D. Cal. July 29, 2026) ........ 9

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........ 20

*In re Meta Pixel Tax Filing Cases*,
826 F. Supp. 3d 1217 (N.D. Cal. Mar. 30, 2026) ........ 11, 22

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024) ........ 8

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ........ 10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ........ 5

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 5, 11

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) ........ 13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Stalley v. ADS Alliance Data Sys., Inc.*,
296 F.R.D. 670 (M.D. Fla. 2013) ........ 11

*Torres v. NutriSystem, Inc.*,
289 F.R.D. 587 (C.D. Cal. 2013) ........ 14, 15, 21

*Torres v. Seatgeek, Inc.*,
2026 WL 1495202 (N.D. Cal. May 21, 2026) ........ 10

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 10

*United States v. Diaz*,
876 F.3d 1194 ........ 6

*Wash. Mut. Bank v. Super. Ct.*,
24 Cal. 4th 906 (2001) ........ 19

*Williams v. D.D.R. Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ........ 7

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ........ 20

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ........ 22

**Statutes**

18 U.S.C. § 2520(c)(2)(B) ........ 16, 18

26 U.S.C. § 6103(b)(2) ........ 6

Cal. Penal Code
§ 630 ........ 20
§ 631 ........ 1, 18, 19
§ 632 ........ *passim*
§ 635 ........ 19
§ 637.2(a)(1) ........ 16
§ 638.50 ........ 6, 10
§ 638.51 ........ 19

Federal Wiretap Act ........ 16, 17

Fla. Stat. Ann. § 934.10(1)(b) ........ 16, 18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

26 C.F.R. § 301.7216–1(b)(3)(i) ........ 6

Federal Rules of Evidence
702(a) ........ 6
704(a) ........ 6

Federal Rules of Civil Procedure
23 ........ 5
23(b)(2) ........ 11, 22

## I. INTRODUCTION

The Court should deny Plaintiffs' Motion for Class Certification for a variety of reasons. But it's worth pausing at the outset to consider how different a picture Plaintiffs' motion presents than the sensational claims they initially raised. Plaintiffs alleged that Google "secretly hoovers up vast amounts of private tax return information" from individuals filing their taxes with TaxAct and TaxSlayer (the "Tax Websites"), including receiving the dollar amounts of their income and refunds. Dkt. 35, ¶¶ 38–39. [redacted] On these facts, a class cannot be certified. Three reasons independently dictate this:

*First*, given the information Google actually received from the Tax Websites, Plaintiffs lack Article III standing and therefore cannot serve as class representatives.

*Second*, individualized inquiries predominate, rendering any class unmanageable. Express consent, for example, requires evaluating versions of disclosures that changed over time. Implied consent requires assessing a broader set of disclosures and individual circumstances to determine what each class member understood when accessing the Tax Websites. Plaintiffs' claims under the California Invasion of Privacy Act ("CIPA") create further individualized issues. Section 631 necessitates inquiry into whether Google "read" any communication in California. Section 632 requires assessment of whether each class member had reason to know their communications with the Tax Websites may be recorded. And individualized choice-of-law issues call into question whether CIPA should apply to class members outside California. Plaintiffs provide no method of common proof that could resolve these individualized inquiries.

*Third*, the only proposed California class representative, Joseph Nino, is not a class member

at all because [redacted] Further, he and Tracylyn Patterson have sufficiently serious credibility issues to render them inadequate class representatives. [redacted].

These issues preclude certification, and Plaintiffs' motion should be denied.

## II. Factual Background

[redacted]

[redacted]

[redacted]

[redacted].

[redacted]

[redacted]

[redacted]

[1] [redacted]

[redacted]

## III. LEGAL STANDARD

Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Plaintiffs bear the burden to show by a preponderance of admissible evidence—not pleadings or speculation—that they have met Rule 23's requirements. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022).

