# EXHIBIT L

Case 6:23-cv-01149-CEM-PCP Document 781-Filed 09/02/26 Page 2 of 34



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No.: 6:20-cr-00149-CEM-GJK |
| vs. | : | |
| JEFFERY STEPHEN HECK, JR., | : | Orlando, Florida July 14, 2021 9:52 a.m. |
| Defendant. | : | |

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

Counsel for Plaintiff: Jennifer M. Harrington
US Attorneys Office
400 West Washington Street, Suite 3100
Orlando, FL 32801

Counsel for Defendant: Joshua R. Lukman
Federal Public Defender's Office
201 S. Orange Ave., Suite 300
Orlando, FL 32801-3417

Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

Court Reporter: Suzanne L. Trimble, CCR, CRR, RPR
Federal Official Court Reporter
401 West Central Boulevard, Suite 46
Orlando, Florida 32801
e-mail: trimblecourtreporter@gmail.c

Exhibit 38 04/28/2026 Patterson

T A B L E   O F   C O N T E N T S

PROCEEDINGS PAGE

July 14, 2021

Colloquy Re: PSR Objections............................4
Judge's Ruling on Sentencing Guidelines.................7
Witness Statement: Tracylyn Heck........................9
Defendant's Allocution..................................9
Defense Sentencing Argument By Mr. Lukman..............10
Government's Sentencing Argument By Ms. Harrington......17
Judge's Comments.......................................22
Imposition of Sentence.................................26

P R O C E E D I N G S

THE COURTROOM DEPUTY: United States of America v. Jeffery Stephen Heck, Jr., Case No. 6:20-cr-149.

Counsel, please state your appearances for the record, starting with the Government.

MS. HARRINGTON: Good morning, Your Honor. Jennifer Harrington on behalf of the United States. With me is Special Agent Rod Hyre with the FBI.

THE COURT: Good morning.

MR. LUKMAN: Good morning, Your Honor. Assistant Federal Defender Joshua Lukman for Mr. Heck, present to my left.

THE COURT: All right. Good morning.

Mr. Heck, if you would be kind enough to stand next to your counsel. Raise and your right hand. You're going to be placed under oath.

(Jeffery Stephen Heck, Jr., sworn.)

THE COURT: All right. You can put your hand down. Sir, please state your full name for the record.

THE DEFENDANT: Jeffery Stephen Heck, Jr.

THE COURT: All right. Mr. Heck, on April 21, 2021, you entered a plea of guilty as to Count 1 of the indictment charging you with distribution of child pornography in violation of 18 U.S. Code, Sections 2252A sub (a) and sub (b). The Court previously accepted your guilty plea and has adjudicated you guilty of that offense. We have now reached the stage in the

proceedings where it is my duty to address several questions to you, your attorney, and counsel for the Government.

Mr. Heck, there was a presentence investigation report prepared in anticipation of today's sentencing hearing. Have you had a chance to review it?

THE DEFENDANT: Yes.

THE COURT: Have you had a chance to review it with the advice of your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you need more time to go over that agreement before we move on to the substantive part of the sentencing hearing?

THE DEFENDANT: No.

THE COURT: All right. Mr. Lukman, are there any unresolved objections to the guideline calculations or the factual findings you would like to take up at this time?

MR. LUKMAN: Yes, Your Honor, primarily two. There are a number of objections provided in the PSR. We were able to resolve most of them. The two remaining objections are with respect to paragraphs 26 and 29. They are the level enhancements for valuable consideration and use of a computer. The legal basis for those objections are articulated in the defense objection memo.

THE COURT: Would you like to incorporate by reference those arguments in your written memo for this argument?

MR. LUKMAN: I would incorporate that, Your Honor. And with respect to use of a computer, I know the Court's very familiar with that and can consider it as a potential grounds for variance. Precedent holds that it's properly scored and applied in this case. We just continue to make those objections to preserve the issue and to request that it at least be considered by way of mitigation.

THE COURT: Okay. Let's start with paragraph 26. All right. Paragraph 26, the defendant distributed in exchange for any valuable consideration but not for pecuniary gain, increase of five levels. So the allegation here is that on January 22, 2020, he distributed a video depicting child pornography in exchange for remaining in an Internet chat room where individuals were posting images of child pornography, therefore, a five offense level increase.

