# EXHIBIT A

## (REDACTED Google's Sur-Reply in Opposition to Plaintiffs' Motion for Class Certification)

COOLEY LLP
BENEDICT HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO SANTACANA (281668)
(esantacana@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
ANIKA HOLLAND (336071)
(anika.holland@cooley.com)
EMILY ABBEY (341762)
(eabbey@cooley.com)
NAIARA TOKER (346145)
(ntoker@cooley.com)
JULIA M. IRWIN (352861)
(JIrwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
GOOGLE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MARY SMITH et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE, LLC,

Defendant.

Case No. 5:23-cv-03527-PCP

**DEFENDANT GOOGLE LLC'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Dept: Ctrm. 8 – 4th Floor
Judge: Honorable P. Casey Pitts

Date Action Filed: 7/14/2023

## INTRODUCTION

Defendant Google LLC ("Google") submits this Sur-Reply to address two issues raised after the submission of Google's Opposition: Plaintiffs' newly proposed "Alternative Classes," introduced for the first time in their Reply, and the intervening enactment of California Senate Bill 690 ("SB 690"). Neither Plaintiffs' modified class definitions nor the current statutory scheme supports class certification under Federal Rule of Civil Procedure 23. ***First***, Plaintiffs' proposed Alternative Classes—which limit membership to individuals for whom records of completing the tax filing process are in Google's "possession, custody, or control" and who filed "while in" California or Florida —compound, rather than cure, the fatal manageability defects identified in Google's Opposition. Google's records alone cannot reliably identify class members or establish their physical location. ***Second***, the September 30, 2026 enactment of SB 690 retroactively eliminates the private right of action under CIPA Section 638.51 for pending claims commenced within the last two years. Plaintiffs added their pen register claim to this litigation about six months ago, when they filed their First Amended Complaint ("FAC") on April 22, 2026. *See* ECF No. 154. This intervening change in California law is fatal to Plaintiffs' pen register claim. Even if it wasn't, SB 690 renders class adjudication inappropriate and forecloses Rule 23(b)(2) injunctive relief for Plaintiffs' Pen Register Class and Subclasses. Because Plaintiffs' proposed classes remain unmanageable and legally barred, class certification must be denied.

## ARGUMENT

### I. Plaintiffs' Alternative Classes Compound, Rather than Cure, the Manageability Problems Identified in Google's Opposition.

Plaintiffs' Motion sought certification of several classes and subclasses of individuals who "completed the process of preparing their federal tax return" on the TaxAct and TaxSlayer websites, relying on technical expert Dr. Jonathan Hochman to devise a method to identify those individuals in the agreed-upon sample of Google Analytics records that Google produced. ECF No. 173 ("Mot.") at 1–3. In opposition, Google (and its rebuttal expert, Dr. Black) pointed out that Plaintiffs failed to demonstrate that their proposed classes and subclasses were manageable, including because Plaintiffs' class definitions failed to account for users who consented to the challenged

data transmission; [redacted] ECF No. 180 ("Opp.") at 11–19; ECF No. 181-1 ("Black Report") ¶¶ 10, 36–59. Google also highlighted how Dr. Hochman arbitrarily selected the [redacted] Opp. at 17; Black Report ¶ 71. In response to these criticisms, Plaintiffs now propose new "Alternative Classes" in their reply, adding a requirement that class membership be limited to individuals "for whom records of completing the [federal tax filing] process are in Google's possession, custody, or control." ECF No. 186 ("Reply") at 1. Plaintiffs also propose modifying the California and Florida Wiretapping Classes and Subclasses to include only those individuals who completed their tax filings "while in" California or Florida. *Id.*

Rather than solve the manageability problems Google identified in its Opposition, however, the Alternative Classes exacerbate them. Class membership cannot reliably be determined by reference to Google's data alone, it is not administratively feasible to produce the entire [redacted] inherently depends on third parties, whose subpoena compliance would not necessarily be overseen by this Court, and [redacted]. Plaintiffs have not met their burden of demonstrating their proposed Alternative Classes are manageable under Rule 23, and the Court should not certify these classes.