## IV. ARGUMENT

### A. Plaintiffs Lack Article III Standing

No representative plaintiff has Article III standing, which defeats class certification. *DZ Rsrv v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024) ("[S]tanding at the time of class certification must be established by a preponderance of the evidence."). Plaintiffs allege statutory privacy violations, so they must establish an injury that is traditionally actionable at common law. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). This assessment must be "particularized to a plaintiff's circumstances and benchmarked to a specific tort[.]" *Id.*

The most comparable tort is intrusion upon seclusion, which requires an intentional intrusion into the plaintiff's privacy that would be "highly offensive" to a reasonable person. *Id.* at 790-91. Plaintiffs must show that "(i) the data is 'sensitive,' (ii) the use or disclosure is 'highly offensive,' (iii) the data is 'individually identifiable' to them, and (iv) they maintained a 'reasonable expectation of privacy' in the data." *Ingraham v. Cap. One Fin. Corp.*, 2026 WL 1755170, at *4 (N.D. Cal. May 22, 2026) (citation omitted). Plaintiffs cannot make that showing.

#### 1. Plaintiffs' Labels Are Meaningless

[redacted]

[redacted].

**2. Plaintiffs Lack Standing Based Upon "Tax Return Information"**

[redacted] These values, and the manner in which they were transmitted to GA, do not support standing because their transmission does not rise to the level of a highly offensive and intentional intrusion, and certainly not one attributable to Google.

[redacted]

[redacted] *Ingraham*, 2026 WL 1755170, at *4. To be personally identifiable, data must be "*reasonably and foreseeably likely*" to be used to associate it with an individual. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). [redacted]

[2] Because these labels are legally defined terms rather than factual descriptions, *see* 26 U.S.C. § 6103(b)(2), 26 C.F.R. § 301.7216–1(b)(3)(i), Cal. Penal Code § 638.50, and Dr. Hochman disclaimed any independent opinion on their meaning, the Court should prohibit him from testifying using these labels and instead require him to describe the data at issue in plain factual terms. *See* Fed. R. Evid. 702(a), 704(a); *United States v. Diaz*, 876 F.3d 1194, 1199 (expert testimony is improper where the terms used have specialized legal meaning and represent an attempt to instruct the jury on how to apply the law to the facts of the case).

[redacted] This does not establish an intentional intrusion by Google, much less a highly offensive one. *Williams v. D.D.R. Media, LLC*, 2023 WL 5352896, at *7 (N.D. Cal. Aug. 18, 2023) (finding a "minimal" intrusion that is "not highly offensive" where plaintiff had voluntarily shared information with a website and alleged no use of her data by third party other than storing information for the website). Accordingly, Plaintiffs lack Article III standing based on purported TRI.

**3. Plaintiffs Lack Standing Based Upon "Tax Preparation Information"**

[redacted]

**a. TaxAct Preparation Information**

[redacted]

[redacted]

[redacted] *See Ingraham*, 2026 WL 1755170, at *4; *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *5 (S.D. Cal. Jan. 22, 2024) (finding no standing where there was no link between sensitive health data and plaintiff's identity). The data are simply too far attenuated from a user and his or her actual financial circumstances to constitute a "highly offensive" intrusion.

[redacted] Any expectation of privacy in such activity data was diminished by TaxAct's disclosures, which at all relevant times informed users that it and third-party providers would collect users' website activity. *See* App'x A at Row 3. *In re Google Privacy Policy Litig.*, 2013 WL 6248499, at *16 (N.D. Cal. Dec. 3, 2013) (finding that reasonable expectation of privacy was not plausible where privacy policies disclosed the data commingling plaintiffs challenged).

**b. TaxSlayer Tax Preparation Information**

[redacted]

---

[3] [redacted]

[redacted] On these facts, the transmission of TPI to TaxSlayer cannot be considered highly offensive to a reasonable person, and the injury Patterson has experienced, if any, is not a concrete harm comparable to intrusion upon seclusion to satisfy Article III.