Would the United States like to respond to that objection, just to make sure you preserve your record?

MS. HARRINGTON: Yes, Your Honor. And we would adopt the reasoning provided in the addendum to the presentence report in the response to that, which is that we believe the enhancement is appropriate in this case, given the facts that were admitted by the defendant, that he was in fact in a chat room where child pornography was being exchanged, and as a prerequisite to staying in that chat room you had to contribute to that chat room. And so he did in fact distribute in that

Case 6:23-cr-00149-CEM-LHP Document 71 Filed 09/08/25 Page 6 of 33 PageID



chat room, so that he could continue receiving the child pornography that was being exchanged. And he was expecting in that case to continue to receive child pornography materials through that chat room.

And so I believe probation has cited a Seventh Circuit and an Eleventh Circuit case in the addendum. Specifically the Eleventh Circuit case *United States v. McElroy,* 353 Fed.Appx. 191, Eleventh Circuit 2009, which was a similar situation in which an individual was in an online user group, and in exchange for other child pornography distributes child pornography.

THE COURT: All right. And would you also like to respond, just to preserve your record, to the objection from the defense as to paragraph 29, the two point offense level increase for use of a computer?

MS. HARRINGTON: Yes, Your Honor. We would agree with probation's position and, again, would ask the Court to adopt the justification, justification and reasoning in the addendum to the presentence report that it is appropriately applied in this case, considering the defendant did in fact use an iPhone to distribute the image.

THE COURT: All right. As I'm looking at this, assuming hypothetically -- I mean, if you prevail on paragraph 26, that would alter things considerably. But if you were to prevail on paragraph 29, we're looking at two points off of 40. That gets you down to 38, and you're looking at a floor

of 240. So your range becomes 235 to 292. So you're looking -- okay. I understand.

I certainly would invite you to argue for variance if you think that's appropriate, but considering the circumstances and the matters presented by the defense, the objection as to paragraph 26 is overruled; the objection as to paragraph 29 is overruled.

Feel free to be seated, Mr. Heck.

The Court, therefore, determines that the undisputed factual statements and guideline calculations contained in the report will be adopted. As to the controverted guideline application, the Court has issued its rulings and will, therefore, adopt the position of the probation office as stated in the addendum.

The guidelines, therefore, are as follows: Total offense level 40, criminal history category I, 240-month prison sentence, five years to life of supervised release, no restitution in this case, a 5,000 to a two -- beg your pardon -- a 50,000 to $250,000 fine, and a $100 special assessment.

So I've had a chance to review matters that have been submitted by the defense. That includes a bound packet that includes a sentencing memorandum submitted by Mr. Lukman, along with an appendix with a number of mitigation photos, the report of Dr. Orozco, a psychologist, and letters of support from several people on behalf of Mr. Heck.

Having had a chance to consider and review that, at this

time would the defense be presenting any additional evidence in mitigation before I hear from the United States?

MR. LUKMAN: Not substantive evidence, Your Honor. We do have one statement to be made in mitigation from a family member present, but no additional evidence.

THE COURT: All right. And, Mr. Heck, if you would be kind enough to stand once more at counsel table with your attorney, there's a very important decision you need to make, and that's whether or not you're going to be making a statement to the Court prior to the imposition of sentence. That decision is yours and yours alone, but I need to ensure that whatever decision you make that decision is knowing, intelligent, and voluntary, with the advice of counsel.

So have you had a chance to talk to Mr. Lukman on whether or not you would be making a statement today?

THE DEFENDANT: I have.

THE COURT: Do you want to make a statement? Well, Mr. Lukman has indicated you have a family member wishing to make a statement. Do you want to go first, or do you want your family member to go first?

THE DEFENDANT: I would like my family member to go first.

THE COURT: All right. Feel free to be seated.

Mr. Lukman, is the family member going to be making a sworn or unsworn statement?

MR. LUKMAN: Unsworn statement. And that will be Ms. Tracylyn Heck, Mr. Heck's mother.

THE COURT: All right. Ma'am, if you would be kind enough to come forward to the podium. Once at the podium, if you would be kind enough to state your full name, you're certainly then invited to make a statement. Yes, ma'am.