### A. Google's records alone cannot reliably identify individual class members; Plaintiffs' Alternative Classes depend on third-party data that do not cover the full class periods.

Plaintiffs' Alternative Classes rest on the premise that [redacted]

The reliance on third-party records creates its own manageability issues. Plaintiffs' Alternative Classes define TaxSlayer Class membership to include individuals who completed the federal tax filing process on the TaxSlayer website from February 1, 2013 to present. *See* Reply at 1. [redacted] *Id.*; Liskow Decl. Ex. 7 ¶ 2. Any subpoena for that data would be enforced in the district of compliance under Rule 45(d) in the first instance, not this Court, meaning the pace, completeness, and substantive scope of discovery critical to identifying class membership

would depend on rulings that the parties and this Court cannot control. Plaintiffs have not proactively sought production of the necessary third-party data nor made the requisite manageability showing. *See, e.g.*, *Lewis v. First Am. Ins. Co.*, 2017 WL 3269381, at *7 (D. Idaho Aug. 1, 2017) (holding that because class membership could not be determined from defendant's records, the action was "not manageable on a class-wide basis" and third-party production of records likewise insufficient to determine class membership could not cure this defect.).

**B. Production of Google's complete dataset is not feasible, and searching it by individual user IDs is extremely burdensome.**

Plaintiffs' Alternative Classes also rest on the assumption that the entire GA dataset can either be produced or searched, which is a faulty premise. Dr. Hochman's opening analysis was performed on a comparatively small sample of Google Analytics records—[redacted] Roks Declaration ¶ 4; *see In re Meta Pixel Tax Filing Cases Meta Platforms, Inc*., 826 F. Supp. 3d 1217, 1236 (N.D. Cal. 2026) (finding manageability issues, including those associated with reviewing nine ***terabytes*** of data, defeated class certification). The costs of handling this enormous volume of data would eat into any potential class recovery. *See Thomas v. Baca*, 2005 WL 3497819, at *4 (C.D. Cal. Dec. 20, 2005) (finding "that the plaintiffs must bear the defendants' costs for compiling the list of potential class members" absent "evidence that the cost of performing the task is unsubstantial or that the task is part of the defendants' ordinary course of business.") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978)); *McNamara v. Infusion Software, Inc.*, 2020 WL 4921984, at *2 (D. Ariz. Aug. 21, 2020) ("[W]hen a common fund is created to compensate a class of plaintiffs and then reduced by a percentage in order to pay the attorneys' fees and costs, the

plaintiffs' recovery is reduced.").

Even setting aside production, Dr. Hochman's alternative proposal—[redacted]—is independently burdensome. [redacted]

**C. Limiting the Pen Register Class and Subclasses to records in Google's possession does not address the preparer-versus-taxpayer problem.**

Limiting the Pen Register Class and Subclasses to persons for whom records of completing the tax filing process are in Google's possession does not address a separate, independent problem specific to those classes: Google's records do not distinguish between the tax preparer and taxpayer. *See Brown v. DirecTV, LLC*, 2022 WL 2117803, at *6 (C.D. Cal. May 19, 2022) (decertifying because the only way to identify injured class members "would be having that Class Member testify that the call he or she received was prerecorded" and the class was therefore unmanageable). As discussed in Dr. Black's rebuttal report, Dr. Hochman's analysis fails to consider that the user preparing a return may be a different person than the taxpayer whose information appears in the return. Black Report ¶¶ 48–50. As a result, the alleged PRI captured in the Google Analytics data could reflect the tax preparing user's information rather than the taxpayer's. *Id.* For example, Plaintiff Nino testified that he and his father "fill[ed tax returns] out

together" and used his father's TaxAct account, associated with his father's email, to do so. ECF No. 181-6, Anderson Decl. Ex. F, Nino Tr. at 36:3–6, 134:3–22; Black Report ¶ 50. And Plaintiff Patterson filed taxes on behalf of her husband and son, meaning that the PRI would correspond to Plaintiff Patterson but the TRI and TPI would correspond to her husband and son. Black Report ¶ 50.