**4. Plaintiffs Lack Standing Based Upon "Pen Register Information"**

Plaintiffs' claims concerning purported [redacted] are their weakest. [redacted]

[4] As noted above, there is no indication that the "unique identifier" (*supra* at 8) TaxSlayer assigned to Patterson had any meaning to Google. *See* Hochman ¶ 47.

[redacted].[5]

Plaintiffs had no reasonable expectation of privacy in this data. [redacted]

[redacted]

[redacted] *See, e.g.*, *Khamooshi v. Politico, LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (dismissing pen register claims for lack of standing because disclosure of IP addresses did not give rise to privacy injury); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 852 (N.D. Cal. 2025) (holding plaintiff had no reasonable expectation of privacy in "his IP address or general geographic location").

[redacted] *Cook v.*

[5] [redacted]

*GameStop, Inc*., 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023) (finding no standing where defendant did nothing to identify plaintiff). Thus, even if Google received [redacted] from Patterson (or anyone else), that would not constitute a highly offensive invasion comparable to intrusion upon seclusion. *See Popa*, 153 F.4th at 792.

Finally, any expectation of privacy in this information is negated because the privacy policies of Google and the Tax Websites disclosed this data collection when Plaintiffs accessed their websites. *See infra* 13; *In re Google Privacy Policy Litig.*, 2013 WL 6248499, at *16.

### B. Plaintiffs Lack Standing to Seek Injunctive Relief on Behalf of a Class

To certify Rule 23(b)(2) class, Plaintiffs must prove that they have standing to pursue injunctive relief. *See In re Meta Pixel Tax Filing Cases*, 826 F. Supp. 3d 1217, 1230 (N.D. Cal. Mar. 30, 2026). A plaintiff seeking prospective relief must show that they are "immediately in danger of sustaining some direct injury[.]" *City of L.A. v. Lyons*, 461 U.S. 95, 101–02 (1983).

Plaintiffs submitted no evidence that they will imminently sustain an injury from the Tax Websites' use of GA. To start, Google has not received [redacted] since December 2022. Hochman ¶ 8. [redacted] *See* Patterson Dep. 257:19–259:7; Anderson Decl. Ex. H ("Armstrong Dep.") 117:5–7, 117:17–119:3; Ex. G ("Layton Dep.") 82:11–15; Anderson Decl. Ex. U at 4:7. This is on all fours with *Meta*, where this Court denied certification of an injunctive class where the plaintiffs offered only evidence of past data collection, not that defendant was likely to collect plaintiffs' data in the future. *In re Meta*, 826 F. Supp. 3d at 1230. Accordingly, Plaintiffs lack standing to seek injunctive relief under Rule 23(b)(2).

### C. Individualized Issues Preclude Certifying a Damages Class

Each of the individualized issues identified below—independently, and certainly all of them together—render any class or set of subclasses unmanageable, precluding certification.

#### 1. Consent is An Individualized Inquiry

Each claim to be certified hinges on consent. *Brown v. Google, LLC*, 2022 WL 17961497, at *18–19 (N.D. Cal. Dec. 12, 2022); *Stalley v. ADS Alliance Data Sys., Inc.*, 296 F.R.D. 670, 678 (M.D. Fla. 2013). And under CIPA, lack of consent is Plaintiffs' burden to prove. *See, e.g., In re*

*Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) ("[U]nder California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record") (*quoting Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App'x 989, 990 n.1 (9th Cir. 2019). Consent can be express, as in agreement to a website's terms, or "implied in fact based on whether the surrounding circumstances demonstrate that the party whose personal information was collected knew it." *In re Google RTB Consumer Priv. Litig.* ("*RTB*"), 2024 WL 2242690, at *12 (N.D. Cal. Apr. 4, 2024) (citation omitted). Both types of consent are subject to myriad individualized issues, precluding certification of any of Plaintiffs' proposed classes.