THE WITNESS: My name is Tracylyn Heck. And I am the mother of Jeffery Stephen Heck, Jr. He is a good kid. He did make a horrible mistake. He made a bad decision. He's got three kids that miss him, a wife that misses him, and all we're asking is that you consider he did make a horrible mistake. He accepted responsibility for that. He's going to do what he needs to do to come back to us a better person than when he's going in. We miss him. If you could please consider giving him a little bit of leniency and not leaving him there the rest of his life. I don't want my son to come out somebody I don't recognize.

THE COURT: All right. Thank you, ma'am. I certainly will take that into consideration.

Mr. Heck, if you would like, you're certainly welcome to make a statement at this time.

THE DEFENDANT: Your Honor, everything I've done for the past -- for the past at least three years I've done -- I've done for my family. I miss my family. All I want -- all I've ever wanted to do is protect them. All I've ever wanted to do

was supply for them, be able to work and put food on the table for them. My priorities in life have always been God and my family.

Your Honor, I ask for leniency because what I want more than anything is to be able to be a father before my daughters are married. I would really like to have the chance to raise my daughters, instead of watch them grow up behind bars.

THE COURT: If there's anything else you would like to say, you're certainly welcome to do so. But I will take anything you've said thus far into consideration.

THE DEFENDANT: Through the time I've been incarcerated so far I've had to listen to my family fall apart because I haven't been there. I understand there's nothing I can do about that. But my goal is that my priority is God and to take care of my family. That will not change no matter what. And that's all I have.

THE COURT: All right. Thank you, sir, and I appreciate that. Feel free to be seated.

Will the United States be presenting any evidence in aggravation before I hear sentencing argument?

MS. HARRINGTON: No, Your Honor.

THE COURT: Mr. Lukman, would you like to make a sentencing argument?

MR. LUKMAN: Yes, Your Honor. My summation in mitigation of Mr. Heck's case, Your Honor, is relatively brief.

Case 6:23-cv-01527-CEM-LHP Document 1-2 Filed 08/21/2025 Page 13 of 34



I know the Court often appreciates concise arguments on this matter.

I would like to begin by acknowledging those present in the audience in support of Mr. Heck. The Court has already heard from Ms. Tracylyn Heck, Mr. Heck's mother. We also have Mr. Gary Patterson, Mr. Heck's stepfather.

And if you want to stand or raise your hand.

We have -- and the next two individuals is the female who was the victim in prior cases in the PSR. So I'm going to use their initials. Ms. R.P. is present, wearing black. And her father, Mr. M.P., is also present. Both of them did submit letters for Your Honor in the mitigation package. We also have Mr. Patrick King, Mr. Heck's friend in the red shirt, and Morgan Tanner, also Mr. Heck's friend in the paisley blouse.

Most of those individuals, Your Honor, did submit letters on behalf of Mr. Heck. I know the Court has already ruled -- or overruled the defense objections. If I may just briefly quote the case that we rested our objection on, not to challenge the Court's ruling --

THE COURT: No, no. That's fine. You're preserving your record.

MR. LUKMAN: Thank you. I know that at least one of the cases the probation office and Government rely on appear to be unpublished. We have a more recent case, *U.S. v. Spriggs*, S-p-r-i-g-g-s. That's 666 F.3d 1284. That's also cited in our

objection.

In that case, the sentence was vacated, and the valuable consideration enhancement was deemed improperly applied by our circuit here. And just one or two sentences from this by way of mitigation purposes at this point. First, the court said, Therefore the expectation of receiving a thing of value must be understood in the context of a transaction conducted for valuable consideration -- and in that case Spriggs hoped that a peer would reciprocate his generosity, and this is with respect to exchanging child pornography -- does not amount to a transaction conducted for valuable consideration. So the Government logically argues that one would hope that being in a chat room there would be exchanging of this material obviously, but, you know, hope alone, at least in the context of this particular case, which involved peer-to-peer sharing -- but, nevertheless, hope is not sufficient.

And lastly from the *Spriggs* case, Without evidence that Spriggs and another user conditioned their decisions to share their elicit image collections on a return promise to share files, we cannot conclude that there was a transaction under which Spriggs expected to receive more pornography. So common sense, being in a venue where it's exchanged, obviously, receipt can be presumed in some cases, but I would just argue that mere hope, at least in the context of the *Spriggs* case, is not sufficient.