### D. Plaintiffs' revised "while in California" and "while in Florida" limitations introduce new, unsupported location theories that do not cure the manageability problem.

Plaintiffs' Alternative Classes also revise the California and Florida Wiretapping Class and Subclass definitions to require that members completed their taxes "while in" California or Florida in an attempt to save their CIPA Section 631 and Florida Wiretap Act claims. *See* Opp. at 18 (citing *Frasco v. Flo Health*, 349 F.R.D. 557, 586–87 (N.D. Cal. 2025) (declining to certify a Section 631 class where plaintiffs offered no classwide method of proving that the relevant data transmission occurred in California)). [redacted] Nor do TaxAct or TaxSlayer registration addresses fix the problem. An account registration address is not necessarily a user's actual location when filling out their taxes online, as users may prepare their taxes elsewhere or fail to update their accounts with their current addresses. *See* Black Rebuttal ¶ 50 [redacted] Put simply, an account registration address does not record where the device was located when the return was prepared. Plaintiffs offer no method of establishing that a given class member completed the return preparation process while physically

present in California or Florida. This is an independent reason Plaintiffs' California and Florida Wiretapping classes cannot be certified.

* * *

In sum, Plaintiffs do not meet their burden of demonstrating their "Alternative Classes" are any more manageable than their original classes. By conditioning class membership on records in Google's "possession, custody, or control," Plaintiffs ironically force a reliance on [redacted] This is the last-ditch effort to address an apparent defect in their motion by speculating about data they neither sought nor have ever seen. Because Plaintiffs have failed to propose an administratively feasible or manageable method to identify class members using common proof, certification of the Alternative Classes must be denied under Rule 23.

## II. SB 690 Independently Forecloses Certification of Plaintiffs' Proposed Pen Register Class and Subclasses.

As will be demonstrated by Google's forthcoming Rule 12(c) motion—which Google intends to file and have noticed for the first available hearing date after SB 690 becomes effective in January—Plaintiffs' pen register claim should be dismissed because the law "eliminat[es] the private right of action for these claims and appl[ies] that change retroactively to ***pending claims commenced within two years*** before" January 1, 2027, and Plaintiffs' pen register claims were commenced in April 2026. S.B. 690, 2025–2026 Reg. Sess., at 7 (Cal. as amended July 2, 2026) (Senate Rules Comm., Off. of Senate Floor Analyses) (emphasis added); *see* S.B. 690, 2025-2026 Reg. Sess. (Cal. as enrolled Sept. 30, 2026) ("The amendments to this section by Senate Bill No. 690 of the 2025–26 Regular Session apply retroactively to any pending claim in an action commenced within two years before the operative date of that legislation."); ECF No. 159 (newly alleging pen register violations). The Court should not certify a claim that will be dismissed. *See Goodwin v. Exec. Tr. Servs., LLC*, 680 F. Supp. 2d 1244, 1257 (D. Nev. 2010) (holding that because

the court's "ultimate conclusion with respect to [the defendant's pending motion to dismiss] renders Plaintiffs' motion for class certification moot," "it is therefore appropriate for this Court to enter an Order dismissing the [] claims without first ruling on the motion for class certification.").

But even if the claim somehow survived Google's Rule 12(c) challenge, SB 690 forecloses certification of Plaintiffs' proposed pen register classes for two independent reasons: ***First***, by vesting exclusive enforcement authority in the Attorney General, SB 690 confirms that Attorney General enforcement—not private class litigation—is the superior mechanism for adjudicating pen register claims, defeating Rule 23(b)(3) superiority. ***Second***, by eliminating the private right of action going forward, SB 690 precludes any possibility of future injury, foreclosing certification of a Rule 23(b)(2) injunctive relief class.

### A. SB 690 establishes that Attorney General enforcement is the superior nechanism for adjudicating pen register claims, foreclosing Plaintiffs' 23(b)(3) Pen Register Classes.