**a. Express Consent**

Individualized issues of consent predominate where, as here, users were exposed to at least 11 different disclosures by at least three parties. *See, e.g.*, *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *15 (N.D. Cal. Mar. 18, 2014) (individualized issues predominated where uniform disclosures were not made to all class members and variations could be dispositive); *see also Ingraham*, 2026 WL 1759155, at *7 ("diversity of disclosures" class members saw precluded certification).

Multiple versions of the Tax Websites' privacy policies were in effect throughout the relevant class periods: at least eight for TaxSlayer and three for TaxAct. *See* App'x A. The factfinder must parse the differences among each to determine whether each class member consented to the challenged data sharing practices. For example, TaxAct's 2026 privacy policy specifically named GA as a tool that would collect website activity. Anderson Decl. Ex. Q; *see* App'x A at Row 7. The 2018 version, on the other hand, referred to activity tracking by service providers generally, so Plaintiff may argue a lack of consent because this version did not name Google explicitly. Anderson Decl. Ex. O; *see* App'x A at Row 7. TaxSlayer's policies have similar variations. Anderson Decl. Ex. R (stating that third-party partnerships may "require us to share information," without specification); *see* App'x A at Row 5 (version July 18, 2012); Anderson Decl. Ex. V (version Dec. 29, 2025) (enumerating types of information shared with third parties, such as geolocation and IP addresses). A factfinder must make individualized inquiries about whether each policy adequately disclosed GA's data collection—the kind of inquiry that precluded

class certification in *Gmail*. 2014 WL 1102660, at *15. Despite bearing the burden to prove lack of consent under CIPA, Plaintiffs present no evidence about (1) which policy applied when; (2) how each policy was disseminated; or (3) whether or not class members saw any particular policies. Without individualized questioning of every class member, there is no way to know which mix of disclosures they saw or were bound by.

Creating additional complications, many class members, including Plaintiffs, [redacted] Patterson Dep. 150:11–17; Armstrong Dep. 186:20–188:15; Layton Dep. 221:18–24; Anderson Decl. Ex. F ("Nino Dep.") 134:10–14. Google's Privacy Policy expressly notifies users about data collection on third-party websites using Google's services, including the very information at issue here. For example, the Privacy Policy effective when Patterson used TaxAct informed her that Google could collect: (1) IP address; (2) location; (3) device and browser information; (4) activity on third-party websites; and (5) browser and device identifiers. Anderson Decl. Ex. I. The Privacy Policy explicitly and repeatedly stated that it applied to Google services on third-party websites. *Id.* at -689, -691, -694, -706. It also specifically notified users that websites may send user activity to Google through GA. *Id.* at -694. [redacted]. Patterson Dep. 160:24–167:5.[7]

Google account holders like Patterson therefore received notice of and consented to data collection separate and apart from the Tax Websites' own policies. Such class members are subject to an additional defense not applicable to class members without Google accounts. *See Smith*, 262 F. Supp. 3d at 953–55 (finding Facebook's privacy policy established adequate consent for data collection on third-party websites). Because Plaintiffs' proposed classes do not distinguish between account holders and non-account holders, individual account-level review will predominate if any of Plaintiffs' proposed classes are certified.

[7] For this reason, Patterson is subject to a consent defense that may not be applicable to the class, rendering her an inadequate representative. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953–55 (N.D. Cal. 2017) (finding Facebook's privacy policy dispositive of Plaintiff's claims where the policy disclosed the challenged data collection on third-party websites), *aff'd, Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018).

**b. Implied Consent**

Implied consent creates even more individual issues. Notwithstanding Google or Tax Website disclosures, terms, and policies, users may still impliedly consent to Google's receipt of information. After decades of experience with the internet, most users have long since learned that the vast majority of popular websites use analytics tools and may generally expect their information to be transmitted when visiting a website. This inquiry requires individualized assessments of what each class member saw, read, experienced, or otherwise understood.