Case 5:23-cv-03527-PCP Document 71-12 Filed 11/02/25 Page 13 of 34



And I'm offering that in mitigation, Your Honor, because there's obviously a number of different factors that could support a valuable consideration enhancement. And as the Court alluded to, five levels, that's a huge enhancement. If the Court were to arguendo sustain both of the defense objections, we're talking about a potential, what is it, seven level swing. That would bring Mr. Heck very close to a ten-year low end guideline range.

So, you know, obviously, if people were trading one on one and specifically bartering to exchange in these images, not in a chat room open forum but a more specific set of circumstances, that person would similarly receive the same enhancement. So with respect to culpability, even though the Court's made its ruling, I would suggest for mitigation purposes this is not a particularly culpable exchange contract, understanding, or valuable consideration case. So I would ask the Court consider the specific facts of what Mr. Heck stipulated to in his plea agreement and in the PSR with the unobjected facts as being not particularly heinous in support of that five-level enhancement.

Use of a computer, obviously, that's brought up in almost every case before this Court. That's a specific offense characteristic. Perhaps theoretically there should be legislative action that takes that enhancement away and then offers a reduction for not using a computer. I don't know. But I would argue that with modern technology and modern cases using

a computer, or in Mr. Heck's case an iPhone, is not a particular unique specific offense characteristic.

And then just summarizing some of the points from the sentencing memorandum. Mr. Heck is being scored for the number of images on his device. There's no mens rea requirement for those images. But it is my understanding that six or seven images and a video were accessible to Mr. Heck on his device. The remainder of the 116 or so images were thumbnail previews that the phones automatically create when you have, view, or downloaded an image, but the original source files for those thumbnails were no longer on his phone. So to the extent that that number of 116 may be shocking to the Court, only six or seven were accessible to Mr. Heck at the time that his phone was seized.

Mr. Heck has never been incarcerated before, despite these two prior cases outlined in the PSR, referring to paragraphs 43 and 44, both involving Ms. R.P. as the victim, who, again, is present in the courtroom.

And Mr. Heck will face obvious collateral consequences as a result of this conviction. He's not a convicted felon. He will be. And he was not previously a registered sex offender, and now as a result of today, he will be.

To the extent that Mr. Heck may be amenable to supervision and rehabilitation, he has successfully completed both of his terms of probation in those aforementioned prior cases. He has

Case 5:23-cv-03527-PCP Document 118-11 Filed 09/08/25 Page 15 of 33



not had a violation of probation. He's open to probation, treatment, and counseling.

I know that this Court permits the probation office's recommendation to be published to the defense in this case. I would perhaps suggest that if the Court did have concerns and was considering potential mitigation below a 20-year sentence in this case that that be offset with additional supervision because Mr. Heck has demonstrated that he can and is willing to be supervised.

Of course, being a sex offender will include supervision outside the context of the court for life, and to the extent he remains in our state jurisdiction here with his family, I think it's relatively well-known that Florida is not a friendly jurisdiction to registered sex offenders with the plethora of obligations they have to comply with.

Also, even if Mr. Heck were to receive a ten-year sentence, who knows where technology will be in ten years. I think that supervision offices like the probation office will have tools available to them to ensure compliance like the electronic media, you know, restrictions, internet access, things like that. So I don't think the Court should be too concerned with recidivism.

The most unique thing about this case I think, Your Honor, is Ms. R.P.'s support of Mr. Heck. I don't know how often -- I'm not here for every case that appears before this Court that

is similarly situated, but we have a child victim with a hands-on offense who is here to support the defendant. I think that's incredibly unique. I think that in many cases the victims from past incidents either are asking for the maximum, or they're silent and the Court is left to presume the worst. In this case, it's the exact opposite. I would suggest that is incredibly unique and that the Court should give great weight to that, as the Court need not worry about any particular permanent or detrimental impacts on Ms. R.P.'s life, since those prior cases outlined at PSR paragraphs 33 and 34.

Her father, Mr. M.P., also submitted a letter to the Court also in support of Mr. Heck. Again, I would suggest that is incredibly unique, and, of course, you know, victims have the right to be heard. Although they're not necessarily victims in this particular case, they are victims in prior cases, and those prior cases are being used to enhance Mr. Heck's guidelines in this case. So I would ask that the Court consider their statements as provided in writing in our sentencing memorandum.