To maintain a Rule 23(b)(3) damages class, Plaintiffs bear the burden of demonstrating "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," an inquiry which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *23 (N.D. Cal. June 13, 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)). By foreclosing private lawsuits and "mak[ing] the AG the ***exclusive*** enforcement authority" for pen register claims, SB 690 reflects the legislative determination that Attorney General enforcement—not class action litigation—is the superior mechanism of dispute resolution. SB 690, 2025–2026 Reg. Sess., at 6-7 (Cal. as amended July 2, 2026) (Senate Rules Comm., Off. of Senate Floor Analyses) (emphasis added).

The Ninth Circuit has long recognized that where it is clearly contrary to legislative intent, a statutory damages provision implicating the "potential for enormous liability can justify a denial of class certification[.]" *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276–77 (9th Cir. 2019) (quoting *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010)); *see Garvey v. Gaitan*, 2026 WL 734605, at *9 (D. Nev. Mar. 13, 2026) ("The Ninth Circuit has found that a statutory damages award that would 'shock the conscience' may fail the superiority requirement when 'such liability

would be inconsistent with congressional intent in enacting the statutory damages provision.'") (quoting *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974)). This Court need not speculate as to legislative intent: In passing SB 690 to amend CIPA's civil damages provision, the legislature was explicitly animated by its recognition that the provision was, as written, out of lockstep with legislative aims. Legislative materials reveal two interrelated concerns: First, private litigants have wielded the pen register provision in cases implicating no "genuine privacy violations," but mere "ordinary and benign operation of websites," without "any proof of actual consumer harm[.]" Assembly Comm. on Privacy & Consumer Protection, Analysis of SB 690 (Proposed Amendments), 2025–2026 Reg. Sess., at 6-7, 13 (Cal. July 1, 2026) (as amended May 29, 2025). Second, the $5,000 per violation statutory damages that Section 637.2 provides for "has created massive financial exposure to nearly every California business from a legal trap." *Id.* at 6–7. It is precisely this dissonance between benign technical violations of Section 638.51 on the one hand, and potentially crippling statutory damages on the other hand, that private class action litigation implicates and that SB 690 was enacted to resolve. Plaintiffs cannot credibly argue that they have met Rule 23(b)(3)'s superiority requirement in the face of this express legislative judgment to the contrary.

**B. Plaintiffs' Pen Register Classes cannot proceed as Rule 23(b)(2) injunctive relief classes.**

As Google argued in its Opposition, Plaintiffs have failed to carry their burden to show entitlement to prospective injunctive relief because (among other things) they offered no evidence showing that they are in danger of future injury. Opp. at 11–12. With respect to Plaintiffs' Pen Register Classes, the case is even clearer: By removing the private right of action for pen register causes of action as of January 1, 2027, SB 690 affirmatively ***forecloses*** any possibility that Plaintiffs could sustain any future cognizable injury arising from the alleged Section 638.51 violations. Because it is legally impossible "that Plaintiffs would again be injured by the challenged practices," they may not seek injunctive relief on a class-wide basis for alleged violations of CIPA's pen register provision. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120 (9th Cir. 2020); *see, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) ("[I]t is

the plaintiff's burden to establish standing by demonstrating that . . . the 'threatened injury [is] certainly impending.'" (citation omitted)).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Google's Opposition, the Court should deny Plaintiffs' motion for class certification in its entirety, including as to Plaintiffs' proposed Alternative Classes and the Pen Register Class and Subclasses. SB 690 independently and separately forecloses certification under Rule 23(b)(3)'s superiority requirement and Rule 23(b)(2)'s standing requirements.

Dated: October 29, 2026

COOLEY LLP

By: */s/ Benedict Hur*
Benedict Hur
Simona Agnolucci
Eduardo E. Santacana
Joshua Anderson
Anika Holland
Emily Abbey
Naiara Toker
Julia Irwin

Attorneys for Defendant
GOOGLE, LLC