Implied consent is an "intensely factual question that requires consideration of the circumstances surrounding the interception to divine whether the party whose communication was intercepted was on notice that the communication would be intercepted." *In re Gmail*, 2014 WL 1102660, at *15; *see also RTB*, 2024 WL 2242690, at *12. It "necessarily requires an inquiry into what the party whose communications were intercepted subjectively understood." *Id.* at *19. Given the inquiry's factual nature, implied consent would create millions of mini trials to determine whether each class member consented to the alleged data sharing. Without them, the factfinder could not determine whether any particular class member maintained a reasonable expectation of privacy in the data.

Courts in this district have declined to certify classes on this basis. In *RTB*, for example, the court held that individualized inquiries predominated because the factfinder would need to assess each account holder's subjective understanding to determine whether they consented to Google's RTB auction process. *Id.* at *12–13. Survey evidence showed many respondents expected that Google shared information for advertising purposes. *Id.* at *14; *see also In re Gmail*, 2014 WL 1102660, at *11 (holding individualized issues predominated because a factfinder would have to "evaluate to which of the various sources each individual user had been exposed and whether each individual 'knew about and consented to the interception'" (citation omitted)); *Torres v. NutriSystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013) (denying certification in action regarding call recording where callers received notices under different circumstances and some class members may assume they would be recorded).

Here, empirical survey evidence proves that individualized issues of implied consent

predominate as they did in *RTB*, *Gmail*, and *NutriSystem*. [redacted]

[redacted]

As in *RTB*, these empirical results evidence wide variation among the putative class such that a factfinder would need to assess "individual" and "subjective" understandings of the data collection at issue. 2024 WL 2242690, at *14. The factfinder would have to consider each class member's exposure to any of the many sources from which they could have learned about GA, extending far beyond those in Dr. Amir's survey. For example, GA is a publicly available and widely-known tool with extensive online documentation, including a help center describing how it works and a live demo.[8] One help center page, "How Google uses information from sites or apps that use our services," discloses that Google can obtain information such as "the URL of the page

[8] https://support.google.com/analytics?sjid=11023015501282844537-NC#topic=14090456; https://support.google.com/analytics/answer/10993011?hl=en.

you're visiting and your IP address" when visiting a website using GA.[9] That same page tells users how they can control this data sharing, *id.*, with one option being a browser add-on that blocks GA.[10] If class members learned from one of these sources that GA enables developers to track website activity and collect information, yet took no steps to investigate whether such tracking is occurring or to prevent it when they visit the Tax Websites, that could establish implied consent to the data collection. Similarly, class members could have seen media reporting on the Tax Websites' use of analytics technology yet continued to use them to file their taxes.[11] *See RTB*, 2024 WL 2242690, at *13–14 (consent individualized to resolve subjective understandings of third-party materials like news articles and non-profit reports).

This issue affects each of Plaintiffs' claims, but it is particularly acute with regard to CIPA, as Plaintiffs bear the burden of proving lack of consent. *See, e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 828. Plaintiffs supply no classwide evidence bearing on consent. Nor could they. There is simply no way to address implied consent on a classwide basis.

**2. Individual Issues Relating to Damages and Uninjured Class Members Predominate**

Plaintiffs must show "that damages are susceptible of measurement across the entire class[.]" *Comcast Corp. v. Behrend*, 569 U.S. 27, 34–37 (2013). This showing should include "a process for identifying and excluding uninjured class members." *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *16 (N.D. Cal. Mar. 29, 2022). The process Plaintiffs propose for identifying and excluding uninjured class members does not satisfy *Comcast*. Nor do they offer any way to assess discretionary penalties under the Federal Wiretap Act, which raises myriad individualized issues that preclude certification of that claim.