The letters of support outline I think what would sound like a relatively dysfunctional upbringing, different households. I know Mr. Heck didn't have any control over that. But there's obviously some issues within the family. He's had some struggles. But the letters also speak to Mr. Heck's character outside the context of this case and this charge.

And then lastly, Mr. Heck's allocution that he just provided

to the Court, as well as his thoughtful written allocution, the handwritten letter that's attached to our sentencing memo, suggest that Mr. Heck has had quite some time to reflect on this. This is the longest he's been in custody. He understands how serious this is, especially when we meet and go over, you know, the sentencing guidelines and how devastating they are when they reach calculations that exceed the stat max in cases such as this.

So I think that concisely summarizes the mitigation, Your Honor. If the Court has any questions for me, I'll be happy to address them. What we are asking for is a sentence that does not exceed ten years. I know that is a dramatic variance from where he scores out to, but taking into consideration the articulated arguments, I don't think it's particularly unreasonable under the circumstances.

THE COURT: All right. Thank you, Mr. Lukman.

Would the United States like to make a sentencing argument?

MS. HARRINGTON: Yes, Your Honor. Your Honor, the United States seeks a guideline sentence of 20 years in this case. I would first start by addressing the nature and circumstances of the offense and that it is in fact serious. In January 2020, the defendant was online in a chat room on the Kik application, and this chat room was dedicated to the sharing of child sexual abuse materials.

There were terms to being allowed to stay in this room. It

required that the participants or the members of this room participate in some way. If you want to view, you have to contribute. And so this defendant did not just receive images and videos of child pornography while he was in this room, but he in fact participated and he distributed in this room. And that's the charge that he's facing today, that he's answering to. And he did that so that his supply wouldn't be cut off, so that he could stay in that room where he knew this type of material was being traded.

And so six months later law enforcement seizes his phone, and on his device they find more child sexual abuse material, 116 images and one video, to include a very recognizable thumbnail of the video that he distributed while he was in that chat room. And I won't go into the specifics of the video that he distributed, but you could see in the PSR, paragraph 10, based on the description of that video why a thumbnail might be recognizable.

But this isn't all that they found on the phone. Law enforcement also found a text message conversation from October 2019 in which this defendant is talking to someone he believes to be a 15-year-old girl asking for nude photos of her, talking about sexual things he desires to do with her, and sending her a photo of his genitalia. And when he's asked by the agents about this and why he did it, he says, Because that was a mistake I made.

Well, it's the Government's position that the word "mistake" is not appropriate in this situation. This was a conscious choice. And we've heard now several times, again, this word "mistake" being thrown around. But this was a decision that the defendant made. It was a decision to get on the Kik application and to join a chat room dedicated to the trading of child pornography, and it was a decision to participate in that chat room, and it was a decision to reach out to an individual who he believed was 15, and it was a decision that he's made that you see many decisions throughout his history that cause concern. But it seems that these mistakes, according to the defendant, are commonplace and that he doesn't learn from his mistakes because we're here today.

And so that leads to his history and characteristics. Who is Jeffery Heck? What is he about? Well, we know that this is not his first encounter with the law because on a total of four separate occasions, three times when the defendant was 15 and once when the defendant was 20, he sexually abused his former minor stepsister who was nine and then 13 years old.

And each time he gets off with a slap on the wrist. Aggravated assault first, no sex offender registration, not a felony, probation. Second time, battery, not a felony, no sex offender registration, probation. And this is for digitally penetrating a nine-year-old on three occasions and then putting his penis to her mouth when she was 13 and he was 20.

But he did undergo sex offender treatment, as is referenced in his PSR and in Dr. Orozco's report. And even though he finds himself, yet again, in front of a judge for offenses involving the sexual abuse of children, he does not feel therapists are necessary and he doesn't feel that sex offender treatment would be helpful.

And the defense's sentencing memorandum also provides insight on this defendant. Now, the Government does not dispute that the defendant had a difficult upbringing. He had his share of family struggles and dysfunction. But just from the number of letters provided by his family and his family support here today, it does appear that he has and has had support.

But that support today also comes from unexpected places, as the defense pointed out, like his former stepsister and former stepfather, and it's in those letters to the Court that really paint a picture of this defendant. And it's a picture that shows what we already knew from his criminal history, that he was shielded from blame constantly, that he was protected from the consequences of his actions.