Plaintiffs rely on a "per violation" statutory penalty framework for the wiretapping claims, but they do not exclude uninjured class members in their calculation. *See* Cal. Penal Code § 637.2(a)(1); 18 U.S.C. § 2520(c)(2)(B); Fla. Stat. Ann. § 934.10(1)(b). Although "statutory

---

[9] https://policies.google.com/technologies/partner-sites
[10] https://tools.google.com/dlpage/gaoptout
[11] *See, e.g.*, Fondrie-Teitler et al., *Tax Filing Websites Have Been Sending Users' Financial Information to Facebook*, The Markup (Nov. 22, 2022), *available at* https://themarkup.org/pixel-hunt/2022/11/22/tax-filing-websites-have-been-sending-users-financial-information-to-facebook.

damages are not to be awarded mechanically," that is what Plaintiffs' model does. *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016). Plaintiffs claim that "a statutory damages framework" requires multiplying the number of times "TaxAct and TaxSlayer Users completed the process of preparing their federal tax returns," Mot. at 21, [redacted] A user who provided no financial information suffered no injury, yet would be compensated under Plaintiffs' model. Each instance of the [redacted] would need to be scrutinized. Moreover, [redacted]

[redacted] While such users would fall within the class because they completed their returns, they would not be injured. Variations around class members' reasonable expectations of privacy also mean that class members will lack Article III injury. *See supra* at 16; *Ingraham*, 2026 WL 1759155, at *7 (finding plaintiffs failed to identify common proof of classwide harm, rendering standing an individualized inquiry). Plaintiffs' damages model fails to account for them as well.

*Second,* with respect to the federal Wiretap Act, even more inquiries arise because statutory penalties are discretionary. A multi-factor inquiry governs that discretion, considering the violation's severity, the extent of any intrusion, and whether the plaintiff suffered actual damages. *Campbell*, 315 F.R.D. at 268. These are necessarily individualized inquiries as to each class member, taking into account the specific information sent to GA, the quantity of information,

and whether any damages resulted. [redacted] Plaintiffs do not explain how these factors could be addressed classwide. Variances in attitudes and experiences bear on the inquiry and would make any trial unmanageable.[12]

Without a viable classwide method of calculating damages for any of the claims or for any proposed classes or subclasses, no class can be certified.

### 3. Individualized Issues Predominate Regarding the Location of Alleged Interception

A CIPA section 631(a) plaintiff must prove, among other things, that the defendant "read[], or attempt[ed] to read," the contents of a communication while it was "in transit or passing over any wire, line or cable, or is being sent from, or received at any place within this state." Plaintiffs fail to offer common proof to show the communications were "sent from, or received at any place within the state," or otherwise meet section 631's territorial requirement.

This failure of proof doomed the section 631 class in *Frasco v. Flo Health*, 349 F.R.D. 557, 586–587 (N.D. Cal. 2025), where plaintiffs offered no classwide method of proving that the relevant data transmission occurred in California. Instead, the factfinder would have been required to parse through unexplained code to determine where the transmission occurred. *Id.* at 587. The same is true here. No common evidence shows that class members' communications were sent from or received in California—nor do Plaintiffs offer evidence that Google "read" the communications in California, as the statute also requires. Cal. Penal Code § 631(a).[13]

Impliedly conceding they cannot show reading in California through common evidence, Plaintiffs try to distance their case from *Flo Health* by focusing on the origin of transmissions. Plaintiffs claim "[GA] [d]ata includes fields clearly indicating the [user's location], including

---

[12] Plaintiffs also claim they can calculate penalties based on the "number of days" users "completed the process of preparing their federal tax returns," Mot. at 21. The number of days of a violation is relevant to their federal and Florida claims, but Plaintiffs offer no methodology for counting those days. *See* Fla. Stat. § 934.10(1)(b); 18 U.S.C. § 2520(c)(2)(B).