Mr. Pankow in his letter describes how the defendant was manipulated into lying about what he did to his stepsister as an adult. That he was manipulated into lying and claiming that the 13-year-old child was the one that was making things up. And it wasn't just this defendant who was manipulated into lying about that incident and to protect this defendant because the

13-year-old victim was also manipulated into lying as well.

And you can see from her letter that despite at one time being manipulated into recanting her allegation, she knows what happened, and she knows what this defendant did to her, and yet still she claims it wasn't as drastic or as harrowing as many make them out to be. But it's the Government's position that there are no set of facts that can make the sexual abuse of a 9- and 13-year-old not drastic or not harrowing and not worthy of punishment.

And while the Government is certainly relieved to know that it sounds like this victim has moved on and has been able to process after her abuse, in order to still have some sympathy for this defendant and support him, this is from someone who during her most formative years, as a nine-year-old and as a 13-year-old was sexually abused at the hands of this defendant.

And so throughout these letters, we see, again, blame being placed elsewhere; on his father, on his mother, on an unknown individual who may have sexually abused the defendant but was unreported, on the defendant's wife's suspected infidelity, and even as recent as his arrest, the defendant again denied to agents that he sexually abused the minor victim in 2013.

But this defendant is no longer a boy. He is a grown man. He's 28 years old. Who is responsible for his own actions. And it's time that he face the consequences that he has thus far managed to escape.

The defendant's guideline score is 40, which places the guidelines at 292 to 365 months, but because of the statutory maximum, the most that this Court can impose is 240 months. But the guidelines score says something. It speaks to the gravity of his conduct, and it speaks to his history and characteristics.

And as this Court is aware, this Court must render a sentence that provides adequate deterrence and respect for the law, protects the public, and also provides just punishment in this case. The United States submits that under the facts of this case, given the history and circumstances and characteristics of this defendant, that a guideline sentence of 20 years will be sufficient but not greater than necessary to achieve the purposes of sentencing and satisfy the factors set forth in Title 18, United States Code, Section 3553(a).

Thank you, Your Honor.

THE COURT: All right. Thank you for the argument.

I'm going to take a brief ten-minute recess and return and impose the sentence. I just wanted to opportunity to deliberate a little further. Court's at recess.

(Recess at 10:24 a.m., until 10:36 a.m.)

THE COURT: The Court has asked the defendant why judgment should not now be pronounced, and after hearing the defendant's response, the Court has found no cause to the contrary. The parties have made statements on their behalf or

Case 6:23-cr-00149-CEM-LHP Document 81-12 Filed 01/02/26 Page 24 of 34 PageID



have waived the opportunity to do so, and the Court has reviewed the presentence report and the advisory guidelines.

Admittedly, I was uncomfortable when I looked through the defense sentencing packet and saw a letter in here from the victim of the prior two cases, and I grew increasingly more uncomfortable when I saw the victim here in the courtroom. So let me read you a part of this letter that to me is a screaming cry for help: "When I was younger, he was charged with sexually assaulting me. Both of these instances, while they did happen, were not nearly as drastically or harrowing as many make them out to be."

In the second paragraph it reads as follows, in the middle of the paragraph with the first word *he*, "he" referencing the defendant: "He struggled about as much as me when we were younger having to deal with his mother, my stepmother, who frequently was harsh and incredibly strict, along with our grandmother, who was just like her daughter. Tracy, his mother, has always being controlling, liking everything exactly her way, and if it wasn't her way, all hell would break loose. She would constantly beat me and ground me for various small things, constantly demand I was lying, and just overall was horrible to me.

"With Jeff, she was controlling in a different way. She would call him like a baby. He could never do wrong in her eyes. She never allowed him to be punished or reprimanded for

his actions, no matter what he did. Either the other side was lying or she would just blatantly ignore it.

"This same thing happened the second time Jeff sexually abused me. She convinced me, who was 12 or 13 at the time, that I was lying and manipulated me into telling the police so too. Looking back on it now, while, yes, he did do something horrible, it wasn't something worth losing a good deal of his life over. So all in all, I'm glad that the situation was dealt with leniency."

So let me start by saying you did nothing wrong. You deserve better than this, and I question the judgment of the people who brought you in here to do this today. So I wish you well. You have no baggage from this as far as anyone is concerned, and I hope you have a good and productive life.