[13] [redacted] Declaration of Chris Roks ¶¶ 2–3. Accordingly, there is no classwide method to prove that putative California Wiretapping class members' transmissions to TaxAct were received or read in California.

coordinates identifying the center of the city where the device is located."[14] Mot. at 18. But this methodology conflicts with the class definition. As defined, the class appears to encompass individuals currently in California; it does not require that the class members were in California at the time they used the Tax Websites. The class, as defined, includes Californians who filed their taxes while in another state, and it excludes those who filed taxes in California but no longer live here.

Even assuming the class were redefined to encompass those who used the Tax Websites while in California, individualized inquiries would be required to identify class members. *First*, that an IP address implies a device was in California when accessing the Tax Websites says nothing about where Google *read* the communication—the key issue under 631(a). *Second*, [redacted] Black ¶ 52. *Third*, [redacted] *See* Black ¶ 54. Determining who was "in California" thus requires more than just reference to IP address or geolocation data within GA. Plaintiffs have not escaped the problem encountered by the *Flo Health* plaintiffs, and the California section 631 class should not be certified for the same reason. *See* 349 F.R.D. at 587.

### 4. Choice of Law Issues Predominate in the Nationwide Class

While CIPA sections 632, 635, and 638.51 do not include section 631's geographic limitation, they do not apply extraterritorially by default. Individualized inquiries must determine whether a nationwide class member's home state law applies.

Courts apply the governmental-interest test to determine whether California law applies to foreign plaintiffs and claims accruing outside California. *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001). This entails (1) determining whether the relevant states' laws differ; (2) examining the states' interests to determine whether a true conflict exists; and (3) examining the nature and strength of the states' interests to determine which state's interest would be more impaired by application of the other's laws. Each factor generates individualized issues.

---

[14]The Court should disregard the untimely-filed motion that revises this sentence to omit "the center of."

*First,* CIPA differs from wiretapping statutes in almost every other jurisdiction. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *12 (N.D. Cal. Apr. 11, 2024) ("[T]here are material differences between CIPA and the wiretapping statutes of the other 49 states"); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) (same). These differences "spell the difference between the success and failure of a claim," and present "material differences in the remedies" provided. *In re Yahoo Mail Litig.*, 308 F.R.D. at 602 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012)). For example, "some states expressly exclude email from their wiretapping statutes, others require only single party consent, and still others require plaintiffs to prove that they had either an objective or subjective expectation of privacy." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 964 (N.D. Cal. 2023). Moreover, states differ in providing a private right of action for pen-register violations.

*Second*, a "true conflict" exists between California law and the laws of the 49 other states that have an interest in applying their own law to their resident class members. States' interests in protecting the privacy rights of their own citizens are well-recognized due to the differences between statutory regimes, the rights they protect, and the remedies they provide. *See, e.g.*, *Kaiser Found. Health Plan*, 2024 WL 1589982, at *13.

*Third*, every other state has a superior interest in applying its own laws to eavesdropping or the use of pen registers within its borders or involving its residents. *Mazza*, 666 F.3d at 593 (holding that "each foreign state has an interest in applying its law to transactions within its borders" and applying California law "impairs [the states'] ability to calibrate liability to foster commerce."). And the "place of the wrong has the predominant interest." *Id.* For foreign class members, the place of the wrong—the "interception" of or "eavesdropping on" a communication between out-of-state plaintiffs and out-of-state Tax Preparers—will be located outside of California. Conversely, "California has a comparatively lesser interest in applying CIPA to non-residents[.]" *See In re Yahoo*, 308 F.R.D. at 604; Cal. Penal Code § 630 ("The Legislature by this chapter intends to protect the right of privacy of the people of *this state*." (emphasis added)).

**5. "Confidentiality" is Predominantly Individual**

Individualized inquiries will be necessary to determine whether a class member's communications with the Tax Websites were "confidential" within the meaning of section 632. Section 632(c) defines a "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto[.]" The statute excludes communications where the parties "may reasonably expect that the communication may be overheard or recorded." *Id.* Whether a class member had reason to expect that her communications with the Tax Website would be overheard or recorded requires consideration of individual circumstances.[15] *NutriSystem*, 289 F.R.D. at 592. (Confidentiality "is generally a question of fact that may depend on numerous specific factors.").