It seems to me that there has been an orchestrated effort to protect a monster for a very long period of time. You pleaded down. And she says this happened. You pleaded down from a lewd and lascivious battery in state court to a simple battery. I can only imagine what was done and what people were forced to say to get you a simple battery.

So the first determination I have to make when I see these cases are, Is this a dangerous person, because that really drives my decisionmaking process from that point on. And these are difficult cases.

Because you have a very good attorney, who in my opinion has

done everything that could be done to protect you and to try to get you some sort of -- some sort of leniency. But there's a big problem.

One of the most effective arguments they often make in these cases are that while someone may have a certain amount of child pornography, which is, per say, illegal, they've never reached out and put their hands on anyone. There's no evidence that they're trying to put their hands on anyone.

So you are 15 years old, and you commit -- it's a sexual battery. It's rape on a nine-year-old. You go through the juvenile system. And that's your chance. You're 20 years old, and you do it again in a different way to a 13-year-old. And now here you are in your late 20s, and you're online exchanging child pornography. But worse, this conversation is pretty disturbing. This conversation -- and let's call it what it is. You like 15 year olds.

You've been through the system twice, and you got a break that is beyond belief. But I don't question what happened. There was probably reasons for it, and I don't know all the details, but there are a lot of people --

And I can see from your body language you don't agree with me. You don't have to. But I'm not your family. I'm not making up excuses for you. And I don't think you're the golden boy. I think your actions speak for themselves. And I'm sorry that this victim is in here because she's not to blame for any

of this.

So if you could be kind of to stand with your counsel, I'm ready to impose the sentence.

Pursuant to Title 18, U.S. Code, Sections 3551 and 3553, it is the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 240 months.

Upon release from imprisonment, you shall serve a ten-year term of supervised release. While on supervised release, you shall comply with the mandatory and standard conditions adopted by the Court in the Middle District of Florida. In addition, you shall comply with the following special conditions:

You shall participate in a mental health treatment program specializing in sex offender treatment and submit to polygraph testing for treatment and monitoring purposes. You shall follow the probation officer's instructions regarding the implementation of this court directive. Further, you shall contribute to the costs of these services not to exceed an amount determined reasonable by the probation officer based on ability to pay or availability of third-party payment and in conformance with the probation office's sliding scale for treatment services.

You shall register with the state sexual offender registration agency in any state where you reside, visit, are employed, carry on a vocation, or are a student, as directed by

probation.

The probation officer shall provide state officials with all information required under Florida sexual predator and sexual offender notification and registration statutes and/or the Sexual Offender Registration and Notification Act (Title I of the Adam Walsh Child Protection and Safety Act of 2006) and you may be directed to report to these agencies personally for required additional processing, such as photographing, fingerprinting, and DNA collection.

You shall have no direct contact with minors, that's a person under the age of 18, without the prior written approval of the probation officer and shall refrain from entering into any area where children frequently congregate including but not limited to schools, daycare centers, theme parks, playgrounds.

You are prohibited from possessing, subscribing to, or viewing, any images, videos, magazines, literature, or other materials depicting children in the nude or in sexually explicit positions.

Without the written approval of your probation officer, you are prohibited from either possessing or using a computer.  That includes but is not limited a smart phone, a hand-held computer device, a gaming console, an electronic device capable of connecting to an online service or an internet service provider. This prohibition includes a computer at a public library, an internet cafe, your place of employment, or an educational

facility.

Also, you are prohibited from possessing an electronic data storage medium, including a flash drive, compact disk, or a floppy disk, or using any data encryption technique or program. If approved to possess or use a device, you must permit routine inspection of the device, including the hard drive and any other electronic data storage medium, to confirm adherence to this condition. The United States Probation Office must conduct the inspection in a manner no more intrusive than necessary to ensure compliance with this condition. If this condition might affect a third party, including your employer, you must inform the third party of this restriction, including the computer inspection provision.

You shall submit to a search of your person, residence, place of business, any storage units under your control, computer, or vehicle, conducted by the United States probation officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. You shall inform any other residents that the premises may be subject to a search pursuant to this condition. Failure to submit to a search may be grounds for revocation.

Having been convicted of a qualifying felony, you must cooperate in the collection of DNA as directed by probation.

The mandatory drug testing requirements of the Violent Crime

Control Act are suspended; however, you must submitted to random drug testing not to exceed 104 tests per year.