[redacted] Amir Report ¶ 28. And even for those who believe the information at issue is confidential, a factfinder still needs to assess whether that expectation is objectively reasonable under that user's specific circumstances. *NutriSystem,* 289 F.R.D. at 592. This depends on what disclosures each class member saw. *See supra* at C.1.b. For example, [redacted] Patterson Dep. 191:10–19, 192:3–14, 193:4–194:14.

It is also necessary to consider the specific information at issue to determine how reasonable each class member's expectation of privacy may be. For example, [redacted]

[15] Whether a particular class member has a reasonable expectation of privacy in the information that was shared about them also impacts whether they have a concrete injury under Article III. Thus, individual variances in class members' reasonable expectations also means that class members' standing cannot be resolved with classwide evidence.

[redacted] Even if such a link were apparent, individuals who only access pages concerning the most basic elements of a Form 1040 share nothing sensitive or unique. As the saying goes, taxes are one of only two certainties in life. The predominance of these individualized issues precludes certification of the CIPA 632 class and subclasses.

### D. The Court Should Deny Certification Under Rule 23(b)(2) Because Plaintiffs Primarily Seek Monetary Relief

Even if Plaintiffs had standing to seek injunctive relief, certifying a class under Rule 23(b)(2) is inappropriate where the primary relief sought is monetary. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001). Plaintiffs recognize that this Court has denied certification of a Rule 23(b)(2) class on those grounds and do not appear to dispute that they primarily seek monetary relief, i.e., statutory penalties. Mot. at 23. The Ninth Circuit has not revisited the rule in *Zinser*, even if some district courts have. Since Plaintiffs primarily seek statutory penalties, the Court should deny certification of any class under Rule 23(b)(2).

### E. Named Plaintiffs Are Not Adequate or Typical Class Representatives

Beyond their lack of standing, Plaintiffs have not proven that they are adequate class representatives. To be adequate, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citation modified); *see James v. Uber Techs. Inc.*, 338 F.R.D. 123, 133 (N.D. Cal. 2021). That requirement is not met here.

#### 1. The California Wiretapping Class Has No Adequate Class Representative

Nino is the only proposed representative for the California Wiretapping class, and his inadequacy is fatal to certification. [redacted]

[redacted] He is not part of the class and cannot represent it. With no representative, there can be no class.

**2. Nino and Patterson Are Not Adequate Because Their Credibility Issues Subject them to Unique Defenses**

Plaintiffs Nino and Patterson have serious credibility issues that will directly impact the litigation and preoccupy them with unique defenses. Credibility issues are relevant to adequacy "because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Briggs v. OS Rest. Servs., LLC*, 2020 WL 6260001, at *15 (C.D. Cal. Aug. 26, 2020) (internal quotations and citations omitted). While general credibility concerns may not defeat adequacy, plaintiffs may be inadequate when credibility issues are directly relevant to the litigation, "or when there are confirmed examples of dishonesty, such as a criminal conviction for fraud." *Id.* Here, both Nino (the only proposed California class representative) and Patterson (the only proposed Florida class representative) have credibility issues that are serious enough and close enough to the litigation to undermine their adequacy as class representatives.

[redacted]

[redacted]

[redacted] She is an inadequate class representative.

Given these issues, members of the California and Florida classes may well object that they are not being adequately represented.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for class certification.

Dated: September 2, 2026

COOLEY LLP

By: */s/ Benedict Hur*
Benedict Hur
Simona Agnolucci
Eduardo E. Santacana
Joshua Anderson
Anika Holland
Emily Abbey
Naiara Toker
Julia Irwin

Attorneys for Defendant
GOOGLE, LLC