Based on the financial status of the defendant, the Court will waive the imposition of a fine.

Ms. Harrington, have you filed any forfeiture matters in this case?

MS. HARRINGTON: Yes, Your Honor, we have. We would ask that that be included in the judgment. The Court has entered a preliminary order of forfeiture at doc. 49 on the record.

THE COURT: All right. I'll close that out.

It is further ordered the defendant shall pay the United States a special assessment of $100 which shall be due immediately.

The Court further finds that because the defendant is indigent, the $5,000 special assessment, pursuant to 18 U.S. Code, Section 3014, will not be imposed.

After considering the advisory sentencing guidelines and all the factors identified in Title 18, U.S. Code, Sections 3553(a)(1) through (7), the Court finds that the sentence imposed is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing.

The Court has accepted the plea agreement because it is satisfied that the agreement adequately reflects the seriousness of the actual offense behavior and that accepting the plea

agreement will not undermine the statutory purposes of sentencing.

The Court having pronounced sentence, does counsel for the defendant have any objection to the sentence imposed or the manner in which the Court imposed sentence, other than those stated for the record?

MR. LUKMAN: May the record reflect the defense's procedural and substantive reasonable objections?

THE COURT: And they are preserved for the record.

Any objections from the United States?

MS. HARRINGTON: Your Honor, no objection. However, I would like to ask that the Court bifurcate the restitution portion of this sentencing hearing, and as a basis for that, we have had images that were received from the -- that were discovered on the defendant's device. These images were sent to NCMEC on January 29th, 2021, and it's my understanding COVID caused a lot of backlog with NCMEC, and we still have not received the identification reports regarding whether or not there are any identifiable victims in the photos possessed by the defendant. And so for that reason, we would ask the sentencing be bifurcated so we can hopefully get ahold of these reports to better identify whether or not any identifiable victims are present in this case.

THE COURT: Mr. Lukman, would you like to be heard on that?

MR. LUKMAN: Not really, other than that Mr. Heck would waive his personal appearance at any future bifurcated restitution hearing.

THE COURT: How much time do you reasonably expect? I can't just leave it open indefinitely.

MS. HARRINGTON: Your Honor, if we could get approximately 45 days to try to put some additional pressure on NCMEC in getting us these reports. And I would note for the record that part of the defendant's plea agreement -- and I can find the paragraph number -- indicates he would not be opposed to bifurcation of a restitution portion.

THE COURT: All right. Ms. Maria, find a day 60 days from now and we'll set it.

And if you have it, we'll take it up at that time. If not, then we're going to potentially be in a situation we're going to need to move on.

I'm in trial the entire month of September so the only -- and all of October too? Oh, give me that date again.

THE COURTROOM DEPUTY: October 19th.

THE COURT: All right. October 19th, is that date and time acceptable to the United States?

MS. HARRINGTON: Yes, Your Honor.

THE COURT: And we'll do 10:00 a.m. Is that date and time acceptable to the defense?

MR. LUKMAN: Yes, Your Honor.

THE COURT: The defendant is hereby remanded to the custody of the U.S. of Marshal to await designation by the Bureau of Prisons.

MR. LUKMAN: Your Honor, would the Court make a recommendation for central Florida in light of his next of kin.

THE COURT: Yes. In order for familial proximity, the Court is recommending that he be placed as close to central Florida as possible.

To the extent permitted by your plea agreement, you have the right to appeal from the judgment and sentence within 14 days from entry of judgment. Failure to appeal within the 14-day period shall constitute a waiver of your right to appeal.

The Government may also file an appeal from this sentence.

You are also advised that you are entitled to the assistance of counsel in taking an appeal, and that if you are unable to afford a lawyer, one will be provided for you.

If you cannot afford the filing fee, the Clerk of the Court will be directed to accept notice of appeal without such fee.

Is there anything further from the United States?

MS. HARRINGTON: No, Your Honor. Thank you.

THE COURT: From the defense?

MR. LUKMAN: No, Your Honor. Thank you.

(WHEREUPON, this matter was concluded at 10:48 a.m.)

* * *

Case 5:21-cv-03527-HCP Document 781-12 Filed 09/08/21 Page 33 of 33 PageID



CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

/s/ Suzanne L. Trimble ________ 9/8/21
Suzanne L. Trimble, CCR, CRR, RPR Date
Official Court Reporter